# Public Version

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, <br> SPRINT/UNITED MANAGEMENT COMPANY, <br> T-MOBILE USA, INC., and <br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> Defendants. | Civil Action No. 5:19-cv-75 <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANTS' JOINT MOTION TO DISMISS UNDER RULE 12(b)(6)

This lawsuit is an inappropriate attempt by Plaintiff Joe Andrew Salazar ("Salazar") to evade a jury verdict of non-infringement by reasserting his unsuccessful claim of patent infringement. In the prior lawsuit, *Salazar v. HTC Corp.*, No. 2:16-cv-1096 (E.D. Tex.) ("*Salazar I*"), Salazar alleged that three HTC smartphone models infringed U.S. Patent 5,802,467 (the "'467 Patent"). The case was tried before a Marshall jury, which unanimously found that the '467 Patent was not infringed. As a result, Chief Judge Gilstrap entered final judgment on Salazar's infringement claim on May 18, 2018. *Salazar I*, Dkt. 284. Unsatisfied, Salazar has filed this new lawsuit ("*Salazar II*") accusing **the same three HTC smartphones** of infringing **the same patent**. Instead of filing this lawsuit in Marshall, Plaintiff filed in Texarkana and, instead of suing HTC Corp., Plaintiff now targets HTC Corp.'s downstream customers, who are resellers of the same accused HTC smartphones.

Salazar has already fully litigated this claim and lost. Filing the same claim in a different courthouse and substituting resellers of the HTC smartphones in place of the manufacturer does not entitle Salazar to a second bite at the apple. In fact, claim preclusion and the *Kessler* doctrine are designed to prevent exactly this type of gamesmanship. Permitting Salazar to relitigate his infringement claim would waste judicial resources and improperly harass HTC Corp. and its customers. Therefore, Defendants respectfully submit that the Court should dismiss this case with prejudice.

## I.   ISSUES PRESENTED

The issues presented for decision are whether this case should be dismissed under Fed. R. Civ. P. 12(b)(6) because

(1) Salazar's claim is precluded by the final judgment in *Salazar I* under the doctrine of claim preclusion; and

(2) Salazar's claim is precluded by the final judgment in *Salazar I* under the *Kessler* doctrine.

## II.   FACTS

Salazar has already litigated the same claim presented in this case—whether HTC's One M7, One M8, and One M9 smartphones (collectively, the "HTC Smartphones") infringe the '467 Patent. *Salazar I*, Dkt. 44, at ¶ 21.[1] In *Salazar I*, he initially sued only the manufacturer of the accused products—HTC Corp.—making a strategic decision not to sue HTC America, Inc. ("HTC America"), the U.S. subsidiary that imported and sold the phones in the U.S., or Defendants, who were direct customers of HTC America and resellers of the HTC Smartphones.

Salazar made that choice two years ago, despite knowing that HTC America imported and sold the accused devices in the United States and knowing that Defendants sold the same devices in the United States. ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] Defendants request that the Court take judicial notice of its own file in *Salazar I—Salazar v. HTC Corp.*, No. 2-16-cv-1096 (E.D. Tex.).  *See Meyers v. Textron, Inc.*, 540 Fed. Appx. 408, at 410 (5th Cir. 2013) (court may take official notice of court records to consider motion to dismiss).

███████   Despite all that knowledge, Salazar persisted in splitting his claim and trying the case against HTC Corp. only.

While Salazar initially chose to file *Salazar I* against only HTC Corp., he later changed course and added a defendant in an attempt to bolster his venue facts after HTC Corp. moved to transfer. On the last day to join parties without leave, Salazar filed a second amended complaint adding AT&T, Inc., as a codefendant. *Salazar I*, Dkt. 80, at 2. That complaint made no distinction between HTC Corp. and its alleged customer, AT&T, Inc., regarding Salazar's infringement allegations. *Salazar I,* Dkt. 44, ¶¶ 15-24. In fact, the allegations consistently referred to "Defendants" collectively. *Id.* Salazar thus claimed that both defendants were liable for direct infringement <u>and</u> indirect infringement by third parties, "including its direct and indirect customers."[2] *Id.*, at ¶ 15. Then, days after the Court denied HTC Corp.'s motion to transfer, Salazar voluntarily dismissed the case against AT&T, Inc. *See Salazar v. AT&T, Inc.*, No. 2:17-cv-593, Dkt. 13 (E.D. Tex.). ███████

