# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## JOE ANDREW SALAZAR'S OPPOSITION TO HTC CORPORATION'S MOTION DISMISS ITS COUNTERCLAIM FOR INVALIDITY WITHOUT PREJUDICE OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................2

        A.      HTC's withdrawal of its invalidity counterclaim at the close of trial constituted a
                dismissal........................................................................................................2

                1.      The record establishes that HTC voluntarily dismissed its claim at trial. ...2

                2.      *Flexuspine v. Globus Medical* is factually and legally distinctive...............3

        B.      HTC's dismissal was with prejudice.......................................................................4

                1.      Dismissal without prejudice at this late stage would be improper because
                        Salazar would be severely prejudiced.........................................................5

                2.      Dismissal without prejudice given HTC's lack of a sufficient, or any,
                        explanation for its withdrawal of its claim would be improper. ..................7

                3.      Dismissal of the case without prejudice given HTC's attempt to avoid an
                        imminent adverse ruling would be improper. .............................................8

                4.      Dismissal without prejudice would be contrary to the interests of justice. .9

                5.      Dismissal without prejudice would be inconsistent with Salazar's Seventh
                        Amendment rights....................................................................................10

        C.      HTC's request to stay and sever the invalidity claim should be rejected. .............11

        D.      HTC's request that the Court grant its motion for judgment as a matter of law
                should be denied. ..............................................................................................12

III.    CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978).....................................................10

*Am. Home Assur. Co. v. United Space All.*, 378 F.3d 482 (5th Cir. 2004)...................................12

*Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352 (Fed. Cir. 2016)......................................11

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)...........................................................10

*Chavez v. Dunlop, Ltd.*, No. 1:09-CV-798, 2011 WL 1641972 (E.D. Tex. Apr. 13, 2011)....4, 5, 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ..........12, 13

*Davis v. Huskipower Outdoor Equip. Corp.,* 936 F.2d 193 (5th Cir. 1991)...............................5, 6

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223 (Fed. Cir. 2015) ....................12

*Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002) ................................................4, 5, 7

*Flexuspine, Inc. v. Globus Med., Inc.*, 879 F.3d 1369 (Fed. Cir. 2018) ....................................3, 4

*Freeny v. Apple Inc.*, No. 2:13-CV-00361-WCB, 2014 WL 4954541 (E.D. Tex. Oct. 1, 2014) ....7

*Gasoline Prods. Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494 (1931) .................................10

*GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-CV-00265-JRG, 2014 WL 129835
  (E.D. Tex. Jan. 14, 2014) .......................................................................................................9

*Grey v. First Nat'l Bank in Dall.*, 393 F.2d 371 (5th Cir. 1968) ..................................................12

*Harris v. Devon Energy Prod. Co.,* 500 F. App'x 267 (5th Cir. 2012) ...........................................4

*Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.,* 903 F.2d 352
  (5th Cir. 1990)....................................................................................................................5, 6

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063
  (Fed. Cir. 2012) ...................................................................................................................12

*In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157 (5th Cir. 2010)...............5, 8

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)....................................................10

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831
(5th Cir. 1993)....................................................................................................8

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ....................................................12

*Radiant Tech. Corp. v. Electrovert USA Corp.,* 122 F.R.D. 201 (N.D. Tex. 1988) ......................8

*United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325 (5th Cir. 2003) ..................................5

*Williams v. Caliber Home Loans*, No. 3:15-CV-2346-N-BH, 2016 WL 8715661
(N.D. Tex. Nov. 7, 2016) ...............................................................................6, 8

## Statutes and Rules

35 U.S.C. § 282.......................................................................................................12

Fed. R. Civ. P. 50(b) ...............................................................................................12

