**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR, | |
|    Plaintiff, | |
| v. | Civil Action No. 5:19-cv-75 |
| AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | DEMAND FOR JURY TRIAL |
|    Defendants. | |

**PLAINTIFF JOE ANDREW SALAZAR'S SUR-REPLY IN OPPOSITION TO AT&T MOBILITY, LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLO PARTNERSHIP D/B/A VERIZON WIRELESS' MOTION TO <u>DISMISS UNDER RULE 12(b)(6)</u>**

Defendants' Reply (Dkt. No. 57) demonstrates that they cannot establish the necessary elements—specifically, that this case involves the same cause of action as the HTC Corp. case and that Defendants are each in privity with HTC Corp.—to preclude Salazar from holding Defendants accountable for their infringement of his patent claims. Defendants have not proven that the two cases involve the same cause of action. In their Reply, Defendants fail to rebut the clear and overwhelming evidence that this case does not involve the same nucleus of operative facts as the HTC Corp. case. Defendants' assertion that Salazar's infringement claims against them are barred based on his allegation in the first case that *HTC Corp.* "induced, caused, urged, aided, and abetted its direct and indirect customers to infringe the claims of the '467 patent" is without merit and belied by the language of the complaint. As Salazar established in his Response (Dkt. No. 40), this argument is also contradicted by HTC Corp.'s[1] explicit argument that a U.S. carrier could not be joined as a matter of law and that a hypothetical sale of the accused devices by a U.S. carrier to its customers would constitute an independent transaction insufficient to join the U.S. carriers in that case. Likewise, Defendants have provided no factual or legal support for their claim they are in privity for the purpose of claim preclusion.

Additionally, Defendants' argument that the *Kessler* doctrine extends to "any future lawsuits by Salazar against consumers and any other claim he may bring" is meritless, and Defendants have not shown any legal support for applying the *Kessler* doctrine where there is no decision that an accused product practices the claim elements of the patent at issue and where the alleged infringing acts predate the prior judgment.

For all of these reasons, Salazar requests that the Court reject Defendants' Joint Motion to Dismiss in full.

---

[1] Not only have Defendants taken the position that they are in privity with HTC Corp., HTC Corp. has filed a motion to intervene to join the Defendants in this motion.

I. **Defendants fail to demonstrate that this case involves the same cause of action as the HTC Corp. case.**

Application of claim preclusion requires that both lawsuits involve the same cause of action. *Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016). To determine whether two suits involve the same cause of action, the Fifth Circuit focuses on whether the two cases "are based on the same nucleus of operative facts." *Id.*; *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). A claim is not barred solely because it could have been raised in a prior action between the parties that was resolved by a final judgment on the merits. *See Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1325-26 (Fed. Cir. 2008). Contrary to Defendants' arguments, the facts of this case arise from a different nucleus of operative facts than the facts of the HTC Corp. case.

In their Reply, Defendants fail to rebut the evidence that this case does not involve the same nucleus of operative facts (*see* Response at 4-9), and instead argue that Salazar's indirect infringement allegations made against HTC Corp. in the HTC Corp. case prevent him from asserting infringement claims against different parties—Defendants here—based on different conduct.[2] Defendants' argument that Salazar's allegation that HTC Corp. "induced, caused, urged, aided, and abetted its direct and indirect customers to infringe the claims of the '467 patent" bars his infringement claims against the Defendants in this case is without merit.[3]

---

[2] As set out in Plaintiff's Response, the conduct at issue in this case involves U.S. sales of the accused devices from the Defendant carrier/retailers to the end users—the customers located in the United States who ultimately purchased the HTC smartphones and indirect infringement involving these end users. This case does *not* involve the facts of HTC Corp.'s overseas activities, whether HTC Corp. committed any acts of infringement in the United States, or HTC Corp.'s transactions with its subsidiary, HTC America, or HTC Corp.'s acts of inducing others to infringe Salazar's patent claims.

[3] Salazar also does not dispute that he is precluded from bringing his claims of infringement under any theory, whether advanced or not, against HTC Corp. However, in the instant case, it is the infringing acts of a different set of parties that is at issue.

