**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

JOE ANDREW SALAZAR,

     Plaintiff,

     v.

AT&T MOBILITY LLC,
SPRINT/UNITED MANAGEMENT
COMPANY, T-MOBILE USA, INC.,
AND CELLCO PARTNERSHIP D/B/A
VERIZON WIRELESS,

     Defendants

     and

HTC CORP., and HTC AMERICA, INC.,

     Intervenors.

Civil Action No. 2:20-cv-00004-JRG

JURY TRIAL DEMANDED

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.      Introduction……………………………………………………………………1

II.     Background……………………………………………………………………1

III.    Agreed Claim Constructions…...………………………………………………2

IV.     Claim Construction Legal Standards…..………………………………………3

        A.      Claim Construction……………………………………………………3

        B.      Departing from the Ordinary Meaning of a Claim Term...………………………5

        C.      Indefiniteness…………………………………………………………….………6

        D.      Previous Construction of Disputed Terms………………………………………8

V.      Construction of Disputed Terms………………………………………………9

        A.      The Disputed Claim Terms Should Be Construed Consistent With the Court's
                Findings in Salazar v. HTC Corp. or As Having Their Plain and Ordinary
                Meaning……..…………………..………………………………………………9

                1.      "a microprocessor for generating a plurality of control signals used to
                        operate said system, said microprocessor creating a plurality of
                        reprogrammable protocols" ……..…………………………………10

                2.      "a selector controlled by said microprocessor for enabling said radio
                        frequency transceiver and said infra-red frequency transceiver to transmit
                        a desired command code set generated by said microprocessor via either
                        radio frequency signals and infra-red signals as desired, and to receive a
                        signal from any one of said external devices via either radio frequency
                        signals and infra-red signals"………….…………………………………11

                3.      "a communication protocol" ………………………………………13

                4.      "a plurality of control signals" ………..………………………………14

                5.      "parameter sets" …………………………………………………14

                6.      "a microprocessor for generating . . ., said microprocessor creating . . ., a
                        plurality of parameter sets retrieved by said microprocessor . . ., said
                        microprocessor generating . . ."…..………………………………………15

7.      "an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, in accordance with said communications protocols"…….……17

8.      "a radio frequency transceiver...in accordance with said communication protocols"………………………………………….………………....18

9.      "a sound and data coupling device adapted to receive sound as data signals" ………………………………………………………………...19

10.     "configured to" …………………………………………………....20

B.      Defendants Have Not Met Their Burden of Proving Claim Terms of the '467 Patent are Indefinite………………………………………………………20

1.      "a plurality of reprogrammable communication protocols"……………21

2.      "such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets"……22

3.      "a desired command code set" …………………………………………23

4.      "said microprocessor generating a communication protocol in response to said user selection" …………………………………………………..24

5.      "said communication protocols" ………………………………………25

VI.     Conclusion……………………………………………………………………26

# TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013) ...........................6

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003) ...............................3

*Apex Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364 (Fed. Cir. 2003)................................7

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) .......................................4

*Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573 (Fed. Cir. 1996)......................5

*Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040 (Fed. Cir. 2016) ..............................6

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014)................................... *passim*

*Barkan Wireless Access Techs., L.P. v. Cellco P'ship*, No. 2:16-CV-293-JRG-RSP
    2017 WL 2099565 (E.D. Tex. May 14, 2017) ................................................21

*BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017).....................7, 21

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258
    (Fed. Cir. 2001)..............................................................................3
3
*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004)......................3, 5

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-CV-546-JRG, 2020 WL 2098197
    (E.D. Tex. May 1, 2020).....................................................................7

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) ..................4

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988)................4

*Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319 (Fed. Cir. 2009) ..................... *passim*

*Dow Chem. Co. v. Nova Chem. Corp. (Canada)*, 809 F.3d 1223 (Fed. Cir. 2015)....................7, 8

*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012) ..............................7

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) ............................8

*GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed Cir. 2014) ......................6

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014).......................5

*Hand Held Prod., Inc. v. Amazon.com, Inc*., No. CV 12-768-RGA-MPT, 2014 WL 2873902
(D. Del. June 24, 2014) ............................................................................................................8
7

*Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 216CV00057JRGRSP, 2017 WL 2691227
(E.D. Tex. June 22, 2017) ........................................................................................................7

*In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998) ...........................................................................4

*Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111
(Fed. Cir. 2004) ........................................................................................................................3

*Intelligent Water Sols., LLC v. Kohler Co.*, No. 2:16-CV-689, 2017 WL 2444723
(E.D. Tex. June 5, 2017) ..........................................................................................................7

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004).....................................4, 5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ....................................4, 8

*Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) .................................................6, 8

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .........................................................................8, 9

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ................4, 6, 12

*Semcon IP Inc. v. Louis Vuitton N. Am., Inc.*, No. 2:18-CV-00194-JRG, 2020 WL 2544774
(E.D. Tex. May 19, 2020) ................................................................................................ *passim*

*Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00442-JRG, 2018 WL 4501952
(E.D. Tex. July 11, 2018)........................................................................................................20

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311
(Fed. Cir. 2015)........................................................................................................................9

*State Farm Mut. Auto Ins. Co. v. Logisticare Sols., LLC*, 751 F.3d 684 (5th Cir. 2014) ...............9

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)...........................................4

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015) ........................................................8

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ...........................5, 6

*TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2810016
(E.D. Tex. June 20, 2014) ...................................................................................................8, 20

*Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, No. 2:16-CV-00682-JRG, 2017 WL 3508771
(E.D. Tex. Aug. 16, 2017) ........................................................................................................7

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)............................................13

*VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414 (S.D.N.Y. 2008) ..... *passim*

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ............................................4

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ................................................7

**Statutes**

35 U.S.C. § 112............................................................................................................6, 7, 21, 23

**Rules**

Local Patent Rule 4-5(a) ............................................................................................................1

## I.      Introduction

Pursuant to Local Patent Rule 4-5(a) and in accordance with the Court's First Amended Docket Control Order (Dkt. #83) entered in this action, Plaintiff Joe Andrew Salazar ("Plaintiff" or "Salazar") submits herewith his Opening Claim Construction Brief with respect to United States Patent No. 5,802,467 ("the '467 Patent") (**Ex. A**).  The P.R. 4-3(b) Joint Claim Construction and Prehearing Statement and Exhibits B and C (Dkt. #91), filed on May 1, 2020, identify the below disputed claim terms in the '467 Patent.

## II.     Background

The '467 Patent was issued on September 1, 1998, on an application filed on September 28, 1995.  Plaintiff has asserted claims 1-7, 27-30 and 34 of the '467 Patent against Defendants AT&T Mobility LLC ("AT&T Mobility"), Sprint United Management Company ("Sprint"), T-Mobile USA Inc. ("T-Mobile"), and Cellco Partnership, Inc. d/b/a Verizon Wireless, Inc. ("Verizon") (collectively, "Defendants").  The '467 Patent and all of the patent claims at issue in this case[1] have already undergone claim construction in this Court in *Salazar v. HTC, Corp.*[2] (the "HTC Corp. case").[3]  Plaintiff does not believe that further construction is necessary and submits that all constructions and findings made in the HTC Corp. case be applied in this case.[4]

---

[1] In *Salazar v. HTC Corp.*, 2:16-cv-01096-JRG, Plaintiff asserted additional patent claims against HTC, Corp.  All patent claims at issue in this case were previously at issue in *Salazar v. HTC Corp.*

[2] *See Salazar v. HTC Corp.*, 2:16-cv-01096-JRG, Claim Construction Order and Opinion (Dkt. #108) (**Ex. F**), *Salazar v. HTC Corp.*, 2:16-cv-01096-JRG, Order Overruling Objections (Dkt. #155) (**Ex. H**).

[3] Intervenor HTC Corp. filed objections to the Court's Claim Construction Opinion and Order in the HTC Corp. case, all of which were overruled by the Court on February 13, 2018.  *See Salazar v. HTC Corp.,* 2:16-cv-01096-JRG (Dkt. # 112) (**Ex. G**); Ex. H.  HTC Corp. is an intervenor in this case and Defendants have asserted that they are in privity with HTC Corp. in their Motion to Dismiss briefing.  *See* Dkt. #29 at 9-12; Dkt. #57 at 6.

[4] This Court has previously addressed identical claim construction issues relating to same patent and claim terms raised by HTC Corp. (which Defendants assert is their privy) in the HTC Corp.

Defendants and Intervenors propose to discard most of the Court's prior findings and request that certain claim terms (1) be construed in a manner inconsistent with the Court's previous findings and/or their plain and ordinary meaning or (2) be found indefinite.  Defendants and Intervenors' approach should be rejected, and the constructions and findings from the HTC Corp. case should be adopted in their entirety.

## III.    Agreed Claim Constructions

The parties have agreed to the following constructions set forth in their Joint P.R. 4-3 Claim Construction and Prehearing Statement.

| Term | Agreed Construction |
|---|---|
| "a communications, command, control and sensing system for communicating with a plurality of external devices comprising." | Preambles of independent claims 1 and 34 are substantive limitations and the clause "communications, command, control and sensing system" in each such preamble does not need to be further construed. |
| "external device" | A device separate from the handset and the base station. |
| "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets" | "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets" |
| "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals | "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, based on said parameter sets |

case.  Exs. F, G, H, *Salazar v. HTC Corp.,* 2:16-cv-01096-JRG (Dkt. # 250) (**Ex. I**), at 3-10; *Semcon IP Inc. v. Louis Vuitton N. Am., Inc.*, No. 2:18-CV-00194-JRG, 2020 WL 2544774, at *6 (E.D. Tex. May 19, 2020).

