**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> Defendants <br><br> and <br><br> HTC CORP., and HTC AMERICA, INC., <br><br> Intervenors. | Civil Action No. 2:20-cv-00004-JRG <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF JOE ANDREW SALAZAR'S REPLY TO DEFENDANTS AND
INTERVENORS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# **TABLE OF CONTENTS**

I.      Terms in Dispute…………………………………………………………………………1

        A.      Term No. 1: "a microprocessor for generating a plurality of control signals used to operate said system..." ……………………………………………………………1

        B.      Term Nos. 2 and 13: "a selector controlled by said microprocessor…"; "selector"……………………………………………………………………….3

        C.      Term No. 3: "a communication protocol" ……………………………………..4

        D.      Term No. 5: "a plurality of reprogrammable communication protocols"….…….4

        E.      Term No. 7: "such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets"….….5

        F.      Term No. 11: "a desired command code set"…………………………………….6

        G.      Term No. 12: "a microprocessor for generating . . ., said microprocessor creating . . ., a plurality of parameter sets retrieved by said microprocessor . . ., said microprocessor generating . . ." …………………………………………….…6

        H.      Term Nos. 14 and 19: "said microprocessor generating a communication protocol in response to said user selection" and "said communication protocols" ……..…8

        I.      Term No. 15: "an infra-red frequency transceiver..."……………………….…9

        J.      Term No. 16: "a radio frequency transceiver…"………………………………9

        K.      Term No. 17: "a sound and data coupling device adapted to receive sound as data signals" ……………………………………..…….……………...…10

        L.      Term No. 18: "configured to"……………………………………….………..10

II.     Conclusion……………………………………………………………………………10

## **TABLE OF AUTHORITIES**

*Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014)……...……………………….....…..6

*Finisar Corp. v. DirecTV Grp., Inc*., 523 F.3d 1323 (Fed. Cir. 2008)…………………………..10

*Freeny v. Fossil Grp., Inc.*, 2019 WL 2078783 (E.D. Tex. May 10, 2019) …………………...6, 7

*In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016) …………………….…………………………….7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ……………………….…………...2, 4, 8

*Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325 (Fed. Cir. 2004)……………………………..2, 3

*Wi-LAN Inc. v. Alcatel-Lucent USA Inc.*, 2012 WL 12894472 (E.D. Tex. May 16, 2012) ……... 2

In their Responsive Claim Construction Brief (Dkt. 102, "Response"), Defendants and Intervenors (collectively, "Defendants") attempt to reargue several issues that were already settled in the HTC Corp. case and/or rewrite the claims by importing limitations from embodiments in the specification and/or arbitrarily adding claim limitations in an effort to narrow the scope of the claims to evade infringement.  Further, Defendants' claim that Plaintiff's objection to the deficiency of Defendants' P.R. 3-3 disclosures on the issue of indefiniteness is untimely is without merit.  Plaintiff was only put on notice of Defendants' bases for their claims of indefiniteness in their Response, and they failed to properly disclose their positions as required by P.R. 3-3 and P.R. 4-1.  Plaintiff was indeed prejudiced because he did not have the opportunity to be put on fair notice of Defendants' indefiniteness positions when preparing his Opening Brief, and Defendants have no authority to support their claim of waiver.  As detailed below, the intrinsic record does not support Defendants' positions, and the Court should not depart from its previous constructions or the ordinary meaning of the claim terms.

**I.     Terms in Dispute**

   **A.     Term No. 1: "a microprocessor for generating a plurality of control signals used to operate said system..."**

Defendants' argument regarding "generating"[1] is without merit and was already properly decided by this Court in the HTC Corp. case.  As the Court recognized in the HTC Corp. case, the purpose of the invention is "to facilitate communication with different third-party external devices" and that "nowhere does the specification teach the creation of new 'rules' for communicating, which would defeat the purpose of the invention."  Dkt. 97-10 at 9.  Indeed, the

---

[1] For the same reasons as addressed here and in Plaintiff's Opening Brief, Plaintiff also asserts that the claim terms "generating," creating," "recreating" and other similar variations Defendants propose constructions for (**Term Nos. 8, 9, and 10**) are readily understandable by a POSITA and do not require construction.

1

patent specification is clear that communication protocols and command code sets are brought into existence by a manufacturer—not by the claimed microprocessor: "[t]ypically, each manufacturer of one of these devices such as TV sets, VCR sets ... employs a specific communication protocol that includes a command code set for performing various functions to remotely control the device." '467 patent at 7:40-46; 7:37-39 ("…configured to utilize several communication protocols employed by various manufacturers or various models of the same brand.").[2]  Given that the purpose of the invention is to communicate with third party external devices, it would be illogical for the claim to require the microprocessor be capable of inventing new control signals unknown by (and unusable by) third-party external devices.

