# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, <br> SPRINT/UNITED MANAGEMENT <br> COMPANY, T-MOBILE USA, INC., <br> AND CELLCO PARTNERSHIP D/B/A <br> VERIZON WIRELESS, <br><br>  Defendants <br><br>  and <br><br> HTC CORP., and HTC AMERICA, INC., <br><br> Intervenors. | Civil Action No. 2:20-cv-00004-JRG <br><br> JURY TRIAL DEMANDED |

## DEFENDANTS' AND INTERVENORS' RESPONSE TO
## PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless (collectively, "Defendants") and HTC Corp. and HTC America, Inc. (collectively, "Intervenors"), respond to Plaintiff Joe Andrew Salazar's ("Salazar") supplemental claim construction brief (Dkt. No. 112).

Even though the parties have filed voluminous claim-construction briefing, and the Court has conducted a *Markman* hearing, Salazar continues to misstate Defendants' and Intervenors' position on the term "a microprocessor." Defendants and Intervenors have never argued that "a microprocessor" means a single microprocessor. *See, e.g.*, Ds' Br. (Dkt. No. 102) at 16 ("Here, it would allow 'a microprocessor' to mean 'one or more microprocessors.'"); Hr'g Tr. (Jul. 24, 2020) at 77:17-19 (Mr. Landis: "What we have here is a claim that claims a microprocessor. <u>No one is arguing to the Court that 'a' does not mean one or more</u>.") (emphasis added). That has never been in dispute. The dispute here is whether the claim language and the law require that at least one microprocessor (of the one or more microprocessors) must be configured to carry out all of the recited functions and to be coupled to the claimed "memory device" and "user interface." They clearly do.

**I.     Under *In re Varma*, the indefinite article "a" in "a microprocessor" does not negate the subsequent claim language.**

As demonstrated in Defendants' and Intervenors' claim construction brief, the Federal Circuit held in *In re Varma* that the indefinite article "a" cannot serve to negate what is required by the language following it. *See In re Varma v. IBM Corp.*, 816 F.3d 1352, 1363 (Fed. Cir. 2016); Dkt No. 102 at 16-18. The Federal Circuit analogized this principle as follows: "For a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks." *Id.* at 1363.

Here, the claim's first instance of "a microprocessor" uses the indefinite article "a," followed by three more instances that use the definite article "said." Salazar's argument seeks to negate the patentee's choice to claim "*said* microprocessor creating a plurality of reprogrammable communication . . .," "a plurality of parameter sets retrieved by *said* microprocessor . . .," and "*said* microprocessor generating a communication protocol . . . ." To analogize to the Federal Circuit's dog example,

"a dog" = "a microprocessor"

"rolls over and fetches" = (1) "generating a plurality of control signals";
(2) "creating a plurality of reprogrammable communication protocols";
(3) "retrieving a plurality of parameter sets"; and
(4) "generating a communication protocol in response to said user selections."

In essence, Salazar asks the Court to replace the three instances of the definite article "said" with the indefinite article "a." That would be improper. *See, e.g., Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[I]n accord with our settled practice we construe the claim as written, not as the patentees wish they had written it.").

## II. *Convolve* supports and enhances the conclusion drawn from *Varma*.

*Convolve* teaches that, when an element is associated with one component through the use of "a" and is then referenced as being associated with another component through the use of the indefinite article "the" or "said," the claim requires the same element to be associated with both components. *See Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016). *Convolve* involved U.S. Patent No. 6,314,473. The relevant portions of claim 1 of the *Convolve* patent are reproduced below:

1. User interface for operatively working with *a processor* to affect operation of a data storage device, the user interface comprising:

* * * * *

> means for causing *the processor* to output commands to the data storage device to alter seek trajectory shape by shaping input signals to the data storage device to reduce selected unwanted frequencies from a plurality of frequencies in accordance with the altered settings in the user interface.

Ex. A, U.S. Patent No. 6,314,473 at 1:22-37 (emphasis added). Construing that claim, the Federal Circuit held that "[the] reference to 'the processor,' referring back to the 'a processor' recited in [the] preamble, supports a conclusion that the recited user interface is 'operatively working with' the same processor to perform all of the recited steps."). *Convolve, Inc.*, 812 F.3d at 1321.

In this case, Salazar argues that the term "a microprocessor" recited in claims 1 and 34 of his patent "is not tied to any specific component of the communications, command, control and sensing system." Dkt. No. 112 at 3. That is demonstrably false: the claims require coupling the same microprocessor to two different claimed components—the memory device and the user interface: "a memory device coupled to *said* microprocessor. . . ." and "a user interface coupled to *said* microprocessor" *See* '467 Patent at 26:1-12, 30:16-29 (emphasis added). The memory device and the microprocessor work together to perform operations on the "plurality of parameter sets"—"a memory device coupled to *said* microprocessor configured to store a plurality of parameter sets retrieved by *said* microprocessor. . . ." *See id.* at 26:1-6, 30:16-22 (emphasis added). The user interface and the microprocessor work together to receive signals corresponding to user selection and generating a communication protocol based on those selections—" a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, said microprocessor generating a communication protocol in response to said user selections." *See id.* at 26:7-12, 30:23-29 (emphasis added).

The contrast with *Convolve* is clear because claims 1 and 34 of the Salazar Patent are markedly different from the claims for which the *Convolve* court found "no such evidence clearly

limiting 'a processor' to a singular processor" (i.e., claims 9 and 15 of the U.S. Patent No. 6,314,473). *See Convolve, Inc.*, 812 F.3d at 1321. For example, *Convolve* claim 9, which is reproduced in its entirety below, recites "a processor" without <u>any</u> subsequent reference back to it using the definite article "said:"

> 9. Apparatus for controlling operation of a data storage device, the apparatus comprising:
>
> a memory which stores computer-executable process steps; and
>
> <u>*a processor*</u> which executes the process steps so as (i) to generate a user interface, the user interface controlling one of a seek time of the data storage device and an acoustic noise level of the data storage device, (ii) to alter settings in the user interface for one of the seek time and the acoustic noise level of the data storage device in inverse relation, and (iii) to output commands to the data storage device causing the data storage device to alter seek trajectory shape by shaping input signals to the data storage device to reduce selected unwanted frequencies from a plurality of frequencies in accordance with the altered settings in the user interface.

Ex. A, U.S. Patent No. 6,314,473 at 2:7-22 (emphasis added).

The Federal Circuit arrived at its decision because *Convolve* claims 9 and 15 recited "a processor" and never constrained the microprocessor further. *See Convolve, Inc.*, 812 F.3d at 1321. That is not the case presented by the Salazar patent.

### III. Conclusion

The Federal Circuit's decisions in both *In re Varma* and *Convolve* are in accord Defendants' and Intervenors' proposed construction of the term "a microprocessor for generating . . ., said microprocessor creating . . ., a plurality of parameter sets retrieved by said microprocessor . . ., said microprocessor generating . . ." Under both Federal Circuit decisions, every subsequent recitation of "said microprocessor" in claims 1 and 34 of the Salazar patent must refer to the same one or more microprocessors. Accordingly, Defendants and Intervenors respectfully request that the Court adopt their proposed construction for this term.

Dated: August 5, 2020　　　　　　　　　Respectfully submitted,

By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

Harry Lee Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas   75670
Tel:  903.934.8450
Fax: 903.934.9257

*Attorneys for Defendants and Intervenors*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on August 5, 2020, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Fred I. Williams*
Fred I. Williams