```
1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF TEXAS

3                      MARSHALL DIVISION

4

5   JOE ANDREW SALAZAR            )(

6                                 )(    CIVIL ACTION NO.

7                                 )(    2:20-CV-004-JRG

8   VS.                           )(    MARSHALL, TEXAS

9                                 )(

10  AT&T MOBILITY LLC, ET AL.     )(    JULY 24, 2020

11                                )(    9:02 A.M.

12              CLAIM CONSTRUCTION HEARING

13                 BY VIDEOCONFERENCE

14      BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

15          UNITED STATES CHIEF DISTRICT JUDGE

16
    FOR THE PLAINTIFF:     Mr. Dariush Keyhani
17                         Ms. Frances H. Stephenson
                           KEYHANI LLC
18                         1050 30th Street Northwest
                           Washington, DC 20007
19

20  COURT REPORTER:        Ms. Shelly Holmes, CSR, TCRR
                           Official Reporter
21                         United States District Court
                           Eastern District of Texas
22                         Marshall Division
                           100 E. Houston Street
23                         Marshall, Texas  75670
                           (903) 923-7464
24

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)
```

```
 1   FOR THE PLAINTIFF:      Mr. Geoffrey P. Culbertson
                             PATTON TIDWELL & CULBERTSON, LLP
 2                           2800 Texas Boulevard
                             Texarkana, Texas 75503
 3

 4   FOR THE DEFENDANTS:     Mr. Todd E. Landis
                             WILLIAMS SIMONS & LANDIS, PLLC
 5                           2633 McKinney Avenue
                             Suite 130 #366
 6                           Dallas, Texas 75204

 7                           Mr. John Wittenzellner
                             WILLIAMS SIMONS & LANDIS, PLLC
 8                           1735 Market Street
                             Suite A #453
 9                           Philadelphia, Pennsylvania 19103

10                           Mr. Fred I. Williams
                             WILLIAMS SIMONS & LANDIS, PLLC
11                           327 Congress Avenue
                             Suite 490
12                           Austin, Texas 78701

13                           Mr. Gil Gillam
                             GILLAM & SMITH, LLP
14                           303 South Washington Avenue
                             Marshall, Texas 75670
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         I N D E X

 2

 3   July 24, 2020

 4                                              Page

 5        Appearances                            1

 6        Hearing                                4

 7        Court Reporter's Certificate         105

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

09:02:26  1          THE COURT:  Good morning, counsel.  This is Judge

09:03:05  2  Gilstrap.  This is the time set for claim construction in

09:03:10  3  the Salazar versus AT&T, et al., matter.  This is Civil

09:03:14  4  Case No. 2:20-CV-004.

09:03:18  5          Let me ask for announcements at this time.

09:03:20  6          What says the Plaintiff, Salazar?

09:03:23  7          MR. CULBERTSON:  Good morning, Your Honor.  Geoff

09:03:27  8  Culbertson for the Plaintiff.  With me this morning is

09:03:30  9  Dariush Keyhani.  Mr. Keyhani will be handling the

09:03:34  10  argument.  And observing is Ms. Frances Stephenson.  And

09:03:37  11  the Plaintiff is ready.

09:03:38  12          THE COURT:  Do you have any other individuals on

09:03:40  13  the line either way, Mr. Culbertson?

09:03:43  14          MR. CULBERTSON:  No, just those I announced.

09:03:46  15          THE COURT:  All right.  Thank you.

09:03:47  16          What's the announcement from Defendants?

09:03:50  17          MR. GILLAM:  Good morning, Your Honor.  Gil

09:03:51  18  Gillam, Fred Williams, Todd Landis, and John Wittenzellner

09:03:56  19  for the Defendants as well as the intervenor.  We do have a

09:04:00  20  few other people that are observing today.  We provided

09:04:02  21  those names to the Court.

09:04:03  22          But, importantly, client representatives for HTC

09:04:07  23  are with us, Mr. Vince Lam and Mr. David Wiggins.  And

09:04:13  24  we're prepared to go ahead, Your Honor.  We're ready.

09:04:16  25          THE COURT:  All right.  Thank you.

09:04:17  1          All right.  Counsel, the Court's advised you

09:04:20  2   previously of the order in which the Court intends to take

09:04:24  3   up the disputed terms for claim construction today.

09:04:27  4       We'll do this -- we'll do this on a claim-by-claim

09:04:29  5   basis, and we'll begin with "a microprocessor for

09:04:34  6   generating a plurality of control signals used to operate

09:04:38  7   said system, said microprocessor creating a plurality of

09:04:44  8   reprogrammable communication protocols" from Claims 1 and

09:04:48  9   34 of the '467 patent.

09:04:49  10         Let me hear Plaintiff on this disputed term first.

09:04:54  11         MR. KEYHANI:  Good morning, Your Honor.

09:04:59  12         Plaintiff's position, as we set out in our

09:05:02  13   briefing, is that we -- we agree with the Court's prior

09:05:06  14   construction in the prior case.

09:05:12  15      The -- it appears from the arguments raised by the

09:05:16  16   Defendants that the two terms are mainly in dispute, and --

09:05:24  17   and with respect to this -- you know, two terms within this

09:05:27  18   larger phrase or term.  One is generating, and the other is

09:05:31  19   plurality are particular -- are in -- are particularly in

09:05:34  20   dispute.

09:05:35  21         With respect to generating, Defendants have argued

09:05:39  22   that, you know, generating is bringing to existence from

09:05:44  23   presumably thin air.

09:05:47  24         We, of course, dispute that construction.  And in

09:05:54  25   line with the Court's prior construction and in the context

09:05:57   1   which is based on the -- the specification and claims,

09:06:07   2   interpret generating to not to bring into existence, but

09:06:10   3   it's -- it's creating commands or -- or generating what --

09:06:14   4   whatever else the claim calls for to communicate with a --

09:06:19   5   you know, a plurality of external devices.

09:06:22   6          And those devices already exist.  They've already

09:06:26   7   been manufactured.  They're already particular commands and

09:06:35   8   communication protocols associated with those manufactured

09:06:39   9   devices.  And the device is simply communicating with those

09:06:44   10  and generating commands for devices that -- you know, it --

09:06:54   11  it may not have been exposed before but it -- it

09:06:57   12  communicates -- it has a learning functionality.  And, you

09:07:02   13  know, to be able to -- to communicate -- to create the

09:07:05   14  commands that are associated with those existing

09:07:09   15  manufactured devices.

09:07:09   16         So that's an issue.  Generating is not creating --

09:07:13   17  it's not bringing in from -- bringing into existence, but

09:07:15   18  rather, you know, finding what's already out there and --

09:07:19   19  and communicating what's already been created by the

09:07:21   20  manufacturers of the devices.

09:07:22   21         In our reply -- in Plaintiff's reply, for example,

09:07:29   22  on Page 3, we cited the specification, for example, and we

09:07:33   23  point out -- you know, we take an excerpt from the

09:07:37   24  specification -- Column 7, for example, Lines 40 through --

09:07:44   25  Lines 40 through 54 -- where the specification speaks to,

09:07:49 1  for example -- I would just take the last sentence, for

09:07:52 2  example, of the -- of the excerpt that we -- we cited to.

09:07:58 3        In the alternative, comma, Manufacturer A employed

09:08:05 4  different command codes for its own various models of TV

09:08:08 5  sets.  Another line:  This command code set may have a

09:08:12 6  different set of signals than other command code sets --

09:08:16 7  command code set employed for a TV set made by

09:08:19 8  Manufacturer B.

09:08:20 9        And, basically the specification speaks to various

09:08:27 10 devices that are already out there, and the -- the -- the

09:08:39 11 communication command control testing system at issue is

09:08:42 12 communicating with those devices.

09:08:43 13    And -- but those -- those devices and the commands

09:08:48 14 necessary to communicate with those devices -- the

09:08:49 15 protocols, the commands are already in existence.  They're

09:08:52 16 not created from scratch.  Otherwise, it would defeat the

09:08:55 17 purpose.  There'd be no purpose for the device -- the

09:08:59 18 communication command control and sensing system to create

09:09:03 19 commands that are not useful for communicating with

09:09:05 20 something that exists.  There's no purpose for that.

09:09:08 21       On the term "plurality" that is in dispute, in the

09:09:13 22 context of the specification -- as the Court noted in the

09:09:18 23 prior case, Salazar versus HTC, in -- in a summary judgment

09:09:22 24 opinion, you know, the whole purpose of this patent, the

09:09:28 25 claims and the invention is to communicate with a -- with

09:09:35  1  different external devices.

09:09:37  2          We cite to the -- you know, the reference that in

09:09:41  3  our briefing -- and that purpose of communicating with --

09:09:52  4  with different external devices, which is also captured in

09:09:57  5  the preamble of the claim, which talks to -- speaks to

09:10:05  6  communication with a communication command control and

09:10:08  7  sensing system.

09:10:11  8          And I'll just read the -- the preamble so I don't

09:10:15  9  misquote it.  The preamble of Claim 1, for example, states:

09:10:21 10  A communication command control and sensing system for

09:10:24 11  communicating with a plurality of external devices

09:10:26 12  comprising, colon.

09:10:33 13          And the plurality here, as we've argued in the

09:10:36 14  briefing, and I'm not going to recite the various parts of

09:10:39 15  the briefing -- of the patent and -- and regurgitate all of

09:10:42 16  that, but the purpose is to communicate with a plurality.

09:10:46 17      And plurality, as the Court noted before and as the

09:10:51 18  specification makes, you know, very clear, is really about

09:10:54 19  a variety -- various different -- you know, different

09:11:02 20  devices.

09:11:03 21      It's not a quantitative limitation, two or three or

09:11:08 22  any particular number.  It's the plurality used in the

09:11:12 23  context of the specification, which we submit should be

09:11:14 24  read -- should be read from -- from the perspective of one

09:11:19 25  of ordinary skill in the art in the context of the

09:11:21  1  specification -- really is about a reference to a variety,

09:11:27  2  different external devices.

09:11:29  3         But not a specific number because the whole idea

09:11:32  4  is to be able to communicate with as many external devices

09:11:36  5  that are out there or available.  And it's not -- you know,

09:11:41  6  it's not a particular number.

09:11:42  7         And, you know, we -- in our briefing we responded

09:11:49  8  to arguments raised regarding cases that were, you know,

09:11:54  9  referenced by Defendants, Dayco and Versa Corp., and those

09:11:58  10  cases ultimately held that in -- in their particular

09:12:02  11  context, of course, you know, that -- that plurality meant

09:12:09  12  one or many.  And no particular number ultimately defines

09:12:17  13  plurality in the context of those inventions that were the

09:12:21  14  subject of Dayco, for example.

09:12:24  15         And we submit that that's the same here in the

09:12:27  16  context of the specification, that -- that the term

09:12:35  17  "plural" or the concept of plural, for example, in Dayco

09:12:39  18  and in Versa was construed or interpreted to mean to

09:12:44  19  describe a universe ranging from one to some higher number,

09:12:51  20  rather than requiring more than one item.  But a universe

09:12:52  21  ranging from one to some higher number.

09:12:54  22         And we don't believe construction is necessary

09:12:57  23  because we think that's the plain and ordinary meaning --

09:13:01  24  or the plain and ordinary meaning rather is understood by

09:13:04  25  one of skill in the art.

09:13:05   1        But to the extent, you know, parties cite to these

09:13:07   2   cases to try to extract some construction, even in those

09:13:11   3   cases and in those context, it was -- it was meant -- what

09:13:19   4   we think it meant -- you know, would mean to one of

09:13:20   5   ordinary skill in the art in this context.

09:13:22   6        But, again, we believe the plain and ordinary

09:13:24   7   meaning of the term or ordinary and customary meaning of

09:13:29   8   the term controls.  No construction is necessary for the

09:13:31   9   term "plurality."  There's a plethora or plurality --

09:13:36  10        THE COURT:  Let me stop you, counsel.  Somebody is

09:13:40  11   adding on or dropping off.  And every time they make a

09:13:43  12   move, we get a sound on this end that covers up your

09:13:48  13   speech, and it's hard to follow your argument.

09:13:50  14        I'm going to ask everybody again, as my law clerk

09:13:54  15   reminded you before we started, I expect everybody on this

09:13:59  16   videoconference to stay on this videoconference.  I don't

09:14:02  17   want people dropping off or adding on, because as I've

09:14:09  18   said, that creates an audio interference that makes it hard

09:14:12  19   to follow counsels' arguments.

09:14:14  20        So if you're here, stay here.  If you're not on this

09:14:16  21   conference, don't join in.  We'll go with the people we

09:14:19  22   have.  But let's keep it -- let's keep it static and not

09:14:24  23   add or subtract as we go forward.

09:14:27  24        Okay.  Mr. Keyhani, please continue.

09:14:31  25        MR. GILLAM:  Excuse me, Your Honor.  It was my --

09:14:33   1   it was my fault.  My call simply dropped, Your Honor.  If
09:14:36   2   you would prefer me not to call back in, I will not do so.
09:14:39   3   I didn't drop myself.  It just went out.  But it was my
09:14:44   4   call that dropped.
09:14:45   5          THE COURT:  Well, I can see you and hear you,
09:14:48   6   Mr. Gillam.  Is there a need for you to do something else,
09:14:50   7   or are there other people through your call that are
09:14:53   8   listening in?
09:14:56   9          MR. GILLAM:  No --
09:14:57   10          THE COURT:  Why would -- why would you need to
09:14:58   11   call back in.
09:14:59   12          MR. GILLAM:  Well, my screen went black, and all I
09:15:02   13   could see was me.  And I lost everybody else is what I'm
09:15:05   14   saying.  Obviously, some technical glitch on my end is what
09:15:08   15   I'm saying.
09:15:09   16          THE COURT:  All right.  And are you in that
09:15:12   17   posture now, or have you returned to full participation?
09:15:17   18          MR. GILLAM:  I'm -- I'm back and I can see
09:15:19   19   everybody and hear everybody again.
09:15:20   20          THE COURT:  Okay.  Well, that's certainly
09:15:22   21   something unavoidable.  Hopefully that won't repeat itself.
09:15:28   22   I assume it were -- it was generated by people adding or
09:15:28   23   leaving the conference.  But with that explanation and with
09:15:34   24   my reminder to everybody else, we'll just go forward from
09:15:39   25   here.

09:15:40   1            All right.  Let's go back --

09:15:42   2            MR. GILLAM:  Would you like -- if it does happen

09:15:46   3    again, Your Honor, would you like me not to call back in,

09:15:48   4    not to interrupt?  I mean, I would like to participate in

09:15:49   5    the hearing obviously, but I do not want to interrupt the

09:15:51   6    Court.

09:15:52   7            THE COURT:  No.  If it happens again, obviously,

09:15:56   8    you're --  have appeared in the case and are active, you

09:15:59   9    need to call back in.  If it does, though, please tell me

09:16:03  10    that's what this is caused by so I'll not assume, as I did

09:16:06  11    earlier, it's somebody else I can't see.

09:16:10  12            MR. GILLAM:  Understood.  Thank you, Your Honor.

09:16:11  13            THE COURT:  Mr. Keyhani, before you continue, let

09:16:15  14    me ask you a question.  Are you contending that this -- and

09:16:18  15    I'm talking now back on the generating and creating

09:16:21  16    limitation.

09:16:23  17        Are you contending that this limitation encompasses a

09:16:28  18    microprocessor configured to generate or to create only a

09:16:33  19    single control protocol.

09:16:42  20            MR. KEYHANI:  No, Your Honor.  But rather a -- a

09:16:46  21    microprocessor for generating.  In other words, the -- the

09:16:50  22    claim term speaks to a microprocessor that is capable --

09:16:55  23    this is a capability claim.  There's case law on -- on the

09:16:59  24    language and the context of this.  And we argue that this

09:17:03  25    is clearly a capability term -- term.

09:17:06   1          And it's -- so it's a microprocessor that's

09:17:09   2   capable of generating -- plurality means multiple, but,

09:17:16   3   again, not -- not any particular quantity.  Because it's --

09:17:20   4   because it's a capability claim, Your Honor, it's not a

09:17:22   5   reference to any specific number of protocols.  And we

09:17:25   6   get -- and if we step back and I understand -- as I was

09:17:29   7   explaining a moment ago, the context of the invention is --

09:17:34   8   is that you're -- you have a device, a communication

09:17:41   9   command control and sensing system, which is some kind of a

09:17:44   10  smart system, if I may, that is capable of communicating

09:17:49   11  with any device that it -- it comes in contact with.

09:17:51   12      It can learn parameter sets, and then it can recreate

09:17:55   13  commands, any set of commands.  It can -- it can -- it

09:17:58   14  can -- so it's -- so it's not a single -- to answer your

09:18:02   15  question, Your Honor, as directly as I can, it's not a

09:18:05   16  single protocol or a single communication protocol or

09:18:09   17  signal -- control signal rather, but it is a plurality

09:18:14   18  which is one or as many necessary.

09:18:16   19          And really, because it's a capability claim, it's

09:18:18   20  about -- it's really the microprocessor's capability to do

09:18:22   21  this.  So it's not -- and it doesn't speak to one or two --

09:18:28   22  as many that is necessary or would be -- be used in

09:18:30   23  connection with communicating with an external device, Your

09:18:33   24  Honor.

09:18:33   25          THE COURT:  All right.

09:18:33   1              MR. KEYHANI:  I hope that answers your question.

09:18:36   2              THE COURT:  Please continue with your argument.

09:18:38   3              MR. KEYHANI:  So, yes, Your Honor, I don't --

09:18:42   4    I think I will wait now.  I -- I think I've said enough at

09:18:45   5    this point, and I will wait for the Defendants to raise

09:18:50   6    their arguments.  And then if I have some additional

09:18:54   7    rebuttal or commentary, then I'll raise it at that point,

09:18:57   8    Your Honor.

09:18:57   9              And in sum, we -- we do think that the Court's

09:19:00  10    construction in the prior case was fair and reasonable.

09:19:06  11    And one of ordinary skill in the art -- construction and/or

09:19:11  12    deferring to plain and ordinary meaning.  The Court did not

09:19:14  13    construe the term "plurality" in the prior case

09:19:16  14    specifically.  And we don't think it needs construction in

09:19:20  15    this case.

09:19:20  16        The plain and ordinary meaning of -- of plurality is

09:19:23  17    sufficient.  It's understood by one of ordinary skill in

09:19:27  18    the art in the context of -- in the context of the

09:19:29  19    specification.

09:19:29  20              Thank you, Your Honor.

09:19:30  21              THE COURT:  Let me hear from Defendants, please.

09:19:33  22              MR. LANDIS:  Good morning, Your Honor.  Todd

09:19:35  23    Landis on behalf of Defendants and intervenors.

09:19:37  24              THE COURT:  Good morning, Mr. Landis.

09:19:39  25              MR. LANDIS:  Your Honor -- good morning.

09:19:39  1              Your Honor, Mr. Keyhani addressed two terms for

09:19:43  2  this first term in -- in the Court's order.  The -- the

09:19:47  3  term in the Court's order was really just to address

09:19:51  4  plurality.

09:19:52  5       He also addressed generating, which I noticed on the

09:19:56  6  Court's listing of terms would come towards the end of the

09:19:56  7  time this morning.  Would you like me to address both of

09:19:59  8  those now?

