**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC,<br>SPRINT/UNITED MANAGEMENT<br>COMPANY, T-MOBILE USA, INC.,<br>AND CELLCO PARTNERSHIP D/B/A<br>VERIZON WIRELESS,<br><br>    Defendants<br><br>    and<br><br>HTC CORP., and HTC AMERICA, INC.,<br><br>    Intervenors. | Civil Action No. 2:20-cv-00004-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF JOE ANDREW SALAZAR'S FIRST MOTION TO COMPEL DOCUMENT**
**PRODUCTION**

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff Joe Andrew Salazar moves the Court for an order compelling Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless and Intervenors HTC Corp. and HTC America, Inc. (collectively, "Defendants") to provide complete discovery disclosures regarding all of Defendants' revenue and profit in connection with the sale of the HTC One M7, One M8, and One M9 Phones (the "Accused Devices") including all services provided for the use of the phones.  As discussed herein, this information is relevant to Salazar's pleaded claims of damages and should be produced immediately, in compliance with the Court's Discovery Order.

## II.    FACTUAL BACKGROUND

On June 8, 2020, in advance of the Court's June 10 deadline to substantially complete document production, Salazar sent a letter to Defendants stating that their disclosures submitted to date were insufficient.  *See* Salazar 6/8/20 Letter (excerpted) (**Ex. A**).  To assist Defendants, Salazar provided a listing of categories of items that needed to be produced to cure the deficiencies, in particular, categories 32-38 directed at Defendants' financial records.  *See id.* at 2, 5-6.

After the parties conducted a meet and confer on June 22, 2020, Defendants over the course of several weeks produced a handful of incomplete and mostly unusable financial records.  These records trickled in until July 14, 2020, when the last document was produced.  On August 6, 2020, Salazar sent a second letter to Defendants addressing deficiencies in their production of financial information.  In this letter, Salazar further clarified items Defendants needed to produce to cure the deficiencies in their document production, including:

> 1. Documents and electronically stored information sufficient to show all revenue and profits **generated in connection with the sales of the Accused Devices**

**including all revenue and profits obtained from the services associated with the sale and use of the devices** from June 1, 2013 through September 30, 2015. [1]

Salazar also requested a second meet and confer.  After receiving no response from Defendants, Salazar sent a follow-up email on August 11, 2020.  Defendants responded on August 13 with a letter stating, "we need to better understand the scope of your request and the potential relevance of responsive documents before we can evaluate your request and provide you with our position."  Later that day, counsel for Defendants and Salazar had their second meet and confer, during which they discussed Salazar's need for records regarding Defendants' revenue for their services, and the relevance of these records to Salazar's theory of damages.

On August 18, 2020, counsel for Salazar again asked Defendants (1) which, if any, documents addressed in the 8/6/20 Letter Defendants were going to produce and (2) when these responsive documents would be produced.  Defendants responded, "The carriers are evaluating your request for service revenue/cost data (and discussing relevant issues with us)."  On August 20, Defendants sent an email asking Salazar whether there were "any deposition topics that Salazar agrees to forego if the defendants can agree to produce service revenue/cost data."  Salazar answered: "[W]e can't agree to forego any topics until we see the documents.  Once we have them we may be able to, but we cannot do that now without seeing any documents."  Defendants then asked that Salazar "reconsider forgoing some of the irrelevant deposition topics if Defendants are able to agree to produce service revenue/cost data in an accessible form."[2]  On August 21, Salazar responded, among other things, that if Defendants would confirm whether or not they had any

---

[1] Salazar further specified four alternative categories of documents Defendants could produce in the unlikely event that the information in Category #1 was not maintained with specificity.

[2] Attached to their email, Defendants also included a letter responding to the requests in Salazar's 8/6/20 Letter. Defendants rejected Salazar's damages theories, stating that "the requested information regarding [the U.S. carriers'] services is not relevant to any valid damages theory in this case."  In the letter, Defendants indicated they would not produce the requested information.

3

documents responsive to the various categories of information identified in Plaintiff's June 8th letter, then deposition topics for which there were no responsive documents could be removed.

On August 24, Salazar once again asked Defendants to confirm whether they would be producing financial records relating to Defendants' services and reminded Defendants that "expert disclosures are currently due in a few weeks."  After receiving no confirmation that Defendants would produce the requested information, Salazar emailed Defendants on August 26, giving them one day to "confirm they will produce no later than 8/31 . . . the services revenue/profits identified in our 8/6 letter."  Salazar stated that in the absence of that confirmation, he intended to file a motion to compel.  On August 27, Defendants responded: "We will keep you posted as soon as we have answers to your questions, and I anticipate having a report for you by next Wednesday [in six days]."

