# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,<br><br>    Defendants<br><br>    and<br><br>HTC CORP., and HTC AMERICA, INC.<br><br>    Intervenors. | CIVIL ACTION NO. 2:20-CV-00004-JRG<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S FIRST MOTION TO COMPEL DOCUMENT PRODUCTION**

Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless ("Defendants") file this Response to Joe Andrew Salazar's ("Plaintiff" or "Salazar") First Motion to Compel Document Production (Dkt. 123, the "Motion").  Although Defendants dispute the relevance of the requested service data, they have already produced it in an attempt to avoid burdening the Court with unnecessary motion practice.  The Motion should be denied as moot because Defendants produced the requested service data for AT&T, Sprint, and Verizon on September 9, 2020, and T-Mobile produced the service data it has located on September 15, 2020.[1]  Additionally, the Motion rests on two faulty premises, both of which require denial of the Motion.  First, Salazar represents to the Court that Defendants have not produced any financial information regarding the Accused Devices.  *See* Motion at 4.  But there is no legitimate dispute that Defendants produced quantity, price, revenue, and cost data for the Accused Devices on June 10, 2020 (T-Mobile and Verizon), June 18, 2020 (Sprint), and July 14, 2020 (AT&T).[2]

Second, Salazar misrepresents that Defendants' sales of cellular voice and data services are driven by the claimed invention.  But every asserted claim requires an infrared frequency transceiver for transmitting to and receiving from external devices using the claimed communication protocols.  *See, e.g.,* U.S. Patent No. 5,802,467 at 25:57-26:17 (the "'467 Patent").  Defendants' services, to the extent there are any associated with the Accused Devices, are ***cellular*** voice and data services, not infrared services.  Salazar cites no support for his remarkable

---

[1] T-Mobile is working diligently to produce any remaining available service information and expects to produce the remaining information by September 17, 2020.  To do so will require the work of a three-person programming team and up to 24 hours of computer processing time, but they are working diligently on it already.

[2] Sprint and T-Mobile produced supplemental data on July 10, 2020, and Verizon produced supplemental data on July 14, 2020.

proposition that the inclusion of an infrared transceiver in the Accused Devices drives the sale of cellular voice and data services, because it never has.[3]

## I.     FACTUAL BACKGROUND

Plaintiff complained about Defendants' document production in a letter dated June 8, 2020. While that letter sought other financial data, it failed to request (or even discuss) the service revenue data now sought by the Motion, nor did it suggest that service revenue could be relevant in any way. In fact, the letter unambiguously requested "total *sales* revenue" and "revenue and profit. . . in connection with the *sale* of each of the Accused Devices." So Defendants produced quantity, price, revenue, and cost data for the Accused Devices on June 10, 2020 (T-Mobile and Verizon), June 18, 2020 (Sprint), and July 14, 2020 (AT&T).[4]

Consistent with their obligations under the Court's rules and Discovery Order, Defendants continued to produce potentially relevant financial data relating to their sale of the Accused Devices as the data became available. Then Salazar sent a second letter requesting additional documents on August 6—for the first time requesting *service* revenue data. Ex. A, Salazar 8/6/20 Letter at 1 (requesting "revenue and profits obtained from the services associated with the sale and use of the devices") (emphasis added). Defendants requested a meet and confer call to discuss the scope and relevance of Plaintiff's new request. During that call, Salazar's lead counsel confirmed that he was seeking the full scope of his broad request on a "convoyed sales" theory. Salazar's lead counsel later confirmed on August 21 that his previously noticed deposition topics could be limited if Defendants produced some form of the requested service revenue data.

---

[3] Nor has Plaintiff alleged that the accused functionality requires cellular voice and data services to function.
[4] Sprint and T-Mobile produced supplemental data on July 10, 2020, and Verizon produced supplemental data on July 14, 2020.

On August 24 and 26, Salazar asked Defendants to confirm if they would produce financial documents relating to service revenue by no later than August 31. Defendants, in the process of diligently compiling the information, responded appropriately to Salazar: "We are still working to determine what data exists in usable form. We will keep you posted as soon as we have answers to your questions, and I anticipate having a report for you by next Wednesday." In response, Salazar filed the Motion preemptively on Monday.

