# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC,<br>SPRINT/UNITED MANAGEMENT<br>COMPANY, T-MOBILE USA, INC.,<br>AND CELLCO PARTNERSHIP D/B/A<br>VERIZON WIRELESS,<br><br>    Defendants<br><br>    and<br><br>HTC CORP., and HTC AMERICA, INC.,<br><br>    Intervenors. | Civil Action No. 2:20-cv-00004-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S JOE ANDREW SALAZAR'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT 35 U.S.C. § 287(a) IS NOT APPLICABLE IN THIS CASE**

Plaintiff Joe Andrew Salazar ("Plaintiff" or "Salazar") files this Motion for Partial Summary Judgment That 35 U.S.C. § 287(a) Is Not Applicable in This Case ("Motion") and in support thereof shows as follows:

## I. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether Plaintiff Joe Andrew Salazar has established that no reasonable jury could find that the Model Hughes Remote Phone, the 650D My One Remote, or the My1Remote are patented articles within the meaning of § 287(a) because they do not meet all the elements of any of the claims of the '467 Patent.

2. Whether Plaintiff Joe Andrew Salazar is entitled to judgment as a matter of law that 35 U.S.C. § 287(a) is not applicable in this case.

## II. INTRODUCTION

Salazar, the owner of United States Patent No. 5,802,467 ("the '467 Patent"), seeks partial summary judgment on compliance with marking requirements under 35 U.S.C. § 287(a), because § 287(a)—which limits a patentee's damages in the event of a failure to mark—is not implicated in this case. The products made and sold by Salazar's company Innovative Intelcom Industries ("I3")—the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote (collectively, "the I3 Products")—are not "patented articles" within the meaning of § 287, and no reasonable jury could conclude otherwise.

Under 35 U.S.C. § 287(a), "a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) (citing *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)). Salazar has never made or sold a patented article and, therefore, has no obligations under the marking statute. The I3 Products are not covered by any

1

claims of the '467 Patent for at least the reason that each independent claim—and therefore *all* claims—of the '467 Patent requires an **infra-red frequency transceiver** (claims 1, 10, and 34 recite "an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols").  Salazar has testified unequivocally that none of the I3 Products includes an IR transceiver or IR receiver and that none of these products embody all of the elements of any claim of the '467 Patent.  His testimony is corroborated by his co-inventor and I3's chief engineer Luis Molero-Castro (who was personally involved in the design, manufacture, and production of the I3 Products), and by his expert witness Dr. Oded Gottesman, who carefully examined each of the I3 Products and studied their functionality.  Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon and Intervenors HTC Corp. and HTC America, Inc. (collectively, "Defendants") have put forth no evidence to the contrary.

Accordingly, no reasonable jury could find that Salazar made or sold a patented article under § 287(a), and Salazar is entitled to summary judgment that § 287(a) is not applicable in this case as a matter of law.

### III.  FACTUAL BACKGROUND

The '467 Patent was granted on September 1, 1998, to Salazar (currently the owner of all rights in the patent) and his co-inventor, Luis Molero-Castro.  *See* Dkt. #1-2.  Salazar started the company Innovative Intelcom Industries in 1994, and the company lasted roughly twelve years, until 2006.  Declaration of Joe Andrew Salazar (Nov. 3, 2020), ¶ 1 (**Ex. A**).  Molero-Castro, a telecommunications and computer science engineer, was the chief engineer for I3, working with the company from 1993 until around 2005.  Declaration of Luis Molero-Castro (Nov. 3, 2020), ¶

1 (**Ex. B**). I3 manufactured and sold the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote (collectively, the "I3 Products"). Ex. A, ¶ 3; Ex. B, ¶ 3. Each of these I3 Products, as packaged, included a handset and a charging base.

