**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR, | |
| Plaintiff, | |
| v. | Civil Action No. 2:20-cv-00004-JRG |
| AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | JURY TRIAL DEMANDED |
| Defendants | |
| and | |
| HTC CORP., and HTC AMERICA, INC., | |
| Intervenors. | |

**PLAINTIFF JOE ANDREW SALAZAR'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT 35 U.S.C. § 287(a) IS NOT APPLICABLE IN THIS CASE**

## I.     INTRODUCTION

Salazar replies in support of his Motion for Partial Summary Judgment ("Motion," Dkt. #144) and in response to Defendants' and Intervenors' (collectively, "Defendants") Response (Dkt. #154).  First, Defendants have failed to meet their burden under *Arctic Cat* to specifically identify the products they believe are unmarked "patented articles" subject to § 287.  *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).

Second, even if Defendants had met this burden, they have not met their summary judgment burden.  In his Motion, Salazar demonstrated the absence of a genuine issue of material fact as to whether the I3 Products are "patented articles."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifted to Defendants to "come forward with specific facts showing that there is a *genuine issue for trial*," which requires more than "simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Defendants have not done so.  The Response fails to put forth ***any* evidence that the I3 Devices practice all of the elements disclosed in any single claim of the '467 Patent** and, instead, offers up a slew of red herrings.  Meanwhile, the following material facts remain undisputed:

- Luis Molero-Castro, one of two individuals (along with Salazar), personally involved with the design of all of the I3 Products and personally oversaw the manufacture and production of all of the I3 Products, provided unrebutted testimony that: (1) none of the I3 Products included an IR transceiver or an IR receiver and (2) no IR transceivers or IR receivers were ever purchased in connection with the design, manufacturing, and/or use of any of the I3 Products.  Motion at 3.

- Salazar, who provided system oversight of the design of all of the I3 Products and personally oversaw the manufacture and production of all of the I3 Products, provided unrebutted

1

testimony that: (1) none of the I3 Products included an IR transceiver or IR receiver and (2) no IR transceivers or IR receivers were ever purchased in connection with the design, manufacturing, and/or use of any of the I3 Products.  *Id.*

- Salazar's expert, Dr. Oded Gottesman, carefully examined samples of each of the I3 Products and concluded that none of them meets all the elements of any of the claims of the '467 Patent, and the I3 Devices "are therefore not patented articles within the meaning of 35 U.S.C. § 287."  *Id.* at 3-4.  Dr. Gottesman's report includes photographs he took of each of the I3 Products (Model Hughes Remote Phone, 650D My One Remote, and My1Remote) disassembled to show their contents, including not only the LEDs but the electrical circuit boards of each of the phones that he carefully examined.  Motion at Ex. G.

- Salazar's expert in *Salazar v. HTC Corp.*, No. 2:16-cv-01096 (E.D. Tex.) ("*Salazar I*"), Roy Griffin, "carefully studied each of [the I3 Products] and their functionalities" and concluded "they do not practice any of the claims of the '467 Patent because they do not meet all the elements of any of the claims," including the requirement of an IR transceiver.  **Ex. A**, ¶ 57.

- Defendants' expert, Dr. Andrew Wolfe, who was provided with the I3 Products, has never testified or otherwise claimed—either in this case or the prior case—that the I3 Products (either in whole or in part) are patented articles, include an IR transceiver or IR receiver, or otherwise practice all of the elements disclosed in any single claim of the '467 Patent.

- Dr. Wolfe and Defendants admit that the charging bases of the I3 Products do not practice any of the claims of the '467 Patent because they do not contain any of the elements of the claimed inventions.  Motion at 4; *Salazar I*, Dkt. #242, at 1.

- A sticker bearing the '467 Patent number was mistakenly affixed to the charging bases of each of the I3 Products.  I3 affixed the '467 Patent number to the charging bases because it

believed there were some features or attributes of the I3 Products that were elements of the invention disclosed and claimed in the '467 Patent, but *not* because I3 believed that all of the elements of the claimed invention were embodied in the I3 Products.  Motion at 4.  At no time did I3 ever advertise, market, or otherwise hold out any of the I3 Products as being representative of the complete '467 Patent.  Motion at 4.

