# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, | |
| Plaintiff, | |
| v. | Civil Action No. 2:20-cv-00004-JRG |
| AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | JURY TRIAL DEMANDED |
| Defendants | |
| and | |
| HTC CORP., and HTC AMERICA, INC., | |
| Intervenors. | |

**DEFENDANTS' AND INTERVENORS' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN TESTIMONY OF MR. DENNIS M. GIUFFRÉ**

Salazar's Opposition and the record make clear that Mr. Giuffré's opinions are inadmissible. The Opposition fails to save the testimony that the Motion (Dkt. 147) identified as inadmissible; the burden of proving admissibility is Salazar's alone. He cannot rewrite his expert's report through briefing, nor can he ignore precedent anymore.

A.     **Mr. Giuffré Impermissibly Calculated "Entire Market Value" Damages.**

Salazar says that Mr. Giuffré "specifically apportioned with a royalty rate that discounts for the value of the Accused Devices' non-patented features from his royalty analysis," and did not rely on the entire market value rule. Opp'n at 3. Mr. Giuffré's report, however, speaks for itself and demonstrates that the Opposition misstates the proffered testimony:

- One "approach to the matter of the determination of a royalty rate is to first consider the issue of what is called the 'entire market value.' My understanding is that the issue is whether a royalty rate of, say a certain percentage, may be applied to the value of the whole device. In the case of a smartphone, such as the HTC One M7, M8, or M9, the 'entire market value' is the price of the entire device, i.e., the phone." Ex. A at 48-49 (emphasis added).
- "There is nothing inherently wrong with using the market value for the entire product … so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature.'" *Id.* at 49 (emphasis added).
- "[A]s a means to present the royalty in terms of a percentage, it is still a reasonable convenience, as noted above, to consider the value of the entire phone as a basis to express a percent, although the magnitude of the percentage may be very small." *Id.* (emphasis added).

Mr. Giuffre unabashedly used the entire market value rule in his analysis, for "convenience," despite being required by law to "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" using "reliable and tangible" evidence. *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-30 (Fed. Cir. 2014) (rejecting "the excuse that practical and economic necessity compelled [patentee] to base its royalty on the price of an entire [device]."); *Ericsson, Inc. v. D— Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no

1

more."); *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (to use entire market value, plaintiff "must . . . show that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature."). And Salazar's Opposition admits it—Mr. Giuffré's base indisputably includes all revenue from the HTC Smartphones. Opp'n at 3 n.2 ("one based on revenues from the sale of wireless convoyed to Defendants' device sales; and an alternative based on the value of the accused devices sold by each Defendant."). And he does so without accounting for use of the invention or showing that any revenue resulted from inclusion of the patented feature. Opp'n at 8.[1]

By Mr. Giuffré's own admission, his use of the entire market value was improper. He concedes that "the patented device" was not "the sole reason that phone sales were made by Defendants, or even HTC." Ex. A at 43. And he concedes that the accused products have many features that are not related to IR functionality (Ex. B at 86:7-11), and that he has no evidence that even a single accused HTC Smartphone was ever purchased because of its IR functionality. Ex. B at 106:15-107:23, 108:13-109:11. Mr. Giuffré simply had no basis for using the entire market value, and all of his proffered testimony based on the entire market value of the accused HTC Smartphones should therefore be excluded as unreliable, lacking the required foundation, misleading, and required by precedent of the Federal Circuit and this Court. *See, e.g.*, *BMC Software, Inc. v. ServiceNow, Inc.*, 2016 U.S. Dist. LEXIS 11652, at *6-10 (E.D. Tex. Feb. 1, 2016).

The Opposition's contention that Mr. Giuffré has somehow properly apportioned the rate, thereby saving his use of the entire-market value for his base, reflects a misunderstanding of settled

---

[1] Salazar tries to save Mr. Giuffré's opinion about Defendants' profits, but he has wholly failed to provide any causal link between the patent and those profits. *See* Opp'n at 8 n.7. So evidence of any profits is irrelevant and inadmissible under *Mobile Telecoms* and *Uniloc*. *See* Mot. at II.F.

law. *See* Opp'n at 3-4. First, Mr. Giuffré's calculated rate itself is improper because it is not specific to the alleged incremental benefits from the '467 patent. It takes into account neither usage nor economic demand for the patented feature. Second, even if Mr. Giuffré had properly apportioned the rate, his use of the rate on top of the entire-market royalty base is inappropriate because Mr. Giuffré "did not even try to link demand for the accused device to the patented feature," the IR functionality here, "and failed to apportion value between the patented features and the vast number of non-patented features contained in the accused products." *See Cisco Sys., Inc.*, 767 F.3d at 1330. And third, the argument that Mr. Giuffré's testimony can be saved by using an apportioned rate is incorrect. Controlling caselaw makes clear that the use of an entire-market base is proper only when the expert has "carefully tie[d] proof of damages to the claimed invention's footprint in the market place." *Id.* at 1329 (quoting *Uniloc*, 632 F.3d at 1317); *see also Cisco Sys.*, 767 F.3d at 1326 ("In the absence of such a showing [where the "patented feature creates the basis for customer demand or substantially creates the value of the component parts"], principles of apportionment apply.").[2] Mr. Giuffré's use of an entire-market royalty base will only serve to "skew the damages horizon for the jury." *See Uniloc USA*, 632 F.3d at 1320.

