# EXHIBIT F

46

1  2016?
2      A.   I am aware that there was a previous
3  lawsuit, yes, sir.
4      Q.   Were you aware that the 2016 lawsuit
5  involved the '467 patent?
6      A.   Well, maybe I should say I assumed
7  that that was so, yes, sir.
8      Q.   What did you assume with respect to
9  the products that were at issue in this case in
10 connection with the products that were at
11 issue -- or are at issue in the present case?
12             MR. CULBERTSON:  Object to the
13         form.
14             THE WITNESS:  I think -- by
15         "products" -- or my understanding of what
16         that would mean would be the HTC
17         smartphones in the -- specifically, the
18         models One M7, One M8, and One M9 that
19         have been alleged by Salazar as infringing
20         the '467 patent.
21 BY MR. GILLAM:
22     Q.   Right.  Do you assume that those were
23 at issue in the other case and are at issue in
24 this case as well?
25     A.   That's what I think, yes, sir.

```
                                                          47
 1              (Reporter clarification)
 2              THE WITNESS:  I don't know of
 3      anything else that it would have involved
 4      in the other case.
 5   BY MR. GILLAM:
 6      Q.    Did you read any of the transcripts
 7   from that trial?  I'm just talking about the
 8   case in 2016, the 2016 case between Salazar and
 9   HTC.
10      A.    No, sir.
11      Q.    Did you ask what the outcome of that
12   trial was?
13      A.    I've never asked.
14      Q.    Do you know what the outcome of that
15   trial was?
16      A.    I don't know with certainty.  I can
17   just make an assumption, though, that
18   Mr. Salazar did not prevail, but I don't know
19   with certainty any details about it.
20      Q.    Do you know who Mr. Salazar's damages
21   expert was in that case?
22      A.    I may have heard his name, but I do
23   not recollect it.  I did not know him.
24      Q.    Mr. Blok?  Do you recognize that
25   name, Mr. Blok?
```

48

1    A.   I may have heard that, yes, sir.
2    Q.   Did you understand that he gave a
3    damages report in that case?
4    A.   Well, I would certainly think that he
5    did, yes, sir.
6    Q.   Did you ask to review that in
7    connection with your case?
8    A.   I did not.
9    Q.   Why not?
10   A.   I prefer to start from scratch with
11   my own work, sir.
12   Q.   Would that have provided any useful
13   information to you?  Or do you think that's
14   something that you should not have reviewed in
15   connection with the work you did here?
16              MR. CULBERTSON:  Object to the
17        form.
18              THE WITNESS:  Well, the only
19        thing that I am aware of is having been
20        told by what, I assume, was in this expert
21        report has been passed on to me by
22        Mr. Keyhani, that a particular device, I
23        believe called the Pronto, and then
24        another device, I believe called the
25        Harmony.  But that's all that I knew of

49

1       that was, I believe, contained within that
2       report.
3  BY MR. GILLAM:
4       Q.   Now, you understand that the
5  defendants' expert in that case was
6  Mr. Bakewell?  By that case, I'm talking about
7  the previous case between Salazar and HTC.
8       A.   That's my understanding, yes, sir.
9       Q.   Did you review the data --
10      A.   I've seen -- I'm sorry.
11           I've seen the rebuttal report to
12 my report in this case, and it is coauthored,
13 though.
14      Q.   Yes, sir.  Did you request the
15 damages report authored by Mr. Bakewell in
16 Salazar v. HTC case back in 2016?
17           MR. CULBERTSON:  I'm going to
18      object.  That's a communication that's
19      protected by the work product doctrine.
20           THE WITNESS:  I'm sorry.
21 BY MR. GILLAM:
22      Q.   Have you seen the Bakewell report in
23 Salazar v. HTC case in 2016?
24      A.   No, I have not.
25      Q.   Is there anything about the 2016 case

```
                                                          50
 1   between Salazar and HTC that you would like to
 2   know which might impact your opinions in this
 3   case?
 4            MR. CULBERTSON:  Object to the
 5       form.
 6            THE WITNESS:  If there is, I'm
 7       not aware of it.  I mean, there could be
 8       something that would have been a benefit,
 9       but I -- or may have had some relationship
10       to my opinions, but I'm not aware of
11       anything.
12   BY MR. GILLAM:
13       Q.   But nothing from that case has been
14   provided to you?  No documents, no reports, or
15   anything like that; is that correct?
16       A.   As I said earlier, just the
17   information provided to me by word of mouth
18   from Mr. Keyhani.
19       Q.   But insofar as any documents or
20   reports or writings of any kind, am I correct
21   that none of that has been provided to you?
22            MR. CULBERTSON:  Objection.
23            THE WITNESS:  That's my
24       understanding, yes.
25
```