IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC,<br>SPRINT/UNITED MANAGEMENT<br>COMPANY, T-MOBILE USA, INC.,<br>AND CELLCO PARTNERSHIP D/B/A<br>VERIZON WIRELESS,<br><br>    Defendants<br><br>    and<br><br>HTC CORP., and HTC AMERICA, INC.,<br><br>    Intervenors. | Civil Action No. 2:20-cv-00004-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' AND INTERVENORS' *DAUBERT* MOTION TO EXCLUDE THE EXPERT REPORT AND PROFFERED TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, DR. ODED GOTTESMAN**

The rejection of expert testimony is the exception rather than the rule.  *See* Advisory Committee's Notes, Fed. R. Evid. 702.  Defendants and Intervenors (collectively, "Defendants") provide no legally tenable grounds for such a departure and instead rely on misrepresentations and falsehoods.  Salazar respectfully requests that their Motion be denied in full.

### A. Dr. Gottesman did not construe any claim language, and paragraphs 23-25 of his rebuttal report are admissible.

Defendants provide no credible reason to exclude paragraphs 23-25 of Dr. Gottesman's rebuttal report (**Ex. A**).  The disputed paragraphs include Dr. Gottesman's opinion that, contrary to Dr. Wolfe's assertion that Goldstein teaches a regular telephone, Goldstein does *not* describe a complete functional telephone device. Ex. A, ¶¶ 23-25.  As an initial matter, Salazar never conceded "that Dr. Gottesman impermissibly construed the preamble."  Moreover, the only reference to the '467 patent in paragraphs 23-25 was the language from 1[b], and nowhere does Dr. Gottesman attempt to construe *any* claim language—from the preamble, 1[b], or otherwise.  Defendants apparently take issue with Dr. Gottesman's use of the words "complete functional telephone device," but, as Salazar previously explained, Dr. Gottesman merely used this characterization—which are his words, not a quote—to rebut Dr. Wolfe's claim that various prior art references disclose a "normal portable telephone" or other like variations. Response at 3-4.  As Dr. Gottesman explained to Defendants' counsel, "The criticism is about your expert mischaracterizing Goldstein, as a complete functional telephone device." *Id.* at 4.  It was entirely proper for Dr. Gottesman to opine that Goldstein does not teach a regular telephone in response to Dr. Wolfe's assertion that it does.[1]

---

[1] Defendants repeatedly bring up the irrelevant point that the Court excluded Dr. Gottesman's testimony in the prior case because he relied on the intrinsic record in construing "communications system."  This fact has no bearing on the instant case, where Defendants acknowledge that Dr. Gottesman did not rely on intrinsic evidence.  As the Court previously stated, for Dr. Gottesman to base his opinion "on his expertise about the meaning of 'communications system' … is permissible."  *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG (E.D. Tex.), Dkt. #247, at 2.

### B.     Defendants' allegations of copying are unsubstantiated and false.

Having baselessly accused Dr. Gottesman of copying Roy Griffin's report "verbatim" in their Motion, Defendants now assert, with no evidence whatsoever, that *counsel for Salazar* actually wrote both experts' reports: "Salazar's counsel wrote this report for Mr. Griffin in 2017 and then he recycled the report again for this case, by providing it to a different expert, Dr. Gottesman." Reply at 2-3. Of course, this is not true—Salazar's counsel has never presented a draft that they wrote, either in full or in part, to either expert. Defendants' unsubstantiated false allegations should be rejected in their entirety.[2] As Salazar previously explained, Defendants' allegations that Dr. Gottesman did not provide his own opinions are entirely and demonstrably false. Response at 4-8. Not only do Dr. Gottesman's report and sworn testimony support that every word of his report represents his opinions, Defendants neglect to mention that Dr. Gottesman was Salazar's expert on invalidity in the prior case. As such, Dr. Gottesman coordinated and worked intimately with Mr. Griffin and undersigned counsel in *Salazar I* and participated in numerous hours of discussions regarding Salazar's infringement positions. Dr. Gottesman also had full awareness of these positions based on his involvement with Mr. Griffin's software engineer at the time, Christopher Byler (who also worked at Dr. Gottesman's direction in framing the infringement positions) and also because Dr. Gottesman participated extensively in the first trial. Thus, even though Dr. Gottesman's report is far from identical to Mr. Griffin's report (*see, e.g.*, Motion, at Ex. F), it would be remarkable if they did not share at least some similarities. Defendants' attempts to malign both experts and Salazar's counsel with baseless accusations are inappropriate and should be rejected in full.

---

[2] "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney … certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support …." Fed. R. Civ. P. 11(b)(3).

## C. Dr. Gottesman's opinions and testimony regarding the "said microprocessor creating a plurality of reprogrammable communication protocols" limitation are admissible.

Contrary to Defendants' representation, the Court did not construe the term "creating" in the context of the "said microprocessor creating a plurality of reprogrammable communication protocols" limitation to have its plain and ordinary meaning.[3]  Reply at 3.  Rather, the Court held that "'said microprocessor **creating** a plurality of reprogrammable communication protocols' means 'a microprocessor configured to generate two or more control signals used to operate said system and **configured to create** two or more reprogrammable communication protocols."  Dkt. #131, at 16. Moreover, as Salazar previously explained, it is untrue that Dr. Gottesman equated "implementing" to "creating," resulting in an impermissible construction.  Response at 8-10.  Dr. Gottesman did not use the word "implement" to construe a claim term; rather, he used it to explain how the Accused Devices function and meet the broader claim limitation at issue, from the perspective of a POSITA.  Dr. Gottesman explicitly testified that he was not equating "implement" with "creating" and was merely describing examples demonstrating the functionality in the Accused Devices that meet the recited claim element.  *Id.* at 9.  Like any expert, he was permitted to opine as to how a POSITA would find certain claim limitations present in the Accused Devices.  Defendants' argument is without merit.

