# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, | |
| Plaintiff, | |
| v. | Civil Action No. 2:20-cv-00004-JRG |
| AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | JURY TRIAL DEMANDED |
| Defendants | |
| and | |
| HTC CORP., and HTC AMERICA, INC., | |
| Intervenors. | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO (Dkt. 147) DEFENDANTS' AND INTERVENORS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF <u>DENNIS M. GIUFFRE</u>**

1

In reply, Defendants persist in advancing the fallacy that Salazar's '467 patent claims are limited to two-way infrared (IR) frequency communication capability. In the end, the motion is doomed by their decision to willfully ignore the scope of the asserted claims and controlling precedent. The Court should deny the motion.

### A. Mr. Giuffré's Apportionment Analysis Satisfies *Daubert*.

Mr. Giuffré engaged in an apportionment analysis to arrive at his proposed royalty ranges. Dkt. 164 at 3-6. That Defendants don't understand or agree with his analysis is no basis to exclude his opinions. Their insistence that apportionment occur in the selection of the royalty base ignores controlling precedent. Dkt. 164 at 5 (citing *Exmark Mfg*. and others for proposition that apportionment can occur in the selection of a base, a rate or both). Where, as here, the asserted claims are drafted broadly to encompass an entire saleable product (i.e., a smartphone), rather than a single component (i.e., two-way IR capability), the royalty base may include the value of the entire accused device—be it a lawn mower (*Exmark Mfg. Co. v. Briggs & Stratton Prods. Grp., LLC*, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018)), a radiology treatment machine (*Univ. of Pittsburgh v. Varian Med. Sys*, 561 Fed. App'x 934, 947-50 (Fed. Cir. 2014)), or a snow plow assembly (*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 76 F. Supp. 3d 806, 815-19 (W.D. Wisc. 2014)). Defendants appear to suggest that a royalty base may include only the value of products accused of infringing the "inventive" aspects of an asserted patent. In other words, Defendants contend the royalty base here must exclude the value of every element aside from the two-way IR capability of claim 1. But that approach was specifically rejected in this District where, as here, it would remove the value of <u>claimed</u> elements. *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, 2014 WL 2859578 *2 (E.D. Tex. June 21, 2014) (where base excluded the value of claimed elements it did not tie the proof of damages to the claimed invention's footprint to the marketplace; excluding

1

defendant's expert's opinion). Defendants' "argument rises and falls on a single, central assumption: the [two-way IR communication capability] [i]s the only 'patented feature' of the ['467] patent." *Douglas Dynamics,* 76 F. Supp. 3d at 816. But the '467 patent is directed to an <u>entire</u> communication command and control sensing system (C3S system) with numerous recited features and capabilities, including two-way RF communication capabilities, a sound-activated device used to recognize sound signals including sound commands corresponding to executable logical commands, a sound and data coupling device adapted to receive sound (including voice) as data signals, touch sensitive screen, among many other capabilities and features recited (i.e., a smartphone type of device)—**not just the two-way IR capability** that Defendants pretend defines the invention. *See id*. (patent was directed to an entire snow plow assembly, not just a linkage mechanism). In these instances, the base may comprise the entire value of the accused product so long as the rate is appropriately adjusted. *See Exmark Mfg.*, 879 F.3d at 1348-49.[1]

### B. Mr. Giuffré's Convoyed Sales Analysis Is Appropriate and Admissible.

---

[1] Since *VirnetX, Inc. v. Cisco Sys. Inc.,* 767 F.3d 1308 (Fed. Cir. 2014), the Federal Circuit has clarified the law in *Exmark* on the use of the entire market value of an accused product in the "base" for purposes of calculating damages for infringement. *See, e.g.*, John C. Paul, Brian Kacedon & Robert C. MacKichan III, The Entire Market Value of a Product May Be Used as a Base for Calculating Royalties Without Showing that the Inventive Features Drove Market Demand, Finnegan (Feb. 7, 2018), https://www.finnegan.com/en/insights/articles/the-entire-market-value-of-a-product-may-be-used-as-a-base-for-calculating-royalties-without-showing-that-the-inventive-features-drove-market-demand.html. Aside from the evolving law, Defendants' reliance on *VirnetX* is misplaced, as the facts are distinguished from *Exmark* and the present case. Unlike *Exmark,* where the claims at issue were directed at the entire lawn mower and here the '467 patent claims are directed at the entire Accused Phones, the patent claims at issue in *VirnetX* were directed to only very limited features (FaceTime/VPN on Demand) of the accused "iOS" devices (the Apple iPhone 4S, iPod Touch, iPad). The Federal Circuit in *VirnetX* concluded that the jury instruction there was not consistent with the law because the damages expert relied on the entire value of the iOS devices as the "smallest salable unit," which "was intended to produce a royalty base more closely tied to the claimed invention," without attempting to apportion the claimed VPN on Demand and FaceTime features. In the present case, the smallest saleable unit that the asserted claims are directed to is the entire smartphone—the Accused Phones that embody all the features of the asserted claims—and therefore it is appropriate for the revenue associated with them to be included in the base. *See VirnetX*, 767 F.3d at 1326-28.