███████

███████

At the trial in *Salazar I*, the jury concluded that Salazar had failed to prove that HTC Corp. infringed the '467 Patent. *Salazar I*, Dkt. 272, at 2. The Court entered final judgment consistent with the verdict on May 18, 2019. *Salazar I,* Dkt. 284.[3] After *Salazar I*, Salazar's lead counsel

---

[2] Because Salazar failed to sue the AT&T entity responsible for actually selling the accused smartphones, HTC Corp. moved to sever the mis-joined AT&T, Inc., and the Court agreed. *See Salazar I*, Dkt. 80.

[3] Still pending before Chief Judge Gilstrap are the Proposed Findings of Fact by HTC Corporation (*Salazar I*, Dkt. 300) and Proposed Findings of Fact by Joe Andrew Salazar (*Salazar I,* Dkt. 301) relating to HTC Corp.'s invalidity counterclaim in *Salazar I*, which were fully briefed and submitted to the Court on March 18, 2019.

4

hired new local counsel and filed the instant case ("*Salazar II*") in the Texarkana Division on June 18, 2019.

In *Salazar II*, Salazar again asserts <u>the same patent</u> litigated in *Salazar I*, accusing <u>the same HTC Smartphones</u> that were accused in *Salazar I*. *Compare Salazar I*, Dkt. 44, at ¶¶ 15-24 *with Salazar II*, Dkt. 3, at ¶¶ 18-29. Rather than file this lawsuit against HTC Corp., Salazar has merely substituted the Defendants—the wireless carriers who resold the HTC Smartphones—and changed venue to Texarkana without explanation. *Salazar II*'s infringement allegations in paragraphs 18-23 of the first amended complaint are substantially identical to the allegations in the second amended complaint in *Salazar I*, differing only in the identification of representative claims that Salazar asserts are infringed.

### III. ARGUMENT AND AUTHORITIES

Salazar's claim is precluded on two separate grounds. First, his claim is barred by the final judgment in *Salazar I* under the doctrine of claim preclusion (res judicata). In *Salazar I*, the jury returned a verdict that the '467 Patent was not infringed and the Court entered final judgment to that effect. *Salazar I*, Dkts. 272, 284. The preclusive effect of that judgment extends to Defendants and HTC America, as privies with the prevailing party HTC Corp. Second, the final judgment immunizes the HTC Smartphones from Salazar's claim under the *Kessler* doctrine.

This Court's prior decision in *Adaptix v. AT&T Mobility LLC* is instructive. *See* Nos. 6:12-CV-17, -20, -120, 2015 WL 12696204 (E.D. Tex. May 12, 2015). There, the plaintiff filed numerous lawsuits against combinations of smartphone manufacturers and wireless carriers in the Eastern District, each one alleging infringement by a pair of a manufacturer (e.g. Apple, HTC America, LG, or Pantech) and a wireless carrier (AT&T Mobility or Verizon Wireless) for their manufacture and sale of 4G LTE-compliant smartphones. *Id.* at *1. The carrier defendants were

5

sued in their capacity as resellers of the accused smartphones. *Id.* at *5. The cases against Apple and HTC America were transferred to the Northern District of California, where the defendants won summary judgment of non-infringement on all claims. *Id.* at *1-3. The carriers with cases remaining in the Eastern District of Texas then moved for summary judgment that Adaptix's claims against them were precluded by the adverse judgments in California. *Id.* at *3.