## Other Authorities

1 ANNOTATED PATENT DIGEST (2018)...........................................................................11

9B FED. PRAC. & PROC. CIV. (3d ed.) .........................................................................12

# I.      INTRODUCTION

Plaintiff Joe Andrew Salazar ("Salazar") submits this Opposition in response to HTC Corporation's Motion Dismiss Its Counterclaim for Invalidity Without Prejudice or in the Alternative, Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) ("Motion," Dkt. No. 290).    Contrary to HTC Corporation ("HTC")'s characterization of the events at trial, there is no "live" issue for the Court to decide here.  As the record makes clear, following the jury's return of a verdict of noninfringement, the Court gave HTC the choice between dismissing its invalidity counterclaim or sending the claim back to the jury.  HTC's counsel conferred, made a tactical decision to withdraw its claim, and the Court consequently accepted the verdict with the invalidity claim dismissed.  The case law is clear that HTC's voluntary dismissal was with prejudice and that it should be bound by the result of this legal process: HTC litigated its invalidity claims for over a year, forcing Salazar to devote significant time and resources to defend against this challenge.  A jury was empaneled, a trial was held, and HTC made certain strategic decisions.  Now, HTC asks the Court to permit it to further drain Salazar of his resources and get a "do-over" because it strategically withdrew its validity claim in the eleventh hour.  Such a result would not only be contrary to precedent and the Seventh Amendment, but, as this Court has explained, it would set a troubling precedent for parties to sue their opponents for years until it became clear they may lose the case, dismiss the case at their option, and then file it again, subjecting their opponents to the same cycle of time and expense without ever prejudicing their legal interests.  HTC's request for dismissal without prejudice should be wholly rejected.

Additionally, HTC's request to stay and sever the invalidity claim is baseless and should be denied.  Likewise, HTC's alternative request for judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50(b) should be denied.  If the Court wishes to entertain HTC's FRCP 50(b) motion as if the jury had found the asserted claims valid, Defendant's motion is without merit.  Not only did Salazar present ample evidence for the jury to find that the '467 Patent was valid, but because the claims of the Patent are presumed valid, he was not required to offer *any* expert testimony on the issue of validity, and it was within the jury's purview to reject HTC's expert's testimony relating to validity in its entirety.  For these reasons, Salazar respectfully requests that the Court deny HTC's Motion in full.

## II.  ARGUMENT

### A.  HTC's withdrawal of its invalidity counterclaim at the close of trial constituted a dismissal.

1.  <u>The record establishes that HTC voluntarily dismissed its claim at trial.</u>

HTC's assertion that its counterclaim for invalidity is "live" and that "additional action is . . . needed" is incorrect.  Contrary to HTC's characterization, this is not a "live" issue that needs to be resolved.  HTC withdrew its invalidity claim at the close of trial, and this withdrawal was with prejudice.  Following the jury's return of a verdict of noninfringement, the following discussion took place between the Court and the parties' counsel:

> THE COURT: The jury has answered Question 1 with regard to infringement as "no" to each of the accused products.  However, the jury has not answered Question 2 with regard to invalidity of the patent-in-suit.  The instructions that follow Question 2 provide that if they've answered "no" to Question 1, they should not answer any further questions, but that instruction is after Question 2, and since there is a live declaratory judgment action for invalidity, the jury should answer Question 2.  At this point, I need the Defendants to tell me if they want me to send the jury back and instruct them to answer Question 2 on validity or they want me to accept the verdict with the answers to Question 1 only.

> MR. GILLAM: Could we have a chance to visit for a moment?

> THE COURT: Yes.  Yes, why don't you go to your respective counsel tables, visit off the record a moment, and when you're ready, let me know, and I'll call you back to the bench?

(Bench conference concluded.)

THE COURT: Counsel, approach again, please.

(Bench conference.)

THE COURT: Mr. Williams?

MR. WILLIAMS: **Your Honor, the Defendant will elect to accept the verdict.**

THE COURT: All right.  **So the Defendant has no objection to me accepting the verdict with only Question 1 being answered?**

MR. WILLIAMS: **That's correct, Your Honor.**

Trial Transcript, 87:12-88:16 (May 11, 2018) (**Exhibit 1**) (emphasis added).  As the transcript makes clear, the Court gave HTC the choice between dismissing its invalidity counterclaim or sending the claim back to the jury, as the Court had the discretion to do.  HTC's counsel conferred and decided to withdraw the claim, and the Court consequently accepted the verdict with the invalidity claim dismissed.  Accordingly, HTC's counterclaim is no longer a "live" issue.