Salazar never alleged in the HTC Corp. case that the *U.S. carriers* themselves "induced, caused, urged, encouraged, aided, and abetted" any other party (e.g., the end-user customer). To the contrary, Salazar's allegations of inducement in the first case were wholly attributed to the activities of *HTC Corp.* For instance, Salazar alleged in the complaint that: "**Defendant** has induced, caused, urged, encouraged, aided, and abetted its direct and indirect customers . . . ." and "**Defendant** has done so by affirmative acts including but not limited to selling infringing products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products." Dkt. No. 17 at ¶¶ 15-16.[4]

Further, Defendants' reliance on *Adaptix* is misplaced. *Adaptix* dealt with multiple lawsuits involving the *same defendants*, as well as the plaintiff's same allegation of contributory infringement brought against these defendants in multiple lawsuits. *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *15 (E.D. Tex. May 12, 2015). The fact that both the defendants and the accused devices were "materially identical" was key to the Court's conclusion that the cases arose from the same nucleus of operative facts and thus "involve[d] the same infringement cause of action." *Id.* at *15-18. By contrast, in the instant case, the infringement claims are brought against an entirely different set of parties from Salazar's prior case against HTC Corp.

*Adaptix* is also not applicable to this case because Salazar's allegations of indirect infringement were directed only at HTC Corp. in the first case. Defendants recite the rule that claim preclusion "bars all claims that were or *could have been advanced* in support of the cause

---

[4] Even if arguendo the complaint's "direct and indirect customers" language referenced by Defendants included the U.S. carriers, the pleading and the excerpt quoted by Defendants demonstrates that these customers were the objects of HTC Corp.'s alleged acts of inducement—not the subjects.

3

of action on the occasion of its former adjudication" and contend that, here, both cases involve the same claim because "[a]s in *Adaptix*, the *Salazar I* complaint pled indirect infringement against HTC Corp. based on the actions of HTC Corp.'s direct and indirect customers." Reply at 2-3. In support, Defendants cite language from Salazar's complaint stating that HTC Corp. "induced, caused, urged, encouraged, aided, and abetted **its direct and indirect customers** to infringe the claims of the '467 Patent." Reply at 2. Unlike *Adaptix*, however, Salazar's allegation in the first case was that only HTC Corp.—*not* the U.S. carriers or any other party[5]— engaged in acts of indirect infringement and therefore his claims in the present case are not "claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication." *See Adaptix*, 2015 WL 12696204, at *15. In sum, Salazar's claims of HTC Corp.'s indirect infringement have no bearing on whether the Defendants in this case indirectly infringed the claims of Salazar's patent.

II. **Judicial estoppel applies in the instant case and, even if it did not, the Court should reject Defendants' selective application of privity.**

Rather than attempting to rebut Salazar's clear evidence that this case does not meet the requisite elements of claim preclusion, Defendants essentially argue that they are not judicially estopped from making arguments diametrically opposite to those made by HTC Corp. in the first case because the Court *did not explicitly* endorse HTC's previous arguments. Reply at 3-4. Defendants argue that judicial estoppel is not applicable to the present case because there is no clear finding that the Court accepted HTC Corp.'s argument that Salazar's claims against AT&T were "merely secondary or peripheral." Reply at 3-4. Defendants also argue that the HTC Corp. case made clear that "[the Court] did not accept as true any argument of HTC Corp. (raised in

---

[5] Defendants have not and cannot point to any allegations in the HTC Corp. case complaint directed to the conduct of the U.S. carriers (e.g., that Defendants marketed the infringing capabilities of the HTC One phones) that Salazar could have advanced in that case.

4

Salazar's Response)." Reply at 3. These arguments are without merit. In granting HTC Corp. the relief it sought—i.e., severing AT&T from the case—the Court implicitly accepted HTC Corp.'s argument that the facts were so distinct that a separate case was warranted. Additionally, the fact that the Court allowed Salazar to maintain a separate case—as opposed to dismissing his infringement claims against AT&T—demonstrates that Salazar's case against the U.S. carriers involves a different nucleus of operative facts, as it would be wholly inefficient and a gross waste of judicial resources to split a claim involving the same nucleus of operative facts into two separate cases.

Defendants do not dispute that HTC Corp. argued throughout the prior case that its connection to the U.S. carriers was remote at best or that HTC Corp. distinguished itself from the U.S. carriers whenever possible. *See* Response at 12-16. And Defendants expressly agree that the verdict form failed to specify the basis for the finding of no infringement. Reply at 4. Irrespective of whether Defendants are judicially estopped, the contradictory positions taken by Defendants and HTC Corp.—which Defendants argue they are in privity with—are troublesome. Indeed Defendants' argument that "they are in privity for the purposes of claim preclusion" without any explanation or legal support for this self-serving about-face is indefensible.