| | |
|---|---|
| corresponding to logical "1's" and "0's" as specified by a command code set" | a desired set of pulse signals corresponding to logical '1's and '0's as specified by a command code set" |
| "a command code set that defines the signals that are employed to communicate with each one of said external devices" | "plain and ordinary meaning" |

## IV.      Claim Construction Legal Standards

### A.      Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  The general rule is that ***each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent***.  *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("***There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time***.") (vacated on other grounds) (emphasis added); *Semcon IP Inc. v. Louis Vuitton N. Am., Inc.*, No. 2:18-CV-00194-JRG, 2020 WL 2544774, at *3 (E.D. Tex. May 19, 2020).

3

"The claim construction inquiry ... begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). A term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d

898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318.

### B.       Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also Thorner*, 669 F.3d at 1365 ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal.").

The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed Cir. 2014).

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one.").

## C.    Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is

6

determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed.  *Id.* at 911.  As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence.  *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017).  "[I]ndefiniteness is a question of law and in effect part of claim construction."  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).  "The burden of proving indefiniteness ... remains at all times on the party challenging the validity of the patent."  *Dow Chem. Co. v. Nova Chem. Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

With respect to 35 U.S.C. § 112(f), a patent claim may be expressed using functional language.  *See* 35 U.S.C. § 112(f); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-49 & n.3 (Fed. Cir. 2015); *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-CV-546-JRG, 2020 WL 2098197, at *4 (E.D. Tex. May 1, 2020).  A claim term that does not use the term "means" will trigger the rebuttable presumption that section 112(f) does not apply.  *Apex Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003); *Intelligent Water Sols., LLC v. Kohler Co.,* No. 2:16-CV-689, 2017 WL 2444723, at *4 (E.D. Tex. June 5, 2017); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 216CV00057JRGRSP, 2017 WL 2691227, at *25 (E.D. Tex. June 22, 2017).  The presumption against the application of section 112(f) is only overcome if a party can demonstrate a person of ordinary skill in the art would fail to understand the necessary structure of the claim term, when read in light of the specification.  *Huawei Techs.*, 2017 WL 2691227, at *25; *Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, No. 2:16-CV-00682-JRG, 2017 WL 3508771, at *6 (E.D. Tex. Aug. 16, 2017) (explaining that a disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim").

Extrinsic evidence may play a significant role in the indefiniteness analysis, as definiteness is evaluated from the perspective of a person of skill and requires a determination of whether such a skilled person would understand the scope of the claim when it is read in light of the specification. *Nautilus,* 134 S.Ct. at 2128; *Dow Chem.*, 809 F.3d at 1225; *Hand Held Prod., Inc. v. Amazon.com, Inc.*, No. CV 12-768-RGA-MPT, 2014 WL 2873902, at \*5, \*16, \*27 (D. Del. June 24, 2014) (pointing to Amazon's lack of expert testimony in ultimately rejecting its indefiniteness arguments); *VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414, 423 (S.D.N.Y. 2008) (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite).

### D.    Previous Construction of Disputed Terms

The "importance of uniformity in the treatment of a given patent" suggests a level of deference to previous court constructions of disputed claim terms.  *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) (quoting *Markman*, 517 U.S. at 390); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 329 (2015) (noting that "prior cases ... sometimes will serve as persuasive authority").  While the "doctrine of *stare decisis* does not compel one district court judge to follow the decision of another ... previous claim constructions in cases involving the same patent are entitled to substantial weight."  *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2810016, at \*6 (E.D. Tex. June 20, 2014).

In some instances, previous court construction of a disputed term may trigger issue preclusion and bind a party to a previous construction.  *Teva*, 574 U.S. at 329 ("prior cases will sometimes be binding because of issue preclusion") (citing *Markman*, 517 U.S. at 391); *Semcon*, 2020 WL 2544774, at \*6.  "Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or

a different claim [for relief]." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).  "Issue preclusion prohibits a party from seeking another determination of the litigated issue in the subsequent action." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Logisticare Sols., LLC*, 751 F.3d 684, 689 (5th Cir. 2014)).

## V.     Construction of Disputed Terms

### A.     The Disputed Claim Terms Should Be Construed Consistent With the Court's Findings in *Salazar v. HTC Corp*. or As Having Their Plain and Ordinary Meaning

Defendants present a multitude of claim terms/phrases or subsets of phrases that were previously addressed by this Court in the HTC Corp. case.  *See* P.R. 4-3(b) Joint Claim Construction and Prehearing Statement Exhibit C.  Dtk. #91, Ex. C.  Many of Defendants' proposed constructions were specifically rejected or involve claim terms that are part of broader phrases already construed by this Court in the HTC Corp. case.  To the extent the Court has already construed these claim terms, Plaintiff submits that they should be construed consistent with the Court's prior constructions and/or findings and that Defendants should be prohibited from seeking another determination.  *See* Notice of Allowance (Feb. 17, 1998) at 2; '467 Patent at 8:22-30, 8:60-65, 16:40-45.  For all other claim terms Defendants propose, Plaintiff asserts that no construction is necessary and one with ordinary skill in the art would understand the ordinary and customary meaning of these terms and phrases at the time of the invention when read in the context of the claims, specification, and prosecution history of the '467 Patent.  *Phillips*, 415 F.3d at 1312-13.