With respect to the term "plurality," Defendants' reliance on *Dayco Products, Inc. v. Total Containment, Inc.* for their conclusory position that "the plain meaning of "plurality"[3] is two or more" is unavailing and ignores the context of the patent.  *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  In *Versa Corp. v. Ag-Bag Int'll Ltd.*, the Federal Circuit explained that in *Dayco* the court "recognized that, in context, the plural can describe a universe ranging from *one to some higher number, rather than requiring more than one item*."  392 F.3d 1325, 1330–31 (Fed. Cir. 2004) (emphasis added); *Wi-LAN Inc. v. Alcatel-Lucent USA Inc.*, 2012 WL 12894472, at *8 (E.D. Tex. May 16, 2012).  As addressed in connection with Defendants' arguments relating to "generating" above (and as stated by this Court in the HTC Corp. case), the purpose of the invention is to facilitate communication with different third-party external devices.

---

[2] Intervenor HTC Corp. conceded this point in the HTC case.  *See Salazar v. HTC Corp.*, 2:16-cv-01096-JRG, Dkt. 112 at 4.

[3] Defendants also separately attempt to construe a subset of this claim term: "a plurality of control signals" (Term No. 4).  For the reasons addressed here and in his Opening Brief, Plaintiff submits that this term does not require construction.

The '467 patent specification also explains how command code sets are used to communicate with external devices:

> Typically, each manufacturer of one of these devices such as TV sets, VCR sets, CD players and Cable boxes, **employs a specific communication protocol that includes a command code set** for performing various functions to remotely control the device….For example, **a TV set made by manufacturer A, may require a command code set that includes various signals** to remotely control various available functions such as channel up, channel down, volume up, volume down, mute, and power "on" and "off". **This command code set may have a different set of signals than another command code set employed for a TV set made by manufacturer B**. In the alternative, manufacturer A may employ different command code sets for its own various models of TV sets.

*See* '467 patent at 7:40-54 (emphasis added).

The use of "plurality" as used in the '467 patent claims is not a quantification but rather simply referring to a variety/various (and is used interchangeably with these terms) control signals[4] used to communicate with different third-party external devices. *See, e.g.*, '467 patent at 16:42-46 ("in operation microprocessor 30 is configured to generate signals for a variety of most popular command code sets relating to most popular commercially available devices."), 7:55-60, 8:52-54, 11:15-19.  Additionally, in the HTC Corp. case, the Court used the term "plurality" in the broader microprocessor limitation in its construction and thus deemed it sufficiently understandable. Further, as discussed above, the Federal Circuit has held that a "plural can describe a universe ranging from one to some higher number." *Versa Corp.*, 392 F.3d at 1330–31.

### B.     Term Nos. 2 and 13: "a selector controlled by said microprocessor…"; "selector"

In their Response, Defendants fail to explain why the plain and ordinary meaning of the term "selector" should be narrowed to "multiplexer/demultiplexer." Defendants' conclusory claim

---

[4] This is also the case with respect to the "communication protocols" that are implicated in communications with external devices (Term No. 5).

3

regarding the functionality of "multiplexer" and "demultiplexer" does not support narrowing the plain language of the claim. As set out in Plaintiff's Opening Brief, these terms do not appear anywhere in the '467 patent, and the Court should reject Defendants' attempt to impermissibly read additional limitations into the claim terms.

## C. Term No. 3: "a communication protocol"

Defendants propose to add the same "set of rules" limitation HTC Corp. previously attempted to add in the HTC Corp. case. This Court rejected this construction. As noted in Plaintiff's Opening Brief, the Court already addressed this limitation and held that "'communication protocol' is sufficiently defined by the claim language" and that "[n]othing else is needed." Dkt. 97-7 at 46.

Defendants' argument regarding the insufficiency of a "general protocol" is irrelevant because that is not the term being defined, and the term "general protocol" does not appear anywhere in the '467 patent. Though Defendants argue that their position is "tailored to the meaning of "a communication protocol," they provide no artisan opinion and their reference to extrinsic evidence by way of a dictionary should not be given any weight, because, as this Court held in the HTC Corp. case, the claims and the intrinsic record sufficiently define the term. *See Phillips*, 415 F.3d at 1312-13.

## D. Term No. 5: "a plurality of reprogrammable communication protocols"

The Court previously construed the broader "microprocessor limitation" clause and rejected Defendants' indefiniteness argument, and Defendants provide no evidence that a POSITA would not understand this claim term.[5] Additionally, Defendants' alternative construction that

---

[5] Defendants' reference to Plaintiff's proposed construction in an IPR petition response is immaterial because, as Plaintiff argues above and the Court already found in the HTC Corp. case,

4

attempts to redefine plurality as two or more should be rejected because, for the same reasons discussed above with respect to Term No. 1, a POSITA would understand that "plurality" as used in the '467 patent claims is not a quantification but rather a reference to a variety/various communication protocols.