09:20:01  9              THE COURT:  I would, yes.

09:20:03  10             MR. LANDIS:  Thank you, Your Honor.

09:20:03  11             Your Honor, I would like to start -- I think you

09:20:05  12  have our slide deck that we gave to the Court last night.

09:20:10  13             THE COURT:  I do.

09:20:10  14             MR. LANDIS:  Thank you, Your Honor.

09:20:11  15             I'd like to start at Slide 5 and address plurality

09:20:14  16  first, and then I'll address generating.

09:20:16  17             Slide 5 -- the claim terms -- there are really two

09:20:22  18  claim terms, and there are actually multiple claim terms in

09:20:25  19  this claim, Claims 1 and 34, that use the word "plurality."

09:20:29  20             We move to Slide 6.  The real question here is,

09:20:33  21  is -- does plurality mean two or more?

09:20:37  22       The -- the Plaintiff would like to argue that

09:20:39  23  plurality means variety but has presented no evidence

09:20:44  24  and -- and nothing from the intrinsic record which would

09:20:47  25  show that we should move away from what plurality's plain

09:20:51   1   and ordinary meaning is, or the meaning that has been

09:20:54   2   attributed to it in patent law for, I would venture, close

09:20:58   3   to 40 years, which is two or more.

09:21:00   4          If I could have the Court skip ahead to Slide 8

09:21:11   5   with me.

09:21:11   6          The Federal Circuit and the Court have both held

09:21:15   7   on numerous occasions that plurality means two or more.  It

09:21:22   8   doesn't mean less than two.

09:21:24   9          The Federal Circuit in Apple v. Samsung said:

09:21:30  10   Under the Court's case law, the term "plurality" means at

09:21:33  11   least two, or simply the state of being plural.  It doesn't

09:21:37  12   mean less than two, and it doesn't mean variety.

09:21:40  13          There is nothing in these claims, nothing in the

09:21:43  14   specification, which would cause the word "plurality" to

09:21:48  15   have any meaning other than what the Federal Circuit has

09:21:51  16   attributed to it for many, many years and many, many cases.

09:21:55  17          I heard Mr. Keyhani talk about Dayco.  I believe

09:22:00  18   Dayco stands for the same proposition, that plurality means

09:22:03  19   two or more.  The August Tech. case is the same way.

09:22:06  20          Your Honor in BMC Software also found that

09:22:10  21   plurality means more than one.

09:22:12  22          I was hard-pressed to find any Court that found

09:22:18  23   that plurality meant anything other than more than one or

09:22:21  24   two or more.

09:22:23  25          If we look at Slide 9, the one case that Plaintiff

09:22:29   1   cites to the Court is Versa Corp.  But that citation is
09:22:34   2   misplaced.  First, the claims in Versa Corp. didn't use the
09:22:38   3   word "plurality."  The word "plurality" doesn't appear in
09:22:43   4   the claims.  Plurality appeared in the specification of a
09:22:48   5   patent in Versa Corp.
09:22:49   6           The real issue in Versa Corp. was does the plural
09:22:54   7   word "channels" have to mean two or more channels?  And in
09:23:00   8   Versa Corp., the Federal Circuit said, no.  Just using the
09:23:05   9   plural word "channels" doesn't mean it has to be two or
09:23:09  10   more because the specification says you can have a
09:23:11  11   plurality of flutes, and channels occur between flutes.  So
09:23:18  12   if you only had two flutes, you could have one channel.
09:23:21  13   And, therefore, the plural -- the use of the plural word in
09:23:25  14   the claims doesn't necessarily mean two or more.
09:23:27  15           That is not the situation we have here.
09:23:36  16           If we move to Slide 10, Your Honor.
09:23:38  17           The Plaintiff here, Mr. Salazar, had an
09:23:41  18   opportunity to claim his claims any way he wanted.  He did
09:23:44  19   not simply use the plural of words.  He used plurality,
09:23:49  20   plurality of external devices, not external devices.
09:23:52  21   Plurality of control signals, not simply control signals.
09:23:59  22   And we can see the rest of the list.
09:24:01  23           Using the word "plurality" in patent law has a
09:24:04  24   special meaning.  It means two or more.
09:24:07  25           The Federal Circuit, almost all District Courts

| | | |
|---|---|---|
| 09:24:12 | 1 | that I could look up and find have all agreed that |
| 09:24:18 | 2 | plurality means two or more.  And that should be the |
| 09:24:20 | 3 | meaning attributed to it. |
| 09:24:22 | 4 | And, Your Honor, we have no problem with the |
| 09:24:24 | 5 | Court's previous construction of these terms in the general |
| 09:24:27 | 6 | sense.  But given the last case, we anticipated that this |
| 09:24:29 | 7 | argument would happen about plurality.  And that's why we |
| 09:24:33 | 8 | brought this issue to the Court's attention because we |
| 09:24:35 | 9 | think this is a well-settled issue that plurality means two |
| 09:24:40 | 10 | or more. |
| 09:24:40 | 11 | I'll move on to generating, unless Your Honor has |
| 09:24:45 | 12 | any questions. |
| 09:24:46 | 13 | THE COURT:  That's fine.  Please do. |
| 09:24:49 | 14 | MR. KEYHANI:  I'm sorry, Your Honor.  This is |
| 09:24:51 | 15 | Dariush Keyhani.  I apologize for interrupting.  We never |
| 09:24:54 | 16 | received a copy of any of these slides that Defendants' |
| 09:24:58 | 17 | counsel is referencing at any time. |
| 09:25:02 | 18 | MR. LANDIS:  Your Honor, I just sent the slides to |
| 09:25:04 | 19 | Mr. Keyhani.  That was just an oversight.  We had planned |
| 09:25:07 | 20 | on sending it to him before the hearing, and it just got |
| 09:25:11 | 21 | mixed up in the works, but he now should have them all. |
| 09:25:17 | 22 | THE COURT:  Well, that's fine, Mr. Landis.  But |
| 09:25:19 | 23 | I'm not going to hold Mr. Keyhani or any counsel to |
| 09:25:19 | 24 | receiving slides in the middle of a hearing and then having |
| 09:25:19 | 25 | to respond directly to them. |

09:25:26 1          If you want to argue from your slides, if you want to

09:25:28 2   cite cases you've -- you've listed, that's fine.  But

09:25:32 3   without him having the benefit or any opposing counsel

09:25:34 4   having the benefit for them longer than in the middle of a

09:25:38 5   hearing, we're not going to use them as a structured part

09:25:41 6   of your argument.

09:25:42 7          I would -- I would certainly --

09:25:44 8          MR. LANDIS:  Understood, Your Honor.

09:25:44 9          THE COURT:  -- I would certainly do the same if

09:25:46 10  they had been sent to you in the middle of the hearing, as

09:25:48 11  well.

09:25:49 12         Let's go forward on that basis.

09:25:51 13         MR. KEYHANI:  Thank you, Your Honor.

09:25:59 14         MR. LANDIS:  Your Honor, with respect to

09:26:00 15  generate -- and the terms that we really had listed here in

09:26:05 16  the argument were "creating," "create," "generate" --

09:26:08 17  "generating," "generated," and "generate."  They all appear

09:26:13 18  in the claims in one form or another.

09:26:14 19         The question is:  Does it mean bring into

09:26:17 20  existence?  And I think the heart of the argument here is

09:26:19 21  really what is this invention about?

09:26:23 22         Mr. Keyhani has represented to the Court that this

09:26:26 23  invention is about using some sort of protocols or some

09:26:30 24  sort of -- of -- of schemes that manufacturers have come up

09:26:36 25  with in order to communicate with their devices, that this

09:26:41  1  device uses those schemes.  But that is not at all what

09:26:47  2  this patent is about.

09:26:48  3          In Column 7 of the patent, starting at Line 14,

09:26:53  4  the patent states:  Open architecture software within the

09:26:59  5  microprocessor 30 creates a generalized command and control

09:27:04  6  protocol which makes it possible to interact in a wireless

09:27:08  7  mode with any number of external devices that have

09:27:13  8  compatible transceivers with wireless communication command

09:27:18  9  control and sensing handset 10.

09:27:21  10         The invention of this patent was not to use what

09:27:26  11  the manufacturers gave to the device.  It was to take those

09:27:32  12  things and transform them into a new generalized command

09:27:38  13  and control protocol.  It was to create and generate new

09:27:46  14  protocols and new control signals.

09:27:50  15         The reason that the device had to do that, which

09:27:55  16  is set forth at the bottom of Column 7, starting at

09:28:00  17  Line 55, and it goes to the top of Column 8, Line 16, is

09:28:05  18  because memory space was severely limited at this time.

09:28:10  19      As the patent says, it was on the order of 10

09:28:12  20  kilobytes.  And Your Honor might remember from the trial,

09:28:14  21  this was a big point of contention during the trial.

09:28:17  22         The reason that this device needs to create its

09:28:21  23  own protocol, its own command and control protocol is

09:28:30  24  because it didn't have the practical ability to store all

09:28:34  25  of the protocols and formats and rules from each

09:28:37   1    manufacturer.  It wanted to be able to communicate with all

09:28:40   2    the devices, so it needed to come up with a new way to do

09:28:45   3    that.  And it did it by creating, bringing into existence a

09:28:50   4    new protocol.

09:28:52   5              THE COURT:  Are you -- are you --

09:28:53   6              MR. LANDIS:  That is what this patent is about.

09:28:54   7              THE COURT:  -- are you telling me, Mr. Landis,

09:28:56   8    that this -- this patent requires the base station to

09:29:00   9    create some new signal or protocol out of just thin air

09:29:04  10    without reference to anything because there was not enough

09:29:07  11    space to store the existing communication protocols and

09:29:14  12    signals?  So, now, it's just got to come up with it out of

09:29:17  13    thin air?  Is that what you're telling me?  Where -- where

09:29:19  14    it would come up with it if it's generating it or creating

09:29:23  15    it and bringing it into existence, as you say, for the

09:29:26  16    first time?

09:29:27  17              MR. LANDIS:  Yes, Your Honor.  It's not creating

09:29:29  18    it out of thin air.  That's -- that's not what I'm saying

09:29:32  19    to the Court.

09:29:33  20          What it's doing is, it's taking all of the information

09:29:36  21    it's getting from the various manufacturers, and it's using

09:29:40  22    that information to create a new scheme, a new command and

09:29:45  23    control protocol that can be utilized with each of the

09:29:50  24    devices, because it couldn't take what it got -- the amount

09:29:54  25    of information it got, the command sets -- and if you look

09:29:59   1   in Column 8, probably around -- starting at Line 11, it

09:30:04   2   talks about how big this information was and the fact that

09:30:07   3   this device couldn't store it at this time.

09:30:09   4          And so it needed to take those pieces and then

09:30:13   5   create a new command and control protocol from that.  That

09:30:17   6   command and control protocol is still -- wasn't in

09:30:20   7   existence beforehand.  It is being made using pieces of

09:30:24   8   information that were in existence, but the thing that's

09:30:28   9   being created is new.

09:30:34   10          THE COURT:  So you're telling me if the device

09:30:37   11   communicates with the -- I'll call them appliances, be it

09:30:43   12   television or sound system or something else, if the base

09:30:48   13   station communicates with these appliances by using an

09:30:53   14   existing signal or protocol that came from the

09:30:58   15   manufacturer, then in your view, they don't meet this claim

09:31:00   16   whatsoever?

09:31:00   17          MR. LANDIS:  Yes, Your Honor, that's my view, they

09:31:05   18   do not meet this claim.

09:31:06   19          THE COURT:  Wasn't -- and correct me if I'm wrong,

09:31:09   20   Mr. Landis, but wasn't the process of compacting the

09:31:14   21   information part of the inventiveness of this patent, so

09:31:21   22   because there were so many devices and so many existing

09:31:24   23   signals or protocols out there, wasn't part of what made

09:31:29   24   this unique the ability to compact that information and use

09:31:32   25   those existing means of communication to interact with the

09:31:36  1  appliances?

09:31:38  2      That seems -- if that's true, that seems to be counter

09:31:41  3  to your argument that the device has to create something

09:31:45  4  new because they couldn't store all the pre-existing

09:31:50  5  communication protocols.

09:31:52  6          MR. LANDIS:  Your Honor is correct, but with -- in

09:31:58  7  my opinion, with a slight modification.

09:32:00  8          Yes, compaction or compression to get down to use

09:32:04  9  the 10 kilobytes memory that was available at the time was

09:32:07  10  an important part of this invention.  But to do that, they

09:32:12  11  had to generate and create this new command and control

09:32:17  12  protocol.  That's the way they got to the compaction.

09:32:21  13  That's the way they were able to utilize the space they had

09:32:27  14  available.

09:32:28  15          They couldn't do it through straight compression

09:32:30  16  of the stuff they got.  They had to find a new scheme,

09:32:34  17  which is delineated in this patent for column after column.

09:32:39  18      They had to find a new scheme in order to have that

09:32:43  19  information available.  That new scheme allowed -- allowed

09:32:47  20  the compaction or the compression to occur such that the

09:32:50  21  memory space available was sufficient.

09:32:53  22          THE COURT:  All right.  I'm following your

09:32:55  23  argument.  What else?

09:32:57  24          MR. LANDIS:  That's all I have, Your Honor.

09:32:58  25          THE COURT:  Mr. Keyhani, I'll give you a brief

09:33:02   1   rebuttal on this.

09:33:02   2          MR. KEYHANI:  Thank you, Your Honor.

09:33:04   3          On the term "plurality," it's Plaintiff's

09:33:11   4   position, and it was the case -- it was the position the

09:33:16   5   parties took in the prior case and the Court took, the term

09:33:22   6   "plurality" was never construed in the prior case.

09:33:26   7      We submit that the plain and ordinary meaning of the

09:33:28   8   term "plurality" understood in the context of the

09:33:30   9   specification by one of ordinary skill in the art is -- is

09:33:34  10   sufficient.

09:33:37  11          There's no support for narrowing or redefining a

09:33:40  12   term if the term itself is -- is clear or reasonably clear

09:33:46  13   to one of ordinary skill in the art.

09:33:48  14          THE COURT:  What is --

09:33:49  15          MR. KEYHANI:  When we speak about -- yes?

09:33:52  16          THE COURT:  What is your understanding of what a

09:33:55  17   person of ordinary skill in the art would consider or know

09:33:57  18   plurality to mean?

09:33:58  19          MR. KEYHANI:  In the context of the specification,

09:34:01  20   Your Honor, I -- I'll take a quote from this Court in the

09:34:04  21   prior case when -- when this Court in -- in its opinion on

09:34:13  22   summary judgment defined the object of the invention,

09:34:18  23   which -- the very object of the invention is to facilitate

09:34:23  24   communication with different third-party external devices.

09:34:26  25          So different various -- that's the meaning in the

09:34:30  1   context -- that's the ordinary meaning.  We don't need to

09:34:33  2   change it.  We don't need to change the word "plurality" to

09:34:36  3   anything because plurality in this context means a variety.

09:34:39  4   It means different.

09:34:42  5        And if you -- if we were to interpose Mr. Landis's

09:34:47  6   definition or re -- or construct the term "plurality," then

09:34:52  7   it would be to facilitate -- then -- then the preamble

09:34:56  8   would have to be reinterpreted of this -- of the claim,

09:35:02  9   would be to communicate with two or more -- with two or

09:35:06  10  more third-party external devices or whatever number

09:35:09  11  Mr. Landis is arguing, but it could be one device.

09:35:14  12       It's the capability of a microprocessor, because this

09:35:18  13  is -- this is a claim that speaks to the capability.  A

09:35:21  14  microprocessor for generating.  It doesn't say that the

09:35:25  15  microprocessor is generating.  A microprocessor for

09:35:29  16  generating a plurality of communication protocols.  And the

09:35:37  17  preamble, Your Honor, as I mentioned earlier -- and -- and

09:35:38  18  we can look at any number of references in the

09:35:41  19  specification, but the claim language is very instructive

09:35:43  20  and provides guidance.

09:35:46  21       A communication -- I'm reading the preamble of

09:35:49  22  Claim 1.  A communication command control and sensing

09:35:51  23  system for communicating with a plurality of external

09:35:55  24  devices.

09:35:56  25       And this Court, which is consistent with the plain

09:35:59  1  and ordinary meaning of the invention, stated:  The purpose

09:36:02  2  of this invention is, quote, to facilitate communication

09:36:06  3  with different third-party external devices.

09:36:09  4       So implicitly, Your Honor, we submit that the

09:36:11  5  Court, you know, already sort of, you know, understood

09:36:16  6  the -- or referenced the -- the purpose of the -- of the

09:36:22  7  invention and also uses the word different.  And we think

09:36:27  8  that word different third-party external devices, if you

09:36:31  9  were -- if you were to change the word in the preamble to

09:36:34  10 different, communicating with different external devices,

09:36:36  11 you would capture the very essence of this patent.

09:36:39  12      The ability, the capability, Your Honor, for a

09:36:41  13 microprocessor to communicate would -- with different or

09:36:47  14 variety -- with different external devices, it -- there is

09:36:50  15 no indication in the specification whatsoever anywhere that

09:36:54  16 there's any quantification.

09:36:57  17      Other cases and interpretation of language in other

09:36:59  18 cases are not relevant to the construction of a term or

09:37:02  19 understanding of a term within a patent where the

09:37:06  20 specification -- the intrinsic evidence makes crystal clear

09:37:10  21 that that is the purpose of the invention -- --

09:37:13  22          THE COURT:  Let me --

09:37:13  23          MR. KEYHANI:  -- and it would frustrate the

09:37:16  24 purpose to change the term.

09:37:20  25          THE COURT:  -- let me stop and ask you a question.

09:37:21 1  Isn't it the case that in the claim construction opinion
09:37:24 2  entered in the earlier case, the HTC case, that plurality
09:37:26 3  was noted to be two or more?  Are you now telling me that
09:37:29 4  as much as you want to embrace the prior opinion on
09:37:32 5  generating and processing -- excuse me, generating and
09:37:35 6  creating, you don't want to embrace it on plurality?
09:37:37 7        MR. KEYHANI:  Your Honor, I -- we -- we do.
09:37:42 8  I'm -- I'm not familiar -- that's not my understanding.  I
09:37:45 9  apologize, Your Honor.  I did not -- I did not read that
09:37:48 10 out of the -- out of the prior construction, Your Honor.
09:37:50 11       THE COURT:  I -- I would refer you to the
09:37:52 12 construction in the prior opinion relating to plurality of
09:37:57 13 home entertainment systems, Claim 26.
09:38:00 14       MR. KEYHANI:  I'm going to take a look at that,
09:38:03 15 Your Honor.
09:38:03 16       THE COURT:  I may be wrong, but -- it's been
09:38:05 17 awhile, but that's my recollection.
09:38:12 18       Try Page 54 of the claim construction opinion in
09:38:15 19 the earlier case.
09:38:16 20       MR. KEYHANI:  Thank you, Your Honor.  On Page 54,
09:38:41 21 after the reference to the excerpt that the Court
09:38:46 22 references, it states:  The specification -- I'm reading
09:38:48 23 off of the -- the first sentence after the -- the quoted
09:38:54 24 language of the specification on Page 54 of the opinion.
09:38:58 25       The specification mentions various devices that

09:39:03  1   may be part of the home entertainment system.  The '967

09:39:03  2   patent provides no special needs to determine home

09:39:12  3   entertainment system.  The Court here uses the term

09:39:13  4   "various devices," and we agree with that, Your Honor.  The

09:39:15  5   specification mentions various devices that may be part of

09:39:19  6   the home entertainment system.