As of the date of this Motion, Defendants have not produced documents responsive to the categories identified in Salazar's 6/8/20 and 8/6/20 Letters.  As a result of Defendants' failure to respond to Salazar's repeated requests, Salazar's damages expert lacks sufficient records to complete his report.

### III.    LEGAL STANDARD

Rule 26 allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  *Realpage, Inc. v. Enterprise Risk Control, LLC,* No. 4:16-cv-737, 2017 WL 1165688, at *1 (E.D. Tex. Mar. 29, 2017).

### IV.    ARGUMENT

Salazar's requests that Defendants immediately produce all sales and financial records sufficient to show all revenue and profits generated in connection with the sales of the Accused Devices, including services, is reasonably calculated to lead to the discovery of admissible

evidence.  *See* Fed. R. Civ. P. 26(b)(1); Local Rule CV-26(d); *Realpage Inc.*, 2017 WL 1165688, at *1.  These records are key to Salazar's "convoyed sales" theory of damages, and without them, he will be deprived of discovery "that is reasonably necessary to afford a fair opportunity to develop and prepare the case."  *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes.

The "extent of . . . derivative or convoyed sales" is one of the often-cited *Georgia–Pacific* factors relevant to a determination of a reasonable royalty rate.  *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385-86 (Fed. Cir. 2001) (quoting *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).  It is well-established that juries may "rely on evidence of bundling and convoyed sales in determining the proper scope of the royalty base" and that doing so is "eminently reasonable."  *See Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1373 (Fed. Cir. 2010); *Interactive Pictures*, 274 F.3d at 1385.  Here, Salazar may rely on a convoyed sales theory of damages because (A) the Accused Devices and Defendants' services share a close functional relationship and (B) the Accused Devices drove demand for Defendants' services.

### A.    The Accused Devices and Defendants' services share a close functional relationship.

In *Realtime Data LLC v. NetApp, Inc.*, a case involving patents relating to different systems and methods of data compression, this Court allowed the plaintiff's damages expert to calculate the royalty base by including "non-patented software/hardware service and maintenance offerings" because (1) the maintenance offerings were intended to "provide customers with bug fixes, patches and support for software, as well as hardware maintenance and warranties directly related to . . . the Accused Products," and (2) the offerings were "sold 'bundled' with certain product offerings and in many cases [we]re *required* to be purchased in conjunction with the Accused Products."  No. 6:16-CV-00961-RWS, 2017 WL 5756863, at *2 (E.D. Tex. Nov. 28, 2017).  Thus, the

revenues generated from the sale of service and maintenance services constituted convoyed sales that should also be included in the royalty base. *Id.*

In *Simo Holdings, Inc. v. H.K. uCloudlink Network Technology Ltd.*, the court permitted the plaintiff's damages expert to calculate the reasonable royalty rate for Defendants' infringing mobile WiFi hotspot devices, including a mobile world phone, based on the number of data packages (or "Daypasses") sold by Defendants.  396 F. Supp. 3d 323, 337-38 (S.D.N.Y. Aug. 28, 2019).  This was because Defendants derived profits from the sale of data to be accessed with its infringing devices, not from the sale of the hardware itself.  *Id.* at 338.  According to the court, "[t]o suggest that the reasonable royalty should be based only on the Infringing Devices, rather [than] on the data access that the infringement makes possible, [wa]s simply to ignore economic reality." *Id.*

Likewise, here, the Accused Devices and Defendants' services share a close functional relationship.  For example, Claim 2 of Salazar's patent specifically recites the use of a radio frequency transceiver for transmitting radio frequency signals (e.g., voice and texting).[3]  The two-way radio communication capability of the Accused Devices permits, e.g., voice and texting.  And because this capability is part of Claim 2 and its depending claims, the services sold by Defendants allow for the use of certain elements of the patented system.  Although Defendants' services may not provide for every element of the Salazar patent and are not themselves infringing, they share a close functional relationship with the Accused Devices such that they constitute convoyed sales that should be included in the royalty base.  *See Simo Holdings*, 396 F. Supp. 3d at 337-38;

---

[3] Claim 2 recites: "The communication, command, control and sensing system of claim 1 further comprising: **a radio frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said devices, radio frequency signals** at variable frequencies within a predetermined frequency range and in accordance with said communication protocols; . . . ."  U.S. Patent No. 5,802,467 (Dkt. No. 1, Ex. at col: 26:18-35) (emphasis added).