## II.   LEGAL STANDARD

The scope of discovery is limited to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b). "The **burden lies with the moving party** to show clearly that the information sought is relevant to the case and would lead to admissible evidence." *See Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) (emphasis added).

## III.   ARGUMENT

As the moving party, Salazar bears the burden to show clearly that the financial information regarding Defendants' sales of wireless voice and data services to its customers is relevant to a party's claim or defense. Salazar argues that the requested information is relevant to a "convoyed sales theory of damages." *See* Motion at 4-6. But to meet the test for "convoyed sales," Salazar must show a close functional relationship between the Accused Devices and Defendants' cellular voice and data services. Salazar has failed to cite any support demonstrating that the Accused Devices share a close functional relationship with Defendants' cellular voice and data services such that the Accused Devices could drive demand for Defendants' services because Defendants' services never involved any infrared-frequency transmissions, while every asserted claim is for a

system including an infrared-frequency transceiver for transmitting and receiving infrared signals.[5]

Damages for convoyed sales do not extend to "items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." *Am. Seating Co. v. USSC Grp., Inc.,* 415 F.3d 1262, 1268 (Fed. Cir. 2008). The law on convoyed sales recovery does not apply to this case because the claimed subject matter in the asserted patent is clearly unrelated to Defendants' sale of cellular voice and data services. Given the lack of a functional relationship between the claimed inventions and the Defendants' cellular voice and data services, the Motion should be denied.

### A. The claimed systems bear no functional relationship to Defendants' cellular voice and data services.

The claims in this case bear no functional relationship to Defendants' cellular voice and data services. Salazar asserts claims 1-7, 27-30, and 34 of the '467 Patent against Defendants. Both asserted independent claims (claims 1 and 34) recite "an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communication protocols." Although the parties dispute the meaning of certain terms in the asserted claims, nobody disputes that each asserted claim requires an infra-red frequency transceiver that transmits to (and receives from) external devices, infra-red frequency signals in accordance with specific communications protocols recited in the claims. *See* 35 U.S.C. §112, ¶ 6 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

Defendants' cellular voice and data services are provided via cellular, radio-frequency

---

[5] In the first case, *Joe Andrew Salazar v. HTC Corp.*, No. 2:16-cv-1096-JRG (E.D. Tex.), Salazar did not argue that cellular voice or data services satisfy any of the claim limitations. Dkt. 277, Trial Tr. 168:2-183:10 (May 7, 2018) (direct examination of Roy A. Griffin, III); Dkt. 278, Trial Tr. 5:5-91:5 (May 8, 2018) (direct examination of Roy A. Griffin, III).

signals only, ***not infra-red***. In an attempt to avoid this issue, Salazar's Motion ignores the infra-red frequency transceiver limitation in every asserted claim and instead focuses on language from dependent claim 2. Salazar argues that claim 2 shares a close functional relationship with Defendants' voice and data services because it "recites the use of a radio frequency transceiver for transmitting radio frequency signals (i.e., voice and texting)." *See* Motion at 6. That is incorrect. Claim 2 recites a specific radio frequency transceiver for "transmitting to said external devices and receiving from said devices, radio frequency signals at variable frequencies within a predetermined frequency range" with specific communications protocols recited in the claims. Salazar's invention is not, and claim 2 does not claim, a cellular phone. That is because the radio-frequency transceiver of claim 2 communicates "in accordance with said communication protocol"—i.e., the same protocols used by the infrared frequency transceiver. Those communication protocols are not cellular voice or data communication protocols because infrared-frequency transceivers cannot use such protocols. Salazar's expert in the first case, *Joe Andrew Salazar v. HTC Corp.*, No. 2:16-cv-1096-JRG (E.D. Tex.), testified that a Bluetooth transceiver, not a cellular transceiver, satisfied claim 2. Dkt. 278, Trial Tr. 53:9-57:2 (May 8, 2018) (direct examination of Roy A. Griffin, III). And Salazar fails to show otherwise. At no point does Salazar assert, let alone prove, that Defendants' cellular voice and data services communicate using the specific "radio frequency transceiver" recited in claim 2. Therefore, Salazar has failed to meet his burden of showing a functional relationship between the Accused Devices and Defendants' cellular voice and data services.