According to Salazar and Molero-Castro, none of the I3 Products included an infrared ("IR") transceiver or an IR receiver. Ex. A, ¶ 4; Ex. B, ¶¶ 4-5; *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG (E.D. Tex.)), 5/7/18 Trial Transcript (P.M. Session) (**Ex. C**), at 104:7-20, 107:25-108:4, 110:5-11, 113:5-8. Molero-Castro was personally involved with the design of all of the I3 Products, and Salazar provided system oversight of the design. Ex. A, ¶ 4; Ex. B, ¶ 4. Based on their direct involvement in the design process, both Salazar and Molero-Castro have testified that none of the I3 Products included an IR transceiver or an IR receiver. Ex. A, ¶ 4; Ex. B, ¶ 4. Additionally, both Salazar and Molero-Castro personally oversaw the manufacture and production of all of the I3 Products. Ex. A, ¶ 5; Ex. B, ¶ 5. In this capacity, Salazar and Molero-Castro both had firsthand knowledge of all the components of the I3 Products and testified that no IR transceivers or IR receivers were ever purchased in connection with the design, manufacturing, and/or use of any of the I3 Products. Ex. A, ¶ 5; Ex. B, ¶ 5. Further, no I3 Product was ever sold that included an IR transceiver or an IR receiver. Ex. A, ¶ 5; Ex. B, ¶ 5.

Salazar's expert, Dr. Oded Gottesman, has also testified that "[n]one of the I3 devices includes an infra-red frequency transceiver." Expert Report of Dr. Oded Gottesman (Oct. 7, 2020) (**Ex. G**), ¶¶ 15, 47 & Ex. C. Dr. Gottesman carefully examined samples of each of the I3 Products and concluded that none of them meets all the elements of any of the claims of the '467 Patent. *Id.* According to Dr. Gottesman, the I3 Products "do not practice any of the claims of the '467 patent because they do not meet all the elements of any of the claims of the '467 patent," including "an infra-red frequency transceiver coupled to said microprocessor for

3

transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols." *Id.* The I3 Devices "are therefore not patented articles within the meaning of 35 U.S.C. § 287." *Id.*

Additionally, Salazar testified that a sticker bearing the '467 Patent number was mistakenly affixed to the charging bases of each of the I3 Products. Ex. A, ¶ 6. No handset of the I3 Products was ever affixed with a sticker or otherwise bore the '467 Patent number. *Id.* It is undisputed that the charging bases of the I3 Devices do not practice any of the claims of the '467 Patent because they do not contain any of the elements of the claimed inventions.[1] *Salazar v. HTC Corp.*, Dkt. #242, at 1. According to Salazar, I3 affixed the '467 Patent number to the charging bases because it believed there were some features or attributes of the I3 Products that were elements of the invention disclosed and claimed in the '467 Patent, but *not* because I3 believed that all of the elements of the claimed invention were embodied in the I3 Products. Ex. A, ¶ 6. Indeed, as Salazar has testified, at no time did I3 ever advertise, market, or otherwise hold out any of the I3 Products as being representative of the complete '467 Patent. *Id.*; Ex. C, at 137:17-138:24.

IV.   **LEGAL STANDARD**

   A.   **Summary Judgment Standard**

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[1] This is the position HTC Corp. took in the prior litigation, and this can also be understood as Defendants' position in this case because Defendants have asserted that they are in privity with HTC Corp. and because HTC Corp. is now an intervenor in this case.

summary judgment," and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To demonstrate a genuine issue, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must present sufficient evidence—more than a mere "scintilla"— upon which a jury could reasonably find in its favor. *Anderson*, 477 U.S. at 252.

"Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996); *VirnetX Inc. v. Apple, Inc.*, No. 6:12-CV-855, 2014 WL 12597800, at *2 (E.D. Tex. Aug. 8, 2014).  The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim.  *VirnetX*, 2014 WL 12597800, at *2.  Disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248.

B.  **Marking Requirements Under 35 U.S.C. § 287(a)**

Under 35 U.S.C. § 287(a), "a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages. *Arctic Cat*, 876 F.3d at 1365 (citing *Dunlap*, 152 U.S. at 248).  The marking statute only applies to "patented articles"— i.e., devices that contain **all of the elements disclosed in any single claim of the patent**—and is only triggered when such patented articles are actually sold into the marketplace. *See* 35 U.S.C. § 287(a); *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. 501CV344, 2004 WL 5268123, at *26 (E.D. Tex. Aug. 4, 2004).  The statute does not limit damages where a patent holder (or licensee) does not actually sell **products practicing the relevant patent** in the marketplace.  *See*

5

*Tex. Dig. Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002), *abrogated on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ("The recovery of damages is not limited [by 35 U.S.C. § 287] where there is no failure to mark, i.e., where the proper patent notice appears on products or **where there are no products to mark**.") (emphasis added).