- No handset of the I3 Products was ever affixed with a sticker or otherwise bore the '467 Patent number.  Motion at 4; *Salazar I*, Dkt. #242, at 1.

- Salazar has never testified or otherwise claimed in this case—e.g., in pleadings, interrogatory responses, or deposition testimony—or in his interrogatories, trial testimony, deposition testimony, or answer to HTC Corp.'s amended answer and counterclaims (**Ex. B**)[1] in *Salazar I*, that the I3 Devices practice all of the elements disclosed in any single claim of the '467 Patent, that the I3 Devices are "patented articles," or that any of the I3 Devices includes an IR transceiver or IR receiver.

Accordingly, Salazar requests that the Court remove this distracting issue, that would likely confuse the jury, and grant his motion for partial summary judgment.  *See Celotex*, 477 U.S. at 323-24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses …."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

## II.    ARGUMENT

### A.    Summary judgment is appropriate because Defendants have not met their burden to *articulate the products* they believe are unmarked patented articles.

Defendants' Response fails to establish that they met their initial burden under *Arctic Cat.*

"[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to **articulate the products** it believes are unmarked 'patented articles' subject to §

---

[1] This was Salazar's final pleading in *Salazar I.*

287." *Arctic Cat*, 876 F.3d at 1368 (emphasis added).  That is, the alleged infringer needs to put the patentee on notice that he "sold *specific unmarked products* which the alleged infringer believes practice the patent." *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 216CV01314JRGRSP, 2018 WL 10498197, at *3 (E.D. Tex. May 22, 2018) (citing *Arctic Cat*, 876 F.3d at 1368).  *Arctic Cat* requires "belief," "articulation," "notice," and "**specificity**."  *Id.* (emphasis added).

Defendants first argue that they "were under no obligation to identify any I3 Products" because *Arctic Cat* does not impose an obligation "to simply parrot back an identification of products the patentee claims are properly marked."  *See Salazar I*, 2018 WL 2041732, at *3.  However, in this case, Salazar has never identified any products he claims are properly marked, including in his complaint, his interrogatories, and his testimony.  Defendants contend that they are relieved of their *Arctic Cat* burden because "Salazar marked the charging base of all of [the I3 Products] with the '467 Patent."  Response at 13.  But Defendants themselves have taken the position that "It is … undisputed that the charging base does not practice any of the claims of the '467 patent.  Marking the charging base instead of the I3 Handsets is insufficient as a matter of law to satisfy 35 U.S.C. § 287(a) …." *Salazar I*, Dkt. #242, at 1.  Thus, that I3 mistakenly affixed the '467 Patent number on an item that is "undisput[ably]" *not* a patented article is meaningless.

Additionally, Defendants fail to meet their burden because they provided no *notice*, no *articulation*, and no s*pecificity* with respect to *any* products.  Defendants contend that they met their *Arctic Cat* burden "with their initial disclosures, in which they asserted that 'Plaintiff's claim for damages is statutorily limited by 35 U.S.C. §§ 286 and/or 287'" and disclosed that individuals formerly at I3 "ha[d] information relevant to 'efforts (if any) to comply with Section 287.'"  Response at 14.  These vague assertions, which do not mention any particular products, are insufficient to satisfy the requirement that Defendants "articulate the products [they] believe[] are unmarked," and do so with

"specificity."  *See Arctic Cat*, 876 F.3d at 1368; *KAIST IP*, 2018 WL 10498197, at *3.  Likewise, that Dr. Gottesman included opinions regarding the I3 Products in his report says nothing about whether Defendants met their burden; rather, it shows that he was exhaustive in addressing every issue that might arise in this litigation.  The fact remains that Defendants cannot point to *any* place in this case where they articulated that Salazar "sold *specific unmarked products*" that practice the patent. *See KAIST IP*, 2018 WL 10498197, at *3 (citing *Arctic Cat*, 876 F.3d at 1368).

For the independent reason that Defendants have not met their *Arctic Cat* burden, the Court should grant partial summary judgment that § 287 is not applicable in this case.