---

[2] Salazar's three caselaw citations in his Opposition do not, as he represents, approve the use of an entire-market value base so long as the rate is apportioned. *See* Opp'n at 5. In *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 12658, at *9-11 (E.D. Tex. July 20, 2020) (Payne, J.), the court correctly explained that a patentee can select the royalty base or adjust the royalty rate, but that "[a]n alternative to the general rule of apportionment is the entire market value." Salazar attempts to present the first part of this statement as an entree to argue that the entire market value can be properly used as the base. *See* Opp'n at 5. But *Gree* makes clear that the opposite is true. *Gree, Inc.*, 2020 U.S. Dist. LEXIS 12658, at *11. The other two cases are distinguishable from the facts of the instant case. In *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018), the use of the accused lawn mower sales as the royalty base was appropriate because the asserted claim was directed to the lawn mower "as a whole, not a single component of a multi-component product." That is not the case here, where the IR functionality is one component of the HTC Smartphones, which have numerous components that are non-infringing. And *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014), actually perfectly articulates the impropriety and danger of Mr. Giuffré's

3

**B.      Mr. Giuffré's Claim Of "Convoyed Sales" Is Inadmissible.**

Mr. Giuffré's claim of "convoyed sales" to reach Defendants' cellular services as the primary royalty base in his calculations is improper because the caselaw requires that the demand driving the sales be motivated by the actual invention. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 n.9 (Fed. Cir. 1995); *Realtime Data LLC v. NetApp, Inc.,* 2017 U.S. Dist. LEXIS 195232, 2017 WL 5756863 at *9 (E.D. Tex. Nov. 16, 2017).[3]

Salazar has not demonstrated that even a single HTC phone or a single wireless service plan was ever purchased because of the accused IR functionality, such that it would be proper to use that revenue as the royalty base. To the contrary, the technical evidence in the case shows that the IR functionality claimed in the Asserted Patent is wholly irrelevant to the cellular services offered by Defendants. *See* Mot. at 8-9; *see also* Ex. B at 106:15-107:23, 108:13-109:11. And as with the use of the entire market value base, Mr. Giuffré's inclusion of convoyed sales risks prejudicing the jury. *See, e.g.*, *Realtime Data LLC*, 2017 U.S. Dist. LEXIS 195232, at *8-9 (describing the prejudicial potential of including convoyed sales, and enunciating the showing required of experts who want to include them). His testimony is improper and should be excluded.

**C.      Mr. Giuffré's Reliance On The *Mformation Techs. V. RIM* Case Is Inadmissible.**

Salazar inappropriately invites a "trial within a trial" with Mr. Giuffré's irrelevant testimony about *Mformation*. Opp'n at 9. He concedes that his source is an attorney working

---

model: "reliance on the entire market value might mislead the jury, who may be less equipped to understand the extent to which the royalty rate would need to do the work in such instances." None of these cases save Mr. Giuffré's proffered testimony on this issue.

[3] Salazar's citations again do not demonstrate that he is allowed to claim convoyed sales. They stand for the unremarkable proposition that indeed, in some instances (where demand is driven by the invention), it is appropriate to use convoyed sales to establish the royalty base. *See* Opp'n at 6-9 (citing cases at 6-7). To the contrary, Mr. Giuffré has not demonstrated how "revenue derived from convoyed wireless services" has anything to do with the invention. *Id.* at 8.

paper that mentions the *Mformation* verdict, which was vacated by the court on JMOL in 2012. *Id.* No reference to *Mformation*, which involved incomparable patents, should be heard by the jury in this case without discussing the impact of the court's JMOL. Discussing the merits and procedure of *Mformation* is likely to confuse this jury. Mr. Giuffré's testimony about *Mformation* should be excluded under at least Fed. R. Evid. 401 and 403. *See also Sprint Comm'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 Fed. Appx. 977, 980-81 & n. 2 (Fed. Cir. 2018). The Opposition also concedes, by failing to address, Mr. Giuffré's doubling of the per-patent royalty rate from *Mformation*, which should also be excluded. Opp'n at 9-11.

**D.    Mr. Giuffré Should Be Excluded From Opining On Technical Issues.**

Mr. Giuffré's assertions that the accused functionality is supposedly "integral" to or "integrated" into the accused products (or "contributed to demand") will mislead the jury; "integral" means "essential to completeness" or "necessary to make a whole complete; essential or fundamental," but there is no evidence anywhere that anyone ever bought a single phone to obtain or use the accused functionality. Apple and Samsung dominate the smartphone market without selling any phones with the accused functionality. So it is not integral to any smartphone, it does not drive demand, and Mr. Giuffré should not be telling the jury that it is or does.

Salazar tries to pull a fast one, claiming that Mr. Giuffré "testified to his understanding of the opinions of technical and damages experts in *Salazar I*" on non-infringing alternatives." Opp'n. at 12. That sentence cites to nothing. Mr. Giuffré admitted that he never reviewed expert reports, or anything else from *Salazar I*, relevant to this part of the Motion. Ex. F at 46:2-50:24. These assertions should be excluded.

Dated: November 25, 2020         Respectfully submitted,

By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
fwilliams@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1376

Todd E. Landis
Texas Bar No. 24030226
tlandis@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512.543.1357

John Wittenzellner
Pennsylvania Bar No. 308996
johnw@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Sreet, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373

Harry Lee Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: 903.934.8450
Fax: 903.934.9257

*Attorneys for Defendants and Intervenor-Defendants*

6

## **CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on November 25, 2020 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

      */s/ Fred I. Williams*
      Fred I. Williams