## D. Dr. Gottesman's opinions and testimony regarding infringement by the HTC One M8 for Windows are admissible.

As Salazar previously argued, Dr. Gottesman's reasonable inference that the phones operated in the same manner was wholly proper.  Response at 10.  Although it is true that he received input from Mr. Byler, Dr. Gottesman had the Windows devices in his possession and independently studied and

---

[3] As Salazar previously detailed, during Dr. Gottesman's deposition, Defendants' counsel misrepresented the Court's construction to the witness, then misled him by repeatedly asking him about the term "creating" (which does not appear in the Court's construction).  Response at 9-10.

3

tested the functionality of each of them himself. Contrary to Defendants' assertion, Dr. Gottesman did *not* rely on Mr. Byler's opinion. Dr. Gottesman explicitly testified at his deposition:

- "I did not rely … on [Mr. Byler's] opinion. I formed my own opinion." **Ex. B**, 63:17-20.
- "[T]here was some preliminary analysis done by Mr. Byler, but once I got the source code, and all the other documents that I looked into, and my experience, I relied on that." *Id.* at 64:13-17.
- Dr. Gottesman "review[ed] all of the produced HTC source code [himself]" and had a "few questions that I asked [Mr. Byler] … Just to make sure we both reviewed the same way." *Id.* at 13:20-15:5.

Defendants' accusation that Dr. Gottesman's opinion was "based on the undisclosed opinion of … Mr. Byler" in violation of Rule 26 is belied by Dr. Gottesman's sworn testimony and should be rejected.

### E. Dr. Gottesman's opinions and testimony regarding the Snapdragon and its operations are admissible.

Defendants' argument represents another attempt to mislead the Court. Salazar explained in his Response that the Court's new construction of "microprocessor" in its September 18, 2020 claim construction ruling[4] required Dr. Gottesman to support his opinion with evidence other than the exemplary "Nyquist sampling rate" evidence. Response at 10-14. Defendants respond by citing only a portion of the limitation-at-issue so as to omit the key term "microprocessor," then bafflingly assert that Salazar's "attempt to hide behind the Court's claim construction order is baseless." Reply at 4. The limitation partially cited by Defendants actually reads in full:

> a memory device coupled to **said microprocessor** configured to store a plurality of parameter sets retrieved by **said microprocessor** so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets.

Dkt. #131, at 5 (emphasis added). The Court's construction of "said microprocessor" clearly affected the construction of the entire limitation. Thus, after the Court held that "said microprocessor" was a

---

[4] The Court held that it "agrees with Defendants that … at least one microprocessor must satisfy all the functional (and relational) limitations recited for 'said microprocessor.'" Dkt. #131, at 33.

4

reference to one microprocessor meeting all the "said microprocessor" limitations—and Salazar's prior position had been that each recited microprocessor limitation may be satisfied by a different microprocessor—Dr. Gottesman incorporated the relevant evidence and revised his opinion accordingly. It would have been irresponsible for him *not* to do so. No basis exists for excluding this testimony.

### F. Dr. Gottesman's opinions and testimony regarding infringement under the doctrine of equivalents (DOE) are admissible.

Defendants concede that there is no basis for excluding Dr. Gottesman's opinions and testimony regarding infringement under the DOE for claim elements 1[b] and [d], claim 2, and claim elements 34[b] and [d]. Reply at 4-5. As Salazar previously argued, Dr. Gottesman provided specific, particularized opinion regarding the DOE and supported his claims with citations to HTC and Peel source code. Response at 14-15. His opinions with respect to the DOE are not "generalized testimony as to the overall similarity between the claims and the Accused Devices" as Defendants argue, but rather particularized opinions and linking arguments relevant to specific claim limitations.[5] Once again, Defendants rely on falsehoods—specifically, that "The same attorneys who represent Salazar in this case also represented him in the first case, in which they used HTC and **Peel source code** to disclose their infringement theories." Reply at 5 (emphasis added). As Defendants are well aware, Salazar did not use the Peel source code in *Salazar I* and only gained access to the code for the first time in late September 2020.[6] Defendants' argument is without merit.

### G. Conclusion

For the foregoing reasons, Defendants' Motion should be denied in full.

---

[5] Dr. Gottesman also reserved his right to apply the DOE to the portions of his claim chart annotated "L;D/E." As he explained, he did this in the event that Dr. Wolfe "tried to find some little piece of difference, and to try to make a big deal out of it." Ex. B, at 256:1-257:9.
[6] In *Salazar I*, Salazar subpoenaed the code from Peel several months before expert reports were due, but Peel's counsel stalled and obstructed until it was clear that Salazar would not be able to meet the expert report deadline.

Respectfully submitted,

*/s/Geoff Culbertson*
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
T. 903-792-7080
T. 903-792-8233

Dariush Keyhani
District of Columbia Bar No. 1031500
Frances H. Stephenson
New York registration No. 5206495
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff, Joe Andrew Salazar*

6

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 2nd day of December, 2020.

                                                   */s/Geoffrey Culbertson*
                                                 Geoffrey Culbertson