As noted in Salazar's Opposition, Mr. Giuffré's report explains why and how the convoyed wireless services sales are tied to the sales of the Accused Devices and the value of the royalty base that is attributable to the convoyed sales versus the accused products. Dkt. 164 at 7-9. *See Realtime Data, LLC v. Actian Corp. et al.*, 2017 WL 1513098, at *1 (E.D. Tex. April 27, 2017). In reply, Defendants retreat from their sweeping misstatement that convoyed sales may never be included in a royalty base (Dkt. 147, II.B at 7), to the more narrow—but no less incorrect—proposition that consideration of convoyed sales in this royalty analysis depends upon demand for the two-way IR capability element of claim 1. Reply at 4. The argument fails on at least two fronts. First (and yet again), the '467 patent does not claim two-way IR capability in isolation. Rather, the patent claims a C3S system (i.e., a smartphone) that includes, among many other things, two-way IR and RF communication capability. *See, e.g.*, Dkt. 164 at Ex. A, 25:57-26:34. The Accused Devices infringe because they embody all elements of the asserted claims, not just two-way IR communication capability element of claim 1. Second, the test for including convoyed sales considers not whether a single element of an asserted patent creates demand, but rather whether bundling sales of the infringing products – here the Accused Devices – with the sales of the collateral products/services (convoyed sales) drive the demand for the overall sales.[2] *See Interactive Pictures v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984).

---

[2] For example, in *Interactive Pictures*, though not all of defendant's products infringed, plaintiff contended that the accused products were bundled with sales of other products and drove the overall sales of defendant's products. *Interactive Pictures v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001). The Federal Circuit agreed the expert permissibly included all products in the royalty base. "The jury was entitled to rely on evidence of bundling and convoyed sales in determining the proper scope of the royalty base." *Id.* at 1385.

3

### C. Mr. Giuffré's Consideration of the Smartphone Royalty Stack and *Mformation v. RIM* Is Appropriate and Admissible.

Rather than address the merits of Salazar's opposition, Defendants baldly reassert their contention that the *Mformation* patents are not sufficiently comparable to the '467 patent to be admissible. Reply at 5 (suggesting that Mr. Giuffré's testimony be excluded under Fed. R. Evid. 401 & 403). Salazar squarely addressed this in his Opposition. Dkt. 164 at 3-4 & 8.[3] It's important to note that Defendants are not challenging Mr. Giuffré's methodology of considering royalty determinations for other patents. Instead they attack the evidence as insufficiently comparable. But challenges to the degree of comparability of patents or licenses are factual issues, best addressed by cross examination, not exclusion. *See GREE, Inc. v. Supercell, OY*, 2020 WL 4057640 * (E.D. Tex. July 20, 2020) (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012)).

Aside from his own research, Mr. Giuffré relied on the opinion of Salazar's technical expert, Dr. Gottesman, to conclude that the *Mformation* patents are sufficiently comparable to serve as a data point in his royalty analysis. Dkt. 164 at 10 (citing Ex. C at 29:17-31:7 & 247:22-249:8). This is entirely appropriate because Mr. Giuffré is not an expert in the relevant technology. *See GREE, Inc.*, 2020 WL 4057640 at *6 ("Dr. Becker is not a technical expert …. it was proper as well as logical that he would rely on Dr. Akl, a technical expert, who concluded that the patents are technologically comparable."). Notably, Defendants made no challenge to Dr. Gottesman's opinions that the *Mformation* patents are technologically comparable. *See id*. Mr. Giuffré's consideration of the royalty awarded in *Mformation* is appropriate and admissible.

---

[3] Salazar likewise squarely addressed the allegation that Mr. Giuffré impermissibly doubled the *Mformation* royalty rate. Dkt. 164 at 10-11 (explaining the relationship of the *Mformation* patents and why Mr. Giuffré considered them together in his royalty analysis). The suggestion that Salazar conceded or failed to address the point is absurd. Reply at 5.

4

### D. Mr. Giuffré May Properly Testify to His Understanding of the Accused Devices.

Defendants persist that Mr. Giuffré may not testify that two-way IR capability is "integrated" in the Accused Devices. But Mr. Giuffré's damages analysis assumes the '467 patent is valid and infringed (i.e., each element of the asserted claims is present in the Accused Devices). And his understanding that the '467 patent claims a C3S system "integrated" with various features and capabilities comes, in part, from Dr. Gottesman, a technical expert. Defendants know this, because they attached the source of Mr. Giuffré's understanding to their motion. Dkt. 147, Ex. D (opining that the '467 patent discloses a C3S system "integrated with more features than those disclosed in [the *Mformation*] patents."). Mr. Giuffré read the claims of the '467 patent, which include a C3S system comprising, among other things, two-way IR communication capability. Ex. G at 51:19-23; Dkt. 164, Ex. A at 26:13-17. And, based on the information he received about the opinions of the experts in *Salazar I*, he understands that there are no infringing alternatives, a separate add-on feature would be the "next best thing," and that certain stand-alone add on products were considered by the experts in *Salazar I*. Dkt. 164 at 12 (citing Ex. C at 53:25-55:3; 147:8-148:7 & 149:11-150:5).[4] He may properly testify about knowledge he gleaned from other experts and his own studies that inform his understanding of the asserted claims, the Accused Devices, and the availability (or not) of non-infringing alternatives. *GREE, Inc.*, 2020 WL 4057640 at *6; *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("… patent damages experts often rely on technical expertise outside of their field …."), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

---

[4] Salazar's Opposition cites to this same testimony. Dkt. 164 at 12. The suggestion that Salazar somehow "trie[d] to pull a fast one" by the placement of the citation is baseless, desperate, and petty; it should be rejected wholesale.

Respectfully submitted,

*/s/Geoff Culbertson*
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
T. 903-792-7080
T. 903-792-8233

Dariush Keyhani
District of Columbia Bar No. 1031500
Frances H. Stephenson
New York registration No. 5206495
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff, Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 2nd day of December, 2020.

                                          */s/Geoff Culbertson*
                                          Geoffrey Culbertson