This Court properly applied claim preclusion, issue preclusion, and the *Kessler* doctrine to Adaptix's claims. *Id.* at *1, 9-21. First, the Court held that Adaptix was subject to issue preclusion, because the summary judgment of non-infringement in California necessarily disposed of all of Adaptix's theories of infringement. *Id.* at *5-9. Then the Court held that Adaptix's entire claim was barred as to all infringement allegations based on the smartphones sold to the wireless carriers by the California defendants. *Id.* at *15. Finally, the Court ruled that the *Kessler* doctrine immunized the smartphones at issue from further lawsuits asserting the same patents, even under theories of infringement that were not (but could have been) presented in the California cases. *Id.* at *20-21.

This Motion presents a simpler case than *Adaptix*. The trial in *Salazar I* included only one theory of infringement. ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ At trial, the jury found that HTC Corp.'s manufacture, alleged importation, and sale of the HTC Smartphones did not infringe the '467 Patent. *Salazar I*, Dkt. 284. For the following reasons, Salazar's claims are barred here:

A. Defendants' Preclusion Defenses Are Ripe For Adjudication.

Dismissal is warranted when, even accepting all the allegations in the complaint as true,[4] a complaint cannot state a plausible claim for relief because claim preclusion bars the cause of action alleged. *See, e.g.*, *D-Beam v. Roller Derby Skate Corp.*, 316 F. App'x 966, 968-69 (Fed. Cir. 2008) (affirming dismissal of complaint for failure to state a claim, based on applications of claim preclusion; "attempt to revive" suit by adding new defendants "fails as they are clearly in privity" with a prior defendant, and "new claim of patent infringement should have been brought in [prior] action"). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In ruling on the Motion, the Court may consider "all relevant facts [that] are shown by the court's own records, of which the court takes notice." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 410 (5th Cir. 2013) (*citing Clifton v. Warnaco, Inc.*, 53 F.3d 1280, at *6 n.13 (5th Cir. 1995)). Defendants respectfully submit that the pleadings here and the Court's file in *Salazar I* demonstrate that this case must be dismissed with prejudice.

B. Claim Preclusion Bars Salazar's Claim In This Case.

Claim preclusion generally applies in patent cases when, as here, the patentee asserts the same patent against the same party (or its privies) on the same subject matter. *Senju Pharm. Co. Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014). "Where an accused infringer has prevailed in an infringement suit, the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent." *Nystrom v. Trex Co.*, 580 F.3d 1281,

---

[4] The Court need not accept any conclusory allegations as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

7

1285 (Fed. Cir. 2009). (*citing Young Eng'rs, Inc. v U.S.I.T.C.*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)).

This case should be dismissed because the claim it presents is precluded by the final judgment in *Salazar I*. In the Fifth Circuit, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues <u>that were or could have been raised in that action</u>." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (*quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)).[5]

The Fifth Circuit's test for claim preclusion applies four factors: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Oreck*, 560 F.3d at 401. On issues particular to patent law, Federal Circuit law governs. *Nystrom* 580 F.3d at 1285.

### 1.   Three Of The Four Claim Preclusion Factors Are Beyond Dispute.

Of the four *Oreck* factors, three are beyond any reasonable dispute. <u>Factor (2)</u>: The judgment in *Salazar I* was rendered by a court of competent jurisdiction—this Court, in a case presided over by Chief Judge Gilstrap. <u>Factor (3)</u>: The prior case concluded by a final judgment, specifically the jury verdict in favor of HTC Corp., which the Court subsequently entered. *Salazar I*, Dkt. 284. <u>Factor (4)</u>: The same claim or cause of action is involved in both actions—the same patent is asserted against the same HTC Smartphones. *Compare Salazar I*, Dkt. 44 at ¶ 18 to Complaint in *Salazar II*, Dkt. 3 at ¶ 15. *See Senju*, 746 F.3d at 1349.

---

[5] In patent cases, the Federal Circuit applies regional circuit law in determining general principles of claim preclusion. *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007).