### 2.    _Flexuspine v. Globus Medical_ is factually and legally distinctive.

HTC misstates the facts and holding of the Federal Circuit's decision in _Flexuspine._  In _Flexuspine_, the Federal Circuit affirmed this Court's decision to dismiss the defendant's validity counterclaims.  There, the parties' proposed jury form included a "stop instruction," which conditioned the submission of invalidity on an affirmative finding of infringement.  _Flexuspine, Inc. v. Globus Med., Inc._, 879 F.3d 1369, 1371 (Fed. Cir. 2018).  Upon reviewing the verdict form, this Court determined that the jury filled the form out incorrectly by providing an answer to the question pertaining to validity despite finding the patent claims noninfringed.  _Id._ at 1372.  To correct the error, this Court sent a blank verdict form back to the jury to re-execute in

accordance with the verdict form's instructions. *Id.* The jury returned with a verdict form filled out in accordance with the Court's instructions, and the defendant filed a FRCP 59(e) motion[1] requesting that the Court include the jury's invalidity verdict. *Id.* This Court declined and the Federal Circuit affirmed this Court's decision to dismiss the counterclaim without prejudice, reasoning that the district court had discretion to determine that the answers submitted by a jury were not clear and required resubmission and **contrary to HTC's characterization, the issue of invalidity was submitted to the jury only as an affirmative defense, not as a counterclaim**. *Id.* at 1374-75.

Here, HTC concedes that the verdict form submitted to the jury did not include a stop instruction, and thus HTC's claim was presented as a counterclaim—not an affirmative defense. Dkt. No. 290 at 3. Furthermore, HTC itself—not the court—unilaterally pulled its counterclaim from the jury after fully presenting its case and hearing the jury's questions relating to validity. Also, unlike in *Flexuspine* where the jury came back with a decision in defendant's favor, HTC's decision can only be understood as a strategic decision to avoid an adverse ruling. Accordingly, *Flexuspine* is inapposite and the Court should decline to apply it.

### B. HTC's dismissal was with prejudice.

In evaluating whether a party's voluntary dismissal should be with prejudice, courts consider "whether an unconditional dismissal will cause the non-movant to suffer legal prejudice." *Chavez v. Dunlop, Ltd.*, No. 1:09-CV-798, 2011 WL 1641972, at *2 (E.D. Tex. Apr. 13, 2011) (citing *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002)). Courts seek "to avoid voluntary dismissals which unfairly affect the other side." *Harris v. Devon Energy Prod. Co.*, 500 F. App'x 267, 268 (5th Cir. 2012) (citing *Elbaor*, 279 F.3d at 317)

---

[1] Motion to Alter or Amend a Judgment.

(internal quotation marks omitted).  Legal prejudice is "prejudice to some legal interest, some legal claim, some legal argument." *Chavez*, 2011 WL 1641972, at *2 (citations omitted).  "If the court finds that a motion for voluntary dismissal will cause legal prejudice, then the court may deny the motion or impose conditions that will cure the prejudice." *Id.* at *3 (citing *Elbaor,* 279 F.3d at 317-18).  Courts have dismissed claims with prejudice where, for example, the movant "fails to seek a dismissal until a late stage of trial," *Davis v. Huskipower Outdoor Equip. Corp.,* 936 F.2d 193, 199 (5th Cir. 1991), the movant has provided an insufficient explanation of the need to take a dismissal, *Elbaor*, 279 F.3d at 318 n.3, and/or the movant seeks to avoid an imminent adverse ruling in the case, *In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 162 (5th Cir. 2010).