### III. Salazar was prejudiced by HTC Corp.'s concealment of documents at the time he attempted to add a U.S. carrier to the case.

Defendants' argument that claim preclusion would not unfairly prejudice Salazar because he knew of the relationships between the parties at the time of trial is unavailing. Salazar would clearly be prejudiced if he were both prevented from adding AT&T to the previous HTC Corp. litigation and precluded from suing AT&T now. Response at 17-18. The relevant time period with respect to prejudice here is that when Salazar *could have added* the U.S. carriers to his case against HTC Corp. That HTC Corp. ultimately produced the documents *months after* the

5

deadline to join additional parties had passed (only after Salazar moved the Court to compel HTC Corp.)  does not change the fact that, *at the relevant time*, HTC Corp. withheld the contracts with the U.S. carriers from Salazar, thus enabling HTC Corp. to successfully prevent AT&T's joinder.

Defendants' incorrect framing of this issue as Salazar "collaterally attacking a judgment on the grounds of fraud or concealment" is not relevant and fails to address Salazar's argument. Reply at 5-6.  Salazar is not challenging the noninfringement judgment in the HTC Corp. case. Claim preclusion is an equitable doctrine with limits and exceptions and, as in *Rimkus*, prejudice can indeed be considered at present.  *HRD Corp. v. Dow Chem. Co.*, No. CV H-13-3596, 2019 WL 162094, at *5 (S.D. Tex. Jan. 9, 2019 (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010)).  Salazar would clearly be prejudiced if the U.S. carriers could shield themselves from liability in both the HTC Corp. case[6] and the instant case. Accordingly, even if claim preclusion were appropriate in this case—which it is not—it should not be applied because "the policies underlying preclusion law would not be served by barring the plaintiff's claims against the defendants."  *Rimku*s, 699 F. Supp. 2d at 664.

### IV. Defendants provide no factual or legal support for their claim they are in privity for the limited purpose of claim preclusion.

Salazar's Response provides ample evidence that the Defendants and HTC Corp. are not in privity, and Defendants' arguments to the contrary are without merit.  Defendants' assertion that they did not admit "tacit[ly] or otherwise" Salazar could not join the U.S. carriers in the first case is entirely false.  *See* Reply at 7.  As Salazar established in his Response, HTC Corp. explicitly argued that AT&T could not be joined as a matter of law and that even a hypothetical sale of the HTC One phones by AT&T to its customers would constitute an independent

---

[6] For not meeting the "same series of transactions or occurrence test" under 35 U.S.C. § 299.

transaction insufficient to satisfy 35 U.S.C. § 299's "same series of transactions or occurrences test." Response at 6-7 (In HTC Corp.'s own words, "[E]ven if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers . . . , **these independent transactions would not be sufficient to satisfy Section 299's 'same series of transactions or occurrences' test**."). It is irreconcilable that an "independent transaction" insufficient to join the U.S. carriers in the first case would also preclude Salazar from pursuing his claim against the U.S. carriers in a separate case.

Defendants also attempt to distinguish their position from that of the defendants in *Southern Snow Mfg. Co. v. SnoWizard Holdings, Inc.* by contending that the purchase agreements they entered into with HTC Corp. are the requisite "something more" that establishes privity between Defendants and HTC Corp. for claim preclusion purposes. Reply at 8. This argument should be rejected. In *Southern Snow*, the Federal Circuit reiterated the well-established rule that privity requires the parties to be so closely related that their litigation interests are "nearly identical." 567 F. App'x 945, 960 (Fed. Cir. 2014) (citing *Transclean Corp. v. Jiffy Lube Int'l, Inc.,* 474 F.3d 1298, 1304 (Fed. Cir. 2007)). The purchase agreements cited by Defendants, which purportedly prove the existence of "design, marketing, sale, and distribution relationships between Defendants and HTC on the HTC Smartphones," fail to establish that this demanding standard is met. *See* Reply at 8. Rather, as Salazar previously argued, the totality of the parties' actions and admissions overwhelmingly point to the opposite conclusion—that Defendants' and HTC Corp.'s litigation interests were not "nearly identical," *S. Snow Mfg.*, 567 F. App'x at 960, and HTC Corp. was not "so closely aligned with [the U.S. carriers'] interests as to be [their] 'virtual representative,'" *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1297 (5th Cir. 1992) (citations omitted). Specifically, HTC Corp.

emphasized throughout the first case that its connection to the U.S. carriers was remote at best, distinguished its position from theirs whenever possible, and successfully severed Defendant AT&T from the case; HTC Corp. made every attempt to obfuscate its relationship with the carriers; and HTC Corp. did not adequately represent Defendants' interests and, in fact, made multiple strategic decisions to further its own interests[7] to the detriment of the U.S. carriers. Response at 12-18.