To the extent HTC's proposed constructions reference the '467 Patent's specification, HTC's references do not support its proposed constructions, are inconsistent with the disclosures in the specifications, and improperly attempt to narrow the scope of the claims by adding

9

limitations that do not exist in the prosecution history or specification of the '467 Patent. Furthermore, Defendants' attempt to change the nature of the claims from capability claims to claims that require functions to be performed in a specific manner is also unwarranted and was specifically rejected by this Court in the HTC Corp. case.  *See* Ex. F at 19-22.  Defendants' attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit.  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").   Accordingly, no construction is necessary and the ordinary and customary meaning of these claim terms/phrases should be applied.

1.   **"a microprocessor for generating a plurality of control signals used to operate said system, said microprocessor creating a plurality of reprogrammable protocols."**

Plaintiff asserts that, consistent with the Court's opinion in the HTC Corp. case, this term should be construed as "a microprocessor configured to generate a plurality of control signals used to operate said system and configured to create a plurality of [reprogrammable] communication protocols."  *See* Ex. F at 15-22; '467 patent claims 1 and 34; Response to USPTO Office Action at 1-2, 10 (Oct. 31, 1997 ) (**Ex. B**); Notice of Allowance at 2 (Feb. 17, 1998) (**Ex. C**); '467 Patent at 8:22–30, 8:60– 65, 16:40–45; *Semcon*, 2020 WL 2544774, at *6 (stating that "previous claim constructions in cases involving the same patent are entitled to substantial weight" and "in some instances, previous court construction of a disputed term may trigger issue preclusion and bind a party to a previous construction").

Defendants provide no support for deviating from the Court's prior construction. Defendants' argument that "generating" should be construed to mean "bring into existence" was

squarely addressed and rejected by this Court in the HTC Corp. case.[5]  *See* Ex. I at 8-9.  Indeed, in addressing "the meaning of 'creating' or 'generating' a communication protocol," this Court noted an embodiment where the microprocessor was "configured to utilize several communication protocols employed by various manufacturers or various models of the same brand."  *Id.*  This Court rejected Intervenor HTC Corp.'s argument that the microprocessor brings new protocols into existence, explaining that "the creation of new 'rules' for communicating … would defeat the purpose of the invention—to facilitate communication with different third-party external devices."  *See* Ex. I at 8-9.  Additionally, Defendants' additional proposed limitation of "two or more" in connection with the term "plurality" should also be rejected.[6]  Defendants' attempt to deviate from the ordinary and customary meaning of "plurality" in the context of the '467 Patent falls short of the presumption laid out by the Federal Circuit and should be rejected.  *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.");  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

2.     **"a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio**

---

[5] Defendants and Intervenors also attempt to address the claim terms "generating, "creating," "recreating" and other similar variations separately, proposing the same "bring into existence" (or, in the case of recreating, "bring back into existence") construction. Dtk. #91, Ex. C, #8-10.  For the same reasons as addressed in this section and as previously set out by this Court, these claim terms are readily understandable by one of ordinary skill in the art at the time of the invention and do not require construction.

[6] Intervenor HTC Corp. did not object to the term "plurality" in the HTC Corp. case, as it was included in several of their alternative proposed constructions.  *See* HTC's Proposed Constructions and Identification of Evidence in *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG (Dkt. #73-3) at 3-5 (Aug. 1, 2017) (**Ex. E**).

**frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals"**

Plaintiff asserts that, consistent with the Court's opinion in the HTC Corp. case, this term should be construed as "a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as selected by a user, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals." Ex. F at 31-36; Ex. H; '467 patent claims 2 and 10; '467 Patent at 1:50–52, 20:2-11, 20:12-17, 20:41- 56, Fig. 1b, Fig. 3, Fig. 5; Oct. 31, Ex. B at 5, 11, 13-14; *Semcon*, 2020 WL 2544774, at *6 (stating that "previous claim constructions in cases involving the same patent are entitled to substantial weight" and "in some instances, previous court construction of a disputed term may trigger issue preclusion and bind a party to a previous construction").