### E. Term No. 7: "such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets"

Defendants provide no expert testimony to support their allegation that "those skilled in the art would be unable to determine the scope of the invention because the claim fails to inform a skilled artisan of the components that need to be prepared in terms of memory space usage." As noted in Plaintiff's Opening Brief, this Court previously construed this term and did not find it indefinite.

Further, in addressing the parties' dispute over the term "parameter sets" in the HTC Corp. case, this Court understood that the '467 patent used the term "parameter sets" as interchangeable with "parameters." *See* Dkt. 97-7 at 46-49 ("Overall, the Court finds the patent does not provide any specific meaning to **the term 'parameter' or 'parameter sets,'** and the term is used consistent with its plain and ordinary meaning"; "The specification include numerous references to **'parameters' or 'parameter sets.'**") (emphasis added). The specification includes several references to parameters and supports this understanding:

> In order to substantially decrease the amount of memory necessary to store infra-red signals, microprocessor 30 in accordance with the present invention, re- trieves data from a memory device, such as a RAM, ROM, EPROM or EEPROM, that is configured so as to store a finite **set of parameters** that may be used to recreate and generate signals corresponding to a desired command code set. These **parameters** take substantially less memory space than if the entire signal were to be stored.

---

communication protocols does not require construction and the term "reprogrammable" would be readily understood by a POSITA.

5

Clearly, the memory space required to store "said parameters" refers to the "parameter sets" previously referenced and Defendants' argument that "'said parameters' lack antecedent basis" is without merit.

### F. Term No. 11: "a desired command code set"

Defendants provide no expert testimony to support their allegation that the term is indefinite. With respect to Defendants' indefiniteness argument, as noted in Plaintiff's Opening Brief, the Court previously construed this term and did not find it indefinite.

The article "a" means "one or more" and therefore the desired command code set means one or more desired command code sets. *See Freeny v. Fossil Grp., Inc.*, 2019 WL 2078783, at *14 (E.D. Tex. May 10, 2019). As the claim recites, "said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set," clearly an element of the invention is to recreate a desired command code set from retrieved parameter sets and there is no limiting language as to any particular command code set other than it be recreated from the retrieved parameter sets. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) ("[I]n all aspects of claim construction, the name of the game is the claim."); *see, e.g.*, '467 patent at 7:55-8:65; 16:25-46. A POSITA would understand the plain and ordinary meaning of this term. Defendants have not met their burden of proving this claim indefinite by clear and convincing evidence.

### G. Term No. 12: "a microprocessor for generating . . ., said microprocessor creating . . ., a plurality     of parameter sets retrieved by said microprocessor . . ., said microprocessor generating . . ."

6

As a preliminary matter, in their Response, Defendants concede that this claim term relates to "**the capability** of 'one or more microprocessors,'"[6] which directly contradicts their proposed construction that affirmatively states that "one or more microprocessors...**must perform** the generating...functions." Further, Defendants argue that "**at least one microprocessor**" is capable of performing the stated functions, which is contradicted by their proposed construction, which demands that "**each of the one or more microprocessors**" (i.e. all microprocessors) must perform the same functions. *See* Dkt. 102 at 17-18 (emphasis added). Because the arguments and analysis in the Response do not support Defendants' proposed construction, they should be discarded.

*In re Varma*[7] is inapplicable and does not address the proposition Defendants contend it does. As this Court in *Freeny v. Fossil Group, Inc.* makes clear, where there is an open-ended "comprising" claim, the rule of "a" meaning "one or more" applies, and the recited [a microprocessor] means "one or more" [microprocessors] and the subsequent use of the definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. 2019 WL 2078783, at *14 (E.D. Tex. May 10, 2019). Consequently, any one of the one or more microprocessors can be capable of performing any one of the recited functions in this claim term, and any individual one of the microprocessors (or all the microprocessors) need not be capable of performing all of the recited functions. *Id.*[8] Accordingly, the Court should reject Defendants' proposed constructions.

---

[6] Defendants concede that the indefinite article "a" in reference to the "a microprocessor" may mean one or more microprocessors.

[7] It is worth noting that *In re Varma* was an appeal from a Patent Board decision and applied the broadest reasonable interpretation standard to the interpretation of the claim language, which is not the applicable standard at the district court. *In re Varma*, 816 F.3d 1352, 1359 (Fed. Cir. 2016).