09:39:20  7          And so the reference to -- and the -- and earlier,

09:39:24  8   on Page 53, Your Honor, it says:  The specification -- this

09:39:28  9   is at the bottom of Page 53 under -- under the heading

09:39:33  10  The Specification, underlined.

09:39:35  11     The specification references a plurality of external

09:39:38  12  devices that may be used in relation to describe the

09:39:41  13  invention, for example -- and it goes on and cites to this

09:39:44  14  excerpt, Your Honor, Column 20, Lines 41 through 22.

09:39:49  15         THE COURT:  Let me -- let me stop you,

09:39:51  16  Mr. Keyhani.  I'll -- I'll be more precise in my direction.

09:39:54  17         Page 54 of the prior claim construction opinion

09:39:59  18  under the Section that says Conclusion, the second

09:40:02  19  paragraph --

09:40:03  20         MR. KEYHANI:  Oh.

09:40:05  21         THE COURT:  -- the fourth line down of the second

09:40:09  22  paragraph says:  On balance, the Court finds that the

09:40:12  23  plurality, parentheses, i.e., two or more, close

09:40:16  24  parentheses, of home entertainment systems are separate

09:40:20  25  from the previous claimed base station and handset.  That's

09:40:25  1  the sentence I'm referring to.

09:40:26  2        MR. KEYHANI:  Yes, Your Honor.  We -- I see that,

09:40:30  3  and I -- I did not read that, Your Honor -- the, i.e., and

09:40:35  4  the parentheses as a specific construction of the Court.  I

09:40:40  5  read the description, the Court describing the -- what I

09:40:46  6  just read above, referencing various -- the specification

09:40:50  7  mentions various devices.

09:40:51  8        Your Honor, I would submit -- we would submit that

09:40:56  9  in the abstract, if I may, or in -- you know, in maybe

09:41:02  10  common lingo, the term "plurality" might mean two or more.

09:41:07  11  But in this specific context, if you really read the

09:41:10  12  specification, as the Court describes it above, it says:

09:41:12  13  The specification mentions various devices.  And this is

09:41:15  14  discussing -- you know, I'm not going to argue what the

09:41:18  15  Court meant.

09:41:19  16        THE COURT:  No.

09:41:20  17        MR. KEYHANI:  But -- so I apologize if I -- if it

09:41:23  18  sounds like -- we're not trying to do that.  It just -- the

09:41:27  19  Court's sort of intuitive interpretation -- and this was

09:41:30  20  also with the input of the Court's presumably technical

09:41:34  21  expert or consultation, is consistent with our reading of

09:41:37  22  that.

09:41:38  23        And so that's how we read it.  And we think we're --

09:41:40  24  it's consistent with that, Your Honor, that it's -- that it

09:41:44  25  really is about various -- it's really about -- and -- and

09:41:47   1   also, the Court's reference in the summary judgment opinion

09:41:50   2   also talks about to facilitate -- the purpose of the

09:41:56   3   invention is to facilitate communication with different

09:41:59   4   third-party devices, various devices.

09:42:00   5             Now, keeping in mind, Your Honor --

09:42:00   6             THE COURT:  You're going to have to --

09:42:03   7             MR. KEYHANI:  -- various --

09:42:03   8             THE COURT:  -- you're going to have to slow down

09:42:05   9   if you're going to read like that.

09:42:07  10             MR. KEYHANI:  I'm sorry.  The term "various," Your

09:42:11  11   Honor, and the term "different" does not -- is not

09:42:17  12   inconsistent, Your Honor, with two or more.  They could be

09:42:20  13   two or more.  But it's a -- it's a nuance, because the --

09:42:25  14   the -- the preamble states that this is a -- a

09:42:29  15   microprocessor for generating.

09:42:31  16             So it's the capability to do this -- this --

09:42:35  17   whatever comes next, for generating.  The Court has taken

09:42:39  18   the position clearly, and we agree with that position, that

09:42:41  19   it's about the capability to do -- the capability to do

09:42:46  20   these various things, the capability to communicate with

09:42:49  21   various devices.

09:42:50  22             Now, I guess the question is this.  If we define

09:42:55  23   it -- plurality as having to be two, let's just play that

09:42:59  24   out for a moment.  If we say plurality means two or more,

09:43:03  25   what are we excluding?  We're excluding one.

09:43:08  1          So would -- would Salazar -- would the invention

09:43:11  2  that communicates -- would a communication command control

09:43:16  3  and sensing system, Your Honor, that communicates with one

09:43:19  4  external device, would that not be within the plurality?

09:43:23  5          Does it have to communicate with -- does the patent --

09:43:26  6  does the invention really teach that it must communicate

09:43:29  7  with two or more, or is the term "plurality," which does

09:43:32  8  not need construction, Your Honor, really mean what the

09:43:34  9  Court in at least one section described it, as we

09:43:39  10  understand it, as the purpose of the invention articulated

09:43:41  11  by the Court itself is to facilitate communication with

09:43:46  12  different third-party external devices, which would -- we

09:43:50  13  submit is a nuance, but it is important because it

09:43:54  14  captures -- we're all trying to capture what the intent --

09:43:58  15  what one of ordinary skill in the art would understand is

09:44:02  16  the intent and to -- and -- and a disclosure, and it really

09:44:05  17  is about various -- it's about different.  And those are

09:44:07  18  words that we find both in the Court's claim construction

09:44:11  19  language.

09:44:12  20          Again, the Court -- it's the Court's construction,

09:44:14  21  so I'm not going to put words in your -- or try to

09:44:17  22  interpret your mind, but that's how we see it as most

09:44:20  23  consistent.  And we don't think it requires construction.

09:44:23  24          The experts during trial in the last case did not

09:44:25  25  have any problem, you know, interpreting -- if Your Honor

09:44:31  1  recalls, this claim, and many claims they use the word

09:44:36  2  "plurality," both experts -- both Plaintiff's and

09:44:37  3  Defendant's expert didn't seem to have any difficulty

09:44:40  4  understanding and applying that, Your Honor.

09:44:42  5        THE COURT:  If it's capable of communicating with

09:44:45  6  only one appliance, how is that various?  One is not

09:44:48  7  various.

09:44:51  8        MR. KEYHANI:  Your Honor -- I'm sorry, but one or

09:44:53  9  more -- and they're not limited to one, Your Honor.  Yes,

09:45:00  10  one is not various, Your Honor.  That's -- that's correct.

09:45:04  11    All we're saying is it's one or more.  Not limited

09:45:08  12  to -- it's not a quantification we're saying.  It's a

09:45:11  13  plurality -- in the context means a variety, many, any --

09:45:15  14  any one of which, any one of which, different.

09:45:18  15        As the Court noted, the purpose of the invention

09:45:20  16  is to facilitate communication with different external

09:45:26  17  devices, various external devices, one or more external

09:45:29  18  devices, any number of external devices.

09:45:31  19        But it's not really about specifically limiting

09:45:33  20  the claim.  It must communicate with this number of

09:45:35  21  devices.  That was not the intent.  I don't believe one of

09:45:38  22  ordinary skill in the art would understand it to limit it

09:45:42  23  to any particular -- nowhere in the specification can

09:45:46  24  Landis or -- you know, point out anywhere where it limits

09:45:49  25  the communication to external devices to any particular

09:45:52  1  number of devices.

09:45:54  2        It's simply, as the Court summarized before the

09:45:56  3  conclusion, various -- the specification mentions various

09:46:01  4  devices that may be part of the home entertainment system,

09:46:05  5  and there was a reference to a plurality of devices.

09:46:07  6        And that's all I have, Your Honor.

09:46:11  7        THE COURT:  All right.  Please -- please be

09:46:14  8  careful that you refer to opposing counsel as Mr. Landis,

09:46:17  9  not just Landis.

09:46:19 10        MR. KEYHANI:  I -- I apologize, Your Honor.

09:46:20 11        THE COURT:  All right.  Do you have anything for

09:46:21 12  me very quickly on the generating or creating before we

09:46:24 13  move on?

09:46:24 14        MR. KEYHANI:  No, Your Honor.  It's -- other than

09:46:29 15  to say that -- I guess one point I do have -- just one

09:46:33 16  point, that Your Honor is -- is correct and -- and -- and

09:46:38 17  we agree that the -- the claim element that -- as Your --

09:46:43 18  as Your Honor described that involves compacting and com --

09:46:46 19  compressing, the compression concept of parameter sets to

09:46:52 20  recreate command code sets, Your Honor, that really tells

09:46:55 21  us that, in fact -- that is clear guidance that the notion

09:47:01 22  here or the concept here, the invention here is about

09:47:04 23  taking information, as Your Honor noted, and using that

09:47:09 24  information, the parameter sets, compressing the parameter

09:47:14 25  sets, or taking in the -- the parameters -- the parameter

09:47:18   1   sets and then recreating command codes.

09:47:21   2          But there is information to start with.  It is not

09:47:24   3   from the thin air.  And it is a finite -- it is a creation

09:47:27   4   from a finite universe of information.  There's no question

09:47:31   5   about that.

09:47:31   6          It would be -- I -- I don't want to use this word.

09:47:35   7   It would be nonsensical to try -- for its device or not

09:47:40   8   possible -- as far as we know, it's certainly not disclosed

09:47:43   9   by Mr. Salazar, to create commands from the thin air.

09:47:46   10         What are you -- what are you -- what are you

09:47:48   11   creating commands for?  You're creating commands for

09:47:52   12   specific devices that have specific demand -- commands.

09:47:56   13   That's what the commands are being created for.  You're

09:47:58   14   taking parameters, information, and using that information

09:48:01   15   to recreate -- and the recreation is really the creation of

09:48:06   16   commands that can communicate.

09:48:07   17         But you're doing it by compression.  So this

09:48:09   18   brings an efficiency and a memory-saving feature to the

09:48:14   19   device that, as Your Honor noted, is a key aspect of the

09:48:19   20   inventiveness, which the examiner also noted during the

09:48:21   21   prosecution.

09:48:22   22         So you're taking information and then using this

09:48:24   23   information to create the commands, but you're not starting

09:48:27   24   off with nothing, Your Honor.  You're starting with

09:48:29   25   information.

09:48:29  1                THE COURT:  I understand your argument.

09:48:30  2                MR. KEYHANI:  Thank you, Your Honor.

09:48:30  3                THE COURT:  All right.  Let's move on to the next

09:48:32  4  term for construction.  This -- this emanates from Claim 2

09:48:40  5  of the patent-in-suit, "selector control by said

09:48:45  6  microprocessor for enabling," et cetera.

09:48:48  7                Let me hear from -- let me hear from the Plaintiff

09:48:52  8  first -- excuse me -- on this.

09:48:54  9                MR. KEYHANI:  Is this the term "selector," Your

09:48:57 10  Honor?

09:48:57 11                THE COURT:  Yes, "selector controlled by."

09:49:01 12                MR. KEYHANI:  Thank you, Your Honor.

09:49:09 13                THE COURT:  I don't think you want me to read all

09:49:10 14  of that language into the record.  I think we all

09:49:13 15  know what --

09:49:13 16                MR. KEYHANI:  No, no -- yes -- yes, we do.  Yes,

09:49:15 17  Your Honor.

09:49:15 18                We don't -- the -- the Plaintiff's position is

09:49:20 19  we -- we agree.  We accept the Court's construction.  We

09:49:24 20  don't need to redefine, or I should say deference to the

09:49:28 21  plain and ordinary meaning of this term.

09:49:31 22                The Defendant -- Defendants -- or Mr. Landis

09:49:35 23  has -- argues that this should be defined as a multiplexer

09:49:39 24  or a demultiplexer.

09:49:44 25                These terms do not appear in the specification

09:49:48   1   anywhere, and I'm not sure exactly what they mean.  I have

09:49:52   2   to look them up.  But there's no reference whatsoever in

09:49:56   3   the specification.

09:49:56   4          The selector is -- has a plain and ordinary

09:49:59   5   meaning.  It's a simpler term itself.  It's the term that's

09:50:03   6   used in the specification.

09:50:04   7          There are only two bases, Your Honor -- as Your

09:50:07   8   Honor is aware, that justify departing from the, you know,

09:50:12   9   plain and ordinary meaning.  And one is if the patent owner

09:50:16  10   or the patentee serves as a lexicographer, or the patent

09:50:21  11   owner disavows the full scope of the claim, which that must

09:50:26  12   be by clear and unmistakable surrender.  There is no

09:50:30  13   lexicography here.  The patentee never tried to redefine

09:50:36  14   the word "selector" anywhere in the -- in the

09:50:37  15   specification.  And there is no clear and unmistakable

09:50:41  16   surrender of any construction or definition of selector.

09:50:43  17          So this just -- and quite frankly, Your Honor,

09:50:46  18   aside from all of that, aside from the fact that there's no

09:50:49  19   reason to change the term and it doesn't meet the two

09:50:53  20   required tests, it would be more confusing I -- we believe

09:50:56  21   for the jury anyway to try to use a term -- a more

09:50:59  22   complicated term that's not even used by the specification.

09:51:01  23          So we don't think this is necessary.  No

09:51:04  24   construction is necessary.  The Court's prior construction

09:51:06  25   in the prior case -- or position, I should say -- I think

09:51:11  1  there was no construction -- should just stand, Your Honor.

09:51:13  2        THE COURT:  All right.  Let me hear from the

09:51:14  3  Defendant.

09:51:16  4        MR. WITTENZELLNER:  Good morning, Your Honor.

09:51:17  5  John Wittenzellner for Defendants and intervenors.  May it

09:51:20  6  please the Court.

09:51:20  7        THE COURT:  Please proceed.

09:51:22  8        MR. WITTENZELLNER:  Thank you, Your Honor.

09:51:22  9        I'd like to start with Slide 13.

09:51:27  10       THE COURT:  We're not going to use slides.

09:51:27  11       MR. WITTENZELLNER:  Your Honor --

09:51:28  12       THE COURT:  We're not going to use slides since

09:51:31  13  the other side didn't get them before the hearing.  Just --

09:51:34  14  just give me your argument.

09:51:35  15       MR. WITTENZELLNER:  Okay, Your Honor.  Will do.

09:51:37  16       One of the main objectives of this invention is to

09:51:41  17  provide two full-way communication, whether it be via

09:51:46  18  infra-red or radio frequency communication links.  And this

09:51:49  19  is -- one example of this is Column 1, Lines 34 through 36

09:51:53  20  of the patent.

09:51:54  21       And this allows a system to be able to use either

09:52:00  22  type of communication, IR or RF, as a backup.  So, for

09:52:06  23  example, if the RF fails, the infra-red can be used in its

09:52:10  24  place.  And that comes from Column 1, Line 34 through 36,

09:52:15  25  of the specification.

09:52:16   1            So with that objective in mind, as well as

09:52:19   2   additional disclosures in the specification, we submit that

09:52:21   3   it is clear that the selector is a

09:52:25   4   multiplexer/demultiplexer.

09:52:26   5            Now, opposing counsel said that there's no

09:52:31   6   reference in the specification to a

09:52:35   7   multiplexer/demultiplexer.  The term not used.

09:52:36   8            I agree that the term is not expressly used, but

09:52:41   9   it's our position that when a person of ordinary skill in

09:52:44   10  the art were to look at the specification, as well as

09:52:47   11  Figure 3, that says multiplexer/demultiplexer to a skilled

09:52:52   12  artisan.

09:52:53   13           THE COURT:  Let me ask you this --

09:52:54   14           MR. WITTENZELLNER:  Looking at --

09:52:55   15           THE COURT:  -- let me ask you -- let me ask you

09:52:57   16  this, counsel.  Respond to the argument that this is a

09:53:01   17  thinly-veiled attempt to import a limitation, that

09:53:06   18  multiplexer/demultiplexer is not spelled out in the patent

09:53:09   19  and it's a -- it's a clear narrowing of selector strictly

09:53:15   20  for purposes of avoiding infringement.  What -- what's your

09:53:18   21  bottom-line argument to that?

09:53:20   22           MR. WITTENZELLNER:  Sure, Your Honor.

09:53:20   23           Our bottom-line argument would be twofold.

09:53:24   24  First, the -- Figure 3, as it's depicted and shown in the

09:53:31   25  RF transceiver and IR transceiver connected two inputs to

09:53:36   1   be combined down to a single common path to the

09:53:38   2   microprocessor, and that's during reception or receiving,

09:53:41   3   and the same common path going back out during transmission

09:53:45   4   is a hallmark of a multiplexer/demultiplexer.

09:53:48   5          In addition, it's also consistent with the

09:54:00   6   objectives of the invention, the objective being that

09:54:03   7   ability to -- as Mr. Landis will discuss in further detail

09:54:05   8   later, for the microprocessor to use common communication

09:54:10   9   protocols, whether it's transmitting via RF or infra-red.

09:54:14   10         And, again, this falls back to one of the

09:54:17   11   objectives that I just discussed of being able to

09:54:22   12   communicate via either means and to fall back on one of

09:54:26   13   those methods of communication if the other should fail.

09:54:29   14         And so I think a person of ordinary skill in the

09:54:33   15   art looking at what the patent was trying to accomplish,

09:54:38   16   its ability to -- to share a common path out of the

09:54:40   17   processor, and then throughout that common path to either

09:54:46   18   the infra-red transceiver or the RF transceiver, combined

09:54:52   19   with Figure 3 which, as we described in our briefing,

09:54:55   20   clearly shows the RF/IR selector acting as a

09:54:59   21   multiplexer/demultiplexer, but that person of ordinary

09:55:00   22   skill in the art would look at this and say that's a

09:55:02   23   multiplexer/demultiplexer, even though the term itself, as

09:55:06   24   we admit, is not expressly used in the specification.

09:55:10   25         THE COURT:  Let me ask this question.  In these

09:55:14  1  competing constructions that the parties have proposed,

09:55:17  2  there seems to be a variance between your use of the claim

09:55:23  3  language as desired and the Plaintiff's suggestion as

09:55:26  4  selected by a user.  Is there a fight between the parties

09:55:30  5  here on that difference, or is that a distinction without a

09:55:35  6  difference?

09:55:35  7           MR. WITTENZELLNER:  Your Honor, I believe that

09:55:37  8  comes from the earlier recitation in Claim 1 about -- about

09:55:44  9  the desired command code set.  But that's not really the

09:55:48  10  issue that we have a dispute over with respect to this

09:55:53  11  term.

09:55:53  12           THE COURT:  Okay.

09:55:54  13           MR. WITTENZELLNER:  One other -- if -- if I may,

09:55:56  14  Your Honor, one other thing that I meant to add is that

09:55:59  15  nothing in the patent excludes the use of IR or infra-red

09:56:04  16  or radio frequency at the -- at the same time.

09:56:08  17       And allowing that capability is yet another hallmark

09:56:12  18  of what's provided by a multiplexer/demultiplexer.

09:56:15  19           THE COURT:  All right.

09:56:17  20           MR. WITTENZELLNER:  And if --

09:56:17  21           THE COURT:  Thank you.

09:56:18  22           MR. WITTENZELLNER:  -- if the Court has no further

09:56:19  23  questions, that's -- we're finished with this term.