*Realtime Data*, 2017 WL 5756863, at \*2-4.  The sales records for Defendants' services are thus

highly relevant to Salazar's claim for damages.

### B.   The Accused Devices drove demand for Defendants' services.

Salazar may also rely on a convoyed sales theory of damages because Defendants used the

Accused Devices to promote sales of their services.  In *Trans-World Manufacturing Corp. v. Al

Nyman & Sons, Inc.*, the Federal Circuit determined that the profits from the defendant's

nonpatented eyeglasses could be relevant in determining the amount of a reasonable royalty in a

case involving infringing eyeglass display racks:

> By supplying the patented racks for displaying the eyeglasses, [Defendant] used
> "the patented [invention] in promoting sales of" the nonpatented eyeglasses.
> [Plaintiff] may be able to prove that [Defendant]'s infringing use of the displays
> played an important part in the retail sales of [Defendant]'s eyeglasses.
> Furthermore, the extent of the profits from such sales could be relevant in
> determining the amount of a reasonable royalty.  If, for example, sales were
> increased because of the infringing use of the displays, that fact could affect the
> amount of royalties a potential licensee would be willing to pay.

750 F.2d 1552, 1568 (Fed. Cir. 1984).  Likewise, in *Interactive Pictures*, a case involving an image

viewing system, the Federal Circuit allowed the plaintiff's damages expert to use projected future

sales for *all* of the defendant's products as the royalty base, even though only a subset of these

products were accused of infringement.  274 F.3d at 1384.  Although not all of the defendant's

products infringed the asserted patents, the accused products were bundled with sales of the

defendant's other products and drove the overall sales of these products.  *Id.*

Similarly, here, Defendants' services were bundled with sales of the Accused Devices, and

Defendants used these infringing phones to promote sales of their services.  The patented features

of the Accused Devices very likely "played an important role" in the sales of Defendants' services,

and any increase in sales of these services is a fact could affect the amount of royalties a potential

licensee would be willing to pay.  *See Interactive Pictures*, 274 F.3d at 1384; *Trans-World*, 750

F.2d at 1568.  Thus, Salazar is entitled to discovery of Defendants' services records under Rule

26's broad mandate.  *See Oppenheimer Fund*, 437 U.S. at 351.

Defendants' arguments that these records are irrelevant and undiscoverable are unavailing.

Defendants' 8/20/20 Letter mischaracterizes Salazar's invention and ignores the economic reality.

Defendants' mere disagreement with Salazar's damages theories is insufficient to shield them from

their discovery obligations under Rule 26.  As the case law makes clear, Defendant's arguments

regarding the merits of Salazar's position are premature and provide no basis for compliance with

the Discovery Order.  Salazar's requests for Defendants' services records are undoubtedly relevant

to his damages claim, and Defendants, therefore, have no basis for withholding this information.

## V.     CONCLUSION

For these reasons, Salazar respectfully requests that the Court grant this Motion to Compel.

Dated: August 31, 2020

Respectfully submitted,

/s/Geoff Culbertson
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
PATTON, TIDWELL &
CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone: 903-792-7080
Fax: 903-792-8233

Dariush Keyhani (Lead Attorney)
District of Columbia Bar No. 1031500
(*pro hac vice*)
Frances H. Stephenson
New York registration No. 5206495
(*pro hac vice*)
Keyhani LLC

8

1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 31st day of August, 2020.

/s/Geoff Culbertson
Geoffrey Culbertson

## CERTIFICATE OF CONFERENCE

I certify that Plaintiff Joe Andrew Salazar has complied with the requirements of Local Rule CV-7(h) and the Discovery Order governing this case.  Salazar sent Defendants written statements outlining their deficient discovery on June 8, 2020 and August 6, 2020. The August 6th letter was specific to the issue of services revenue and profits.  The parties held a telephonic meet and confer on that subject on August 13, 2020 during which the parties discussed their respective positions.  Darius Keyhani and Geoff Culbertson attended for Plaintiff and at least Fred Williams and Gil Gilliam attended for Defendants. Defendants responded to Salazar's August 6, 2020 letter August 20, 2020 stating the reasons they would not produce the requested items.  Though the parties have had further communications their discussions are at an impasse.

9