    **B.**  **Salazar's reliance on *Realtime Data v. NetApp.* and *Simo Holdings v. H.K. uCloudlink* is misplaced.**

  Unlike here, in both of the cases cited by Salazar, the services at issue were functionally related to the Accused Devices. In *Realtime Data*, the asserted claims and the accused products

related to software and systems for data compression. *See Realtime Data LLC v. NetApp, Inc.*, No. 6:16-CV-00961-RWS, 2017 U.S. Dist. LEXIS 195232, at \*2 (E.D. Tex. Nov. 16, 2017). The services at issue managed and maintained the same data-compression software and systems. *See id.* at \*10-11. In fact, the services at issue there had "no intended purpose separate and apart from the Accused Products." *See id.* at \*11. That is not the case here. Salazar has not argued, cannot argue, and will never demonstrate that any of Defendants' services pertain to the recited infra-red frequency transceiver or the claimed communication protocols. *See* Motion at 5-7. Salazar has not argued, and he has not shown, that Defendants' cellular voice and data services lack an intended purpose that is separate and apart from the Accused Products—because the Defendants sell the same cellular voice and data services to millions of customers with non-Accused Products that do not include an infra-red transceiver.

In *Simo Holdings*, the asserted patent related to providing roaming data services. *See Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 332-33 (S.D.N.Y. 2019). The accused products were mobile WiFi hotspot devices for providing data services while roaming. *See id.* That court therefore found that information regarding data-roaming services, called "Daypasses," was relevant because "***crucially***, the manner in which the [accused products] provide roaming services infringed [plaintiff's patent]." *See id.* at 338 (emphasis added). In this case, there is no allegation, let alone any factual basis, to show that Defendants' RF-based, cellular voice and data services infringe the '467 Patent in any way.

    **C.**    **Salazar has failed to show that the claimed infrared-frequency transceiver system drives demand for defendants' cellular voice and data services.**

Salazar argues that the "patented features of the Accused Devices very likely 'played an important role' in the sales of Defendants' services . . . ." Motion at 7. Tellingly, Salazar fails to cite any support for that position. He cannot point to Defendants' services ever using infra-red

signals as part of any service, and he has no claimed invention that uses radio frequency transmissions alone. *See id.* at 7-8. Nor has Plaintiff alleged that the accused functionality requires cellular voice and data services to function. Indeed the Motion fails to cite *any* basis for arguing that the patented system containing an infrared-frequency transceiver played *any* role in driving *any* demand for *any* of Defendants' voice and data services. *See id.* at 7-8. This is not surprising because the two bear no functional relationship for the reasons demonstrated above.

In *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, the Federal Circuit found that the sale of eyeglasses was driven by the sale of patented eyeglass-display racks because the racks were physically used to sell eyeglasses to customers. *See* 750 F.2d 1552, 1568 (Fed. Cir. 1984). Again, that is not the case presented here, for all of the reasons discussed above. While the *Interactive Pictures Corp. v. Infinite Pictures* decision does hold that, in some instances, the jury can rely on evidence of bundling and convoyed sales in determining the royalty base, *see* 274 F.3d 1371, 1385 (Fed. Cir. 2001), the decision does not identify the unpatented products or the way in which they were bundled with the patent products. *See id.* at 1384-85. And Salazar has provided no basis for why the holding of that case should apply here.

### IV. CONCLUSION

The Motion should be denied as premature and/or moot because Defendants have produced all of the requested service revenue data obtained from their files to date. In any event, as the moving party, Salazar failed to show clearly that the information sought is relevant to the case and would lead to admissible evidence for the reasons stated herein. Accordingly, the Motion should be denied.

Dated:  September 16, 2020

Respectfully submitted,

*/s/ Fred I. Williams*
Fred I. Williams
Texas Bar No. 00794855
fwilliams@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, Texas 78701
Tel:  512.543.1376

Todd E. Landis
Texas Bar No. 24030226
tlandis@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel:  512.543.1357

John Wittenzellner
Pennsylvania Bar No. 308996
johnw@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Sreet, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373

Harry Lee Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: 903.934.8450
Fax: 903.934.9257

*Attorneys for Defendants and Intervenor-Defendants*

-9-

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of September, 2020, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                           */s/ Harry L. Gillam, Jr.*
                                           Harry L. Gillam, Jr.