Under *Arctic Cat*, "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368. Once the alleged infringer meets this burden, "the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.* "[T]he marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Id.* at 1366 (citation omitted).

## V. ARGUMENT

### A. Defendants have not satisfied their initial burden under *Arctic Cat.*

Defendants, as the alleged infringers challenging Salazar's compliance with § 287,[2] bear the initial burden of production to articulate the products they believe are unmarked patented articles subject to § 287. *Id.* at 1368. Because Defendants have not articulated any such products in this case, they have not satisfied their initial burden and may not properly challenge Salazar's compliance with the marking statute.

---

[2] The U.S. carrier Defendants have not yet filed a responsive pleading to Salazar's Amended Complaint because their Joint Motion to Dismiss Under Rule 12(b)(6) is still pending. However, Intervenors HTC Corp. and HTC America, Inc., who assert they are in privity with the U.S. carriers, did not assert in their Complaint in Intervention any claim under § 287 or articulate any products they believe are unmarked "patented articles" subject to § 287. Dkt. #70; *see Arctic Cat*, 876 F.3d at 1368.

### B. Even if Defendants had met their burden, Salazar would be entitled to summary judgment based on the absence of a factual dispute.

Even assuming Defendants had met their initial burden, Salazar is entitled to summary judgment on the issue of compliance with the marking statute because no reasonable jury could find that he ever made or sold a patented article. The marking statute only applies to "patented articles"—i.e., devices that contain **all of the elements disclosed in any single claim of the patent**—and is only triggered when such patented articles are actually sold into the marketplace. *See* 35 U.S.C. § 287(a); *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. 501CV344, 2004 WL 5268123, at *26 (E.D. Tex. Aug. 4, 2004). The statute does not limit damages where a patent holder (or licensee) does not actually sell **products practicing the relevant patent** in the marketplace. *See Tex. Dig. Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002), *abrogated on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). That is, "there is no failure to mark ... **where there are no products to mark**." *Id.* (emphasis added).

Here, there is no genuine dispute of any material fact as to whether Salazar made or sold any product containing all of the elements disclosed in any single claim of the '467 Patent. The I3 Products are not covered by any claims of the '467 Patent for at least the reason that each independent claim—and therefore *all* claims—of the '467 Patent requires an **infra-red frequency transceiver** (claims 1, 10, and 34 recite "an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols"). *See* Dkt. #1-2. None of the I3 Products includes an IR transceiver or an IR receiver, and no reasonable jury could conclude otherwise.

The firsthand testimony of Salazar and Molero-Castro, the individuals directly involved in the design, production, and manufacture of the I3 Products, unequivocally establishes that the

I3 Products do not include an IR transceiver or an IR receiver. Salazar and Molero-Castro have both testified that none of the I3 Products included an infrared IR transceiver or an IR receiver. Ex. A, ¶¶ 4-5; Ex. B, ¶¶ 4-5; Ex. C, at 104:7-20, 107:25-108:4, 110:5-11, 113:5-8. Molero-Castro was personally involved with the design of all of the I3 Products, and Salazar provided system oversight of the design. Ex. A, ¶ 4; Ex. B, ¶ 4. Based on their direct involvement in the design process, Salazar and Molero-Castro both testified that none of the I3 Products included an IR transceiver or an IR receiver. Ex. A, ¶ 4; Ex. B, ¶ 4. Additionally, Both Salazar and Molero-Castro personally oversaw the manufacture and production of all of the I3 Products. Ex. A, ¶ 5; Ex. B, ¶ 5. In this capacity, Salazar and Molero-Castro both had firsthand knowledge of all the components of the I3 Products and testified that no IR transceivers or IR receivers were ever purchased in connection with the design, manufacturing, and/or use of any of the I3 Products. Ex. A, ¶ 5; Ex. B, ¶ 5. Further, according to Salazar and Molero-Castro, no I3 Product was ever sold that included an IR transceiver or an IR receiver. Ex. A, ¶ 5; Ex. B, ¶ 5.