### B.     Summary judgment is appropriate because Defendants have failed to show there is a genuine issue for trial.

Even assuming arguendo that Defendants did meet their *Arctic Cat* burden, summary judgment is appropriate because Defendants have not put forth *any* evidence that the I3 Devices practice all of the elements disclosed in any single claim of the '467 Patent.  Once the party moving for summary judgment has met its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325).   "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Id.*  "[Courts] do not, … in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

### 1.     It is undisputed that the I3 phones do not include an IR transceiver or an IR receiver, as required by the '467 Patent.

Every claim of the '467 Patent requires an infra-red frequency transceiver; thus, in order to trigger § 287, a product **must include an IR transceiver**.  Salazar's Motion put forth evidence establishing that the I3 phones do not include an IR transceiver or an IR receiver, including

unequivocal, uncontradicted, firsthand testimony from Salazar[2] and Molero-Castro—who were personally involved in the design and manufacture of all of the I3 Products—and from Dr. Gottesman, who testified that he carefully examined each of the I3 Products and determined that none of them includes an IR transceiver or an IR transceiver.  Motion at 7-9.  Defendants have put forth **no evidence** to the contrary.  Notably, Defendants' expert, who examined the I3 Products, has not—and, indeed, *cannot*—testify that the I3 Products include an IR transceiver or an IR receiver or are otherwise patented articles.[3]  Defendants' attempt to manufacture a dispute via unsubstantiated assertions and metaphysical doubts should be rejected.  *Matsushita*, 475 U.S. at 586-87; *Little*, 37 F.3d at 1075.

### 2.    Salazar's complaints and interrogatory responses in *Salazar I* do not create a genuine dispute of material fact.

Defendants' assertion that Salazar's complaints and interrogatory responses in *Salazar I* "confirm the existence of a triable issue on marking," Response at 1, is merely an attempt to distract, and does not, in fact, create a genuine issue for trial.  First, the statements in the complaints cited by Defendants do not establish any genuine issue because they were subsequently amended to clarify that the I3 Products do not practice the asserted claims of the '467 Patent.  A statement in an original pleading later corrected is insufficient to raise a genuine issue of material fact.  *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 101 (5th Cir. 1993).  These complaints, which were not signed by Salazar,

---

[2] Salazar has *never* testified, either in this case or in *Salazar I*, that the I3 Products include an IR transceiver or an IR receiver.  In fact, in all of his testimony, in both cases, including at trial, he has testified that they do not include an IR transceiver or an IR receiver.  **Ex. C**, at 101:19-102:8; 102:25-103:9; 104:7-105:1; 105:25-106:9, 14-19; 107:12-108:4,17-19; 109:20-110:11; 113:5-8; 137:17-23; 143:24-144:3; 156:5-9, 19-24.

[3] Defendants' arguments regarding burdens are meritless.  Response at 12.  Defendants have not satisfied their burden under *Arctic Cat*, so the burden never shifted to Salazar.  Further, even assuming arguendo that it did, Defendants have a summary judgment burden to establish a genuine issue of material fact as to whether the I3 Devices are patented articles under § 287.  Dr. Wolfe's decision to not rebut Dr. Gottesman's opinion and instead remain silent with respect to whether the I3 devices as a whole, the I3 handsets, or any other components (alone or in combination) are patented articles despite having studied the I3 Products and offering his opinion regarding the base stations is a tacit admission that the I3 Products do not practice any of the claims of the '467 Patent.  *See* **Ex. D**.

mistakenly stated: "beginning in 1999, Salazar manufactured and sold products that embody the inventions disclosed and claimed in the '467 Patent."  *Salazar I*, Dkt. No. 44, ¶ 13.  This language resulted from a misunderstanding by Salazar's counsel regarding his "marking" of the I3 Products.[4] As Salazar subsequently explained under oath, including at trial, I3 affixed the '467 Patent number (not "marked," in the legal sense) on the products' base stations because it "believed there were some features or attributes of the I3 Products that were elements of the invention disclosed and claimed in the '467 Patent, but *not* because I3 believed that all of the elements of the claimed invention were embodied in the I3 Products."  Motion at 4; Ex C, at 105:25-106:9.