### 2. Defendants' Privity With HTC Corp. Satisfies The Remaining Claim Preclusion Factor.

The sole point for argument is Factor (1): whether the Defendants are in privity with HTC Corp. for claim preclusion purposes. Defendants have been accused of infringement based solely on their resale of the HTC Smartphones that were manufactured by HTC Corp., the prevailing party in *Salazar I*. As the Fifth Circuit has recognized, a "non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). In the context of claim preclusion, "'[p]rivity' is recognized as a broad concept, which requires [the court] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Id.* "It has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper. Modern decisions search directly for circumstances that justify preclusion." *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4449, at 418-19 (1981)). "In short, parties which are sufficiently related to merit the application of claim preclusion are in privity." *Russell*, 962 F.2d at 1174.

In the Fifth Circuit, "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975). When patent claims are involved, the Federal Circuit, applying a similar standard from the Third Circuit, has held that "a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1996) (*citing Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d. Cir. 1991)). In the same case, the Federal Circuit held that parent and subsidiary corporations are in privity with each other for claim preclusion purposes. *Id.* Any claim by Salazar for infringement

9

of the '467 Patent by the HTC Smartphones against HTC America would therefore be barred by claim preclusion, as Salazar apparently recognized when he chose not to sue HTC America in this case.

Salazar's claim against the Defendants is barred for the same reason. Courts have frequently found that claim preclusion extends to distributors and customers of the parties to the original case. *See, e.g.*, *XP Innovations, Inc. v. Black Rapid, Inc.*, No. H-13-1856, 2013 WL 6230368, at *2-3 (S.D. Tex. Dec. 2, 2013) ("XP Photo brings this lawsuit against Black Rapid in its capacity as a distributor of the Millionway products . . . . XP Photo has no other apparent interest or claim in this case. Therefore, XP Photo's interests were represented by Millionway in the previous suit. XP Photo's relationship is considered sufficiently close to be in privity with Millionway, thus satisfying the first element of res judicata"); *In re PersonalWeb Techs., LLC,* 18-md-2834, 2019 WL 1455332, at *8 (N.D. Cal. Apr. 2, 2019) ("defendants in the customer cases are in privity with Amazon because they share the same interest in the unfettered use of Amazon's web services, and Amazon adequately represented this interest in the Texas Action."); *Adaptix, Inc. v. Amazon.com,* No. 5:14-cv-1379, 2015 WL 4999944, at *6 (N.D. Cal. Aug. 21, 2015) ("Adaptix was fully aware that customers like John Does existed, were in possession of the allegedly infringing devices, and were operating those devices on carrier Defendant LTE networks, yet failed to bring claims against them"). Here, HTC Corp. was the manufacturer of the phones at issue in this case, and each Defendant was a known reseller of those products with an interest in their sale and unfettered use.

As in *Adaptix*, the Defendants as resellers of HTC Corp.'s products are in privity with HTC Corp. and HTC America for purposes of claim preclusion. *Id.* at *10. ████████████
████████████████████████████████

████████████████ HTC Corp. therefore sufficiently represented Defendants' interests in *Salazar I* to establish privity for claim preclusion purposes. *See Aerojet–General Corp.*, 511 F.2d at 719. Because Defendants are in privity with HTC Corp. and HTC America, all four factors are satisfied, and Salazar's claim is barred.

        3.      *Salazar Is Not Prejudiced By The Application Of Claim Preclusion.*

In these circumstances, claim preclusion plainly applies. Salazar cannot claim any lack of knowledge in *Salazar I* that entitles him to relitigate the same claim against Defendants. He was plainly aware of the relationship among HTC Corp., HTC America, and the Defendants during *Salazar I*.

Any unique aspect of Salazar's claim against Defendants thus either was (or could have been) litigated in *Salazar I*—whether by joining Defendants, or by maintaining (not abandoning) his indirect infringement claims as pled. Given his full knowledge of the aforementioned facts and issues, Salazar cannot credibly argue that the operation of claim preclusion would be unfair or prejudice him now.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

██ Salazar thus was free to join the wireless carriers as defendants in the first case, as demonstrated by his joinder (and then abrupt dismissal nine days after the transfer motion was denied) of AT&T, Inc. *Salazar I,* Dkt. 104 (denying change of venue), *Salazar v. AT&T, Inc.*, No. 2:17-cv-593, Dkt. 13. Instead he made the strategic, intentional decision <u>not to sue the Defendants in the case tried last year in Marshall</u>.