1.  <u>Dismissal without prejudice at this late stage would be improper because Salazar would be severely prejudiced.</u>

Courts have found that the non-moving party would be prejudiced where the case has proceeded to a late stage, numerous motions have been filed and hearings have been conducted, and the court has made one or more prior rulings adverse to the movant's position.  In cases involving late-stage voluntary dismissals, the Fifth Circuit has repeatedly affirmed district courts' decisions denying leave to dismiss without prejudice where the non-moving party would suffer *less* prejudice than Salazar would here.  *See, e.g.*, *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 325 (5th Cir. 2003) (affirming a finding of prejudice where the plaintiff sought dismissal nine months after suit was filed, the parties had filed responsive pleadings, motions to compel, motions for expedited hearing, motions to dismiss, motions for oral arguments, and a motion for rehearing); *Davis*, 936 F.2d at 199 (affirming finding of prejudice where motion to dismiss was filed after a year had passed since removal of the case, the parties had spent months filing pleadings, attending conferences, and submitting memoranda, and a

magistrate judge had issued a recommendation adverse to the moving party's position); *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.,* 903 F.2d 352, 360 (5th Cir. 1990) (affirming finding of prejudice where dismissal was requested nearly ten months after removal of action, hearings had been conducted on various issues, significant discovery had occurred, and a jury trial had been set for the remaining defendants).

Here, the litigation had proceeded to a very late stage—not only had Salazar spent over one and a half years litigating the case, but the parties had presented their cases at trial, and the jury had already returned a verdict as to the issue of infringement. Salazar had spent significant time and resources defending against HTC's invalidity claim. These costs included, but were not limited to, an expert report prepared by Salazar's validity expert, Dr. Oded Gottesman, responding to HTC's expert report on invalidity; depositions of both sides' experts; review of HTC's discovery relating to validity; and the Markman hearing and related briefing on claim construction relating to validity. Salazar's trial costs were also significant. In total, Salazar's financial expenses include approximately $100,000.00 spent on Dr. Gottesman and $250,000.00 in attorney billing time. *See* Declaration of Dariush Keyhani, ¶ 2 (**Exhibit 4**); *Williams v. Caliber Home Loans*, No. 3:15-CV-2346-N-BH, 2016 WL 8715661, at *3 (N.D. Tex. Nov. 7, 2016) (finding that party's expenditure of more than $250,000.00 to defend the action weighed in favor of a finding of prejudice). Additionally, Salazar spent extensive time preparing for and deposing the validity experts, preparing Dr. Gottesman for trial, and filing numerous motions, including responses to HTC's *Daubert* challenge. At trial, Salazar spent significant time defending against HTC's invalidity claim—time he could have spent on other issues dispositive to the case.

6

Furthermore, as in the cases above, the Court had made prior rulings adverse to HTC's position. For example, the Court denied HTC's motion to dismiss Salazar's claims. Dkt. No. 181. During claim construction, HTC's argument that all of the patent's asserted claims were indefinite was rejected by the Court. Dkt. No. 108. The Court also made rulings adverse to HTC when it determined that venue was proper in the Eastern District of Texas and declined to grant in full HTC's *Daubert* challenge to Dr. Gottesman's testimony. Dkt. Nos. 104, 247. Most recently, the Court denied HTC's Rule 50(a) motion for judgment as a matter of law as to invalidity, among other issues. *See* Trial Transcript, 55:10-25 (May 10, 2018) (**Exhibit 2**). If the Court were to dismiss HTC's claim without prejudice, not only would Salazar be severely prejudiced in terms of the resources he would have to put into potentially relitigating validity, but HTC would get a second bite at the apple as to these adverse rulings.

2. <u>Dismissal without prejudice given HTC's lack of a sufficient, or any, explanation for its withdrawal of its claim would be improper.</u>

"The absence of a satisfactory explanation for why a dismissal should be without prejudice has been identified in numerous cases as an important factor bearing on the court's decision whether to grant a motion to dismiss." *Freeny v. Apple Inc.*, No. 2:13-CV-00361-WCB, 2014 WL 4954541, at *2 (E.D. Tex. Oct. 1, 2014) (collecting cases); *see also Elbaor,* 279 F.3d at 318 n.3; *Chavez*, 2011 WL 1641972, at *3 (dismissing defendant's case with prejudice where it provided no sufficient explanation for seeking a voluntary dismissal).