V.     The *Kessler* doctrine does not apply to the instant dispute.

Defendants' argument that the *Kessler* doctrine extends to "any future lawsuits by Salazar against consumers and any other claim he may bring" is false. The *Kessler* doctrine precludes assertions of a patent against "post-judgment activity if the earlier judgment held that "essentially the same" accused activity did not infringe the patent."[8] *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018). "This doctrine protects an adjudged *non-infringer* from repeated harassment <u>for continuing its business as usual post-final judgment</u>." *Id*. (emphasis added). The *Kessler* doctrine just fills a particular temporal gap between preclusion doctrines."[9] *Id*. The Federal Circuit unequivocally asserted that it has "not applied the *Kessler*

---

[7] HTC Corp.'s withdrawal of its invalidity counterclaim from the jury was a strategic move that did not protect the U.S. carriers and, as Salazar argued, should have resulted in the claim being dismissed with prejudice. That the Court decided to give the issue further consideration was fortuitous and in no way negates HTC Corp.'s self-serving decision made at trial.

[8] As discussed in Salazar's Response, the *SpeedTrack* case relied on by Defendants explicitly recognizes that the *Kessler* doctrine acts to preclude a party's claims "as long as it challenged only those acts of infringement that post-dated the judgment in the first action." Response at 18-20.

[9] Even Defendants' characterization of *SimpleAir* acknowledges the temporal limitations of the *Kessler* doctrine. There, the Federal Circuit expressly held that if the district court found related patents to be substantially similar to those in the prior law suit, claim preclusion would bar pre-judgment activity, and the *Kessler* doctrine would bar post-judgment activity. *SimpleAir,* 884 F.3d at 1169-70. Under Defendants' interpretation of the *Kessler* doctrine, claim preclusion would be superfluous.

8

doctrine to bar a broader *set of rights* than would be barred by claim preclusion. *Id.* (emphasis in original). Accordingly, the *Kessler* doctrine has no place and is irrelevant with respect to preclusion of Salazar's claims against Defendants because there are no post-judgment actions being asserted in this case.

Nevertheless, even if the *Kessler* doctrine applied to pre-judgment conduct, Defendants have not shown any legal support for its application where there is no decision that an accused product practices the claim elements of the patent at issue, as is the case here. As explained in Salazar's Response, the *Kessler* doctrine is inapplicable here because the jury in the HTC Corp. case did not determine whether the accused devices in fact practiced the asserted claims of the Salazar patent. *See* Response at 10; *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1057-58 (Fed. Cir. 2014). Further, *MGA, Inc. v. General Motors Corp.*, cited by Defendants in their Reply, is inapposite. *MGA* involved a prior judgment from a Michigan state court where that court had determined that the accused product *did not practice the plaintiff's patent claims*. *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 731 (Fed. Cir. 1987). In light of that state court decision, the Federal Circuit, applying "existing Michigan preclusion principles to determine what preclusive effect the prior judgment against [plaintiff] *would* be given in a Michigan state court," held that "since the accused machines here are admittedly the same in both suits, it is [Defendant's] right that the accused machines be freely traded without interference." *Id.* at 733-35. *MGA* did not address whether the *Kessler* doctrine can apply to pre-judgement infringement, and it certainly does not support Defendants' position that the *Kessler* doctrine bars "any future lawsuits by Salazar against consumers and any other claim he may bring." Reply at 8. Accordingly, the *Kessler* doctrine is inapplicable here.

9

**VI.     Conclusion**

For the foregoing reasons, Salazar respectfully requests that Defendants' Joint Motion to Dismiss be denied in its entirety.

Respectfully submitted,

/s/Geoff Culbertson

Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
PATTON, TIDWELL &
CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone: 903-792-7080
Fax:     903-792-8233

Dariush Keyhani (Lead Attorney)
District of Columbia Bar No. 1031500
(*pro hac vice*)
Frances H. Stephenson
New York registration No. 5206495
(*pro hac vice*)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 5th day of December, 2019.

/s/Geoff Culbertson
Geoffrey Culbertson