Defendants provide no support for deviating from the Court's prior construction. Defendants seek to replace the claim term "selector" with "multiplexer/demultiplexer."[7] These terms do not appear anywhere in the '467 Patent, and the Court should reject Defendants' attempt impermissibly reads additional limitations into the well-understood claim terms. *Renishaw*, 158 F.3d at 1248 ("The claim construction inquiry ... begins and ends in all cases with the actual words of the claim."); *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear

---

[7] Defendants and Intervenors also attempt to address the claim term "selector" separately, proposing the same "multiplexer/demultiplexer" construction. Dtk. #91, Ex. C at #13. For the same reasons as addressed in this section and as previously set out by this Court, these claim terms are readily understandable by one of ordinary skill in the art at the time of the invention and do not require construction.

and unmistakable" surrender."); *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

### 3.    "a communication protocol"

Plaintiff asserts that consistent with the Court's opinion in the HTC Corp. case, this term should be construed to have its plain and ordinary meaning.  *See* Ex. F at 42-46; '467 patent claims 1, 10, and 34; '467 Patent at 7:14–25, 7:37–54; Ex. B at 1, 2, 10; *Semcon*, 2020 WL 2544774, at *6 (stating that "previous claim constructions in cases involving the same patent are entitled to substantial weight" and "in some instances, previous court construction of a disputed term may trigger issue preclusion and bind a party to a previous construction").  There, the Court found that "'set of rules' is never mentioned in the intrinsic record, and the inclusion of such terms would add ambiguity and/or confusion to this term" and that "'communication protocol' is sufficiently defined by the claim language."  Ex. F at 45-46; *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy.").

To the extent Defendants' proposed constructions reference the '467 Patent's specification or dictionary definitions, these references do not support its proposed constructions, are inconsistent with the disclosures in the specifications, and improperly attempt to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the '467 Patent. *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.").  Defendants' attempt to deviate from the ordinary and customary

meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit and should be rejected.  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

### 4.      "a plurality of control signals"

This term was previously construed as part of the broader "microprocessor limitation" in the HTC Corp. case, as set out above.  There, HTC Corp.'s proposed construction contained the claim language "a plurality of control signals."  *See* Ex. F at 15-22; '467 patent claims 1 and 34; Ex. B at 1-2; Ex. C at 2; '467 Patent at 8:22-30, 8:60--65, 16:40-45.  Now, Defendants attempt to impermissibly read additional limitations into these well understood claim terms by replacing "plurality" to "two or more."  Defendants' attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit and should be rejected.  *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender."); *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  Plaintiff asserts that consistent with the Court's findings—and Intervenor HTC Corp.'s previous proposed construction in the HTC Corp. case—the Court should reject Defendants' attempt to improperly add limitations to the claims and this term should be construed to have its plain and ordinary meaning.  *See* Ex. F at 15-22; *Semcon*, 2020 WL 2544774, at *6 (stating that "previous claim constructions in cases involving the same patent are entitled to substantial weight" and "in some instances, previous court construction of a disputed term may trigger issue preclusion and bind a party to a previous construction").

### 5.    "parameter sets"

Plaintiff asserts that, consistent with the Court's opinion in the HTC Corp. case, this term should be construed to have its plain and ordinary meaning.  *See* Ex. F at 46-49; '467 Patent claims 1, 27, and 34; '467 Patent at 8:23–30, 8:34–52, 8:57–65, Ex. B at 1-2; Ex. C at 2; *Semcon*, 2020 WL 2544774, at *6 (stating that "previous claim constructions in cases involving the same patent are entitled to substantial weight" and "in some instances, previous court construction of a disputed term may trigger issue preclusion and bind a party to a previous construction").

Defendants' proposed construction, which is identical to the construction proposed by Intervenor HTC Corp. and rejected by the Court in the HTC Corp. case, should be similarly rejected.  Defendants provide no support for deviating from the Court's prior construction/plain and ordinary meaning of this claim term.  *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.");  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

### 6.    "a microprocessor for generating . . ., said microprocessor creating . . ., a plurality of parameter sets retrieved by said microprocessor . . ., said microprocessor generating . . ."

Plaintiff asserts that, to the extent not covered by this Court's construction in the HTC Corp. case and addressed above, this claim phrase should be given its plain and ordinary meaning. Ex. F at 15-30; '467 Patent claims 1 and 34; Ex. B at 1-2; Ex. C at 2; '467 Patent at 7:37-39, 8:22-30, 8:60-65, 16:40-45; *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

Defendants' proposed construction of "one or more microprocessors, each of which must perform the generating, creating, retrieving, and generating functions" impermissibly attempts to change the nature of the claims from capability claims to claims that require functions to be performed in a specific manner. The intrinsic evidence identified by Defendants does not support their construction requiring that a microprocessor "must perform" the generating, creating, retrieving, and generating functions. Furthermore, in the HTC Corp. case, this Court rejected Intervenor HTC Corp.'s similar attempt to change the nature of the claim language from capability claims to claims that require functions to be performed in a specific manner, stating that:

> "the prosecution history indicates that the claims are directed to the *capability of the system to perform the recited function* and do not require or indicate any actual use of the system to perform the recited functions."