[8] As this Court concluded in *Freeny*, "when the claim refers to outputting 'the request authorization code' on a first signal, and outputting 'the request authorization code' on a second signal, that language means that any of the 'one or more request authorization codes' can be outputted on the first and second signals to satisfy the claim." *See Freeny*, 2019 WL 2078783, at *14-15.

**H.     Term Nos. 14 and 19: "said microprocessor generating a communication protocol in response to said user selection" and "said communication protocols"**

Contrary to Defendants' position, the communication protocol referenced here does refer to the previously recited reprogrammable communication protocols. As this is a capability claim, as the Court noted in the HTC Corp. case, the first reference to the "plurality of reprogrammable communication protocols" (in the first paragraph of the body of the claim) is reciting the microprocessor's capability to create one or more of a universe of reprogrammable communication protocols. The communication protocol addressed here is a clear reference back to the communication protocols in the universe of communication protocols identified in the prior paragraph.

This conclusion is consistent with the specification, which only speaks to one type of communication protocol, which are identified in the first paragraph of the body of the claim (i.e. the "plurality of reprogrammable communication protocols") and are used to communicate with external devices. *See* '467 patent at 7:40-54. Furthermore, the last paragraph of the body of the claim (beginning with "an infra-red transceiver…") recites "said communication protocols" which is a reference to the "a communication protocol" and confirms that this communication protocol is for transmitting infra-red signals to said external devices. *See* '467 patent, claim 1. Thus, the last paragraph of the claim confirms that the "a communication protocol" referenced here refers to the "plurality of reprogrammable communication protocols" employed to communicate with each one of said external devices referenced in the first paragraph. *Phillips*, 415 F.3d at 1314 (explaining that the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms). Accordingly, Defendants' arguments that these claim terms are indefinite and Defendants' proposed constructions are

8

without merit, and these claim terms should be construed as having their plain and ordinary meaning.

### I. Term No. 15: "an infra-red frequency transceiver..."

This Court already specifically addressed and rejected Defendants' argument in the HTC Corp. case. Here, Defendants make the very same argument and offer no new arguments or evidence to support their position. There, this Court explained that "the limitation only requires that the IR transceiver be capable of sending and receiving IR signals to the plurality of external devices—*not* that it be capable of transmitting and sending to each device within that plurality." *See* Dkt. 97-10 at 6-7 (emphasis in original). The Court explained that the "specification supports this conclusion by noting 'the signals can be transmitted *and/or* received ... to any number of appliances and/or apparatus capable of receiving *and/or* trans- mitting compatible signals.'" '467 Patent at 2:17–20 (emphasis added). For those reasons and as argued in Plaintiff's Opening Brief, Defendants' proposed construction should be rejected.

### J. Term No. 16: "a radio frequency transceiver…"

Defendants' proposed construction was already considered and rejected by this Court in the HTC Corp. case. Here, Defendants make the very same argument and offer no new arguments or evidence to support their position. As previously set out by this Court, "…**it's nonsensical to require the RF transceiver to communicate using IR communication protocols.**" Dkt. 97-10 at 7-8 (emphasis added). A POSITA reading the claims and the specification of the '467 Patent and understanding the functionalities of IR and RF transceivers would understand the claims to teach an IR transceiver that can send and receive signals in accordance with IR communication protocols and an RF transceiver that can transmit and receive signals in accordance with RF communication protocols. *See, e.g.*, '467 Patent at 3:61-62 ("Radio and/or Infra-red transceivers

9

transmit and receive radio frequency and/or infra-red frequency signals"). For those reasons and as argued in Plaintiff's Opening Brief, Defendants' proposed construction should be rejected.

### K.  Term No. 17: "a sound and data coupling device adapted to receive sound as data signals"

Defendants' proposed construction is not supported by the intrinsic evidence. Defendants' attempt to rewrite the claim by importing limitations from embodiments in the specification and arbitrarily adding claim limitations in an effort to narrow the scope of the claim. Claim 6 does not reference "data signals" or "voice" and there is no support for limiting the scope of this claim. As set out in Plaintiff's Opening Brief, Defendants' attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit and should be rejected.

### L.  Term No. 18: "configured to"

Consistent with the policy of the "importance of uniformity in the treatment of a given patent," the Court should maintain its earlier construction of the term "configured to." *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008).

## II.  Conclusion

For the reasons provided above, Plaintiff respectfully requests that the Court construe the disputed claim terms as discussed herein.

Date: July 1, 2020

Respectfully submitted,

*/s/Geoff Culbertson*
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone: 903-792-7080
Telecopier: 903-792-8233

Dariush Keyhani
District of Columbia Bar No. 1031500
Frances H. Stephenson
New York registration No. 5206495
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff, Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 1st day of July, 2020.

/s/Geoffrey Culbertson
Geoffrey Culbertson

11