09:56:21  24           THE COURT:  Then we're finished with this term.

09:56:24  25           Let's go on to the next one --

09:56:26   1         MR. WITTENZELLNER:  Thank you, Your Honor.

09:56:26   2         THE COURT:  -- which is "a communication protocol"

09:56:31   3   from the independent claims.  Let me hear from Plaintiff

09:56:34   4   first -- well, actually, Plaintiff is proposing plain and

09:56:39   5   ordinary meaning.

09:56:39   6         Let's reverse the order.  Let me hear from the

09:56:43   7   Defendants first on this.

09:56:46   8         MR. LANDIS:  Your Honor, Todd Landis again for

09:56:48   9   Defendants/intervenors.

09:56:50   10        Your Honor, the real crux of this argument is what

09:56:55   11   is a protocol, and does it differ from a -- a signal or

09:57:04   12   more particularly, a carrier signal?

09:57:05   13    I think the confusion that has happened a lot in the

09:57:07   14   previous case and in this is what is -- you know, what is

09:57:16   15   the difference between a protocol and a carrier signal?

09:57:19   16        In these claims, we have infra-red, we have radio

09:57:22   17   frequency.  Both of those are carrier signals.  They're --

09:57:26   18   they're means to carry something.  There are no specific

09:57:32   19   protocols that are called IR protocol or RF protocol.

09:57:37   20   There are protocols that use RF.  There are protocols that

09:57:40   21   use IR.  There are protocols that can use both.

09:57:45   22        But the protocol itself is a set of rules and

09:57:53   23   formats for messages that would be communicated between two

09:57:56   24   devices.  Those rules and formats are what get carried on

09:58:01   25   either an IR transmission or an RF transmission.

09:58:11  1          And so the real dispute here is just making
09:58:13  2  protocol what it's supposed to be, because in the previous
09:58:15  3  case, Plaintiff's expert tried to argue that protocol was
09:58:18  4  something much broader than what it really is.
09:58:21  5      And so we believe that -- that we have to limit this
09:58:24  6  down to what it really is, which is the rules and formats
09:58:28  7  of messages that are exchanged between devices so that they
09:58:31  8  can communicate.
09:58:33  9          THE COURT:  Let me -- let me ask --
09:58:34 10          MR. LANDIS:  It is not how those messages are
09:58:37 11  carried.
09:58:37 12          THE COURT:  Let me ask you this, Mr. Landis.  In
09:58:40 13  determining what it really is, I believe is the way you put
09:58:43 14  it, the Court's been referred to a 2016 dictionary
09:58:47 15  definition.
09:58:52 16      Tell me the level of appropriateness for the Court to
09:58:54 17  apply a 2016 definition to a patent that was filed in 1995.
09:59:00 18  It clearly post-dates the document at issue here.
09:59:05 19          MR. LANDIS:  Your Honor, I -- I completely agree
09:59:08 20  that that is not something that I would generally do to
09:59:12 21  the -- you know, present to the Court, you know, and I --
09:59:15 22  and, again, I'm -- I'm not making excuses, Your Honor.  The
09:59:18 23  fact of the matter is, I didn't have access to the other
09:59:20 24  earlier Newton's Telecom Dictionaries, you know, and I
09:59:24 25  still don't have access to them.  I still couldn't get

09:59:27  1  access to them.

09:59:28  2          But, you know, from what I understand, the earlier

09:59:32  3  definitions wouldn't be any different from this definition.

09:59:35  4  You can go all the way back to the early 90's, and the

09:59:39  5  definition of protocol is going to remain the same.

09:59:42  6      It is going to be a set of rules and formats for

09:59:44  7  messages that are exchanged.  That's the whole purpose of a

09:59:47  8  protocol is to have a common set of rules and formats so

09:59:50  9  that everyone that's manufacturing these devices can know

09:59:55  10 that if I send a -- if I format a message in a certain way,

09:59:59  11 it's going to cause a certain operation.

10:00:01  12         And that's the whole purpose of having a protocol,

10:00:05  13 it's the whole reason these organizations come up with

10:00:08  14 protocols, like Bluetooth, or, you know, WiFi protocols and

10:00:13  15 numerous others.

10:00:15  16     It is so that we don't have -- (audio beeps)

10:00:18  17 manufacturers have individual messages and formats.  We

10:00:22  18 have one universal set of rules, set of formats that

10:00:26  19 everyone using a Bluetooth device, for example, will use.

10:00:31  20         THE COURT:  All right.  Let me hear from Plaintiff

10:00:33  21 in response.

10:00:34  22         MR. KEYHANI:  Your Honor, the patentee, who was

10:00:41  23 clearly one of skill in the art -- and the Court became

10:00:45  24 familiar with Mr. Salazar and the patent attorney also who

10:00:49  25 drafted this.  And both of the patentees -- there's two

10:00:53  1    patentees -- they chose to use the word "communication

10:00:58  2    protocol," "a communication protocol."  It's -- the entire

10:01:02  3    specification is filled with references to communication

10:01:08  4    protocol.

10:01:08  5            There is no reference anywhere in the

10:01:11  6    specification to the term or what Defendants' counsel is

10:01:17  7    arguing in position of this motion under rules.  It's

10:01:22  8    broader than that.  It's nuanced.  And it doesn't need to

10:01:25  9    be defined.

10:01:26  10           The -- the parties tried the case, and there was

10:01:29  11   no -- Defendants' expert in the prior case did not have a

10:01:34  12   difficult time understanding the term "communication

10:01:37  13   protocol," nor did he ever indicate that in his testimony.

10:01:43  14       It may not be defined -- plain and ordinary meaning

10:01:46  15   controls.  There's no indication that the patentee wanted

10:01:48  16   to redefine it in any way, or there's been no clear or

10:01:53  17   unmistakable surrender.

10:01:55  18           And so it's really a narrowing or a tweaking in

10:01:59  19   a -- in a narrowing sense, again, to -- to limit the scope

10:02:02  20   of the claim.  And there's no basis to do that.  It's a

10:02:05  21   protocol.  It -- it might include rules, but it's not

10:02:09  22   limited to rules.  And there's no reason to limit that.

10:02:12  23   There's no reference.

10:02:15  24           An external -- you know, some dictionary from 2016

10:02:18  25   has no -- first of all, external evidence has no real place

10:02:22   1   here.  We have an intrinsic record that's complete.  And

10:02:26   2   there's no testimony -- we have the opinion of Defendants'

10:02:30   3   counsel, but we have no expert testimony to support how one

10:02:33   4   of ordinary skill in the art would -- would believe that

10:02:37   5   there should be a unique construction for this term or it's

10:02:41   6   necessary.

10:02:42   7            And so we see no reason to change what's there.  I

10:02:45   8   mean, that's a term that's used -- if you search the

10:02:50   9   patent, you know, numerous times, probably over a dozen

10:02:53  10   times -- over a dozen times probably.

10:02:57  11        And there's no reason -- and so -- so we're -- we're

10:02:59  12   going to be replacing what the patentee chose to use as --

10:03:03  13   as his term -- as the patentees chose to use as his term to

10:03:08  14   define his invention.  And, I think, Your Honor, he's

10:03:11  15   entitled to define his invention as he chose.

10:03:16  16            THE COURT:  All right.  Let's move on.  I think

10:03:18  17   I've heard enough on this one.  Let's heard on -- let's

10:03:21  18   turn on -- let's move on to "a plurality of reprogrammable

10:03:24  19   communication protocols."

10:03:26  20            And here, the Defendant tells me that this is

10:03:31  21   indefinite because protocols can't be reprogrammed.  So let

10:03:34  22   me hear the argument from Defendant first, and then I'll

10:03:37  23   hear Plaintiff's argument for plain and ordinary meaning.

10:03:42  24            MR. LANDIS:  Thank you, Your Honor.  Todd Landis

10:03:44  25   again for Defendants/intervenors.

10:03:46    1          Your Honor, the heart of this argument is -- and
10:03:48    2    we did put indefinite in our briefing, Your Honor.  We also
10:03:52    3    put in a construction.  We put indefinite because
10:03:55    4    reprogrammable is an adjective.  It's not a noun.  It's an
10:03:59    5    adjective.  And it's -- it's modifying communication
10:04:04    6    protocols.
10:04:04    7          So this argument does somewhat go back to the
10:04:08    8    argument we just had, which is what is a communication
10:04:10    9    protocol because we need to know whether that thing can be
10:04:13   10    reprogrammed or not.  And the fact of the matter is
10:04:17   11    communication protocols aren't programs.  They are sets of
10:04:21   12    rules and formats.  They are generally created by
10:04:25   13    organizations sitting in a boardroom somewhere writing out
10:04:29   14    a giant document which tells you how you're going to do
10:04:32   15    things.
10:04:32   16          And so to have a reprogrammable communication
10:04:36   17    protocol, if you're truly going to interpret those words,
10:04:39   18    which is what we're tasked with doing, then it would have
10:04:43   19    to be that the rules and the formats of that protocol can
10:04:48   20    be changed through programming.
10:04:50   21          THE COURT:  Well, let me stop you there --
10:04:52   22          MR. LANDIS:  That should be the --
10:04:53   23          THE COURT:  -- let me stop you there.  If we're
10:04:54   24    going to talk about adjectives and the intricacies of
10:04:59   25    English grammar, in your alternative construction, is

10:05:03  1  programming a noun or a verb?  Changed through programming,

10:05:09  2  is that something, or is that action?

10:05:12  3        MR. LANDIS:  So in -- in that context, Your Honor,

10:05:18  4  I -- I do believe it is a noun in that context because it

10:05:22  5  follows the -- the -- the -- the word "through."  So I

10:05:31  6  don't think, if I understand English well enough, that it

10:05:33  7  could be a verb.

10:05:34  8        But I'm not sure it changes my -- my argument,

10:05:37  9  because the -- the fact of the matter is what we're saying

10:05:41  10  here is something has to be able to be reprogrammed.

10:05:46  11      The thing that needs to be able to be reprogrammed

10:05:48  12  through programming are the sets of rules and formats.  Can

10:05:51  13  they be changed through programming?

10:05:55  14        THE COURT:  Is that programming limited to

10:05:58  15  software, in your view?

10:05:59  16        MR. LANDIS:  I mean, I think in a practical sense,

10:06:07  17  Your Honor, it could be firmware where -- where this --

10:06:11  18  this -- you know, the protocol could lie, but I think in --

10:06:15  19  for most practical purposes, it would be software.

10:06:19  20        THE COURT:  But you're not telling me it would be

10:06:21  21  limited to software?

10:06:22  22        MR. LANDIS:  I -- I'm not -- not saying it would

10:06:25  23  be limited to software.  I think my argument is more about

10:06:28  24  what needs to be changed through the programming as

10:06:32  25  opposed, you know, to -- to anything else.

10:06:34  1            So I'm not saying it would be limited to software.

10:06:36  2  I'm just saying that the thing that needs to be changed

10:06:39  3  would be the actual rules and formats of the communication

10:06:44  4  protocol.  That's the only way to make sense of this term.

10:06:47  5            We -- we believe the term is indefinite because no

10:06:49  6  one of skill in the art would ever consider a communication

10:06:52  7  protocol to be reprogrammable.  They are, you know,

10:06:54  8  generally done by organizations.

10:06:56  9            THE COURT:  Tell -- tell me what your evidence is

10:06:58 10  as to why no one of ordinary skill in the art would

10:07:02 11  consider a protocol to be reprogrammable.  Tell me what

10:07:06 12  supports that, other than your argument today.

10:07:08 13            MR. LANDIS:  So -- so -- so, Your Honor, what

10:07:12 14  supports that for me is just -- again, it's going back to

10:07:16 15  what we believe the proper definition of protocol is,

10:07:20 16  whether it's communication or any other type of protocol.

10:07:23 17  And that is that it's a set of rules and formats.  It's not

10:07:27 18  a program.

10:07:29 19            And because one of skill in the art would

10:07:32 20  understand that is the meaning of protocol, they would also

10:07:35 21  understand you can't -- you don't reprogram that.  It's not

10:07:38 22  a program.  You reprogram programs.  Whether they exist in

10:07:43 23  firmware or they exist just purely in software, that's

10:07:47 24  what's getting reprogrammed.

10:07:48 25            THE COURT:  All right.  So this is really a second

10:07:52   1   round of argument about what is or isn't a protocol?

10:07:55   2            MR. LANDIS:  In many ways, Your Honor, yes.

10:07:58   3            THE COURT:  Okay.  Let me hear from the

10:08:01   4   Defendants, please -- excuse me, the Plaintiff.

10:08:02   5            MR. KEYHANI:  Thank you, Your Honor.

10:08:03   6            Your Honor, the -- the claim language that

10:08:07   7   includes this -- this clause, a plurality of reprogrammable

10:08:10   8   communication protocols, is also part of a larger claim

10:08:14   9   element, a microprocessor -- I'm reading the first element

10:08:21  10   of the body of the claim:  A microprocessor for generating

10:08:25  11   a plurality of control signals used to operate said system,

10:08:29  12   said microprocessor creating a plurality of reprogrammable

10:08:34  13   communication protocols, for transmission to said external

10:08:38  14   devices -- devices wherein each communication protocol

10:08:40  15   includes a command code set that defines a signal -- the

10:08:44  16   signals that are employed to communicate with each one --

10:08:47  17   each one of said external devices.

10:08:48  18            One of ordinary skill in the art -- Mr. Salazar

10:08:52  19   and Mr. Molero, both clearly are skilled in the art, as

10:08:59  20   well as their patent attorney, fully understood -- you

10:09:02  21   know, fully understand and chose these words.

10:09:05  22            And one of ordinary skill in the art in the context --

10:09:07  23   context of the specification and the claim language would

10:09:10  24   understand what -- what the scope of this claim is, clearly

10:09:14  25   would understand the scope of this claim and would be able

10:09:17  1   to practice this claim.

10:09:18  2         There is no evidence that Defendants have brought

10:09:21  3   here or have referenced anywhere, any kind of evidence to

10:09:25  4   show that one of ordinary skill in the art would not

10:09:29  5   understand this term.  And even Defendants' counsel

10:09:33  6   concedes that -- which is true, which our experts would --

10:09:38  7   Plaintiff's experts certainly would -- would testify to at

10:09:41  8   trial that this is clearly understandable to one of

10:09:43  9   ordinary skill in the art, the scope of which is

10:09:45  10  understandable.

10:09:46  11        And reprogrammable and communication protocols in

10:09:49  12  this context -- in this context clear -- clearly can be

10:09:54  13  reprogrammable.  And that's what the patentees and that's

10:09:59  14  what their patent attorney drafted.  That's what the

10:10:02  15  patentees defined.  And there's no reason to -- no support.

10:10:06  16        And, certainly, Your Honor, Defendants do not bring

10:10:11  17  here -- let alone any evidence, do not bring clear and

10:10:14  18  convincing evidence, which is what is necessary under the

10:10:16  19  law, as Your -- as Your Honor is aware, to -- to -- to

10:10:22  20  claim or to make the argument that this would be, you know,

10:10:24  21  indefinite or one -- that one of skill in the art would not

10:10:27  22  understand the scope of this.

10:10:28  23        It's a very high burden, and we have no evidence

10:10:30  24  to support that whatsoever.  And there's no reason to

10:10:34  25  depart from the ordinary meaning of communication

10:10:36  1  protocols, which is, as Defendants' counsel argues, is part

10:10:42  2  of their -- the issue.  There's no reason to interpose this

10:10:45  3  definition of -- of rules or this -- this construction of a

10:10:49  4  set of rules into the definition of communication

10:10:54  5  protocols.

10:10:55  6          Again, as we -- we discussed earlier, there's no

10:10:57  7  such reference in the -- in the patent, and all we have is

10:10:59  8  attorney argument.

10:10:59  9          And so the plain and ordinary meaning should

10:11:01  10 stand, Your Honor.  And there's no reason to depart from

10:11:03  11 that.

10:11:03  12         THE COURT:  All right.  Thank you, counsel.

10:11:10  13         MR. KEYHANI:  Thank you.

10:11:10  14         THE COURT:  Let's move on to the next term, "such

10:11:13  15 that the memory space required to store said parameters is

10:11:16  16 smaller than the memory space required to store said

10:11:23  17 command code sets" from Claim 1.

10:11:24  18         Plaintiffs are telling me this should be plain and

10:11:27  19 ordinary meaning, and Defendants are telling me it's

10:11:29  20 indefinite.

10:11:29  21         Let me hear the Defendants' argument as to

10:11:32  22 indefiniteness first, and then I'll hear Plaintiff's

10:11:34  23 response.

10:11:37  24         MR. WITTENZELLNER:  Your Honor, John Wittenzellner

10:11:39  25 again.  May it please the Court.

10:11:39  1            THE COURT:  Please proceed.

10:11:40  2            MR. WITTENZELLNER:  The dispute here, Your Honor,

10:11:44  3  and why we believe this term is indefinite is because said

10:11:49  4  parameters, as recited in the claims, does not inform a

10:11:52  5  skilled artisan as to which of the previously recited

10:11:56  6  parameters that term refers to.

10:11:57  7            THE COURT:  So this is --

10:11:59  8            MR. WITTENZELLNER:  And this --

10:12:00  9            THE COURT:  -- this is an antecedent basis

10:12:01 10  argument?

10:12:01 11            MR. WITTENZELLNER:  Correct, Your Honor.

10:12:03 12            THE COURT:  Okay.

10:12:03 13            MR. WITTENZELLNER:  And when we look at the claim

10:12:08 14  language -- and this is in the memory device limitation --

10:12:13 15  when we unpack this, it becomes clear what the issue is.

10:12:18 16            Second line of that limitation, which is on

10:12:21 17  Column 26, recites a plurality of parameter sets.  And then

10:12:27 18  said parameters occurs later in the claim.

10:12:29 19            And I don't think that there's any controversy

10:12:32 20  that a parameter set can include more than one parameter.

10:12:38 21  But said parameters, as recited later, doesn't match up

10:12:42 22  with parameter set.

10:12:43 23            So that leaves the question of which parameters

10:12:46 24  within a plurality of parameter sets is it referring to?

10:12:49 25  And it can really refer to a pretty broad range of

10:12:56   1   parameters.  Putting aside the arguments earlier about the

10:12:59   2   ordinary meaning of plurality, a plurality of parameter

10:13:04   3   sets includes many individual parameters.

10:13:11   4        And so said parameters could refer to that large

10:13:14   5   universe of parameters.  It could refer to a subset of

10:13:21   6   parameter sets within that plurality.  It could refer to a

10:13:23   7   subset of parameters from all the parameter sets in the --

10:13:27   8   in the plurality, a subset of parameters from one parameter

10:13:32   9   set, or potentially individual parameters from different

10:13:35  10   parameter sets within the plurality of parameter sets.

10:13:41  11        And so we're left -- we're really left unable to

10:13:44  12   determine which one it refers to.  And this lack of

10:13:47  13   clarity, Your Honor, is a fatal flaw for the term because

10:13:50  14   the term calls for a comparison.

10:13:52  15        The memory space to store -- to store said

10:13:54  16   parameters must be smaller than the memory space required

10:13:59  17   to store said command code sets.