Additionally, Salazar has consistently and unequivocally stated that none of the I3 Products embodies all of the elements disclosed in any single claim of the patent—this was his testimony at trial in the prior case, *see, e.g.*, Ex. C, at 104:7-20, 107:13-15, 107:25-108:4, 110:5-11, 113:5-8; during his deposition in this case, *see, e.g.*, Deposition of Joe Andrew Salazar (Sept. 22, 2020), at 56:23-57:10 (**Ex. D**); and in his responses to Defendants' interrogatories and requests for admission in this case, *see, e.g.*, Plaintiff Joe Andrew Salazar's Responses and Objections to Defendants' First Set of Interrogatories (Sept. 21, 2020) **(Ex. E)**, at 18-20; Plaintiff's Reponses and Objections to Defendants' First Set of Requests for Admission (Sept. 21, 2020) (**Ex. F**), at 25-28.

Further, Salazar's expert, Dr. Gottesman, concluded that the I3 Products are not patented articles based on his own analysis of the Model Hughes Remote Phone, the 650D My OneRemote, and the My1Remote. Dr. Gottesman carefully examined samples of each of the I3 Products and concluded that none of them meets all the elements of any of the claims of the '467 Patent. Ex. G, ¶¶ 15, 47 & Ex. C. As detailed in his expert report, Dr. Gottesman studied the I3 Products and their functionalities, and determined that **"[n]one of the I3 devices includes an infra-red frequency transceiver**." *Id.* (emphasis added). According to Dr. Gottesman, although the I3 Products were marked with U.S. Patent No. 5,802,467,[3] "they do not practice any of the claims of the '467 patent because they do not meet all the elements of any of the claims of the '467 patent," including "an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols." *Id.* The I3 Products "are therefore not patented articles within the meaning of 35 U.S.C. § 287." *Id.*

Defendants cannot point to any evidence in the record that demonstrates the existence of a genuine factual dispute. Defendants' expert, Dr. Andrew Wolfe, was provided samples of each of the I3 Products by Salazar in the prior litigation against HTC Corp. so that he could fully

---

[3] Salazar's incorrect marking of the charging bases of the I3 Products—which both parties concede are not patented articles—has no bearing on this Motion. As Salazar has explained, a sticker bearing the '467 Patent number was mistakenly affixed to the charging bases of each of the I3 Products. Ex. A, ¶ 6. Defendants and Intervenors do not dispute that no handset of the I3 Products was ever affixed with a sticker or otherwise bore the '467 Patent number. *Salazar v. HTC Corp.*, Dkt. #242, at 1. It is also undisputed that the charging bases of the I3 Products do not practice any of the claims of the '467 Patent. *Id.* According to Salazar, I3 affixed the '467 Patent number to the charging bases because it believed there were some features or attributes of the I3 Products that were elements of the invention disclosed and claimed in the '467 Patent, but *not* because I3 believed that all of the elements of the claimed invention were embodied in the I3 Products. Ex. A, ¶ 6. Indeed, as Salazar has testified, at no time did I3 ever advertise, market, or otherwise hold out any of the I3 Products as being representative of the complete '467 Patent. *Id.*; Ex. C, at 137:17-138:24.

examine them. *See Salazar v. HTC Corp.*, Dkt. #242-1.



Accordingly, Defendants cannot demonstrate the existence of a genuine factual dispute, as legally required. *See Anderson*, 477 U.S. at 247-48; *Matsushita*, 475 U.S. at 586.

Because none of the I3 Products is a "patented article" within the meaning of 35 U.S.C. § 287(a), Salazar is entitled to summary judgment that 35 U.S.C. § 287(a) is not applicable in this case.

## VI. CONCLUSION

For the foregoing reasons, Salazar respectfully requests that the Court grant his motion for partial summary judgment.

Respectfully submitted,

*/s/Geoff Culbertson*
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
T. 903-792-7080
T. 903-792-8233

10

        Dariush Keyhani
        District of Columbia Bar No. 1031500
        Frances H. Stephenson
        New York registration No. 5206495
        Keyhani LLC
        1050 30th Street NW
        Washington, DC 20007
        T. 202.748.8950
        F. 202.318.8958
        dkeyhani@keyhanillc.com
        fstephenson@keyhanillc.com

*Attorneys for Plaintiff, Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 12th day of November, 2020.

        */s/Geoffrey Culbertson*
        Geoffrey Culbertson