Salazar was first put on notice of HTC Corp.'s allegation of failure to mark the I3 Products in HTC Corp.'s Amended Answer, which was filed on March 7, 2019, *after* Salazar's Second Amended Complaint was filed, and only two months before trial.  Salazar's expert, Mr. Griffin, subsequently reviewed the identified I3 Products and concluded that they do not practice the claims of the '467 Patent.  Ex. A, ¶ 57.  Salazar then filed an answer amending his position, *see* Ex. B,[5] and this amended pleading superseded all of Salazar's earlier complaints,[6] rendering the statements within them insufficient to raise a genuine issue of material fact.  *See Hibernia Nat'l Bank*, 997 F.2d at 101.  Not only does Salazar's amended pleading reflect his position that the I3 Products are not

---

[4] Salazar's complaints were all filed prior to the *Arctic Cat* decision in December 2017, which for the first time held that the *patent owner* bears the burden of proving compliance with § 287(a)'s marking requirement once the accused infringer meets its initial burden of production.  Thus, at the time, Salazar had no burden to investigate whether the I3 Products with the patent number affixed to their base did in fact practice any claims of the patent.

[5] The answer stated: "Salazar states that his claim for damages is not statutorily limited by 35 U.S.C. §§ 286 and/or 287 because the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote devices do not practice the asserted claims of the '467 patent because they do not meet all of their claim elements …."  Ex. B, ¶ 23.

[6] *See, e.g.*, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (second amended complaint superseded original complaint as "the only effective complaint"); *Landmark Graphics Corp. v. Paradigm Geophysical Corp.*, No. CIV.A. H-05-2618, 2007 WL 189333, at *1 (S.D. Tex. Jan. 22, 2007) ("It is well settled that an amended pleading supersedes the pleading it modifies.").

patented articles, so do his subsequent testimony in *Salazar I* (including at trial, while subject to cross examination), and *all* of the pleadings, interrogatories,[7] and testimony in the instant case.

Likewise, the *Salazar I* interrogatory responses cited by Defendants do not create a genuine issue, as Salazar never states that the I3 Products are covered by the '467 Patent.  Salazar's responses to Interrogatory No. 9 were subject to his objection that the interrogatory "call[s] for conclusions of law."  Response at Ex. G, 9-10; Ex. I, 11.  In his responses, Salazar did not take (nor should he have been expected to take) a position as to whether the I3 Products practice the claims of his patent as a legal matter.  Rather, he responded as a lay person that the products were manufactured "marked," or affixed, with the patent number.  Salazar's response states only that the products included the patent number—*not* that they were covered by the patent—a position entirely consistent with his responsive pleading and all subsequent testimony in the prior case, and all pleadings and testimony in the instant case.  Defendants' attempt to manufacture a fact dispute out of these responses should be rejected.

3.      **That I3 mistakenly affixed the '467 Patent number on the base stations, which are indisputably *not* patented articles, does not create a genuine dispute of material fact.**

Likewise, the Court should reject Defendants' argument that I3's decision to mark the products' base stations creates a fact dispute as to whether the products actually include an IR transceiver or IR receiver.  *See* Response at 7-9.  Salazar provided unrebutted testimony that I3 mistakenly affixed the patent number to the charging bases because it believed there were some features or attributes of the I3 Products that were elements of the invention disclosed and claimed in the '467 Patent—*not* because I3 believed all of the elements of the claimed invention were embodied

---

[7] In his interrogatory responses in this case, served on September 21, 2020, Salazar stated, e.g., "The I3 Products are not patented articles under 35 U.S.C. § 287 and therefore need not comply with the marking requirement." and "Salazar's efforts to compete in the marketplace from 1999 to 2005 did not relate to any 'patented article' under 35 U.S.C. § 287."  Motion, at Ex. E.

in the products.  Motion at 4.  Further, at no time did I3 advertise, market, or otherwise hold out any

of its products as being representative of the complete '467 Patent.  *Id.*  However, even if I3 *had*

affixed the patent number out of a belief that the base stations were patented articles, this fact would

not preclude summary judgment.  As Defendants themselves have stated, "It is … undisputed that

the charging base does not practice any of the claims of the '467 patent.  Marking the charging base

instead of the I3 Handsets is insufficient as a matter of law to satisfy 35 U.S.C. § 287(a) …." *Salazar*

*I*, Dkt. #242, at 1.  Accordingly, the affixing of the '467 Patent number on the base stations neither

undermines Salazar's or Molero-Castro's testimony, nor does it create a genuine dispute.