In any event, Salazar squarely placed the actions of HTC Corp's "direct and indirect customers," including HTC America and Defendants, in the crosshairs of his indirect infringement allegations in *Salazar I*. *See Salazar I*, Dkt. 44, at ¶ 17 ( "Defendants have infringed . . . the '467 Patent indirectly by inducing the infringement of the '467 Patent by third parties, including their direct and indirect customers."). Those allegations, if Salazar had not abandoned them, could and would have given the Court ample opportunity to determine whether any Defendant was performing any unique allegedly infringing acts. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 917 (2014) (holding that there is no liability for indirect infringement unless someone has directly infringed). ███████████████████████████████████████████
███████████████████████████████████████

Therefore, any claim by Salazar that the HTC Smartphones infringe the '467 Patent on any ground that was available to the plaintiff in *Salazar I*, whether he chose to pursue those grounds to verdict or not, is barred by claim preclusion.

      C.      The *Kessler* Doctrine Also Precludes Salazar's Claim.

Salazar's claim is also precluded by the *Kessler* doctrine, which prohibits subsequent lawsuits for patent infringement against previous defendants or their customers. *See Eldred v. Kessler,* 206 U.S. 285 (1907). The *Kessler* doctrine allows "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-judgment in a patent action where circumstances justify that result." *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) (emphasis in original). "When an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device . . . . The status of an infringer is derived from the status imposed on the *thing* that is embraced by the asserted patent claims." *Id.* at 1057. As the Federal Circuit has explained,

> In *Kessler v. Eldred*, Eldred filed suit against his competitor Kessler alleging infringement of U.S. Patent No. 492,913 ("the '913 patent") directed to an electric lighter. Eldred first filed suit against Kessler in the District of Indiana, but the court found that Kessler's product did not infringe, a ruling that the Seventh Circuit affirmed. Eldred subsequently filed suit in the Western District of New York against Breitwieser for infringement of the '913 patent. Breitwieser was a customer of Kessler and was selling the same electric lighters at issue in the Indiana action. Kessler stepped in to indemnify its customer, but also filed a separate suit in Illinois to enjoin Eldred from filing suit in any court alleging infringement of the '913 patent in connection with those of Kessler's lighters that had already been found to be non-infringing in the Indiana action. Both the district court and Seventh Circuit agreed with Kessler's position and granted the injunction in the Illinois action.
>
> The Supreme Court agreed with Kessler and stated that <u>the final judgment in the first action between Eldred and Kessler "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell the electric cigar lighter" in question.</u>

*Id.* at 1506 (emphasis added) (citations omitted).

The *Kessler* doctrine thus grants "a limited trade right which is 'the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference." *Id.* at 1057 (quoting *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987)). "It is a right which attaches to its product—to a particular thing—as an article of lawful commerce." *Id.* Customers accused of infringement are entitled to raise the *Kessler* doctrine as a defense to infringement claims. *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1325-27 (Fed. Cir. 2015). Such customers need not establish privity with the party that obtained the prior judgment, and the doctrine extends to infringement claims for activities occurring after the date of the judgment. *Id.* at 1328-29.

The *Kessler* doctrine also immunizes the accused products from all claims of infringement under the asserted patent—including under infringement theories that could have been, but were not, presented at trial. *Brain Life*, 746 F.3d at 1058 ("by virtue of gaining a final judgment of

14

noninfringement in the first suit—where all the claims were or could have been asserted against [defendant]—the accused devices acquired a status as noninfringement devices, and [plaintiff] is barred from asserting that they infringe the same patent a second time."). For example, in *Brain Life* the plaintiff dropped the method claims before trial and tried only the apparatus claims. Nevertheless, the subsequent judgment as to the apparatus claims immunized the products from all claims, including the method claims. *Id.* at 1058-59.