HTC tellingly provides no explanation, nonetheless a "sufficient" one, as to why its dismissal should be without prejudice. Indeed, no satisfactory explanation exists for why the dismissal should be without prejudice. The issue of invalidity is no longer live or material to the dispute between the parties. The jury returned a verdict of noninfringement, and Salazar has filed no post-trial motions or appeals. Further, Salazar's patent is expired, so HTC faces no risk

that its future products will be affected.  At this stage, HTC is merely harassing Salazar over an expired patent that has been found to be noninfringed.  HTC would face no harm if its claim were dismissed with prejudice, whereas Salazar would assume all of the detriment of HTC's unjustified demand.

> 3. <u>Dismissal of the case without prejudice given HTC's attempt to avoid an imminent adverse ruling would be improper.</u>

Plain legal prejudice may occur when the movant seeks, through dismissal, to avoid an imminent adverse ruling in the case.  *Harris*, 500 F. App'x at 268-69 (citing *In re FEMA Trailer,* 628 F.3d at 162).   For example, the Fifth Circuit held that where it "c[ould] only conclude that the [plaintiff's] dismissal of the suit was intended to avoid an imminent adverse result on summary judgment," dismissal of the suit with prejudice was warranted.  *Id.* at 269; *see also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 843 (5th Cir. 1993); *Williams*, 2016 WL 8715661, at *3; *Radiant Tech. Corp. v. Electrovert USA Corp.,* 122 F.R.D. 201 (N.D. Tex. 1988).

Here, HTC's withdrawal of its claim was clearly intended to avoid an adverse jury determination on invalidity.  If HTC had had confidence that the jury would return a verdict in its favor, it would have sent the jury back to deliberate and not withdrawn its claim.   HTC's decision to withdraw the claim, made after a conference of its counsel, can only be interpreted as an attempt to avoid an adverse ruling.  HTC was aware that it had lost its JMOL motion as to validity, it had seen how the testimony regarding validity had gone during the trial, and it had heard the jury's questions relating to invalidity—including the jury's request to see the slides of Salazar's validity expert.  Moreover, the fact that HTC never moved for summary judgment as to invalidity, even though it moved for summary judgment as to infringement, and even though parties typically move for both, evidences that HTC did not have a high degree of confidence in

its case.[2]  Salazar should not be punished as a result of HTC's strategic decision to avoid an adverse ruling.  Dismissal without prejudice is appropriate for this additional reason.

      4.    <u>Dismissal without prejudice would be contrary to the interests of justice.</u>

Allowing HTC to dismiss its claim without prejudice would also be contrary to the interests of justice.  Not only would dismissal without prejudice be manifestly unfair to Salazar, it would set a dangerous precedent for plaintiffs to bring various claims to trial, see all of the other side's cards during the trial, take the temperature of the jury, then engage in the gamesmanship of dismissing—at the last possible moment—those claims they fear will be unsuccessful and then hit the reset button and refile those claims under more favorable circumstances.  As this Court explained in *GeoTag, Inc. v. Frontier Commc'ns Corp.*,

> If plaintiffs could proceed with a case for months or even, as in this case, years, forcing defendants to incur legal fees, and then simply dismiss a suit at his or her option without prejudice to the case, then rogue plaintiffs could simply sue until it became clear that they were about to lose a case, dismiss the case, and then file it again, subjecting defendants to the same cycle of expense without ever prejudicing their legal interests.

> When a plaintiff files suit in court, it manifests not only a claim of right, but a willingness to prove the validity of its claims and be bound by the result of the legal process. If, despite all the available tools provided by the law, Plaintiff cannot muster sufficient evidence to uphold a jury verdict in its favor, then moving defendants are entitled to final legal disposition of Plaintiff's claims.