Ex. F at 20 (emphasis added).

> "The claims indicate the ability to store a plurality of parameter sets so as to recreate a desired command code set, and *do not actually require that any command code set actually be created*."

*Id*. at 21 (emphasis added).

> "In the Notice of Allowance, the Examiner indicated the claims were directed to the "capability" of the claimed system to recreate a command code set from a set of parameters to communicate with external devices."

*Id*. at 19.

> "the claims at issue here make clear the "microprocessor" limitation reflects the capability of that structure rather than the activities of the user"

*Id*. at 21.

> "The claim indicates only a *capability* of the structure rather than the actual use…"

*Id*. (emphasis in original)

Furthermore, to the extent Defendants' proposed constructions reference the '467 Patent's specification, these references do not support its proposed constructions, are inconsistent with the disclosures in the specifications, and improperly attempt to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the '467 Patent. *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.").

> **7.**   **"an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, in accordance with said communications protocols"**

Plaintiff asserts that, to the extent not covered by this Court's construction in the HTC Corp. case and addressed above, this claim phrase should be given its plain and ordinary meaning. Ex. F at 31-36, 42-46; Ex. I at 6-7; '467 patent claims 1, 2, 10, and 34; '467 Patent at 1:50-52, 2:17-20, 7:14-25, 7:37--54, 20:2-11, 20:12-17, 20:41-56, Fig. 1b, Fig. 3, Fig. 5; Ex. B at 5, 10, 11, 13-14.   Intervenor HTC Corp. did not propose a construction for this claim term during claim construction in the HTC Corp. case, but the scope of this limitation was directly addressed in the Court's Report and Recommendation of HTC Corp.'s Motion for Summary Judgment in the HTC Corp. case.   There, the Court rejected HTC Corp.'s attempt to require that the IR transceiver be capable of transmitting and sending to *each device* within the plurality of devices:

> Effectively, Defendant urges the Court to construe "said external devices" in the microprocessor limitation as "each external device of the plurality of external devices." Salazar, on the other hand, interprets "said external devices" as shorthand for the earlier recited "plurality of external devices"—i.e., a single group made up of external devices. The Court agrees with Salazar. **The limitation only requires that the IR transceiver be capable of sending and receiving IR signals to the plurality of external devices—not that it be capable of transmitting and sending to each device within that plurality**.

17

Ex. I at 6-7 (emphasis added).

To the extent Defendants' proposed constructions reference the '467 Patent's specification these references do not support its proposed constructions, are inconsistent with the disclosures in the specifications, and improperly narrow the scope of the claims. *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a 'clear and unmistakable' surrender."); *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

### 8. "a radio frequency transceiver...in accordance with said communication protocols"

Plaintiff asserts that, to the extent not covered by this Court's construction in the HTC Corp. case and addressed above, this claim phrase should be given its plain and ordinary meaning. Ex. F at 31-36, 42-46; Ex. I at 7-8; '467 Patent claims 1, 2, 10, and 34; '467 Patent at 1:50–52, 2:17–20, 7:14–25, 7:37– 54, 20:2-11, 20:12-17, 20:41-56, Fig. 1b, Fig. 3, Fig. 5; Ex. B at 5, 10-11, 13-14; *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

Intervenor HTC Corp. did not propose a construction for this claim term during claim construction in the HTC Corp. case, but the scope of this limitation was directly addressed in the Court's Report and Recommendation of HTC Corp.'s Motion for Summary Judgment in the HTC Corp. case. There, the Court rejected Defendant's attempt to require that the radio frequency transceiver transmit and receive signals in accordance with the same protocols used by the infrared transceiver:

> The Court agrees with Salazar. The point of the invention is to enable communication with many different types of external devices, which between them may implement different IR and/or RF communication protocols. **Considering the claim language in that context, it's nonsensical to require the RF transceiver to communicate using IR communications protocols**, or to require the IR transceiver to communicate using RF protocols.

Ex. I at 7-8 (emphasis added).

To the extent Defendants' proposed constructions reference the '467 Patent's specification, these references do not support its proposed constructions, are inconsistent with the disclosures in the specifications, and improperly narrow the scope of the claims. *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender."); *Azure Networks*, 771 F.3d at 1347.

**9.      "a sound and data coupling device adapted to receive sound as data signals"**

Plaintiff asserts that no construction is necessary, and one with ordinary skill in the art would understand the ordinary and customary meaning of these terms and phrases at the time of the invention when read in the context of the claims, specification, and prosecution history of the '467 Patent.