10:14:02  18        But given this large range, Your Honor, due to the

10:14:06  19   lack of clarity in the claim term, there's no way to make a

10:14:10  20   meaningful comparison.  For example, if said parameters is

10:14:13  21   interpreted to include only the smallest portion of a

10:14:17  22   plurality of parameter sets, this claim limitation may

10:14:20  23   necessarily be met rendering the entire claim term

10:14:25  24   superfluous.

10:14:26  25        Salazar argues on Page 6 of its reply brief that

10:14:31   1   said parameters clearly refers back to the parameter sets

10:14:37   2   previously referenced.  But I think they were very careful

10:14:39   3   in choosing their words.

10:14:41   4        What Salazar did not say, Your Honor, is that said

10:14:47   5   parameters refers to the actual recited term, which is the

10:14:50   6   plurality of parameter sets.  So we're still left with the

10:14:54   7   lack of clarity that renders the term indefinite.

10:14:57   8        THE COURT:  Let me -- let me --

10:14:58   9        MR. WITTENZELLNER:  We have nothing further.

10:15:00  10   Sorry, Your Honor.

10:15:00  11        THE COURT:  Let me ask you this,

10:15:02  12   Mr. Wittenzellner.  At one end of the spectrum, there's

10:15:05  13   absolutely perfect patent drafting.  At one end of the

10:15:09  14   spectrum, there's such horrific patent drafting that nobody

10:15:15  15   knows what the drafter is talking about.  That's a wide

10:15:18  16   spectrum, in my view.  And there are clearly places along

10:15:23  17   that spectrum where a reasonable person can't clearly

10:15:28  18   understand what's intended.

10:15:29  19        But there are also places along that spectrum

10:15:34  20   where it's somewhat imprecise, a little bit off, but not so

10:15:37  21   imprecise and not -- not so much off that a reasonable

10:15:42  22   person and a person of ordinary skill can't determine with

10:15:46  23   a fair amount of certainty what the patentee is talking

10:15:50  24   about.

10:15:50  25        And it appears to me there's a -- an argument

10:15:55  1  here, and I assume the Plaintiff will make it, that said --

10:16:08  2  the said parameters here does refer back to the plurality

10:16:13  3  of parameter sets and that this is not so imprecise, it's

10:16:19  4  not so -- so horribly vague that a reasonable person, a

10:16:25  5  person of ordinary skill wouldn't be able to read it and

10:16:28  6  know what's being talked about.

10:16:29  7         That's the argument I'd make if I was the

10:16:32  8  Plaintiff.  Tell me why that argument is wrong.  Tell me

10:16:36  9  why this is so far toward the other end of the spectrum

10:16:39  10  that no reasonable person would have any idea what the

10:16:42  11  patentee is talking about.

10:16:43  12         MR. WITTENZELLNER:  Certainly, Your Honor.

10:16:45  13         So I think the big issue here is that Plaintiff

10:16:48  14  did not make that argument in their reply brief and left

10:16:53  15  ambiguity in the term.

10:16:54  16         THE COURT:  Well, I'm -- I'm asking you about it

10:16:55  17  now.

10:16:56  18         MR. WITTENZELLNER:  Correct, Your Honor.

10:16:57  19         So if said parameters were to be construed to mean

10:17:03  20  the plurality of parameter sets introduced earlier in the

10:17:07  21  limitation, I would have a hard time arguing that that's

10:17:10  22  indefinite, Your Honor.

10:17:11  23         But what Plaintiff did in its reply brief is

10:17:16  24  Plaintiff said the memory space to require, quote, said

10:17:21  25  parameters refers to the parameter sets, not the plurality

10:17:24   1   of parameter sets.

10:17:25   2        So I believe they're still trying to leave a door

10:17:29   3   open for ambiguity in this claim term and leaving it

10:17:32   4   indefinite.

10:17:32   5        Now, to your question as to what -- sort of what

10:17:37   6   level of specificity is necessary, it's our position that

10:17:42   7   this term leans more toward the -- the side of not being --

10:17:48   8   or not having the necessary clarity because what we're --

10:17:52   9   we're hearing today with regards to whether or not

10:17:55  10   plurality means one or two -- two or more or one and also

10:17:59  11   the lack of clarity in which portion -- or if it's

10:18:04  12   totality, the plurality of parameter sets, this term that

10:18:13  13   parameters refers back to.

10:18:14  14        THE COURT:  All right.  Let me hear from Plaintiff

10:18:16  15   in response.

10:18:16  16        MR. KEYHANI:  Your Honor, I -- I think -- I don't

10:18:20  17   really have much to add.  I think Your Honor's statement of

10:18:24  18   our position is -- is spot on.  There is -- the question

10:18:27  19   isn't whether or not plain language is perfect, because I

10:18:31  20   frankly have litigated for many years patent cases, and

10:18:36  21   invariably there's language that could be a little more

10:18:40  22   clean or clear.

10:18:40  23        The question is whether it's so incomprehensible

10:18:45  24   to one of skill in the art.  And it's not.  Clearly -- I

10:18:48  25   mean, within the specification, there's interchangeable

10:18:50   1   reference to sets of parameters, parameter sets.

10:18:55   2          Even the Court in its opinion, you know, uses the

10:18:58   3   word "parameter" and "parameter sets" interchangeably.  And

10:19:01   4   the plurality of parameter sets -- they're all -- they're

10:19:06   5   clearly a reference to the same parameter sets.  And

10:19:08   6   there's no -- and one of ordinary skill in the art wouldn't

10:19:11   7   understand it any differently.

10:19:12   8          Could it have been -- you know, can claims be

10:19:16   9   drafted perhaps a little more precise and a little more

10:19:20   10  clearly?  Perhaps.  But there's no evidence, other than

10:19:23   11  attorney argument, that -- that the claim is not --

10:19:28   12  reasonably clear enough and precise enough to inform one of

10:19:33   13  skill in the art of the scope of the claim and what's

10:19:35   14  being -- and what the invention is -- is reciting and

10:19:40   15  teaching.

10:19:41   16         And so there's no -- there's no support for a

10:19:43   17  finding that this claim -- this claim element is

10:19:46   18  indefinite, Your Honor.

10:19:46   19         THE COURT:  Let me ask you this, Mr. Keyhani.  If

10:19:50   20  I understood Mr. Wittenzellner correctly, he effectively

10:19:53   21  told me that if the Court construed in this context said

10:19:58   22  parameters to be said plurality of parameter sets, he

10:20:03   23  really wouldn't have a problem.  If the Court were to do

10:20:08   24  that in this context, would the Plaintiff have a problem?

10:20:11   25         MR. KEYHANI:  Can you state that again, Mr. -- I

10:20:14  1    mean, Your Honor?

10:20:15  2         THE COURT:  If the Court were to construe said

10:20:18  3    parameters to be said plurality of parameter sets -- in

10:20:28  4    other words --

10:20:28  5         MR. KEYHANI:  So that --

10:20:29  6         THE COURT:  -- to effectively create the

10:20:32  7    antecedent basis that you say is there, he says is not

10:20:34  8    there, and he also says if it is there, you've inaccurately

10:20:38  9    referred back to it.

10:20:45  10        MR. KEYHANI:  Yes, I -- I think we wouldn't have a

10:20:47  11   problem with that.  We think it's implicitly understood to

10:20:51  12   one of skill in the art because it's really the capability

10:20:54  13   to create.  So you could say said parameter or plurality of

10:21:00  14   parameter sets.

10:21:01  15        THE COURT:  All right.

10:21:02  16        MR. KEYHANI:  However, of course, we're -- we're

10:21:05  17   not -- we obviously have a dispute over what plurality

10:21:07  18   means.  Plurality to us means various or different.

10:21:11  19        But with respect to this particular issue, we

10:21:13  20   don't think it changes the -- the meaning of the claim.

10:21:17  21        THE COURT:  That's -- that's why the Court spent

10:21:19  22   so much time on the first argument because it shows itself

10:21:22  23   again throughout these later terms.  I understand.

10:21:27  24        All right.  Let's move on, counsel.

10:21:29  25        MR. KEYHANI:  Thank you.

10:21:29   1          THE COURT:  Let's go next to "a desired command

10:21:36   2   code set."  And let me hear from the Plaintiff first.

10:21:41   3          MR. KEYHANI:  Plaintiff's position is that -- that

10:21:52   4   this term should have its plain and ordinary meaning.

10:21:54   5   There's no reason to -- to, again, change the term.

10:21:58   6          Defendants' argument -- argue that it's

10:22:01   7   indefinite.  Again, there's no evidence to support that --

10:22:04   8   the proposition that one of skill in the art would have a

10:22:10   9   difficult time understanding the scope of this claim or

10:22:12  10   would not understand the scope of this claim.

10:22:14  11          And the article "a" means one or more according --

10:22:23  12   you know, in the context of this, as has been understood

10:22:29  13   and applied in other cases -- for example, Freeny that we

10:22:32  14   -- we cite.

10:22:33  15          So it's one or more desired command code sets.

10:22:35  16   And in the context, again, of the claim, it's really about

10:22:39  17   a -- a microprocessor capable of generating a desired

10:22:45  18   command code set.  And it's not about any specific command

10:22:51  19   code set.

10:22:52  20          It's a desired one, which in context one of ordinary

10:22:54  21   skill in the art would have no problem understanding that

10:22:56  22   that is clearly one of the command code sets that would

10:23:02  23   communicate with one of the various or different external

10:23:05  24   devices, i.e., the plurality of external devices.

10:23:08  25          So we don't see any reason for any construction

10:23:10  1   for one, and certainly there's no reason -- there's no

10:23:13  2   basis to argue that this is indefinite.  One of ordinary

10:23:16  3   skill in the art would understand its scope.

10:23:18  4         And Defendants have -- counsel for Defendants have

10:23:21  5   presented no evidence -- surely any evidence to -- to rise

10:23:26  6   to the level of clear and convincing that one of skill in

10:23:28  7   the art would not understand what a desired command code

10:23:31  8   set means.  It's -- it's very -- clearly self-evident, Your

10:23:36  9   Honor.

10:23:36  10        THE COURT:  All right.  Let me hear from

10:23:40  11  Defendants and intervenors in response.

10:23:43  12        MR. WITTENZELLNER:  Your Honor, John Wittenzellner

10:23:44  13  again.

10:23:44  14        Before I delve into this specific term, I just

10:23:49  15  wanted to point out that the issue with respect to this

10:23:52  16  term, which is really whether "a" in combination of

10:23:54  17  different claim language, introduces a new claim term, is

10:23:58  18  also the same argument for said microprocessor generating a

10:24:05  19  communication protocol in response to said user selection.

10:24:07  20        So I think we can streamline today, if you allow

10:24:10  21  me to briefly touch on that other term, but otherwise we're

10:24:14  22  prepared to handle it separately.

10:24:15  23        THE COURT:  I don't have any big problem with

10:24:17  24  that, counsel, and I'll allow --

10:24:18  25        MR. WITTENZELLNER:  Thank you, Your Honor.

10:24:18   1          THE COURT:  -- and I'll allow Plaintiff's counsel

10:24:21   2   to respond in the broader context once you're finished.

10:24:24   3          Go ahead.

10:24:25   4          MR. WITTENZELLNER:  Thank you, Your Honor.

10:24:26   5          So the dispute here is whether Salazar's choice

10:24:30   6   when drafting these claims introduce the term desired

10:24:35   7   command code set along with the indefinite article "a"

10:24:38   8   means that it is a new claim term, and that's re --

10:24:40   9   reflected in our proposed construction of a different

10:24:45   10  command code set than the command code set that defines the

10:24:49   11  signals that are employed to communicate with each one of

10:24:51   12  said external devices.

10:24:52   13         And this simply comes from the claim language,

10:25:08   14  Your Honor.  And the -- the microprocessor limitation in

10:25:09   15  Claim 1 recites a command code set.

10:25:15   16         Subsequently, the memory device limitation recites

10:25:21   17  a desired command code set.

10:25:27   18         And Salazar chose to use different language here.

10:25:30   19  Salazar chose to use the term "command code set" in the

10:25:34   20  microprocessor limitation and the term "desired command

10:25:39   21  code set" in the memory device limitation.

10:25:41   22         And Salazar also filed the -- the well-known

10:25:43   23  convention of patent claiming, of introducing new terms

10:25:46   24  using the indefinite article "a."

10:25:48   25         And the Federal Circuit has told us repeatedly

10:25:53  1  that use of the indefinite article "a" tells us that the

10:25:57  2  two terms are different.  And two example cases are the

10:26:01  3  Tuna Processors case, which is 327 Federal Appendix 204,

10:26:06  4  2009, and the Hill-Rom case from 34 Federal Appendix 733

10:26:13  5  at -- from 2002.

10:26:14  6          Now --

10:26:19  7          THE COURT:  I understand that the typical scenario

10:26:21  8  is where claim language says "a widget," then followed down

10:26:28  9  by additional language refers to "the widget."

10:26:31  10         And here, what I gather the case is, is you're telling

10:26:35  11  me that the claim says "the widget," then later followed by

10:26:41  12  "a widget."  Is that -- is it basically a reversal of the

10:26:45  13  typical order?

10:26:48  14         MR. WITTENZELLNER:  No, Your Honor.  In both

10:26:49  15  instances, the command code set and desired command code

10:26:56  16  set are both preceded by the indefinite article "a."

10:27:00  17         So our -- our construction is that they are, in

10:27:06  18  fact, different terms.

10:27:06  19         THE COURT:  Okay.  I'm just trying to understand

10:27:08  20  your argument.

10:27:08  21         MR. WITTENZELLNER:  So -- yes, Your Honor.

10:27:11  22         And so when the claim recites a desired command

10:27:14  23  code set, it is not referring back to the a -- a command

10:27:19  24  code set that was introduced earlier in the claim.  It's

10:27:23  25  indeed a different term.

10:27:23   1              THE COURT:  What else?

10:27:24   2              MR. WITTENZELLNER:  One thing I wanted to touch

10:27:30   3   on, Your Honor, from Salazar's reply, and this is on

10:27:33   4   Page 6, is opposing counsel cites to the Apple versus

10:27:40   5   Motorola case from the Federal Circuit for the proposition

10:27:42   6   that, quote, the name of the game is the claim.

10:27:44   7              And on its face, Salazar chose to draft this claim

10:27:48   8   to -- introducing both terms using the indefinite article

10:27:54   9   "a," combined with other claim language.

10:27:56  10              And touching on the other term, as Your Honor

10:27:59  11   allowed us to do, said microprocessor generating a

10:28:02  12   communication protocol in response to said user selection,

10:28:06  13   we have a similar situation.

10:28:13  14              In the microprocessor limitation, the

10:28:15  15   microprocessor creates a plurality of reprogrammable

10:28:18  16   communication protocols.

10:28:19  17              So here, it's being introduced with the indefinite

10:28:23  18   article "a," and so it's a new claim term.  In the user

10:28:27  19   interface limitation, the microprocessor generates a

10:28:31  20   communication protocol -- again, introduced with the

10:28:34  21   indefinite article -- and the later recitation omits the

10:28:37  22   term "reprogrammable."

10:28:39  23              So similarly here, our position is that the second

10:28:44  24   recitation -- or the second term, "communication protocol,"

10:28:47  25   must be different from the plurality of reprogrammable

10:28:52   1   communication protocols because they use different

10:28:54   2   language, and both are introduced with the indefinite

10:28:56   3   article "a."

10:28:57   4            THE COURT:  All right.

10:28:58   5            MR. WITTENZELLNER:  And we have nothing further on

10:29:00   6   these terms unless the Court has any questions.

10:29:03   7            THE COURT:  Let me hear a -- a response from

10:29:05   8   Plaintiff addressing both of these arguments or their

10:29:10   9   application in two different ways.

10:29:11  10            MR. KEYHANI:  Your Honor, the term -- the term "a"

10:29:17  11   means one or more and has been -- been deemed to mean one

10:29:27  12   or more -- for example, in Freeny versus Fossil.

10:29:30  13       But really as we've argued before, we have to look at

10:29:34  14   the specification.  And one of ordinary skill in the art

10:29:36  15   would understand the meaning of this term "a desired

10:29:41  16   command code set."  Clearly, in the context of the claim

10:29:43  17   language and the specification, no construction is

10:29:48  18   necessary.

10:29:48  19            And it isn't -- it's not indefinite.  Clearly,

10:29:51  20   it's speaking about the microprocessor being able to create

10:29:58  21   a desired command code set from the universe of command

10:30:01  22   code sets that are -- that are earlier referenced.

10:30:03  23            To try to, you know, construct some semantical

10:30:08  24   argument that deviates from the plain and ordinary meaning

10:30:10  25   to one of skill in the art would -- would frustrate the --

10:30:17   1   the disclosure of the invention and the very -- you know,

10:30:21   2   the -- the recital of the claims.

10:30:23   3          Clearly, a desired command code set is not, again,

10:30:26   4   one out of thin air.  It's one from the universe of command

10:30:31   5   codes that is referenced earlier, and it's one or more, but

10:30:36   6   it's any one of that universe.

10:30:40   7          And, again, here, we have attorney argument by the

10:30:43   8   Defendants.  There's no expert testimony that -- or any

10:30:48   9   support to -- to argue that this is indefinite, as it is --

10:30:53  10   as it is recited, and that one of ordinary skill in the art

10:30:57  11   would understand the scope of this.  And this goes for

10:31:00  12   the -- the other term also argued in conjunction with --

10:31:04  13   with the "a desired command code set."  The same argument

10:31:10  14   applies, Your Honor.

10:31:11  15          We don't need to -- to rewrite this.  It's clear

10:31:14  16   in the context of the claim language itself that when we're

10:31:18  17   talking about a desired -- desired command code set, we're

10:31:21  18   talking one from the universe of command code sets that's

10:31:27  19   being discussed earlier in the claim.

10:31:28  20          THE COURT:  Touch briefly, if you will,

10:31:30  21   Mr. Keyhani, on the Defendants' argument that this should

10:31:34  22   be -- if it's construed, should be a different command code

10:31:39  23   set or should be different from the reprogrammable

10:31:45  24   communication protocols in these two contexts.

10:31:48  25          Focus on the word "different" here.  What's the

| | | |
|---|---|---|
| 10:31:50 | 1 | justification or lack of justification? |
| 10:31:51 | 2 | MR. KEYHANI:  Just a moment, Your Honor. |
| 10:31:57 | 3 | The claim language itself -- the broader claim |
| 10:32:13 | 4 | language, it's always important to start with the claim. |
| 10:32:16 | 5 | The claim is the name of the game, as we said -- or the |
| 10:32:20 | 6 | Federal Circuit has said. |
| 10:32:22 | 7 | This is Column 6 -- 26, I'm sorry, of |
| 10:32:25 | 8 | the '467 patent, at the top, Line 1.  A memory device |
| 10:32:30 | 9 | coupled to said microprocessor configured to store a |
| 10:32:34 | 10 | plurality of parameter sets retrieved by said |
| 10:32:38 | 11 | microprocessor so as to recreate a desired command code |
| 10:32:40 | 12 | set. |
| 10:32:41 | 13 | So we're talking about such that the memory space |
| 10:32:43 | 14 | required to store said parameters is smaller than the space |
| 10:32:46 | 15 | required to store said parameter set.  To recreate a |
| 10:32:49 | 16 | command code -- so if we go back -- |
| 10:32:50 | 17 | THE COURT:  Slow down. |
| 10:32:51 | 18 | MR. KEYHANI:  -- earlier in the claim.  I'm sorry. |
| 10:32:56 | 19 | So I was just reading the -- I was reading the |
| 10:32:59 | 20 | claim language that states -- and I'll -- I'll repeat the |
| 10:33:02 | 21 | last part, Your Honor. |
| 10:33:03 | 22 | A memory device coupled to said microprocessor |
| 10:33:09 | 23 | configured to store a plurality of parameter sets retrieved |
| 10:33:13 | 24 | by said microprocessor so as to recreate the desired |
| 10:33:20 | 25 | command code sets -- command code set. |

10:33:22   1          And in the context of this claim, we're talking --
10:33:25   2   the desired command code set is -- clearly be
10:33:30   3   understandable to one of ordinary skill in the art as one
10:33:34   4   of the command code sets in the universe of command code
10:33:38   5   sets that would be available to -- to communicate with
10:33:44   6   external devices, because what we're talking about here is
10:33:46   7   the capability to recreate a command code set and not
10:33:52   8   creating any particular command code.