### 4.    Defendants' arguments regarding Dr. Gottesman's testimony do not create a genuine dispute of material fact.

Defendants' attempt to manufacture a fact dispute as to Dr. Gottesman's testimony that the

I3 Products do not include and IR transceiver or IR receiver also fails.  Defendants' "evidence" is

impermissibly comprised of attorney argument, unsubstantiated assertions, and conjecture.  *See*

*Little*, 37 F.3d at 1075; *Lechuga v. S. Pac. Transp. Co.,* 949 F.2d 790, 798 (5th Cir. 1992); *GTX*

*Corp. v. Kofax Image Prods. Inc.,* 571 F. Supp. 2d 742, 747 (E.D. Tex. 2008).  For example, counsel

for Defendants assert, without evidence, that "Dr. Gottesman conducted a cursory review of only the

physical appearance of the apparent 'infrared frequency transceiver' in each I3 Product"—despite

Dr. Gottesman's sworn testimony that he "carefully examined samples of each of the I3 Products

and concluded that none of them meets all the elements of any of the claims of the '467 Patent."

Response at 9-10.  Indeed, in Exhibit C of his report, he provides detailed photographs showing the

contents of each of the I3 Products, which he disassembled and examined.  *See* Motion at Ex. G.

These photographs include not only the LEDs but the electrical circuit boards.  *Id.*  Defendants

conspicuously chose not to include these photographs when referencing Exhibit C in their Response

and falsely asserting that Dr. Gottesman analyzed "only the physical appearance of the 'infra-red

transceiver' in the I3 Products."  Response at 10-11.

Defendants' counsel also baselessly argue that to determine whether the infrared device is an IR transceiver, Dr. Gottesman needed to have "analyz[ed] the surrounding circuity or software," *id.* at 11, and that he did not do so.  This unsupported attorney argument is contradicted by the photographs taken by Dr. Gottesman of the electrical circuit boards of each of the I3 Products, which, along with his statement that he "carefully examined" the products (and absent any evidence to the contrary) establish that he did in fact analyze the surrounding circuitry.  Defendants provide no support for their contention that Dr. Gottesman needed to analyze the source code in order to determine whether the products include IR transceivers (aside from the logical fallacy that because he chose to do so for the HTC phones it was necessary to do so for the I3 Products).  Indeed, Defendants' own expert, Dr. Wolfe, provides no indication that he analyzed the circuitry or the source code (and does not even indicate that he took apart the phones, as Dr. Gottesman did), yet he *still* opines as to the I3 Products' compliance with § 287.

None of this attorney argument or conjecture is sufficient to create a fact dispute with respect to Dr. Gottesman's testimony that the I3 Products are not patented articles.  Notably absent is *any* testimony from Dr. Wolfe—or any other witness—that (1) the I3 Products include an IR transceiver or IR receiver, (2) that any of the I3 Products meets all of the claim elements of *any* of the claims of the '467 Patent, or (3) it is impossible to determine from examining the I3 Products that they include an IR transceiver or IR receiver.  There is no fact dispute with respect to this issue, and no triable issue for a jury to decide.  *See Little*, 37 F.3d at 1075; *Lechuga,* 949 F.2d at 798.

## III.    CONCLUSION

For the foregoing reasons, Salazar respectfully requests that the Court grant his Motion.

Respectfully submitted,

*/s/Geoff Culberston*
Kelly Tidwell

TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culberston
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
T. 903-792-7080
T. 903-792-8233

Dariush Keyhani
District of Columbia Bar No. 1031500
Frances H. Stephenson
New York registration No. 5206495
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff, Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 24th day of November, 2020.

*/s/Geoffrey Culbertson*
Geoffrey Culbertson