This case falls squarely within *Kessler* and, in fact, it falls squarely within the scenario outlined by the Federal Circuit's decision in *SpeedTrack* for which the *Kessler* doctrine is designed to prevent:

> the *Kessler* doctrine is a necessary supplement to issue and claim preclusion: ***without it, a patent owner could sue a manufacturer for literal infringement and, if unsuccessful . . . file suit against the manufacturer's customers under any claim or theory not actually litigated against the manufacturer as long as it challenged only those acts of infringement that post-dated the judgment in the first action***. That result would authorize the type of harassment the Supreme Court sought to prevent in *Kessler* when it recognized that follow-on suits against customers could destroy the manufacturer's judgment right.

*SpeedTrack*, 791 F.3d at 1328 (emphasis added).

That is the situation here. Salazar sued the smarthphone manufacturer and lost. Now he is suing the manufactuer's downstream customers who resold the accused products in the United States. The HTC Smartphones accused of infringement are the same HTC Smartphones found not to infringe in *Salazar I*. Any and all theories of infringement that Salazar could present in this case likewise could have been presented in *Salazar I*: he could have sued HTC America, he could have sued Defendants, and he could have done it all using exactly the same evidence he possessed and actually used in *Salazar I*. Salazar was free to—and did, for some time—pursue claims based on Defendants' actions as "direct [or] indirect" customers of HTC Corp., and he could have added

15

the Defendants to the prior case just as he did AT&T, Inc.  But he chose not to do any of that, splitting his claim instead and now seeking to evade the jury's verdict for a second bite at the apple. Salazar's serial litigation campaign is a clear example of exactly why the *Kessler* doctrine exists: to prevent harassment of HTC Corp. and its downstream customers, like Defendants, and avoid the waste of judicial resources on redundant litigation.

For all of these reasons, the final judgment in *Salazar I* conferred the status of non-infringement on each of the HTC One M7, One M8, and One M9 smartphones.  Therefore, Salazar cannot state a claim for infringement of the same patent by those same devices against Defendants, and the case should be dismissed with prejudice.

## IV.   CONCLUSION

Mr. Salazar has already had his week in court.  Indeed he has made full use of the Court's resources for the past two years, including a jury trial on his claim that the HTC Smartphones infringed his patent.  Meanwhile, his lead counsel was fully aware that each of the Defendants and HTC America were involved in the sale of the HTC Smartphones in the United States, yet plaintiff's counsel strategically chose to try his claim against only HTC Corp.

In *Salazar I*, he alleged direct and indirect infringement, both literally and under the doctrine of equivalents.  Those allegations were based on the alleged acts of HTC Corp. and its direct and indirect customers and AT&T, Inc.—yet plaintiff's counsel chose not to pursue those grounds to decision, and he chose not to present any indirect theories of infringement to the jury. Ultimately, he failed to persuade the jury that the patent was infringed in any way.

The Court's final judgment thus precludes all claims by Salazar against Defendants relating to the HTC Smartphones, and the HTC Smartphones are also immunized from Salazar's claim under the *Kessler* doctrine.  Salazar's disagreement with the jury's verdict and the Court's final

judgment does not entitle him to a do-over in this or any other court. Defendants therefore respectfully request that the Court dismiss this case with prejudice.

Dated: October 1, 2019

Respectfully submitted,

*/s/ Fred I. Williams*
Fred I. Williams
Texas Bar No. 00794855
fwilliams@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78701
Tel: 512.542.8400
Fax: 512.542.8610

Todd E. Landis
Texas Bar No. 24030226
tlandis@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.220.7716

Parker Hancock
Texas Bar No. 24108256
phancock@velaw.com
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel: 713.758.2222
Fax: 713.758.2346

Harry Lee Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: 903.934.8450
Fax: 903.934.9257

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 1st day of October, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Fred I. Williams*

**CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL**

In accordance with Local Rule CV-5(a)(7)(A), this is to certify that this motion contains confidential information designated as CONFIDENTIAL and/or RESTRICTED – ATTORNEYS' EYES ONLY, and a Motion for Leave to File Under Seal has been filed with the Court on this 1st day of October, 2019.

*/s/ Fred I. Williams*