No. 2:10-CV-00265-JRG, 2014 WL 129835, at *2 (E.D. Tex. Jan. 14, 2014).

These precise concerns are implicated here.  In this case, HTC litigated its invalidity claims for over a year, forcing Salazar to devote significant time and resources.  A jury was empaneled, a trial was held, HTC made certain strategic decisions, and HTC saw all of Salazar's cards.  As this Court explained, HTC should be bound by the result of this legal process—such

---

[2] Furthermore, If HTC had sent the invalidity question back to the jury, HTC risked having the jury reevaluate its answer to Question 1 (infringement).

as its adverse rulings on venue and claim construction, and decisions it made at trial, *e.g.*, presenting only one piece of prior art when its expert report included ten.  For HTC—without any prejudice to its legal interests—to be permitted to further exhaust Salazar's resources and re-try this issue because it strategically withdrew its validity claim in the eleventh hour would be contrary to the interests of justice.

      5.    <u>Dismissal without prejudice would be inconsistent with Salazar's Seventh Amendment rights.</u>

"The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996).  According to the Fifth Circuit, "separation of issues is not the usual course that should be followed, and . . . the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice.  This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact."  *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (citing *Gasoline Prods. Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494, 51 (1931)).  Courts have described the constitutional limitation to bifurcation "as one requiring a court to 'carve at the joint' in such a way so that the same issue is not reexamined by different juries. 'The right to a jury trial . . . is a right to have juriable issues determined by the first jury impaneled to hear them . . . , and not reexamined by another finder of fact.'" *Castano*, 84 F.3d at 751 (quoting *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302-03 (7th Cir. 1995)).

Here, a dismissal without prejudice would open the door for a second, separate jury to decide the same facts and issues already examined in this case.  For example, a separate jury deciding the issue of invalidity would be reexamining the same fact issues regarding the

application of the patent claims that the jury in this case already considered and determined, because how the patent claims are to be interpreted inform both the infringement and invalidity inquiries. Separate and aside from the Court's claim construction, all other claim language is given a plain and ordinary meaning from the perspective of one skilled in the art. That meaning, which applies to both invalidity and infringement, was applied by experts on each side, and which expert's application was correct was a question of fact to be resolved by the jury. *See, e.g.*, 1 ANNOTATED PATENT DIGEST § 3:17.50 (2018) ("Generally, at trial, the jury will be instructed to apply the 'plain and ordinary' meaning to any claim term that the court has not provided a construction for in the jury instructions."); *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1359-60 (Fed. Cir. 2016). Therefore, a second jury deciding the question of validity would necessarily be reexamining the same facts that were already decided in this case, in violation of Salazar's Seventh Amendment rights. To prevent this impermissible result, HTC's dismissal should be with prejudice.

**C.     HTC's request to stay and sever the invalidity claim should be rejected.**

No basis exists to stay or sever HTC's invalidity claim. The claim already went to trial and was withdrawn by HTC. HTC's Motion is the only issue pending before the Court, so there is no need to "sever" the invalidity clam. If the Court desires to substantively decide the issue of validity, all of the evidence is before the Court, and the Court may do so. Moreover, HTC's request that the Court stay the case pending *inter partes* review is without merit. The USPTO has not even decided whether it will even institute HTC's IPR petition; thus, this proposed reason for staying the case is far too speculative and remote. Any additional delay would only cause prejudice to Salazar, and for no reason. Accordingly, the Court should deny HTC's request to sever and stay the case.