To the extent Defendants' proposed construction references the '467 Patent's specification, Defendants' references do not support their proposed constructions, are inconsistent with the disclosures in the specifications, and improperly attempt to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the '467 Patent. *Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender."). Defendants' attempt to deviate from the ordinary and customary

meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit. *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").   Accordingly, no construction is necessary and the ordinary and customary meaning of this claim term/phrase should apply.

10.     **"configured to"**

The Court previously construed this term as "some particularized arrangement of the memory device for a specific purpose" in its Report and Recommendation on Intervenor HTC Corp.'s Motion for Summary Judgment. Ex. I at 6-7.  While Defendants' proposed construction of "a particularized arrangement of the memory device for a specific purpose" appears close to the Court's construction in the HTC Corp. case, Plaintiff submits that the Court should adopt its previous construction. *TQP Dev.*, 2014 WL 2810016, at *6.

**B.     Defendants Have Not Met Their Burden of Proving Claim Terms of the '467 Patent Are Indefinite**

Defendants assert that various claim terms are indefinite, or, if not given the meaning proposed by Defendants are indefinite.   With the exception of the term "plurality of reprogrammable protocols,"[8] these claim terms were wholly not disclosed by Defendants and Intervenors in their P.R. 3-3 Invalidity Contentions, despite having an obligation to disclose them and the bases for their indefiniteness positions.  *See* Defendants' and Intervenors' P.R. 3-3 (c), (d)

---

[8] Even with respect to this term, Defendants' Invalidity Contentions reference the broader claim limitation "said microprocessor creating a plurality of reprogrammable communication protocols, for transmission to said external devices wherein each communication protocol includes a command code set ...." without providing any specific reason or argument to support its indefiniteness position. *See* Ex. C at (c), (d).

(**Ex. C**); *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00442-JRG, 2018 WL 4501952, at *3 (E.D. Tex. July 11, 2018) (striking the defendants' indefiniteness defense for failure to comply with P.R. 3-3(d) despite later compliance with P.R. 4).   Further, Defendants' indefiniteness positions in their P.R. 4-3 disclosure are conclusory and fail to provide Plaintiff with notice of their positions.  *See* Dkt. # 91, Ex. C.  Even if properly disclosed, Defendants' indefiniteness positions are unsupported and unavailing and fail to prove the claims are indefinite by clear and convincing evidence.  *BASF Corp.*, 875 F.3d at 1365.  Defendants cite no expert testimony to support their opinion.  *VDP Patent,* 623 F. Supp. 2d at 423 (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite).  One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of all the claim terms Defendants assert are indefinite with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent.  Indeed, this Court previously addressed and rejected many of the same indefiniteness claims in the HTC Corp. case.

To the extent Defendants argue that any of these claim terms/phrases require construction under § 112(f), their argument lacks merit.  None of the claim phrases uses the word "means," therefore there is a rebuttable presumption that § 112(f) does not apply.  *Barkan Wireless Access Techs., L.P. v. Cellco P'ship*, No. 2:16-CV-293-JRG-RSP, 2017 WL 2099565, at *16 (E.D. Tex. May 14, 2017).

### 1.       "a plurality of reprogrammable communication protocols"

Plaintiff submits that this claim term should be construed as having its plain and ordinary meaning, consistent with the Court's construction of the broader "microprocessor limitation" in the HTC Corp. case.  *See* Ex. F at 15-22.  Defendants' conclusory argument that this claim term is indefinite because "protocols cannot be reprogrammable" should be rejected.   Defendants'

intrinsic evidence does not support its position and Defendants do not support its assertion with any extrinsic evidence.  One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of the claim term "a plurality of reprogrammable communication protocols" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent.  *See* claims 1 and 34; Ex. B at 1-2; '467 Patent at 8:22–30, 8:60– 65, 16:40–45.  Defendants provide no expert testimony to the contrary.  *VDP Patent,* 623 F. Supp. 2d at 423.  Accordingly, Defendants have failed to prove this claim term is indefinite by clear and convincing evidence.

Similarly, Defendants' alternative construction of "two or more communication protocols whose rules and formats can be changed through programming" is inconsistent with the disclosures in the specifications, and improperly attempts to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the '467 Patent.  Defendant's attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit.  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

### 2.   "such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets"

Salazar proposes that this claim term be construed to have its plain and ordinary meaning, consistent with the Court's construction[9] in the HTC Corp. case.  Ex. F at 22-30; Claim 1, 10 and 34; Ex. B at 1-2, 10-12; '467 Patent at 8:22-30, 8:60-65, 16:40-45.  Defendants contend that this

---

[9] In the HTC Corp. case, the Court construed this portion of the broader "memory device" limitation as "such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets."  Ex. F at 30.