10:33:59   9          THE COURT:  All right.
10:33:59  10          MR. KEYHANI:  And there's no evidence --
10:34:02  11   there's -- so it -- it's -- it's one of the universe, one
10:34:06  12   or more -- one or more of the universe of command -- of the
10:34:10  13   commands in the universe that -- that's previously
10:34:15  14   mentioned.
10:34:17  15      It's not a different -- some different command.
10:34:20  16   It's -- again, this goes back to -- Your Honor, this
10:34:26  17   underlined -- this issue is the argument raised by --
10:34:29  18   again, seeping in back here is -- are these commands -- are
10:34:34  19   these created, you know, out of thin air?  They're not.
10:34:36  20   They are commands for existing devices -- for existing
10:34:42  21   external devices.
10:34:43  22          And you're -- and -- and the whole purpose of the
10:34:45  23   invention is to take information, parameter sets, from --
10:34:50  24   and then recreate command code sets for a desired -- you
10:34:56  25   know, a desired command code set for a particular external

10:34:58  1  device.

10:34:59  2       But it's all relating to the same universe of

10:35:01  3  potential commands for the universe of external devices.

10:35:05  4       It's not some new command, and that's, again --

10:35:10  5  the -- the argument the Defendants are raising today is

10:35:13  6  basically the same argument they raised before, that

10:35:16  7  somehow is creating a command -- a desired command for

10:35:21  8  something that doesn't exist, or it's creating a desired

10:35:23  9  command out of thin air.  That's not the case, Your Honor.

10:35:26  10      It's creating -- it's a desired command of one of

10:35:30  11  the commands in the universe of commands that are in

10:35:33  12  existence -- that can communicate with the existing --

10:35:36  13  existing external devices, Your Honor.

10:35:37  14          THE COURT:  I understand.

10:35:37  15          MR. KEYHANI:  It would make no sense --

10:35:39  16          THE COURT:  I understand your argument.

10:35:40  17          MR. KEYHANI:  I'm sorry.  Thank you.

10:35:41  18          THE COURT:  Mr. Wittenzellner, do you have just a

10:35:45  19  brief word on this particular aspect of it?  Is this --

10:35:49  20          MR. WITTENZELLNER:  I do, Your Honor.  Thank you

10:35:50  21  for the opportunity to respond.

10:35:51  22          THE COURT:  Let's make it brief, please.

10:35:54  23          MR. WITTENZELLNER:  Yes, Your Honor.

10:35:55  24      So I believe I heard Mr. Keyhani say that we need

10:35:59  25  to rewrite these claims to have the proper -- proper

10:36:02   1   reference back to the earlier recitations, whether it be

10:36:07   2   command code set or reprogrammable communication protocols.

10:36:12   3           And if that is the case, if I understood him

10:36:15   4   correctly, the Federal Circuit has told us repeatedly, that

10:36:18   5   it is, quote, their settled practice that they will not --

10:36:21   6   that they will construe the claim as written, not as the

10:36:23   7   patentees wish they had written it.  And that comes from

10:36:26   8   the Chef case, 358 F.3d 1371 at Page 1374.

10:36:34   9           And unless I missed it, I believe that Mr. Keyhani

10:36:37  10   did not respond regarding what the communication protocol

10:36:42  11   recited in the user interface limitation refers back to,

10:36:46  12   whether it refers to the same reprogrammable communication

10:36:50  13   protocols, or is it something different.

10:36:53  14           And it's our position that they are different

10:36:57  15   because Mr. Salazar chose to use the term "reprogrammable

10:37:01  16   communication protocols" in the first instance and

10:37:04  17   "communication protocol" in the second instance.  So they

10:37:06  18   should be something different.

10:37:08  19           And we were told earlier today that Mr. Salazar

10:37:10  20   and his patent attorneys, according to Mr. Keyhani, were

10:37:15  21   skilled in the art, so they would understand -- understood

10:37:17  22   those patent conventions and what these terms would mean.

10:37:20  23           So unless the Court has any further questions,

10:37:23  24   Your Honor, we have nothing else.

10:37:25  25           THE COURT:  All right.

10:37:25   1          MR. KEYHANI:  Your Honor -- I'm sorry, Your Honor,
10:37:28   2   if you may, I -- I did not respond to the said
10:37:31   3   communication protocol.  That was a second term brought in.
10:37:34   4   If Your -- Your Honor would indulge me for a moment, if I
10:37:36   5   could just respond to that.
10:37:37   6          THE COURT:  Very briefly.
10:37:38   7          MR. KEYHANI:  Thank you.
10:37:39   8          If you -- again, as we argued before, the -- first
10:37:45   9   of all, we -- we've never said that we have to rewrite the
10:37:48  10   claims.  We -- what we said is one of ordinary skill in the
10:37:52  11   art would understand the full scope of the claims as
10:37:54  12   written.
10:37:55  13          THE COURT:  I --
10:37:56  14          MR. KEYHANI:  And the said communication --
10:37:58  15          THE COURT:  -- I saw you shaking your head left to
10:38:01  16   right, no, no, no, as he said that.  Be glad we're on a TV
10:38:08  17   monitor.  If you'd done that in open court, I would have
10:38:12  18   probably said something about it.  If the jury had been in
10:38:14  19   the box, it would have been bad.
10:38:16  20          MR. KEYHANI:  Understood.
10:38:17  21          THE COURT:  Okay.
10:38:17  22          MR. KEYHANI:  Understood, Your Honor.  It would
10:38:20  23   not happen in open court.
10:38:22  24          Said communication protocol, if you look at -- if
10:38:24  25   you look at the last claim element in Claim 1 -- and we've

10:38:31  1  argued this in our briefing, but I'm just pointing at --

10:38:37  2  Your Honor's attention -- it says:  An infra-red-- this is

10:38:42  3  the last claim element of Claim 1.  And it says:  An

10:38:43  4  infra-red frequency transceiver coupled to said

10:38:46  5  microprocessor for transmitting to said external devices

10:38:49  6  and receiving from said external devices, comma, infra-red

10:38:55  7  frequency signals in accordance with said communication

10:38:59  8  protocols.

10:38:59  9        It specifically speaks to communications, Your

10:39:03  10  Honor, with external devices.  And in accordance with

10:39:08  11  communication protocols, clearly the communication

10:39:12  12  protocols here that are being referenced are the

10:39:19  13  communication protocols that are referenced earlier in the

10:39:23  14  claim that are described as the communication protocols

10:39:28  15  that are communicating with the external devices.

10:39:31  16     There are no other communication protocols in this

10:39:33  17  claim other than the communication protocols, Your Honor,

10:39:35  18  that are communicating with the external devices.

10:39:38  19        So as -- as -- it is a basic canon of patent law

10:39:46  20  that you can -- look at other claims in -- other claim

10:39:48  21  elements within the claim to -- to clarify any

10:39:50  22  understanding about words or terms in the claim.

10:39:54  23     And this, again, is -- is an additional -- in addition

10:39:56  24  to it being understood by one of ordinary skill in the art

10:39:59  25  without reading this element, it's clear that the -- and --

10:40:04  1  and here it says, said communication protocols.

10:40:07  2          So the last paragraph is referring back to the

10:40:12  3  prior reference to communication protocols in the second to

10:40:16  4  the last paragraph of the claim.

10:40:19  5      And that reference is all back to a reference to --

10:40:27  6  communication with external devices that is referenced in

10:40:29  7  the first paragraph of the body of the claim, not the

10:40:31  8  preamble.

10:40:32  9          So, clearly, communication protocols -- the said

10:40:36  10  communication protocols is clearly a reference to a

10:40:39  11  plurality of reprogrammable communication protocols.  Those

10:40:43  12  are the only communication protocols that are -- that are

10:40:48  13  communicating or providing the -- the basis for the

10:40:52  14  communication with the said -- sorry, with one of said

10:40:57  15  external devices.

10:40:58  16          And -- and with each one of said -- each one of

10:41:02  17  said external devices -- excuse me, Your Honor.  So by --

10:41:06  18  by looking at the claim language, the last paragraph of

10:41:09  19  Claim 1, the body of the claim, and the association of

10:41:13  20  communication protocol with a reference to the external

10:41:17  21  devices communication.  And that refers back to the prior

10:41:20  22  communication protocol that also refers back to the -- to

10:41:24  23  the communication protocol in the first claim element of

10:41:27  24  the body of the claim, all linking together these

10:41:31  25  communication protocols that one of ordinary -- ordinary

10:41:34  1  skill in the art would understand are all the same

10:41:38  2  communication protocols.

10:41:38  3       There's only one communication protocol we're

10:41:40  4  talking about.  We're talking about the communication

10:41:42  5  protocols which are earlier referenced as a plurality of

10:41:46  6  reprogrammable -- reprogrammable communication protocols

10:41:48  7  that are communicating with the external devices.

10:41:50  8  And so this is not a different one.  And no -- no more

10:41:53  9  so than a desired command code set is a different one.

10:41:57  10  It's one up from the universe.  It's a command code set,

10:42:02  11  one of many from the universe of command codes.

10:42:05  12       THE COURT:  All right.  I think I understand the

10:42:07  13  competing arguments from the parties here.

10:42:09  14       Before we go on to the next term for dispute and

10:42:12  15  construction, we're going to take a short recess, counsel.

10:42:15  16  Please just stay on your connections, mute your devices,

10:42:18  17  and I'll be back shortly, and we'll continue.

10:42:20  18       The Court stands in recess.

10:42:23  19       (Recess.)

10:42:24  20       THE COURT:  All right.  Counsel, the Court will

10:59:04  21  return to the remaining matters for claim construction in

10:59:08  22  Salazar versus AT&T Mobility, et al.

10:59:12  23  We'll pick up with the next disputed term, "a

10:59:15  24  microprocessor for generating, said microprocessor

10:59:19  25  creating" -- no -- yes, yes -- and "a plurality of

| | | |
|---|---|---|
| 10:59:25 | 1 | parameter sets."  This is from Claims 1 and 34 of the |
| 10:59:31 | 2 | patent-in-suit. |
| 10:59:31 | 3 | Let me hear from the Plaintiff first. |
| 10:59:49 | 4 | And to the extent we're replowing ground already |
| 10:59:53 | 5 | covered, let's just make a note of that and move on to |
| 10:59:57 | 6 | ground that hasn't previously been plowed. |
| 10:59:59 | 7 | MR. KEYHANI:  Yes, Your Honor.  So the term |
| 11:00:02 | 8 | we're -- is it said micro -- microprocessor generating a |
| 11:00:08 | 9 | communication protocol in response to said user selections? |
| 11:00:11 | 10 | Is that the term we're on?  No. 8?  No, sorry, No. 7. |
| 11:00:16 | 11 | THE COURT:  Well, I have it alphabetically as G, |
| 11:00:19 | 12 | so... |
| 11:00:21 | 13 | MR. KEYHANI:  Okay. |
| 11:00:27 | 14 | THE COURT:  It's the one that follows "a desired |
| 11:00:37 | 15 | command code set," and precedes "said microprocessor |
| 11:00:41 | 16 | generating a communication protocol." |
| 11:00:44 | 17 | MR. KEYHANI:  All right.  Thank you, Your Honor. |
| 11:00:45 | 18 | I'm sorry.  Yes, I -- I follow you, Your Honor, yes. |
| 11:00:47 | 19 | A microprocessor for generating..., said |
| 11:00:53 | 20 | microprocessor creating..., a plurality of parameter sets |
| 11:00:55 | 21 | retrieved by said microprocessor..., said microprocessor |
| 11:00:58 | 22 | generating." |
| 11:00:59 | 23 | THE COURT:  That's it. |
| 11:00:59 | 24 | MR. KEYHANI:  I -- I just took up -- yes. |
| 11:01:02 | 25 | Your Honor, our -- first and foremost, as we |

11:01:08  1   argued in our brief and noted earlier in this hearing, the

11:01:13  2   "for generating" is a reference to the -- this being a

11:01:18  3   capability claim -- claim.  In other words, it's a

11:01:21  4   microprocessor that's capable of generating.

11:01:23  5           Defendants' counsel -- Defendants have conceded

11:01:27  6   this argument in their briefing, that it is -- they agree

11:01:31  7   that it's a capability claim.

11:01:34  8           This Court articulated that construction -- that

11:01:37  9   conclusion, as well, in the prior case.  And the -- the

11:01:43  10  question is, is it one microprocessor, or is it any number?

11:01:48  11          We argue the Plaintiff's position is it's any one

11:01:50  12  of multiple microprocessors.  And we do cite to -- in our

11:01:55  13  reply, for example, we cite to the Freeny case as an

11:02:02  14  example.  That's just one of many cases.  That's this

11:02:05  15  Court's precedent which relies on, of course, the Federal

11:02:12  16  Circuit precedent that a microprocessor is a reference to

11:02:15  17  any one of multiple microprocessors.

11:02:18  18          So it's any one of -- of -- of -- it's any one of

11:02:22  19  multiple microprocessors capable of the various actions

11:02:27  20  that -- that come after that.

11:02:29  21          And we had a difficult time following Defendants'

11:02:34  22  argument in their briefing because their construction

11:02:39  23  seemed to -- their proposed construction used the word

11:02:44  24  "must perform some functionality," but then the conclusion

11:02:47  25  in their argument -- and their argument seemed to concede

11:02:50  1   that it is a capability claim.

11:02:52  2        But at any rate, we think there's no -- no dispute

11:02:55  3   that it's a capability claim, that it's the

11:03:01  4   microprocessor's ability -- capability to function and do

11:03:03  5   the various activities, and that it is one or -- one or

11:03:07  6   more microprocessors -- processors, any one of which, as

11:03:13  7   the Court analyzed and hereby analogy -- any one of the

11:03:18  8   microprocessors only need be capable of doing one or more

11:03:21  9   of the various actions recited in the claim, any one of the

11:03:24 10   microprocessors.

11:03:25 11        And that's how we believe this Court had applied

11:03:29 12   the similar factual situation without getting into that

11:03:33 13   where there was a ref -- reference to a particular

11:03:37 14   component that operated in that context.

11:03:40 15        I will wait for Defendants' counsel argument for

11:03:43 16   any rebuttal.  Thank you.

11:03:44 17        THE COURT:  Let me hear from Defendants and

11:03:46 18   intervenors.

11:03:48 19        MR. LANDIS:  Thank you, Your Honor.  Todd Landis

11:03:49 20   again for Defendants and intervenors.

11:03:51 21        So first, I'd like to make a point of

11:03:55 22   clarification, Your Honor, because I hear Mr. Keyhani keep

11:03:58 23   talking about we're conceding "capable of."

11:04:00 24        In the previous case -- and I think Mr. Keyhani's

11:04:08 25   position on this term is, is that to the extent not covered

| | | |
|---|---|---|
| 11:04:10 | 1 | by this Court's construction in the first case, plain and |
| 11:04:11 | 2 | ordinary meaning, Your Honor, for the first element of |
| 11:04:16 | 3 | Claim 1 and Claim 34 construed the microprocessor |
| 11:04:18 | 4 | limitation to be a microprocessor configured to generate a |
| 11:04:25 | 5 | plurality of control signals used to operate said system |
| 11:04:29 | 6 | and configured to create a plurality of reprogrammable |
| 11:04:29 | 7 | communication protocols. |
| 11:04:35 | 8 | That's the Court's construction.  And I think, if |
| 11:04:36 | 9 | I understand Mr. Keyhani's position, Salazar agrees to |
| 11:04:41 | 10 | adopt that construction or that we should adopt that |
| 11:04:44 | 11 | construction. |
| 11:04:44 | 12 | With that said, Your Honor, the argument here is |
| 11:04:49 | 13 | one that comes from Federal Circuit precedence, In re Varma |
| 11:04:56 | 14 | and another case called Convolve.  And I know Your Honor is |
| 11:05:00 | 15 | familiar with those cases, having rendered his Plano |
| 11:05:04 | 16 | Encryption decision where I believe you referenced both of |
| 11:05:07 | 17 | those cases in the decision. |
| 11:05:09 | 18 | What we have here is a claim that claims a |
| 11:05:14 | 19 | microprocessor.  No one is arguing to the Court that "a" |
| 11:05:17 | 20 | does not mean one or more. |
| 11:05:19 | 21 | "A" means one or more in patent parlance when |
| 11:05:22 | 22 | following the word "comprising."  That's well-settled law. |
| 11:05:26 | 23 | It was also well-settled in Varma and in Convolve.  The |
| 11:05:31 | 24 | Federal Circuit acknowledged that point in both of those |
| 11:05:34 | 25 | cases. |

11:05:34   1           But what the Federal Circuit then said was "a"

11:05:38   2   cannot serve to negate what is required by the claim -- the

11:05:41   3   language that follows "a."  That's the important point.

11:05:46   4   Just because it's one or more doesn't mean it starts to

11:05:49   5   negate the rest of the claim language.

11:05:52   6           If we look at Claim 1 as an example here --

11:05:58   7   Claim 34 is almost identical -- we see that the

11:06:02   8   microprocessor needs to be configured to do four things

11:06:05   9   throughout the claim:

11:06:07  10           Generate a plurality of control signals.  That

11:06:11  11   comes from the first element.

11:06:13  12           Create a plurality of reprogrammable communication

11:06:19  13   protocols, also from the first element.

11:06:19  14           It has to retrieve a plurality of parameter sets.

11:06:25  15   That comes from the memory device element.  It's not

11:06:26  16   written as retrieved there, Your Honor.  It's kind of

11:06:28  17   written in the -- in the, you know, passive way, plurality

11:06:34  18   of parameter sets retrieved by said process --

11:06:36  19   microprocessor.

11:06:36  20           And then it has to generate a communication

11:06:41  21   protocol in response to user selections.  That comes from

11:06:43  22   the user interface element.

11:06:44  23           Now, the claims also have more to do with this

11:06:47  24   microprocessor because the microprocessor has to be coupled

11:06:52  25   to the memory device, and it has to be coupled to the user

11:06:57  1  interface.

11:07:00  2       The Convolve case is an informative case on this

11:07:04  3  point.  In Convolve, the Court was faced with a similar

11:07:07  4  situation.  They had the preamble that introduced an

11:07:11  5  element with the word "a," and then the claim terms

11:07:17  6  introduced new -- new components that worked with that

11:07:23  7  thing, which in that case was a processor.

11:07:25  8       And the Federal Circuit said:  When you're

11:07:30  9  coupling or working with or doing something and you're

11:07:34  10  using the word "said," it's referring to the same

11:07:37  11  processor.