**D.      HTC's request that the Court grant its motion for judgment as a matter of law should be denied.**

If the Court wishes to entertain HTC's FRCP 50(b) motion as if the jury had found the asserted claims valid, Defendant's motion is without merit and should be denied.  A patent is presumed valid, and the burden of establishing invalidity of a claim rests on the party asserting invalidity by clear and convincing evidence.  35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  The outcome of an alleged infringer's invalidity defense at trial depends on whether the alleged infringer "has carried its burden of persuasion to prove by clear and convincing evidence that the patent is invalid." *Id.* at 1377.  This burden remains on the party asserting validity at all times and does not shift to the patentee at some point to prove validity. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).  Because the burden rests with the alleged infringer to present clear and convincing evidence supporting a finding of invalidity, granting judgment as a matter of law for the party carrying the burden of proof is generally "reserved for extreme cases," such as when the opposing party's witness makes a key admission.  9B FED. PRAC. & PROC. CIV. § 2535 (3d ed.); *see Grey v. First Nat'l Bank in Dall.*, 393 F.2d 371, 380 (5th Cir. 1968) ("[W]hen the party moving for a directed verdict has such a burden, the evidence to support the granting of the motion must be so one-sided as to be of over-whelming effect."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).  Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004).

12

The presumption of validity of a patent can be maintained even where the patentee does not present its own expert on validity.  In the *Core Wireless* case cited by HTC in support of its JMOL argument, the plaintiff *did not even have a validity expert*.  Nevertheless, the Court held that the jury was entitled to evaluate Defendant's expert and determine that Defendant failed to clearly and convincingly establish that the asserted claims were anticipated by the prior art raised by Defendant on that basis alone.

At trial, HTC presented a single prior art reference, U.S. Patent 5,410,326 (Goldstein), claiming that Claims 1-7, 29-30, and 34 of the '467 Patent were anticipated in view of Goldstein, and that Claims 27-28 were obvious in view of Goldstein and the knowledge of a person of ordinary skill in the art.  HTC's expert witness, Dr. Andrew Wolfe, testified to support HTC's counterclaim, and unlike in *Core Wireless*, Salazar presented an expert witness, Dr. Gottesman, who testified in rebuttal to Dr. Wolfe's testimony.  Contrary to HTC's argument, Dr. Gottesman provided ample evidence for a reasonable jury to conclude that the asserted claims of the '467 Patent were valid.  *See* Trial Transcript, 5:3-27:21 (May 10, 2018) (**Exhibit 2**).

First, Dr. Gottesman demonstrated that the USPTO distinguished a communication, command, control and sensing system (the '467 Patent's field of invention) from a remote control (Goldstein's field of invention) and supported his testimony with the USPTO's Election Restriction.  *See id.* at 12:15-13:10.  Dr. Gottesman further testified that the USPTO granted the claims of Mr. Salazar's patent because "a communications, command, control and sensing system is defined by the applicant independent claims with additional capability to recreate an external devices command set from a set of parameters—that's the clever thing that I described earlier—for the external device, and thus reduce the required memory space to store command code sets so that the parameter set alone has not been observed in the prior art . . . ."  He

13

supported his testimony with the USPTO's Notice of Allowability.  *Id*. at 13:13-15:1.

Second, Dr. Gottesman further addressed each and every claim HTC argued was either anticipated or obvious in light of Goldstein and specifically explained why he disagreed with Dr. Wolfe.  *Id*. at 15:4-26:18.  For example, with respect to claim 1, in addition to explaining that the Goldstein remote control reference does not teach a "communication, command, control and sensing system" as required by the preamble, Dr. Gottesman lists three reasons why Goldstein does not teach the "memory device"[3] limitation.[4]  *Id*. at 21:23-22:14.  For each asserted claim depending from claim 1, Dr. Gottesman explained to the jury that "because . . . not all of [claim 1's elements] were found in Goldstein, then not all the claim elements of the dependent claim are found in Goldstein, as well" and that the presumption of validity of each of those claims should be maintained.[5]  *Id*. at 23:18-24:20.

Additionally, in the case of claims 29 and 30, Dr. Gottesman provided the jury with reasons why Goldstein did not teach the "measuring physical phenomena corresponding to said

---

[3] The "memory device" limitation refers to element 1[b] of the '467 patent: "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets;"

[4] **Q.** What are -- walk us through those three -- three elements.