claim term is indefinite, without providing any bases or expert opinion to support their conclusion.[10]  *VDP Patent,* 623 F. Supp. 2d at 423.  There is no indication Defendants' and Intervenors' argument is any different from what Intervenor HTC Corp. argued in the HTC Corp. case.  Defendants and Intervenors do not articulate any basis for their argument that this claim term is indefinite.  The only indication as to why Defendants and Intervenors believe this claim term is indefinite is found in their P.R. 3-3 Invalidity Contentions, where they state that "the memory device limitations … should be construed under § 112(f) because each term recites 'function without reciting sufficient structure for performing that function.'"  *See* Ex. D at 34-35. This issue was already raised by Intervenor HTC Corp. and addressed by the Court in the HTC Corp. case, where the Court rejected Intervenor's argument that the term was indefinite under § 112(f) and construed the broader claim term as: "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets." Additionally, because the claim phrase at issue does not use the word "means," there is a presumption that § 112(f) does not apply.  Accordingly, the claim term/phrase is sufficiently definite.

### 3.    "a desired command code set"

Salazar proposes that this claim term be construed to have its plain and ordinary meaning, consistent with the Court's construction[11] in the HTC Corp. case.  *See* Ex. F at 22-30; Claim 1, 10

---

[10] Defendants and Intervenors' stipulation to the broader limitation containing this limitation is at odds with their claim here this limitation is indefinite.  Dkt. # 91 at 2.

[11]  In the HTC Corp. case, the Court construed this portion of the broader "memory device" limitation as "such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets."

and 34; Ex. B at 1-2, 10-12; '467 Patent at 8:22-30, 8:60-65, 16:40-45.  Defendants contend that this claim term should be construed as "a different command code set than the command code set that defines the signals that are employed to communicate with each one of said external devices" and, if not given that construction, indefinite for lacking antecedent basis.  Defendants provide no expert opinion to support their conclusion. *VDP Patent,* 623 F. Supp. 2d at 423.   Further, Defendants' construction is inconsistent with the disclosures in the specifications, and improperly attempts to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the '467 Patent.  Defendant's attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit.  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

Additionally, Defendants' argument that this claim term is indefinite for lacking antecedent basis because should be rejected.  One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of the claim term "a plurality of reprogrammable communication protocols" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent.

4.    **"said microprocessor generating a communication protocol in response to said user selection"**

Salazar proposes that this claim phrase be construed as having its plain and ordinary meaning, consistent with the Court's construction of the term "communication protocol."  *See* Ex. F at 42-46; Claims 1, 10, and 34; '467 Patent at 7:14-25, 7:37-54; Ex. B at 1, 2, 10.  Defendants contend that this claim term should be construed as "said microprocessor generating a non-reprogrammable communication protocol" and, if not given that construction, it is indefinite.

Defendants provide no expert opinion to support their conclusion.  *VDP Patent,* 623 F. Supp. 2d at 423.  Defendants' construction is inconsistent with the disclosures in the specifications, and improperly attempts to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the '467 Patent.  Defendants' attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit.  *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

Additionally, Defendants' argument that this claim term is indefinite should be rejected. Defendants provide no basis or support for their position.  One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of the claim term "a plurality of reprogrammable communication protocols" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent.

5.      **"said communication protocols"**

Salazar proposes that this claim phrase be construed as having its plain and ordinary meaning, consistent with the Court's construction of the term "communication protocol."  *See* Ex. F at 42-46; Claims 1, 10, and 34; '467 Patent at 7:14-25, 7:37–54; Ex. B at 1, 2, 10.  Defendants' argument that this claim term is indefinite should be rejected.  Defendants provide no basis or expert opinion to support their position.  *VDP Patent,* 623 F. Supp. 2d at 423.  One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of the claim term "a plurality of reprogrammable communication protocols" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent.

## VI.    Conclusion

For all of the reasons given above, the Court is respectfully requested to construe the disputed claim terms as discussed herein, as requested by Plaintiff.

Date: June 10, 2020                          Respectfully submitted,

                                             */s/Geoff Culbertson*
                                             Kelly Tidwell
                                             TX Bar No. 20020580
                                             kbt@texarkanalaw.com
                                             Geoffrey Culbertson
                                             TX Bar No. 24045732
                                             gpc@texarkanalaw.com
                                             PATTON, TIDWELL & CULBERTSON, LLP
                                             2800 Texas Boulevard
                                             Texarkana, Texas 75503
                                             Telephone:  903-792-7080
                                             Telecopier:  903-792-8233

                                             Dariush Keyhani
                                             District of Columbia Bar No. 1031500
                                             Frances H. Stephenson
                                             New York registration No. 5206495
                                             Keyhani LLC
                                             1050 30th Street NW
                                             Washington, DC 20007
                                             T. 202.748.8950
                                             F. 202.318.8958
                                             dkeyhani@keyhanillc.com
                                             fstephenson@keyhanillc.com

                                             *Attorneys for Plaintiff, Joe Andrew Salazar*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 10, 2020.

<u>/s/Geoffrey Culbertson</u>
Geoffrey Culbertson