11:07:40  12       The quote from Convolve, which is Convolve, Inc.,

11:07:45  13  versus Compaq Computer Corp., 812 F.3d 1313, the Court

11:07:52  14  said, quote, this reference to the processor, referring

11:07:54  15  back to the a processor, recited in the preamble supports a

11:08:00  16  conclusion that the recited user interface is operatively

11:08:05  17  working with the same microprocessor to perform all of the

11:08:09  18  recited steps.

11:08:11  19       We have the same issue here.  We have a

11:08:16  20  microprocessor that's coupled to the memory device, coupled

11:08:20  21  to the user interface.  It's referred to as said

11:08:24  22  microprocessor, which "said" and "the" are interchangeable

11:08:27  23  in patent law, as I know Your Honor knows.  And it's

11:08:30  24  referring back to a microprocessor.

11:08:33  25       So under Convolve, for those two limitations, the

11:08:37  1  coupling should be to the same microprocessor, which means
11:08:40  2  that same microprocessor has to perform the functions that
11:08:47  3  are associated with each of those limitations, which is the
11:08:50  4  retrieving of plurality parameter sets, generating a
11:08:55  5  communication protocol.
11:08:56  6          But I would submit, Your Honor, that when you take
11:09:00  7  Convolve and combine it with Varma, you have to have the
11:09:04  8  same processor that performs all four functions that
11:09:07  9  I mentioned earlier.
11:09:08  10          As I think Your Honor is familiar with Varma.  In
11:09:12  11  Varma, the Court found -- used an example.  The example was
11:09:18  12  for a dog owner to have a dog that rolls over and fetches
11:09:22  13  sticks, it does not suffice that he have two dogs, each
11:09:26  14  able to perform just one of the tasks.
11:09:31  15          That is what the Plaintiff in this case is arguing
11:09:33  16  for.  It's to have two dogs -- or actually four dogs that
11:09:38  17  perform all of the -- each -- each performing one of the
11:09:41  18  tasks.
11:09:43  19          But Varma and Convolve together say, no, "a"
11:09:50  20  doesn't get you that.  When you claim this way, you have to
11:09:56  21  have at least one processor that's configured to perform
11:10:00  22  all of these tasks, generating a plurality of control
11:10:04  23  signals, creating a plurality of reprogrammable
11:10:08  24  communication protocols, retrieving a plurality of
11:10:12  25  parameter sets, and generating a communication protocol in

11:10:17  1  response to user selections.  The same processor needs to

11:10:18  2  perform all four functions under Federal Circuit law.

11:10:21  3           That's all I have, Your Honor, unless -- I will

11:10:27  4  mention one other thing, Your Honor.  Mr. Keyhani mentioned

11:10:31  5  the Freeny case.  The Freeny case was a Judge Payne

11:10:35  6  decision.

11:10:35  7      I would just mention that in Freeny, Judge Payne did

11:10:37  8  not analyze Convolve at all.  He only analyzed the cases

11:10:41  9  that the parties brought to his attention, at least in his

11:10:44  10  opinion that I -- that I read.  And I think if Convolve had

11:10:50  11  been analyzed, a different decision may have been rendered

11:10:53  12  in that case.

11:10:54  13           THE COURT:  All right.  Thank you, Mr. Landis.

11:10:56  14           Mr. Keyhani, do you have anything in response, and

11:11:00  15  then we'll move on?

11:11:01  16           MR. KEYHANI:  I do, Your Honor, briefly.  Thank

11:11:04  17  you.

11:11:04  18           I -- I -- we don't -- Plaintiff does not agree

11:11:08  19  with Defendants' counsel's articulation of the Federal

11:11:12  20  Circuit law.  And we do agree with Judge Payne's

11:11:15  21  interpretation of the existing law on this matter.  And I

11:11:21  22  don't think -- I don't think this is a new proposition that

11:11:24  23  the Federal Circuit has come up with that's being reported

11:11:28  24  here or argued.

11:11:29  25           "A" means one or more, one or more

11:11:35  1   microprocessors.  And whatever follows can be attributed to

11:11:41  2   any one or more of those microprocessors.  And as the Court

11:11:45  3   found in Freeny -- held in Freeny, this Court held in

11:11:50  4   Freeny, for example -- and this is Freeny 2019 Westlaw

11:11:57  5   2078783 at 14 through 15, and it's a quote:  When the claim

11:12:03  6   refers to outputting the request authorization code on the

11:12:07  7   first signal and outputting the request authorization --

11:12:10  8   authorization code on a second signal, that language means

11:12:18  9   that any one or more request authorization codes can be

11:12:24  10  outputted on the first and second signals to satisfy the

11:12:28  11  claim.

11:12:29  12          And that is -- and this is a 2019 case,

11:12:34  13  May 2000 -- just last -- last summer, and it is good

11:12:40  14  precedent, it's good law, and is also consistent with our

11:12:44  15  interpretation of the law.

11:12:45  16          And it -- sometimes you have a microprocessor --

11:12:52  17  as I've been advised by our experts, it's a group of

11:12:56  18  microprocessors with a master microprocessor.  Whatever the

11:12:58  19  situation is, however it's formulated, it may be one or a

11:13:02  20  group of microprocessors.  There might be a master

11:13:05  21  microprocessor that -- that directs others.

11:13:08  22          Regardless, it is often the case where you have

11:13:11  23  various microprocessors or submicroprocessors that are

11:13:14  24  implicated in the various steps in the -- in the

11:13:20  25  functionality.

| | | |
|---|---|---|
| 11:13:20 | 1 | And you wouldn't have to identify in a claim each |
| 11:13:27 | 2 | different microprocessor.  It would be sufficient, as this |
| 11:13:30 | 3 | Court held in Freeny, you know, summarizing the controlling |
| 11:13:35 | 4 | law on this subject that -- on this issue that any one of |
| 11:13:41 | 5 | the microprocessors could, in fact, carry out any one of |
| 11:13:44 | 6 | these -- of these particular functionalities that are |
| 11:13:48 | 7 | recited in the claims.  And sometimes it wouldn't make |
| 11:13:51 | 8 | sense that one microprocessor does everything, as a |
| 11:13:53 | 9 | practical matter. |
| 11:13:54 | 10 | And so that is our position on this issue, Your |
| 11:13:57 | 11 | Honor. |
| 11:13:57 | 12 | THE COURT:  All right.  Thank you, counsel. |
| 11:13:58 | 13 | Let's move on -- |
| 11:14:00 | 14 | MR. KEYHANI:  Thank you. |
| 11:14:01 | 15 | THE COURT:  It appears to the Court the next |
| 11:14:03 | 16 | disputed term for construction is "an infra-red frequency |
| 11:14:10 | 17 | transceiver coupled to said microprocessor for transmitting |
| 11:14:13 | 18 | to said external devices and receiving from said external |
| 11:14:19 | 19 | devices, infra-red frequency signals, in accordance with |
| 11:14:27 | 20 | said communications protocols." |
| 11:14:29 | 21 | Plaintiffs has proposed the plain and ordinary |
| 11:14:31 | 22 | meaning, to the extent this is not covered by the Court's |
| 11:14:34 | 23 | previous opinion and claim construction order in the |
| 11:14:37 | 24 | earlier HTC case. |
| 11:14:39 | 25 | Defendants have proposed their own construction, |

11:14:45   1   and I'd like to hear -- in that case, I'd like to hear from

11:14:48   2   Defendants first, and then I'll hear from Plaintiffs in

11:14:50   3   response.

11:14:52   4            MR. LANDIS:  Thank you, Your Honor.  Todd Landis

11:14:54   5   again for Defendants and intervenors.

11:14:56   6            Your Honor, the crux of this issue really comes

11:14:59   7   down to the word "and" --

11:15:05   8            THE COURT:  So the receiving --

11:15:05   9            MR. LANDIS:  The claim language --

11:15:07  10            THE COURT:  -- the receiving device has got to

11:15:08  11   send back to the base station?

11:15:10  12            MR. LANDIS:  Yes, Your Honor.

11:15:11  13            THE COURT:  That's your view?

11:15:12  14            MR. LANDIS:  That's correct.

11:15:12  15            THE COURT:  Okay.

11:15:13  16            MR. LANDIS:  That's -- that's our view, Your

11:15:14  17   Honor, that the word "said external devices" here is in

11:15:18  18   both the transmitting element -- or -- or the transmitting

11:15:21  19   portion of the element and the receiving portion of the

11:15:24  20   element.  Both refer to said external devices, which in our

11:15:28  21   opinion makes them the same external devices.  And the

11:15:32  22   claim uses an "and."

11:15:34  23            So the infra-red frequency transceiver here has to

11:15:37  24   be capable of transmitting to some external devices and

11:15:44  25   receiving from those same external devices infra-red

11:15:50  1  frequency -- infra-red frequency signals, in accordance

11:15:52  2  with said communication protocols.

11:15:55  3       We'll get to what that may or may not mean later, but

11:15:59  4  that is really the crux of this issue, that the claim

11:16:03  5  language requires that when you have these external

11:16:06  6  devices, this -- whatever this infra-red frequency

11:16:09  7  transceiver is, it has to be able to just transmit to it

11:16:13  8  and receive from it.

11:16:14  9       THE COURT:  Let me stop you there.  It has to be

11:16:16  10  able to, or it must do it?  When you -- when you press the

11:16:21  11  button on the base station to change the channel on the TV,

11:16:24  12  does the TV have to send a message back to the base station

11:16:27  13  that says, I changed it -- I changed the channel?  Or --

11:16:32  14       MR. LANDIS:  So, Your Honor, I think I understand

11:16:34  15  Your Honor's question.

11:16:34  16       I don't believe it has to necessarily be a

11:16:39  17  response to the transmission.  I'm not sure that's what

11:16:42  18  this claim requires.

11:16:43  19       I just think that what this claim requires is, is

11:16:46  20  that the TV has to have the ability to send some IR

11:16:52  21  frequency signal that's in accordance with the

11:16:56  22  communication protocols back to the infra-red frequency

11:16:58  23  transceiver.

11:16:59  24       It doesn't necessarily have to do it in response to a

11:17:02  25  transmission.  It just has to have the capability of doing

11:17:04   1   that.

11:17:05   2            THE COURT:  Now, are we talking about the capacity

11:17:07   3   of the television, or are we talking about the capacity of

11:17:11   4   a base station which is the patented device?

11:17:15   5            MR. LANDIS:  Yeah, so we're really talking about

11:17:17   6   the capability of -- of the -- the infra-red frequency

11:17:21   7   transceiver that's part of the -- the system that's being

11:17:24   8   claimed.

11:17:25   9       It has to have the capability to receive from -- we

11:17:30  10   use the TV example -- to receive an infra-red frequency

11:17:36  11   signal from that TV that's in accordance with the

11:17:38  12   communication protocols.  It has to have that ability.

11:17:41  13            THE COURT:  But that doesn't necessarily mean that

11:17:43  14   if the television that is being implemented doesn't have

11:17:47  15   the capability to send a signal back to the base station

11:17:51  16   that the base station doesn't comport with the claims, if

11:17:55  17   it has the ability to receive it, even though the

11:17:59  18   television doesn't have the ability to send it?

11:18:01  19            MR. LANDIS:  Your Honor, I -- I would have to

11:18:03  20   agree with that.  I think this claim language is that way,

11:18:06  21   that it has to have the capability of receiving it, not

11:18:10  22   that the -- the external device necessarily has to have the

11:18:14  23   ability to send it.  I am not disagreeing with Your Honor.

11:18:16  24            THE COURT:  Okay.  All right.  What else,

11:18:19  25   Mr. Landis?

11:18:19   1        MR. LANDIS:  That's all I have for this term, Your

11:18:21   2   Honor.

11:18:21   3        THE COURT:  Mr. Keyhani, I'll give you a short

11:18:23   4   period to respond, if you want it.  Then we'll move on.

11:18:27   5        MR. KEYHANI:  Thank you, Your Honor.

11:18:28   6        Our position is basically what -- and we agree

11:18:33   7   with the proposition that the claim language in the

11:18:36   8   invention doesn't speak to the capabilities of the external

11:18:39   9   devices, only to the capability of the communication

11:18:44   10  command control system and sensing system at issue.

11:18:49   11       As this Court explained in summary judgment in the

11:18:52   12  prior case, the -- on a decision of summary judgment, the

11:18:55   13  limitation only requires that the IR transceiver be capable

11:18:59   14  of sending and receiving IR signals to the plurality of

11:19:03   15  external devices, not that it be capable of transmitting

11:19:05   16  and sending to each device within that plurality.

11:19:08   17       The Court -- this is interesting.  This is

11:19:13   18  relevant to this issue but also relevant to a prior point.

11:19:16   19       The Court goes on to reference the specification and

11:19:20   20  states that the specification -- this is a quote in the

11:19:24   21  same opinion of this Court on Page 6 through 7 of

11:19:30   22  Document No. 97:  The specification supports this

11:19:34   23  conclusion by noting the signals can be transmitted and/or

11:19:37   24  received to any number of appliances or apparatuses of

11:19:42   25  receiving and/or transmitting compatible devices.

11:19:46 1    And the Court goes on to state that -- in this

11:20:06 2    context, the Court -- again, without construing the terms

11:20:11 3    but in referring back to a plurality of the devices or

11:20:16 4    referencing back to a plurality of devices, the Court

11:20:20 5    states:  The specification supports this conclusion by

11:20:22 6    knowing the signals can be transmitted and/or received to

11:20:24 7    any number of appliances and -- and/or apparatuses of --

11:20:30 8    capable of receiving -- capable of receiving and/or

11:20:32 9    transmitting compatible signals.

11:20:35 10    So it confirms the fact that these apparatuses,

11:20:39 11    which is what we agree with the Court's prior construction,

11:20:42 12    don't have to have the capability.

11:20:43 13    If they have the capability, well, then our -- then

11:20:46 14    this device -- then the invention -- transceiver can

11:20:50 15    receive the signal.

11:20:52 16    But also what's interesting is the Court

11:20:54 17    acknowledges again any number of appliances as a reference

11:20:57 18    back to each within the plurality of devices.

11:21:00 19    And I think this is another reference, Your Honor,

11:21:02 20    where I think -- again, without putting words into the

11:21:07 21    Court -- saying anything for the Court, but I think it's

11:21:09 22    consistent with the notion that plurality, again, is a

11:21:12 23    reference to a number of appliances, as the Court

11:21:15 24    summarizes the plurality of appliances, again, bringing it

11:21:18 25    all together and why it was -- is good to address the term

11:21:23  1   "plurality" at the beginning.

11:21:25  2          We have no further comments on this -- on this

11:21:28  3   issue.

11:21:28  4          THE COURT:  Thank you.

11:21:29  5          All right.  Let's move on to the next disputed

11:21:32  6   term, "a radio frequency transceiver, in accordance with

11:21:35  7   said communication protocols" from Claim 2 of

11:21:38  8   the '467 patent.

11:21:39  9          This is structured much the same way where there's

11:21:45  10  a specific proposed construction offered by Defendants, and

11:21:50  11  Plaintiffs have responded with simply plain and ordinary

11:21:55  12  meaning to the extent it's not already covered by the

11:21:58  13  earlier claim construction opinion from the Court.

11:22:00  14         So in light of that structure, let me ask

11:22:02  15  Defendants to go first, and then I'll hear from Plaintiff

11:22:05  16  in response.

11:22:07  17         MR. LANDIS:  Thank you, Your Honor.  Todd Landis

11:22:08  18  again for Defendants/intervenors.

11:22:12  19         Your Honor, the heart of this issue here is does

11:22:14  20  the radio frequency transceiver that is claimed in Claim 2

11:22:19  21  need to communicate with the external devices using the

11:22:24  22  same communication protocols that the infra-red frequency

11:22:30  23  transceiver does in Claim 1?

11:22:31  24         And when we look at the claim language, here,

11:22:36  25  again, both claims are referring to said communication

11:22:40  1  protocols.

11:22:41  2      And it's our opinion under the law that by referencing

11:22:45  3  said communication protocols in both claims, it is

11:22:49  4  requiring that both transceivers communicate using the same

11:22:57  5  protocol, same communication protocols.

11:22:59  6      Now, I anticipate, Your Honor, that we might hear

11:23:01  7  from Plaintiff's counsel that this is nonsensical, that an

11:23:05  8  IR transceiver can't communicate with RF protocols, and an

11:23:10  9  RF transceiver can't communicate with IR protocols.

11:23:13  10      But the problem there, as I mentioned earlier in

11:23:16  11  this hearing, is that that argument is conflating the

11:23:21  12  transportation mechanism with the protocol.

11:23:24  13      IR gets transmitted using a carrier signal that's

11:23:30  14  in the IR band.  RF uses a carrier signal that's in the

11:23:35  15  RF band.  They can both carry the exact same protocols.

11:23:40  16  It's very capable -- both of them are very capable.

11:23:44  17  They're just carrier waves to carry the data.

11:23:47  18      So the construction and the claim language itself

11:23:50  19  is not inconsistent with a practical or real-world

11:23:56  20  application of this invention, because you have two

11:24:00  21  different carrier signals, IR and IR, that are carrying the

11:24:06  22  same protocols.  And we think the plain language of this

11:24:09  23  claim requires that.

11:24:10  24      Now, when we look at the patent itself -- the

11:24:20  25  patent itself, the whole purpose of the patent is to have

11:24:26   1   an invention that has both IR and RF capabilities for

11:24:31   2   communicating these protocols because it wanted to have

11:24:34   3   backup systems.  If the IR went down, the RF could take

11:24:38   4   over.  If the RF went down, the IR could take over.

11:24:42   5        When you look at Column 1, Line 50 through 61, of

11:24:46   6   the patent, it talks about an object of the present

11:24:49   7   invention being to provide full two-way RF and IR

11:24:54   8   communication links to all apparatus.

11:24:57   9        The way the invention does that is by having a common

11:25:02  10   communication protocol.  That communication protocol, as

11:25:05  11   I pointed out to the Court earlier, is found in Column 7 of

11:25:09  12   the patent at Lines 14 through 19, Your Honor.

11:25:20  13        That's where the patent talks about the creation of

11:25:22  14   this generalized command and control protocol.

11:25:24  15        It's those protocols that will be transmitted

11:25:28  16   using either an RF carrier signal or an IR carrier signal.

11:25:34  17   That's what these claims are talking about.  And so we

11:25:36  18   believe the proper interpretation here is that both the IR

11:25:40  19   transceiver and the RF transceiver have to communicate

11:25:43  20   using the same communication protocols.

11:25:47  21        That's all I have, Your Honor, unless there are

11:25:50  22   any questions.

11:25:50  23        THE COURT:  Let me hear from the Plaintiff,

11:25:52  24   please.

11:25:52  25        MR. KEYHANI:  Your Honor, I hate to use the word

11:25:58  1   that this Court used in its summary judgment, but -- and it

11:26:01  2   is nonsensical.

11:26:03  3        It is not anticipated that the IR transceiver will

11:26:11  4   communicate -- excuse me, that the -- it is not being

11:26:14  5   disclosed or recited here that the RF transceiver will

11:26:20  6   require the RF transceiver to communicate using IR

11:26:25  7   communication protocols.