**A.** The first one is retrieved by said microprocessor.  There is no such disclosure in Goldstein. The second one is to recreate desired command code set.  Again, there is no such disclosure in Goldstein.  And the third one is the clever idea such that the memory space required to store said parameter is smaller than the memory space required to store said command code sets.  All three in my opinion are not disclosed in Goldstein, therefore, this claim element is not disclosed.

[5] Because Dr. Wolfe proffered no additional analysis for claim 34 other than referring to his analysis of claim 1, Dr. Gottesman similarly rejected Dr. Wolfe's opinion that claim 34 was anticipated by Goldstein and concluded that the presumption of validity should be maintained. *See id*. at 24:23-25:21.

14

user" claim limitation by rebutting Dr. Wolfe's testimony that a touch sensitive device, receiver, and microphone identified in Figure 10 of Goldstein met this limitation. *Id.* at 18:17. Dr. Gottesman testified that "a touch sensitive device, at the time of the invention, operated like an array of switches, and it didn't perform and didn't measure any physical phenomena." *Id*. at 16:19-17:24. Dr. Gottesman also rejected Dr. Wolfe's opinion that flipping a light switch on or off measures physical phenomena, explaining that "[i]t's just a passive device. You press it, and it closes the circuit." *Id*. at 16:16-17:11.

Even if *arguendo* Dr. Gottesman's testimony was found to be conclusory—which it was not—a reasonable jury could find that the asserted claims were valid based on Plaintiff's cross-examination of Dr. Wolfe alone. Plaintiff's counsel rigorously cross-examined Dr. Wolfe with respect to several of the limitations he claimed were found in Goldstein remote control reference. *See* Trial Transcript, 46:25-24, 47:16-22, 48:8-12, 49:2-50:11, 52:9-58:7, 61:17-66:6, 67:5-25 (May 9, 2018 p.m.) (**Exhibit 3**). During Plaintiff's counsel's cross examination of Dr. Wolfe, there were several instances where Dr. Wolfe provided testimony that a reasonable jury could find wholly untenable and decide to reject Dr. Wolfe's testimony outright. In particular, when addressing the "measuring" limitation of claims 29 and 30, Dr. Wolfe testified that a switch, like one in the courtroom, measures "the electric flow through the switch" and conceded that he would not be surprised that another expert would disagree with his opinion. *See id*. at 53:19-55:1. A reasonable jury could similarly reject Dr. Wolfe's testimony based on his reliance on GLUE logic—which Dr. Wolfe described as "a fancy way of saying other stuff"—to meet a number of claim limitations. *Id*. at 18:1-5, 61:1-67:25.

In sum, though Defendant asserts that Dr. Gottesman's testimony was not credible, the same can be said for Dr. Wolfe's testimony, and the jury would have been free to reject all of Dr.

Wolfe's testimony on that basis.  This is particularly true given Dr. Wolfe's unreasonable opinions elicited by Plaintiff's counsel regarding the measuring limitation and Dr. Wolfe's opinion that limitations not referenced in Goldstein could be found in the undefined GLUE logic or "other stuff."  Because the claims of the '467 Patent are presumed valid, Plaintiff was not required to offer *any* expert testimony on the issue of validity, and it was within the jury's purview to reject Dr. Wolfe's testimony relating to validity in its entirety, the Court should deny HTC's renewed judgment as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, Salazar respectfully requests that the Court deny HTC's Motion in its entirety.

Dated: June 25, 2018

Respectfully submitted,

Dariush Keyhani, Lead Attorney
New Jersey State Bar No. 044062002
Admitted *pro hac vice*
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
dkeyhani@meredithkeyani.com

Andy Tindel
Texas State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909
Email: atindel@andytindel.com

J. Mark Mann
Texas State Bar No. 12926150
G. Blake Thompson
Texas State Bar No. 24042033
MT² Law Group
Mann | Tindel | Thompson
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)
Email: mark@themannfirm.com
Email: blake@themannfirm.com

*Attorneys for Plaintiff Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 25th day of June, 2018. Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission

Andy Tindel