11:26:25  8        That is completely false and nonsensical and doesn't

11:26:30  9   make any sense.  No one with reasonable skill in the art

11:26:32  10  would interpret that.  I don't think the -- I don't think

11:26:34  11  Defendants' expert in the last case interpreted it that

11:26:37  12  way.  I don't think anybody would.

11:26:38  13       Clearly, the -- the communication with the

11:26:44  14  devices -- with the RF and the IR, you're using separate

11:26:47  15  protocols.  And we stand -- we think the Court's

11:26:55  16  construction of that is accurate and is the only -- the

11:26:59  17  only reasonable -- only reasonable construction.  And

11:27:01  18  that's all we have to say about that, Your Honor.

11:27:03  19            THE COURT:  All right.  Let's move on, then, to

11:27:08  20  "a sound and data coupling device" from Claim 7 of the

11:27:12  21  patent-in-suit.

11:27:12  22            Let me hear from Plaintiff on this one first.

11:27:15  23            MR. KEYHANI:  Your Honor, this -- this is a simple

11:27:20  24  point.  The -- it's -- it's -- Defendants are -- are trying

11:27:26  25  to limit to -- to carve out voice as one of the -- as

11:27:34   1   data -- as a data signal.

11:27:36   2        There's no basis to limit the type of sound that's

11:27:42   3   being received.  A sound and data device adapted to receive

11:27:46   4   sound as a data signal, there's no reason to -- why the

11:27:51   5   sound cannot be voice.

11:27:54   6        The patent itself in the specification speaks to

11:27:57   7   voice.  I mean, even, for example, if you look at the

11:28:04   8   abstract of the patent, you can go to many places, but just

11:28:08   9   for example, it speaks about -- in the middle of the

11:28:08   10  abstract, the microprocessor also responds to voice signal

11:28:11   11  commands received via the microphone and the voice

11:28:15   12  processor.

11:28:16   13       It's not only implicit, it is explicit in this

11:28:20   14  patent that the -- that the microprocessor could respond to

11:28:23   15  sound, including voice.

11:28:31   16       There's no evidence that the Defendants have brought

11:28:33   17  here to show that there's any type of lexicography or any

11:28:37   18  clear and unmistakable surrender of this term to narrow it

11:28:43   19  or to impose any limitations otherwise.

11:28:44   20       So this is a very basic sort of interpretation

11:28:47   21  and -- out of the claim.  There's no reason to -- to remove

11:28:51   22  voice as one of the types of sounds that are covered by the

11:28:53   23  claim.  And we see no basis for that.

11:28:55   24       We have no further argument.  This is pretty

11:28:58   25  straightforward, Your Honor.

11:28:59   1            THE COURT:  Let me hear from the Defendants and

11:29:01   2   intervenors.

11:29:04   3            MR. WITTENZELLNER:  Your Honor, John

11:29:05   4   Wittenzellner.

11:29:05   5            I want to at the outset address one of the points

11:29:09   6   that Mr. Keyhani just made.  I'm going to pause.  I think

11:29:13   7   somebody needs to mute so we don't have an echo.

11:29:16   8            THE COURT:  Also, I'm not able to see you,

11:29:26   9   counsel.  If you'll check your connection, please.  There

11:29:30  10   you are.

11:29:31  11            MR. WITTENZELLNER:  Is that better?  I apologize,

11:29:32  12   Your Honor.

11:29:32  13            THE COURT:  Go ahead.

11:29:33  14            MR. WITTENZELLNER:  I wanted to address one of

11:29:35  15   Mr. Keyhani's points at the outset.  We do not contest,

11:29:40  16   Your Honor, that sound can include voice.

11:29:42  17       We contest that this specific device claimed in

11:29:46  18   Claim 7 can receive data -- data signals via voice.  And

11:29:54  19   it's important to look at the claim language for that.

11:29:56  20            If we go to Claim 6, it introduces a sound

11:30:00  21   activated device, and we know that it's introducing a new

11:30:04  22   device because the sound activated device is prefaced by

11:30:10  23   further comprising, as well as the indefinite article "a."

11:30:13  24            Now, when we go to Claim 7, which is the actual

11:30:17  25   term at issue, again, the term is prefaced by further

| | | |
|---|---|---|
| 11:30:22 | 1 | comprising and the indefinite article.  And that term is a |
| 11:30:25 | 2 | sound and data coupling device adapted to receive sound and |
| 11:30:29 | 3 | data signals. |
| 11:30:31 | 4 | Now, that's important.  Again, we do not disagree |
| 11:30:35 | 5 | that voice is identified as a type of sound.  But the |
| 11:30:42 | 6 | specification differentiates between sound as voice and |
| 11:30:46 | 7 | sound as data signals. |
| 11:30:47 | 8 | One such example is Column 17, |
| 11:30:50 | 9 | Lines 41 through 44.  There, the specification says: |
| 11:30:56 | 10 | Similarly sound, including voice, comma, and data signals |
| 11:31:00 | 11 | are received and transmitted via an infra-red transceiver |
| 11:31:07 | 12 | that contains detectors and light emitting devices. |
| 11:31:09 | 13 | So here the specification is differentiating |
| 11:31:12 | 14 | between voice and data signals.  And we have to pay |
| 11:31:17 | 15 | credence to what the actual term is in Claim 7.  It is a |
| 11:31:21 | 16 | sound and data coupling device that receives sound as data |
| 11:31:26 | 17 | signals. |
| 11:31:26 | 18 | Now, the rest of the specification discloses |
| 11:31:30 | 19 | several voice activated embodiments in which voice commands |
| 11:31:35 | 20 | are received. |
| 11:31:37 | 21 | One such example is Column 21, 43 through 46, where it |
| 11:31:42 | 22 | says:  Voice commands are input via a microphone.  And then |
| 11:31:47 | 23 | those voice commands are scanned using a type of pattern |
| 11:31:51 | 24 | recognition algorithm. |
| 11:31:52 | 25 | Another such example is Column 24, Lines 37 |

| | | |
|---|---|---|
| 11:31:57 | 1 | through 40:  In no instance are we aware of any embodiment |
| 11:31:58 | 2 | in which voice is used to communicate data signals. |
| 11:32:04 | 3 | THE COURT:  Thank you.  Question?  Is the issue |
| 11:32:08 | 4 | whether voice and data signals are necessarily different, |
| 11:32:11 | 5 | in your view? |
| 11:32:12 | 6 | MR. WITTENZELLNER:  I think that's what it boils |
| 11:32:16 | 7 | down to, Your Honor.  Looking at the claim limitation, |
| 11:32:20 | 8 | this -- the sound and data coupling device introduced in |
| 11:32:24 | 9 | Claim 7 is different than Claim 6.  We know that because |
| 11:32:27 | 10 | Claim 7 should naturally be narrower.  It's a dependent |
| 11:32:32 | 11 | claim.  And there's two ways to narrow the scope, either |
| 11:32:35 | 12 | further refining something in Claim 6 or introducing a new |
| 11:32:38 | 13 | limitation. |
| 11:32:40 | 14 | Salazar, in Claim 7, chose to introduce a new |
| 11:32:43 | 15 | limitation that is adapted and focuses on sound as data |
| 11:32:48 | 16 | signals. |
| 11:32:49 | 17 | And so that in combination with the specification |
| 11:32:52 | 18 | differentiating voice from data signals is the basis for |
| 11:32:56 | 19 | our construction that this device can receive sound as data |
| 11:33:02 | 20 | signals but not voice because voice cannot contain data |
| 11:33:06 | 21 | signals according to the patentee's own disclosure. |
| 11:33:08 | 22 | THE COURT:  Does -- in your view, does Claim 7 |
| 11:33:14 | 23 | encompass a device adapted to receive data signals that can |
| 11:33:19 | 24 | also receive voice? |
| 11:33:28 | 25 | MR. WITTENZELLNER:  No.  This is a separate -- |

11:33:29  1  I believe it's a separate device from Claim 6.  And the

11:33:33  2  reason it can't receive voice -- I mean, if it's exposed to

11:33:36  3  voice, I don't think it would exclude that sound coming

11:33:39  4  into it.  It just wouldn't be responsive to that voice and

11:33:42  5  do anything with it because it is made for receiving sound

11:33:46  6  and data signals.  It doesn't have the additional

11:33:48  7  capability of doing something with voice to the extent it's

11:33:53  8  supposed to.

11:33:53  9       THE COURT:  All right.  Anything further from

11:33:55 10  Plaintiff?

11:33:57 11       MR. KEYHANI:  Yes, Your Honor.

11:33:57 12       What we have here is Defendants arguing by

11:34:02 13  referring to one or a couple of embodiments -- two or three

11:34:06 14  embodiments or their interpretation of embodiments in the

11:34:08 15  patent to import limitations into the claim that are not

11:34:11 16  there.

11:34:11 17       Clearly, the device -- the -- the invention

11:34:16 18  contemplates voice as one form of sound and also that --

11:34:25 19  that the sound as a data signal, which there's no reason

11:34:29 20  why voice cannot be included.

11:34:31 21       The patentee has a right to claim what he wishes to

11:34:36 22  claim as long as it's supported by the disclosure, and he's

11:34:40 23  not limited by particular embodiments that are in the

11:34:42 24  patent.

11:34:43 25       That's a basic canon of patent law, and we see no

11:34:48   1   reason that this -- that sound here should be -- should

11:34:51   2   exclude voice, Your Honor.

11:34:51   3           THE COURT:  All right.  Let's move on to the next

11:34:55   4   disputed term, which is "configured to."

11:34:58   5           Here, the Defendants proposed a particularized

11:35:07   6   arrangement of the memory device for a specific purpose.

11:35:12   7           The Plaintiffs proposed plain and ordinary

11:35:14   8   meaning.

11:35:14   9           Let me hear Defendants' argument on their specific

11:35:17  10   proposal first, and then I'll hear a response from

11:35:21  11   Plaintiff.

11:35:21  12           MR. LANDIS:  Yes, Your Honor.  Todd Landis again

11:35:25  13   for Defendants/intervenors.

11:35:28  14           And I think I can maybe short-circuit this a

11:35:28  15   little bit, Your Honor.

11:35:29  16       I think the only dispute between the parties is the

11:35:31  17   fact that we changed the previous construction of this from

11:35:34  18   "some" to "a."

11:35:38  19       We'd be fine with this being some particularized

11:35:41  20   arrangement of the memory device for a specific purpose if

11:35:43  21   that works better for the Plaintiff.  I -- when I read the

11:35:46  22   briefing, that seemed to be the only dispute.

11:35:49  23           THE COURT:  Well, that's -- that's a good thought,

11:35:50  24   Mr. Landis.  But that's the kind of thought that should be

11:35:53  25   communicated to the other side before you get in front of

| 11:35:55 | 1 | me and take up all our time and energy. |

11:35:55  1  me and take up all our time and energy.

11:35:58  2      And if they'd agreed to it, a simple note to the Court

11:36:01  3  saying we worked this term out, you don't need to worry

11:36:04  4  about it would be appreciated.

11:36:07  5          MR. LANDIS:  Yes, Your Honor.

11:36:08  6          THE COURT:  But since that hasn't happened,

11:36:10  7  Mr. Keyhani, does that aussage your concern here, or do you

11:36:15  8  still have concerns?

11:36:17  9          MR. KEYHANI:  I think we're good with that -- with

11:36:20 10  that proposal --

11:36:21 11          THE COURT:  Well --

11:36:24 12          MR. KEYHANI:  -- Your Honor.

11:36:26 13          THE COURT:  All right.  I'll make a note of that

11:36:28 14  and review it and see if the Court has any concerns with

11:36:32 15  it.  But at least I have -- I have some more focus here.

11:36:35 16          Okay.  The last term for argument, counsel, is

11:36:42 17  effectively what we started with, create, creating,

11:36:45 18  generate, generating, generated, and recreate.

11:36:49 19          With some trepidation, I'll ask:  Is there

11:36:54 20  anything new here that I haven't already heard that you

11:36:57 21  need to present to me?

11:37:00 22          Plaintiff first.

11:37:01 23          MR. KEYHANI:  I'm sorry.

11:37:03 24          No, I -- I think the only thing that I would

11:37:07 25  add -- add, and I think this has been said -- stated, that

11:37:10  1   all of these terms, all of these actions in the context of

11:37:13  2   the -- of the disclosure of the invention and as the claim

11:37:18  3   was recited and as Defendants have conceded, and I think

11:37:21  4   the Court has found before, they all indicate the

11:37:25  5   capability of the microprocessor to carry out these various

11:37:30  6   actions, and not that these specific actions that are

11:37:33  7   actually performed, but it's the capability of the

11:37:37  8   microprocessor to -- to carry out these functions.  And

11:37:39  9   that's the reasonable interpretation.

11:37:42  10         And with that, I have no further -- unless I may

11:37:44  11  have some rebuttal to Defendants' argument.

11:37:49  12         THE COURT:  Mr. Landis, what's Defendants'

11:37:51  13  position on this?

11:37:52  14         MR. LANDIS:  Your Honor, I really have no more

11:37:55  15  argument on these terms other than what I addressed the

11:37:59  16  Court earlier --

11:37:59  17         THE COURT:  Okay.

11:38:00  18         MR. LANDIS:  -- in the -- in the hearing.

11:38:05  19         Your Honor, I do think that we may have skipped

11:38:06  20  one term -- I just want to make sure -- "said communication

11:38:10  21  protocols."

11:38:18  22         THE COURT:  Well, you know, we argued --

11:38:20  23         MR. KEYHANI:  Your Honor?

11:38:22  24         THE COURT:  -- we argued a couple of these

11:38:25  25  together, and I had that coupled with the second one that

11:38:28  1  we argued together, but I'm happy to hear -- I'm happy to

11:38:30  2  hear a brief and targeted argument on that if either party

11:38:34  3  thinks it's necessary.

11:38:35  4       MR. LANDIS:  Your Honor, I can be extremely brief

11:38:38  5  on this -- this point.

11:38:39  6       The -- the only point is this term occurs in the

11:38:40  7  last element, the infra-red frequency transceiver element.

11:38:42  8  We just talked about that, said communication protocols.

11:38:45  9       The issue here is which communication protocols?

11:38:48 10  The claim has a term "a plurality of reprogrammable

11:38:53 11  communication protocols."

11:38:55 12       It then in the user interface has "a communication

11:38:57 13  protocol."  And in the microprocessor it talks about "each

11:39:01 14  communication protocol."  So which ones are we talking

11:39:04 15  about?

11:39:04 16       And I think Your Honor made the point earlier that

11:39:08 17  claims can run this gambit of being drafted extremely well,

11:39:09 18  being drafted extremely poorly.

11:39:11 19       And I would submit that, yes, if you have a claim

11:39:13 20  where you had one of these, I can understand why Your Honor

11:39:16 21  would think, well, this isn't so bad.

11:39:19 22       But how many times today have we argued this same

11:39:22 23  point where you simply can't understand from the drafting

11:39:25 24  what we're getting at?  What protocol is it?  That's our

11:39:30 25  argument, Your Honor.

11:39:32  1          THE COURT:  That's the basis for your assertion of

11:39:35  2    indefiniteness?

11:39:36  3          MR. LANDIS:  Yes, Your Honor.

11:39:37  4          THE COURT:  All right.  Mr. Keyhani, do you have a

11:39:38  5    brief rebuttal?

11:39:39  6          MR. KEYHANI:  Your Honor -- Your Honor is correct

11:39:41  7    that this term was argued before in connection with another

11:39:45  8    term.

11:39:45  9        But just briefly, there is no evidence being

11:39:52 10    presented -- certainly no clear and convincing evidence

11:39:54 11    being presented that one of ordinary skill in the art

11:39:56 12    wouldn't understand what the term means.

11:39:57 13          And, clearly, as I argued earlier today, Your

11:40:01 14    Honor, the Plaintiff did, the -- not only reading the

11:40:09 15    language of the claim by one of ordinary skill in the art,

11:40:11 16    but the last claim element of the claim that starts with

11:40:17 17    "an infra-red frequency transceiver coupled to said

11:40:19 18    microprocessor for transmitting to said external devices

11:40:23 19    and receiving from said external devices infra-red

11:40:28 20    frequency signals in accordance with said communication

11:40:28 21    protocols."

11:40:32 22        The association between -- between the term "said

11:40:39 23    communication protocols" and "communication to external

11:40:41 24    devices" clearly is a reference -- first of all, it's a

11:40:44 25    reference to communication protocols that appears in the

11:40:45  1    paragraph preceding it because it says said, and also a

11:40:51  2    reference to the first paragraph of the body which speaks

11:40:53  3    to a plurality of reprogrammable communication protocols

11:41:00  4    for communication -- and I'm short handing it -- for

11:41:04  5    communication with said external devices.

11:41:07  6          There's only one -- there's only one set of

11:41:10  7    communication protocols that are part of this universe of

11:41:14  8    communication protocols.  And it's the same communication

11:41:16  9    protocols being spoken -- spoken to.

11:41:20  10         It's the capability of a microprocessor to create

11:41:23  11   these communication protocols from the universe of existing

11:41:28  12   communication protocols and to communicate with the

11:41:30  13   external devices.

11:41:31  14         So the last paragraph of this claim circles right

11:41:36  15   back to a reference to the communication with the external

11:41:40  16   devices.

11:41:41  17         So, clearly, we're talking about one of ordinary skill

11:41:45  18   in the art would clearly understand that the communication

11:41:47  19   protocol discussed in the last paragraph and the second to

11:41:50  20   the last -- second to last paragraph of this claim is also

11:41:54  21   a reference to the reprogrammable -- the plurality of

11:41:56  22   reprogrammable communication protocols in the first

11:41:59  23   paragraph.  There are no other communication protocols.

11:42:01  24         We're talking about the ones that communicate with

11:42:04  25   the external devices, which happens to be the very purpose

11:42:06   1   of this invention.

11:42:07   2         Thank you, Your Honor.

11:42:08   3         THE COURT:  All right.  Thank you, counsel, for

11:42:11   4   your argument.  These issues and claim construction as a

11:42:15   5   whole is under submission.  The Court will endeavor to get

11:42:19   6   you written guidance by way of a claim construction opinion

11:42:23   7   as soon as practical.

11:42:25   8         I remind you of the Court's current practice where

11:42:28   9   after that claim construction opinion issues, you'll have

11:42:31  10   14 days to meet and confer and determine whether you want

11:42:35  11   to ask the Court to appoint a mediator to mediate your

11:42:40  12   disputes in light of the constructions the Court will issue

11:42:44  13   and whether you have agreed upon a particular mediator or

11:42:49  14   whether you are unable to so agree.

11:42:52  15         But I will do my best to get you written guidance

11:42:56  16   as soon as I can.

11:42:57  17         That will complete claim construction before the

11:42:58  18   Court today.  Thank you for your attendance and your

11:43:01  19   argument.

11:43:01  20         The Court stands in recess.

11:43:05  21         MR. LANDIS:  Thank you, Your Honor.

11:43:06  22         MR. KEYHANI:   Thanks, Your Honor.

11:43:07  23         MR. WITTENZELLNER:  Thank you.

11:43:10  24         (Hearing concluded.)

          25

1                        <u>CERTIFICATION</u>

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     <u>/S/ Shelly Holmes         </u>        <u>8/19/2020    </u>
     SHELLY HOLMES, CSR, TCRR              Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/2020

12

13

14

15

16

17

18

19

20

21

22

23

24

25