**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR, | |
| Plaintiff, | |
| v. | Civil Action No. 2:20-cv-00004-JRG |
| AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | JURY TRIAL DEMANDED |
| Defendants | |
| and | |
| HTC CORP., and HTC AMERICA, INC., | |
| Intervenors. | |

**PLAINTIFF JOE ANDREW SALAZAR'S RESPONSE IN OPPOSITION TO
DEFENDANTS' AND INTERVENORS' MOTION FOR SUMMARY JUDGMENT
UNDER THE *KESSLER* DOCTRINE AND RES JUDICATA**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... iii

I.      INTRODUCTION ........................................................................................1

II.     PROCEDURAL BACKGROUND .............................................................. 1

III.    SALAZAR'S COUNTERSTATEMENT OF UNDISPUTED FACTS ........ 3

IV.     LEGAL STANDARD FOR SUMMARY JUDGMENT............................. 6

V.      ARGUMENT ............................................................................................... 7

        A.      Defendants' claim preclusion argument fails as a matter of law. ..........................7

                1.      This case does not involve the same claim or cause of action as the HTC Corp. litigation. ................................................................7

                        a.      The two cases do not share the same nucleus of operative facts and arise from transactional facts that are unrelated in time, space, origin or motivation..................................................................8

                        b.      HTC Corp. admits that the two cases do not share the same nucleus of operative facts............................................................9

                        c.      The two cases do not share the same nucleus of operative facts, because the treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage..............12

                        d.      Salazar's claims of HTC Corp.'s indirect infringement have no bearing on whether the Defendants in this case indirectly infringed the claims of Salazar's patent. ......................................................13

                2.      HTC Corp. and Defendants in this case are not in privity. ........................15

                        a.      HTC Corp.'s efforts to distance itself from Defendants and the parties' decision to sever AT&T from the first case establishes that there is no privity. ......................................................................17

                        b.      There is no privity because HTC Corp. attempted to conceal its relationship with Defendants at the relevant times in the first litigation. ......................................................................18

c.     There is no privity because HTC Corp. did not adequately represent Defendants' interests in the first case. ............................................19

B.     Judicial estoppel applies in the instant case, and, even if it did not, HTC Corp.'s and AT&T's arguments and statements in the prior case are binding judicial admissions............................................................................................ 21

C.     The application of claim preclusion would clearly prejudice Salazar. .................23

D.     The *Kessler* doctrine does not apply to this case. ..................................................25

1.     *Kessler* is a limited doctrine that does not subsume claim preclusion.......25

2.     The *Kessler* doctrine does not apply because the HTC One phones did not attain noninfringing status in the HTC case...............................................27

3.     Salazar's present claims are not new infringement theories that should have been brought in the HTC Corp. case...........................................................30

VI.     CONCLUSION.................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008) ...................................................7, 8

*Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204
    (E.D. Tex. May 12, 2015) .............................................................................................14, 15

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) .......................................25, 27, 29

*Bumstead v. Jasper Cty.*, 931 F. Supp. 1323 (E.D. Tex. 1996) .........................................................6

*Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.,* 655 F.2d 598 (5th Cir. 1981)....................6, 7

*City Nat'l Bank v. United States*, 907 F.2d 536 (5th Cir. 1990) .....................................................23

*Davis v. Wakelee*, 156 U.S. 680 (1895) .........................................................................................21

*Eldred v. Kessler,* 106 F. 509 (7th Cir. 1900).................................................................................29

*Feuerbacher v. Wells Fargo Bank*, No. 4:15-CV-59, 2016 WL 3669744
    (E.D. Tex. July 11, 2016) ....................................................................................................10

*Hansberry v. Lee*, 311 U.S. 32 (1940) ...........................................................................................16

*Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443 (5th Cir. 2016)......................................7

*HRD Corp. v. Dow Chem. Co.*, 2019 WL 162094
    (S.D. Tex. Jan. 9, 2019) .................................................................................................23, 25

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999).................................................................21

*Kessler v. Eldred*, 206 U.S. 285 (1907) ..........................................................................................25

*MGA, Inc. v. LaSalle Mach. Tool, Inc.,* 148 Mich. App. 350 (1986) ..............................................29

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012).............10

*Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-CV-419, 2015 WL 6750306
    (E.D. Tex. July 7, 2015)..............................................................................26, 26, 28, 29, 30

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639 (E.D. Tex. 2011).................23

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......................................................................21, 22

*Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004) ...........................................8, 13

*Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010) ......23, 24, 25

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286 (5th Cir. 1992) .......16, 17, 18, 19

*Russell v. SunAmerican Sec., Inc.*, 962 F.2d 1169 (5th Cir. 1992) ................................................16

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945 (Fed. Cir. 2014) ..............17, 19

*Santiago v. Novastar Mortg., Inc.*, No. 4:11-CV-769, 2012 WL 489031
(E.D. Tex. Jan. 27, 2012) ........................................................................................................6

*Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) ...............................................15

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018).......................................25, 26, 27

*SpeedTrack Inc. v. Office Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015) ........................................26

*SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07–3602 PJH, 2014 WL 1813292
(N.D. Cal. May 6, 2014) ........................................................................................................29

*Stearns Airport Equip. Co. v. Revolving Media, Ltd.*, 1996 WL 722073
(N.D. Tex. Dec. 6, 1996) ........................................................................................................16

*Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1977)........................15, 16, 19

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...................................................................16, 19, 20, 21

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005).........................................7

*Texas v. Dep't of Labor*, 929 F.3d 205 (5th Cir. 2019) ...............................................................16

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007).............................17, 19

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003) ...................................15, 17

*Young & Vann Supply Co. v. Gulf, F. & A.R. Co.*, 5 F.2d 421 (5th Cir. 1925) ...........................23

## Statutes and Restatements

35 U.S.C. § 271(a) .........................................................................................................4, 5, 10, 11

Restatement (Second) of Judgments § 24(2) ...................................................................................8

Restatement (Second) of Judgments § 26(f)...................................................................................23

**Rules**

Fed. R. Civ. P. 56(c) ..........................................................................................................................6

## I.      INTRODUCTION

Plaintiff Joe Andrew Salazar ("Salazar") responds in opposition to Defendants' and Intervenors' (collectively, "Defendants") Motion for Summary Judgment Under the *Kessler* Doctrine and Res Judicata ("Motion," Dkt. #146).  As an initial matter, Defendants' Motion is duplicative of the carrier defendants' Joint Motion to Dismiss Under Rule 12(b)(6) ("Motion to Dismiss," Dkt. #27) and should be denied for the reasons set forth by Salazar in his Motion to Strike or, Alternatively Deny as Moot Defendants' and Intervenors' Motion for Summary Judgment (Dkt. #152) and Motion for Leave to Extend Deadline to Respond to Defendants' and Intervenors' Motion for Summary Judgment Under the *Kessler* Doctrine and Res Judicata ("Motion for Leave"). In seeking summary judgment, Defendants raise no new facts and merely use their Motion to bolster the same arguments they previously made in their Motion to Dismiss.  Defendants should not be permitted to take another bite at the apple.

Furthermore, even if Defendants' Motion were proper, Defendants' arguments fail as a matter of law.  Specifically, as Salazar argued in his opposition to Defendants' Motion to Dismiss (Dkt. #40), Defendants have (1) failed to establish that all of the requisite claim preclusion elements are satisfied and (2) failed to establish that the *Kessler* doctrine applies in this case. Defendants' Motion presents no factual issues for a jury to decide; the only matters for resolution are these purely legal questions.  Because Defendants' arguments as to these legal questions fail as a matter of law, the Motion should be denied in full.

## II.     PROCEDURAL BACKGROUND

In 2016, Salazar sued HTC Corp. in this Court.  *See Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG (E.D. Tex.).  During the course of that litigation, Salazar attempted to join AT&T as a defendant.  HTC Corp., however, successfully argued that he was prohibited as a matter of law

from doing so, because even if HTC Corp. had directly sold the accused products to AT&T (which in turn, resold those products to AT&T's customers) these "independent transactions" were not part of the "same series of transactions or occurrences." Dkt. #40, Ex. H at 4.[1]  Throughout the case and at trial, HTC Corp. argued that it could not be held liable under U.S. law because it was strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States. *See, e.g.*, Dkt. #40, Ex. B at 2, 6, 23; Ex. C at 9-10; Ex. D at 48:2-49:7.  The jury ultimately found that Salazar had not proven "that HTC Corporation infringed ANY of the Asserted Claims through the use, sale, or offer for sale in the United States, or importation into the United States, of any of the following Accused Products" but did not make a specific finding that HTC's products were noninfringing (i.e., not constituting the "patented invention"). Dkt. #40, Ex. A at 2.

Salazar subsequently sued new defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless (the U.S. carriers) in this Court.  On October 1, 2019, Defendants filed their Motion to Dismiss Under Rule 12(b)(6) on the basis of claim preclusion and the *Kessler* doctrine (Dkt. #27).  Salazar filed his opposition brief on November 1, 2019 (Dkt. #40).  On November 20, 2019, HTC Corp. and HTC America requested to join this case as intervenors (Dkt. #55).  Salazar agreed not to oppose the parties' intervention in the case if they agreed not to file additional briefing related to the carrier defendants' pending motion to dismiss—an agreement approved by Defendants.  *See* Motion for Leave at 3 & n.1.

While Defendants' Motion to Dismiss was pending, Defendants moved for summary judgment on the same two issues addressed in that motion: (1) claim preclusion and (2) the *Kessler*

---

[1] AT&T further argued in its Partial Joinder to HTC Corp.'s Motion to Sever that it was "merely a distributor or reseller of the accused products—a peripheral defendant."  Dkt. #40, Ex. I at 2.

doctrine (Dkt. #143).  On November 13, 2020, Salazar moved to strike or, alternatively, deny as moot Defendants' Motion (Dkt. #152).  On April 8, 2021, Salazar filed his Motion for Leave.

## III.     SALAZAR'S COUNTERSTATEMENT OF UNDISPUTED FACTS

In response to Defendants' Statement of Undisputed Facts, the following facts are submitted as undisputed:

1.     In the HTC Corp. case, Salazar alleged that HTC Corp. had infringed his patent through the use, sale, and offer for sale in the United States, and importation into the United States, of the accused products.  *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG (E.D. Tex.), Dkt. #17.

2.     In the HTC Corp. case, HTC Corp. argued that it could not be held liable under U.S. law because it was strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States.  *See, e.g.*, Dkt. #40, Ex. B at 2, 6, 23; Ex. C at 9-10; Ex. D at 48:2-49:7.

3.     In the HTC Corp. case, HTC Corp. stated that it manufactured the accused devices in Taiwan, never in the United States.  Dkt. #40, Ex. B at 23; Ex. D at 48:2-49:7.

4.     In the HTC Corp. case, HTC Corp. maintained that its subsidiary, HTC America, was the importer, marketer, and distributor for HTC-brand smartphones and the accused devices sold in the United States.  Dkt. #40, Ex. B at 23; Ex. D at 48:2-49:7; Ex. F at 13-14; Ex. G at 7-9.

5.     In the HTC Corp. case, when Salazar attempted to join AT&T as a defendant, HTC Corp. argued that he was prohibited as a matter of law from doing so, because "even if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers ... , these independent transactions would not be sufficient to satisfy Section 299's 'same series of transactions or occurrences' test."  Dkt. #40, Ex. H at 4.

6.     In the HTC Corp. case, AT&T argued in its Partial Joinder to HTC Corp.'s Motion

to Sever that it was "merely a distributor or reseller of the accused products—a peripheral defendant."  Dkt. #40, Ex. I at 2.

7.      In the HTC Corp. case, AT&T's Partial Joinder to HTC Corp.'s Motion to Sever was submitted by AT&T's own separate counsel and took positions distinct from HTC Corp.'s. Dkt. #40, Ex. I.

8.      In the HTC Corp. case, HTC Corp. took the position that offers for sale and sales in the United States of the accused devices retailed by the U.S. carriers were made by HTC America, not HTC Corp., and that HTC Corp. thus could not be liable for infringement of any carrier-retailed products.  Dkt. #40, Ex. B at 23; Ex. C at 10.

9.      In July 2017, when Salazar attempted to join AT&T to the HTC Corp. litigation, and HTC Corp. and AT&T moved to sever, HTC Corp. had not produced the carrier purchase agreements, despite Salazar's request for this information.

10.     During the HTC Corp. litigation, HTC Corp. produced some of the relevant carrier purchase agreements in December 2017, after repeated requests from Salazar; only after Salazar filed a motion to compel later that month, and the Court ordered HTC Corp. to produce, did HTC Corp. produce the purchase agreement with AT&T.  *See* Dkt. #40, Ex. O at 3.

11.     In the HTC Corp. case, HTC Corp. stated in its Motion for Summary Judgment of Non-Infringement, which was granted in part, that all sales of the accused devices to Sprint were made by HTC America, whereas its own acts were outside the scope of 35 U.S.C. § 271 (as they did not occur in the United States).  Dkt. #40, Ex. B at 23; Ex. F at 13-14.

12.     In the HTC Corp. case, HTC Corp. stated at trial that "all of the invoices that are in evidence for the accused products show sales of those accused products by HTC America to U.S. customers."  Dkt. #40, Ex. D at 48:2-49:7.

13.     In the HTC Corp. case, HTC Corp.'s counsel argued in their opening statement:

- "HTC Corp does not actually make, use, offer, or sell their phones in the United States, nor do they import their phones into the United States …. [T]here is a separate HTC company called HTC America, Inc. that … does the United States – State's operations."
- "HTC America is the company that imports the phones into the United States …. HTC America is the company that offers and sells the phones in the United States …. HTC America … is not a Defendant in the case. The only Defendant here is HTC Corp, the separate parent company."
- "Those facts are important because under United States patent law, only actions that take place in the United States can infringe a United States patent."

Dkt. #40, Ex. J at 63:20-64:17.

14.     In the HTC Corp. case, counsel for HTC Corp. argued in their closing statement:

- "Mr. Salazar has failed to produce any evidence showing that HTC Corp violated Section 271(a) requiring proof of the acts to occur within the United States."
- "HTC Corporation is a Taiwanese corporation doing business in Taiwan. In contrast, the non-party, HTC America, is the company responsible for sales and marketing in the United States."
- "[E]ven if the accused devices otherwise infringe, Mr. Newby-House and Ms. Lai provided testimony that the only entity that could have performed any allegedly infringing act in the United States is HTC America."
- "[A]ll of the invoices that are in evidence for the accused products show sales of those accused products by HTC America to U.S. customers."

Dkt. #40, Ex. D at 48:2-49:7.

15.     In the HTC Corp. case, counsel for HTC Corp. also argued at trial:

- "There's one other reason, though, why you can find that HTC Corporation doesn't infringe, and that's because … only infringing acts in the United States count for infringement.  Only if you import, make, use, sell, offer for sale in the United States can you be an infringer.  And Ms. Lai ... explained that HTC America, not HTC Corp, is the importer.  She explained that HTC America offers and sells these products in the United States."

Dkt. #40, Ex. K at 67:17-68:2.

16.     In the HTC Corp. case, the jury verdict form did not clarify whether HTC Corp. did

not infringe the asserted claims because: (1) HTC Corp. did not commit any infringing acts in the

5

United States or (2) the accused devices did not satisfy the claim elements of the asserted claims of Salazar's patent.  *See* Dkt. #40, Ex. A at 2.

       17.     In the HTC Corp. case, the jury did not make a specific finding that HTC Corp.'s products were noninfringing (i.e., not constituting the "patented invention"); rather, the jury found that Salazar had not proven "that HTC Corporation infringed ANY of the Asserted Claims through the use, sale, or offer for sale in the United States, or importation into the United States, of any of the following Accused Products."  Dkt. #40, Ex. A at 2.

       18.     At the trial of the HTC Corp. case, the Court gave HTC Corp. the choice between dismissing its invalidity counterclaim or sending the claim back to the jury.  Dkt. #40, Ex. A at 2; Ex. L.  HTC Corp.'s counsel conferred, made a tactical decision to withdraw its claim, and the Court consequently accepted the verdict with the invalidity claim dismissed.  Dkt. #40, Ex. L at 1.

       19.     Defendants in this case are represented by the same counsel that represented HTC Corp. in the pretrial motions and the trial in the prior case.

       20.     Defendants in this case made sales of the accused devices in the United States and do not assert the defense of no U.S. sales.  *See, e.g.*, Dkt. #40, Ex. B at 23; Ex. C at 10; Ex. D at 48:2-49:7; Ex. E at 7-8.

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

       "Summary judgment should be granted only when the record reflects that 'there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law.'"  *Bumstead v. Jasper Cty.*, 931 F. Supp. 1323, 1328 (E.D. Tex. 1996) (quoting Fed. R. Civ. P. 56(c)) (emphasis added).  "The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."  *Santiago v. Novastar Mortg., Inc.*, No. 4:11-CV-769, 2012 WL 489031, at *1 (E.D. Tex. Jan. 27, 2012) (citing *Casey Enters., Inc. v. Am.*

*Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir. 1981)).

## V.   ARGUMENT

### A.   Defendants' claim preclusion argument fails as a matter of law.

Defendants' claim preclusion argument fails as a matter of law, because Defendants have failed to establish that the required claim preclusion elements are satisfied.  These elements are that: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[2]  *Hous. Prof'l Towing Ass'n* v. *City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016).

### 1.   This case does not involve the same claim or cause of action as the HTC Corp. litigation.

The same claim or cause of action is not involved in both actions, and this requirement is therefore not met.  To determine whether both suits involve the same cause of action, the Fifth Circuit applies the transactional test, which focuses on whether the two cases "are based on the same nucleus of operative facts." *Hous. Prof'l Towing*, 812 F.3d at 447; *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  Likewise, "a claim for patent infringement can only be barred by claim preclusion if that claim arises from the same transactional facts as a prior action." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008). "It is the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted that defines the claim." *Hous. Prof'l Towing*, 812 F.3d at 447.  Further,

---

[2] "To the extent that a case turns on general principles of claim preclusion, as opposed to a rule of law having special application to patent cases, th[e Federal Circuit] applies the law of the regional circuit in which the district court sits …." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).  Where "a claim preclusion issue ... is particular to patent law," it is analyzed under Federal Circuit law. *Id.* (citation omitted).

> [w]hat factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Petro–Hunt, L.L.C. v. United States,* 365 F.3d 385, 396 (5th Cir. 2004) (quoting Restatement (Second) of Judgments § 24(2)).  Moreover, a claim is not barred solely because it could have been raised in a prior action between the parties that was resolved by a final judgment on the merits.  *See Acumed*, 525 F.3d at 1325-26.

Here, claim preclusion is improper because the present litigation does not share the same nucleus of operative facts nor arise from the same transactional facts as the HTC Corp. litigation.  Specifically, (a) the two cases are unrelated in time, space, origin, or motivation and do not share the same nucleus of operative facts; (b) HTC Corp. admits that the two cases do not share the same nucleus of operative facts and asserted a defense to infringement that is inapplicable to the facts of this case; and (c) the treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage.

### a. The two cases do not share the same nucleus of operative facts and arise from transactional facts that are unrelated in time, space, origin or motivation.

The present case and the HTC Corp. litigation "are not related in time, space, origin, or motivation." *See Petro–Hunt*, 365 F.3d at 396.  This case involves Salazar's infringement suit against U.S. carriers AT&T Mobility, Sprint, T-Mobile, and Verizon, alleging that Defendants have offered for sale or used, and sold, distributed, promoted, or provided for use by others the accused devices in the United States.  The transaction at issue and the nucleus of operative facts involves U.S. sales of the accused devices from these carrier/retailers to the end users—the customers located in the United States who ultimately purchased the HTC smartphones.

This case does *not* involve the facts of HTC Corp.'s overseas activities, whether HTC Corp. committed any acts of infringement in the United States, or HTC Corp.'s transactions with its subsidiary, HTC America.  Here, unlike the first case, it is undisputed that the defendants made sales of the accused devices in the United States.  *See, e.g.*, Dkt. #40, Ex. B at 23; Ex. C at 10; Ex. D at 48:2-49:7; Ex. E at 7-8.  This difference is material because the issue of whether the accused devices practice the claim elements of the asserted claims was not resolved in the first case and that issue is necessary to resolve the issue of infringement here.[3]

### b.    HTC Corp. admits that the two cases do not share the same nucleus of operative facts.

In the first case, Salazar alleged that HTC Corp. had infringed his patent through the use, sale, and offer for sale in the United States, and importation into the United States, of the accused products. HTC Corp. responded that it could not be held liable under U.S. law because it was strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States.  *See, e.g.*, Dkt. #40, Ex. B at 2, 6, and 23; Ex. C at 9-10; Ex. D at 48:2-49:7. According to HTC Corp., it manufactured the accused devices in Taiwan—never in the United States.  Dkt. #40, Ex. B at 23; Ex. D at 48:2-49:7.  HTC Corp. maintained that its subsidiary, HTC America, was the importer, marketer, and distributor for HTC-brand smartphones and the accused devices sold in the United States (Dkt. #40, Ex. B at 23; Ex. D at 48:2-49:7; Ex. F at 13-14; Ex. G

---

[3] In the HTC Corp. litigation, the jury did not make a specific finding that HTC Corp.'s products were noninfringing—i.e., not constituting the "patented invention." Rather, the jury found that Salazar had not proven "that HTC Corporation infringed ANY of the Asserted Claims **through the use, sale, or offer for sale in the *United States*, or importation into the *United States*,** of any of the following Accused Products." Dkt. #40, Ex. A at 2 (emphasis added).  Thus, the jury's finding of noninfringement may well have been based on HTC Corp.'s lack of activities giving rise to infringement in the United States—and *not* because the accused devices failed to meet the claim elements of the asserted claims.

at 7-9) and that title to all HTC Corp.-branded smartphones passed to HTC America outside of the United States (Dkt. #40, Ex. F at 13-14).

Furthermore, HTC Corp.[4] was adamant that it had no connection to Defendants in this case, the U.S. carriers, and explicitly acknowledged that any sale between HTC America and the U.S. carriers were part of an entirely separate transaction.  Indeed, in HTC Corp.'s Motion to Sever and Stay Salazar's case against AT&T in the first case, HTC Corp. argued that Salazar was prohibited as a matter of law from joining AT&T or any carrier in this case under Section 299 because the U.S. carriers' actions constituted an entirely separate transaction.  Specifically, when Salazar attempted to join AT&T as a defendant, HTC Corp. successfully argued that:

> even if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers ..., **these independent transactions would not be sufficient to satisfy Section 299's "same series of transactions or occurrences" test**.  As one court has explained at length, even a direct manufacturer-retailer relationship (which, again, is not present in this case), without more, is insufficient to satisfy Section 299.

Dkt. #40, Ex. H at 4 (emphasis added).[5]  HTC Corp. took the position that offers for sale and sales in the United States of the accused devices retailed by the U.S. carriers were made by HTC America—*not* HTC Corp.—and that HTC Corp. thus could not be liable for infringement of any carrier-retailed products.[6]  *See e.g.*, Dkt. #40, Ex. B at 23; Ex. C at 10.

---

[4] The Defendants in this case (and HTC Corp. is one of the intervenors in this case) argue that they are in privity with HTC Corp. and that HTC Corp. was their virtual representative.  Therefore, the position taken by HTC Corp. in the first case can be understood as the position of the carriers.  *See, e.g.*, *Feuerbacher v. Wells Fargo Bank*, No. 4:15-CV-59, 2016 WL 3669744, at *3, n.2 (E.D. Tex. July 11, 2016), *aff'd*, 701 Fed. App'x 297 (5th Cir. 2017); *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012).

[5] In its Partial Joinder to HTC Corp.'s Motion to Sever, AT&T argued that it was "merely a distributor or reseller of the accused products—a peripheral defendant." Dkt. #40, Ex. I at 2.

[6] For example, in its Motion for Summary Judgment of Non-Infringement, which was granted in part, HTC Corp. contended that all sales of the accused devices to Sprint were made by HTC America, whereas its own acts were outside the scope of 35 U.S.C. § 271.  Dkt. #40. Ex. B at 23; Ex. F at 13-14.  Likewise, at trial, HTC Corp. stated that "all of the invoices that are in evidence

Moreover, the two cases do not share the same nucleus of operative facts because HTC Corp. relied on a defense to infringement—that their accused activities took place in Taiwan— that cannot be invoked by Defendants in this case because there is no dispute their accused activities occurred in the United States.  As discussed in Section V.A.1.a., *supra*, HTC Corp. argued throughout the litigation that it was not liable for infringement because all of its business activities took place solely in Taiwan.  This defense was raised not only throughout HTC Corp.'s pre-trial motions[7] and during discovery, it was a centerpiece of HTC Corp.'s noninfringement theory at trial.  For example, in their opening statement, HTC Corp.'s counsel argued:

> You may not have heard very much about HTC Corp before this case because **HTC Corp does not actually make, use, offer, or sell their phones in the United States, nor do they import their phones into the United States**. As many companies do, whether they're headquartered in the U.S. or elsewhere, **there is a separate HTC company called HTC America, Inc. that separate company does the United States – States's operations**.
> . . . .
> What you'll learn in this case is that **HTC America is the company that imports the phones into the United States.  You'll learn that HTC America is the company that offers and sells the phones in the United States**, including here in Texas, you'll learn that HTC America, as you've already heard, actually is not a Defendant in the case.  **The only Defendant here is HTC Corp, the separate parent company**.
>
> Those facts are important because under United States patent law, only actions that take place in the United States can infringe a United States patent.

Dkt. #40, Ex. J at 63:20-64:17 (emphasis added).  In their closing statement, HTC Corp.'s counsel stated:

> Mr. Salazar's ... not presented sufficient evidence that HTC Corporation performs any infringing acts. Mr. Salazar has failed to produce any evidence showing that HTC Corp violated Section 271(a) requiring proof of the acts to occur within the United States.

---

for the accused products show sales of those accused products by HTC America to U.S. customers."  Dkt. #40, Ex. D at 48:2-49:7.

[7] Defendants are represented by the same law firm that represented HTC Corp. in the pretrial motions and the trial in the first case.

> **HTC Corporation is a Taiwanese corporation doing business in Taiwan.  In contrast, the non-party, HTC America, is the company responsible for sales and marketing in the United States.**
>
> During Mr. Salazar's case-in-chief, **he was never able to establish that it was HTC Corporation who – who made, used, offered for sale, and sold the accused devices in the United States or imported the infringing product into the United States**.
>
> Just this week, Mr. Sal – Mr. Salazar stipulated that HTC Corporation does not make any accused product in the United States.  And Mr. Salazar failed to show any evidence that HTC Corp uses any device in the United States.
>
> Finally, Mr. Salazar **has not presented evidence that HTC Corp imported accused devices in the United States**.  And even if the accused devices otherwise infringe, Mr. Newby-House and Ms. Lai provided testimony that **the only entity that could have performed any allegedly infringing act in the United States is HTC America**.
>
> For example, **all of the invoices that are in evidence for the accused products show sales of those accused products by HTC America to U.S. customers**.  Those same invoices show that the origin of those products is Taiwan, and the evidence shows that HTC America is the importer of the accused products in the United States.

Dkt. #40, Ex. D at 48:2-49:7 (emphasis added).  HTC Corp. also argued:

> There's one other reason, though, why you can find that HTC Corporation doesn't infringe, and that's because – it has nothing to do with microprocessors or memory devices, it just has to do with the United States, because only infringing acts in the United States count for infringement.  Only if you import, make, use, sell, offer for sale in the United States can you be an infringer.
>
> And Ms. Lai ... explained that HTC America, not HTC Corp, is the importer.  She explained that HTC America offers and sells these products in the United States.

Dkt. #40, Ex. K at 67:17-68:2.

> For this additional reason, the two cases do not share the same nucleus of operative facts.

> ### c.    The two cases do not share the same nucleus of operative facts, because the treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage.

As discussed in Sections V.A.1.a.-b., *supra*, treatment of the cases as a unit does not

12

conform to the parties' expectations or business understanding or usage.  HTC Corp. took the position that it had no business relationship with Defendants in this case and that its manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the accused devices retailed by the U.S. carriers.  When Salazar attempted to join AT&T as a defendant in the first case, HTC Corp. successfully severed AT&T from the case on the basis that the parties' business transactions were unrelated.  Dkt. #40, Ex. H at 4.  Likewise, in its Partial Joinder to HTC Corp.'s Motion to Sever, AT&T distanced itself from HTC Corp., insisting that it was merely "peripheral" to the HTC Corp. litigation.  Dkt. #40, Ex. I at 2.  These actions, and HTC Corp.'s own admissions, establish that treating the two cases as a unit does not conform to the parties' expectations or business understanding or usage.  *See Petro–Hunt,* 365 F.3d at 396.

> ### d.     Salazar's claims of HTC Corp.'s indirect infringement have no bearing on whether the Defendants in this case indirectly infringed the claims of Salazar's patent.

Defendants incorrectly argue that Salazar's indirect infringement allegations made against HTC Corp. in the HTC Corp. case prevent him from asserting infringement claims against different parties—Defendants here—based on different conduct.[8]  Defendants' argument that Salazar's allegation that HTC Corp. "induced, caused, urged, aided, and abetted its direct and indirect customers to infringe the claims of the '467 patent" bars his infringement claims against the

---

[8] The conduct at issue in this case involves U.S. sales of the accused devices from the Defendant carrier/retailers to the end users—the customers located in the United States who ultimately purchased the HTC smartphones and indirect infringement involving these end users.  This case does not involve the facts of HTC Corp.'s overseas activities, whether HTC Corp. committed any acts of infringement in the United States, or HTC Corp.'s transactions with its subsidiary, HTC America, or HTC Corp.'s acts of inducing others to infringe Salazar's patent claims.

Defendants in this case is without merit.[9]

Salazar never alleged in the HTC Corp. case that the U.S. carriers themselves "induced, caused, urged, encouraged, aided, and abetted" any other party (e.g., the end-user customer).  To the contrary, Salazar's allegations of inducement in the first case were wholly attributed to the **activities of HTC Corp.**  For instance, Salazar alleged that: "Defendant has induced, caused, urged, encouraged, aided, and abetted its direct and indirect customers ...." and "Defendant has done so by affirmative acts including but not limited to selling infringing products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products." *Salazar v. HTC Corp.*, Dkt. No. 17 ¶¶ 15-16.[10]  The activities of Defendants in this case, by HTC Corp.'s own admission, are not based on the same nucleus of operative fact as the activities of HTC Corp.

Further, Defendants' reliance on *Adaptix* is misplaced.  *Adaptix* dealt with multiple lawsuits involving the same defendants, as well as the plaintiff's same allegation of contributory infringement brought against these defendants in multiple lawsuits.  *See Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *15 (E.D. Tex. May 12, 2015).  The fact that both the defendants and the accused devices were "materially identical" was key to the Court's conclusion that the cases arose from the same nucleus of operative facts and thus "involve[d] the same infringement cause of action."  *Id.* at *15-18.  By contrast, here, the infringement claims are brought against an entirely different set of parties from Salazar's prior case against HTC Corp.

---

[9] Salazar also does not dispute that he is precluded from bringing his claims of infringement under any theory, whether advanced or not, against HTC Corp.  However, in the instant case, it is the infringing acts of a different set of parties that is at issue.

[10] Even if, arguendo, the complaint's "direct and indirect customers" language referenced by Defendants included the U.S. carriers, the pleading and the excerpt quoted by Defendants demonstrates that these customers were the *objects* of HTC Corp.'s alleged acts of inducement—not the *subjects*.

14

And, unlike *Adaptix*, Salazar's allegations of indirect infringement were directed only at HTC Corp. in the first case.  In that case, Salazar alleged only that HTC Corp.—not the U.S. carriers or any other party[11]—engaged in acts of indirect infringement and therefore his claims in the present case are not "claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication." *See id.* at *15.  In sum, Salazar's claims of HTC Corp.'s indirect infringement have no bearing on whether the Defendants in this case indirectly infringed the claims of Salazar's patent.[12]

### 2.    HTC Corp. and Defendants in this case are not in privity.

Defendants' contention that they and HTC Corp. are in privity is not only inconsistent with the governing law, it misrepresents the relationship between the parties and contradicts HTC Corp.'s own admissions and arguments made in the first case.

Privity is a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003) (quoting *Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977)).  Privity "designates a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Sw. Airlines*, 546 F.2d at 95 n.38.  The privity analysis requires a court

---

[11] Defendants have not and cannot point to any allegations in the HTC Corp. case complaint directed to the conduct of the U.S. carriers (e.g., that Defendants marketed the infringing capabilities of the HTC One phones) that Salazar could have advanced in that case.

[12] Defendants' reliance on *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) is also unavailing.  In that case, a key factor in the Court's finding that the two cases involved the "same claim" was that the plaintiff was suing the **same defendant** as it had in the first case.  *See Senju Pharm.*, 746 F.3d at 1353 (stating "Having lost its suit, Senju seeks to use reexamination to obtain a second bite at the apple, to assert its patent against the **same party**, Apotex, and the same product …." and "Senju cannot sue Apotex on the same patent twice.") (emphasis added).  That crucial fact is not present here.

"to look to the surrounding circumstances to determine whether claim preclusion is justified." *Russell v. SunAmerican Sec., Inc.,* 962 F.2d 1169, 1173 (5th Cir. 1992) (citation omitted). "[T]he due process clauses prevent preclusion when the relationship between the party and non-party becomes too attenuated." *Sw. Airlines*, 546 F.2d at 95 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).

A non-party is considered to be in privity for preclusion purposes "where the party to the first suit is so closely aligned with the nonparty's interests as to be his 'virtual representative.'" *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1297 (5th Cir. 1992) (citations omitted). For virtual representation to arise, "there must be an express or implied legal relationship between the party and the nonparty in which the party to the first suit is accountable to the non-party who files a subsequent suit raising identical issues." *Id.* (citation and alterations omitted). "Federal courts have deemed three types of relationships sufficiently close to justify preclusion: (1) "a non-party who has succeeded to a party's interest in property," (2) "a non-party who controlled the original suit," and (3) "a non-party whose interests were represented adequately by a party in the original suit."[13] *Texas v. Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019) (quoting *Sw. Airlines*, 546 F.2d at 95). "[A] party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned ... and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the nonparty's interests." *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (citations omitted). "[A]dequate representation does not exist where a nonparty is merely interested in the same issue or same set of facts, or because the issue being litigated is one that

---

[13] The first two relationships are not implicated in this case. Defendants have not succeeded to HTC Corp.'s interest in property, nor did Defendants control the original suit. *See Stearns Airport Equip. Co. v. Revolving Media, Ltd.*, 1996 WL 722073, at *6 (N.D. Tex. Dec. 6, 1996) ("Control is given a narrower definition in the claim preclusion context; it must be "such as to place [the non-party's interests before the court.").

might affect their interests by providing a judicial precedent that would be applied in a subsequent action." *Dep't of Labor*, 929 F.3d 205 at 211 (citations and quotation marks omitted).

Based on these principles, the Federal Circuit has held that "a manufacturer or seller of a product who is sued for patent infringement typically is not in privity with a party, otherwise unrelated, who does no more than purchase and use the product." *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007); *see also S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945, 959-61 (Fed. Cir. 2014) (reversing the district court's conclusion that manufacturers and distributors of the same goods were in privity with each other "by virtue of the distributorship" and explaining that "with regard to questions of intellectual property infringement and invalidity, the person who buys an allegedly infringing product is not considered to be in privity with the person who sells him the product").

Here, Defendants have failed to establish that their relationship with HTC Corp. "is sufficiently close to afford application of the principle of preclusion," *Vasquez*, 325 F.3d at 677, that HTC Corp. was "so closely aligned with [their] interests as to be [their] 'virtual representative,'" *Royal Ins.*, 960 F.2d at 1297, or that HTC Corp. adequately represented their interests, *Dep't of Labor*, 929 F.3d at 211.  To the contrary, the record establishes that (a) HTC Corp. emphasized throughout the first case that its connection to the U.S. carriers was remote at best, distinguished its position from theirs whenever possible, and successfully severed Defendant AT&T from the case; (b) HTC Corp. made every attempt to obfuscate its relationship with the carriers and withhold key information from Salazar; and (c) HTC Corp. did not adequately represent Defendants' interests and, in fact, made multiple strategic decisions to further its own interests to the detriment of the U.S. carriers.

     a.     **HTC Corp.'s efforts to distance itself from Defendants and the parties' decision to sever AT&T from the first case establishes**

**that there is no privity.**

First, as discussed in Sections V.A.1.a.-c, *supra*, HTC Corp. took the position throughout the first case that it had no business relationship with the Defendants in this case.  It emphasized that it was a foreign corporation whose manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the accused devices retailed by Defendants, and that the only sales it made were to HTC America in Taiwan. HTC Corp. maintained that it was HTC America that imported the accused products into the United States and sold them to the U.S. carriers, and that HTC Corp. and HTC America were separate entities such that HTC Corp. was absolved of any liability for HTC America's infringing acts. HTC Corp.'s Motion to Sever and Stay Claims Against Newly-Added Defendant AT&T, Inc. (Dkt. #40, Ex. H) and AT&T's Partial Joinder to HTC Corp.'s Motion to Sever (Dkt. #40, Ex. I)—which was submitted by AT&T's own separate counsel and took positions distinct from HTC Corp.'s— provide additional powerful evidence that HTC Corp. and Defendants are not in privity.  Not only did HTC Corp. and carrier AT&T assert that their business transactions were unrelated and that AT&T was merely "peripheral" to the case, the parties tacitly admitted that the HTC Corp. litigation was *not* the case where AT&T and the U.S. carriers' liability should or would be addressed.  *See, e.g.*, Dkt. #40, Ex. H at 4; Ex. I at 2.  These actions establish that HTC Corp. was not acting as Defendants' "virtual representative" in the first case.  *See Royal Ins.*, 960 F.2d at 1297.

   **b.**  **There is no privity because HTC Corp. attempted to conceal its relationship with Defendants at the relevant times in the first litigation.**

Contrary to Defendants' representation, HTC Corp. was not forthcoming with its relationship with Defendants such that it was acting as their "virtual representative."  The record

18

shows that HTC Corp. attempted to conceal from Salazar the carrier purchase agreements[14]—identifying which U.S. carriers had a relationship with HTC Corp., along with the nature of these relationships—and only reluctantly produced the carrier agreements after being pressed by Salazar and the Court to do so.  In July 2017, when Salazar attempted to join AT&T to the HTC Corp. litigation, and HTC Corp. and AT&T moved to sever, HTC Corp. had not produced the carrier purchase agreements, despite Salazar's request for this information.  Only after repeated requests from Salazar did HTC Corp. produce some of the relevant agreements six months later (in December 2017).  *See* Dkt. #40, Ex. O at 3.  And only after Salazar filed a motion to compel later that month, and the Court ordered HTC Corp. to produce, did HTC Corp. produce the purchase agreement with AT&T.  *See* Dkt. #40, Ex. O at 2-4.  Thus, HTC Corp.'s assertion that it "was the manufacturer of the phones at issue in this case, and each Defendant was a known reseller of those products with an interest in their sale and unfettered use" (Motion at 20) is false.  Moreover, this obfuscation of the parties' relationship by HTC Corp. demonstrates that HTC Corp. was not acting as Defendants' "virtual representative" in the first case, *see Royal Ins.*, 960 F.2d at 1297, did not "under[stand] [it]self to be acting in a representative capacity," *Taylor*, 553 U.S. at 900, or that Defendants were "so identified in interest with a party to former litigation" such that the parties are in privity," *see Sw. Airlines*, 546 F.2d at 95 n.38.

        c.      **There is no privity because HTC Corp. did not adequately represent Defendants' interests in the first case.**

---

[14] Defendants point to purchase agreements with HTC Corp. in an attempt to demonstrate privity through a close, distribution relationship.  Defendants' argument directly contradicts positions taken by HTC Corp. in the first litigation, where HTC Corp. argued that Defendants were customers of HTC America—not HTC Corp.  HTC Corp. maintained that it was subsidiary HTC America that was the importer, marketer, and distributor for HTC-brand smartphones sold in the United States (Dkt. #40, Ex. B at 23; Ex. D at 48:2-49:7; Ex. F at 13-14).  Nevertheless, even if Defendants *were* distributors, that alone is insufficient to establish privity.  *Transclean Corp.*, 474 F.3d at 1306; *see also S. Snow Mfg.*, 567 F. App'x at 959-61.

HTC Corp. did not adequately represent Defendants' interest in the first case such that the parties are in privity.  *See Taylor*, 553 U.S. at 900; *Dep't of Labor*, 929 F.3d at 211.  To the contrary, HTC Corp. made multiple strategic decisions to further its own interests at the expense of Defendants.  For example, HTC Corp. elected to withdraw its invalidity counterclaim at trial.  Following the jury's return of a verdict of noninfringement but failure to note a decision as to invalidity on the jury form, the Court gave HTC Corp. the choice between dismissing its invalidity counterclaim or sending the claim back to the jury.  *See* Dkt. #40, Ex. A at 2; Ex. L.  HTC Corp.'s counsel conferred, made a tactical decision to withdraw its claim, and the Court consequently accepted the verdict with the invalidity claim dismissed.  Dkt. #40, Ex. L at 1. This strategic decision benefitted HTC Corp., which had already prevailed on noninfringement and did not want to risk the jury changing its mind during further deliberations.  *See* Dkt. #40, Ex. L at 9 n.2. However, it was not in Defendants' best interest, as it left Salazar's patent valid and Defendants open to liability for infringement in a subsequent lawsuit.

HTC Corp. made other decisions that furthered its own interests while not adequately representing Defendants. For example, the jury verdict form did not clarify whether HTC Corp. did not infringe the asserted claims because: (1) HTC Corp. did not commit any infringing acts in the United States or (2) the accused devices did not satisfy the claim elements of the asserted claims of Salazar's patent. *See* Dkt. #40, Ex. A at 2.  In asserting the defense that its actions did not occur in the United States (a defense unavailable to Defendants) and also leaving the jury without the ability to clarify why they found HTC Corp. did not infringe, HTC Corp. furthered its own interests at the expense of Defendants.   Additionally, HTC Corp.'s decision to argue throughout the first case that Defendants—and not HTC Corp.—were in fact making sales of the accused devices in the United States was self-serving and damaging to Defendants. S*ee, e.g.*, Dkt.

#40, Ex. B at 23; Ex. C at 10; Ex. D at 48:2-49:7; Ex. E at 7-8.

The record plainly establishes that HTC Corp. did not adequately represent Defendants' interests because its interests and Defendants' interests were not aligned, nor did HTC Corp. behave as if it understood itself "to be acting in a representative capacity." *See Taylor*, 553 U.S. at 900.  For this additional reason, the parties are not in privity.

**B.    Judicial estoppel applies in the instant case, and, even if it did not, HTC Corp.'s and AT&T's arguments and statements in the prior case are binding judicial admissions.**

Judicial estoppel applies "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position"; thereafter, "he may not ... , simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895); *accord New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The doctrine is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).  The Fifth Circuit has noted that the doctrine of judicial estoppel is designed to protect the judicial system rather than the litigants. *Id*.

Here, Defendants' current position that this case involves the same claim as the HTC Corp. litigation and that the parties are in privity directly contradicts the position taken by HTC Corp. and Defendants[15] in the first case.   Indeed, HTC Corp. emphasized throughout that case that its connection to the U.S. carriers was remote at best and distinguished its position from theirs whenever possible.  *See* Section V.A.2.a.-c., *supra*.  Further, HTC Corp. and AT&T successfully

---

[15] As Defendants argue here that they are in privity with HTC Corp., then HTC Corp.'s position on this issue should be imputed to Defendants.  *See* n.4, *supra*.

severed Defendant AT&T from the case in part based on representations by HTC Corp. that the U.S. carriers' actions constituted an entirely separate transaction and representations by AT&T that it was a "peripheral defendant."  *See* Dkt. #40, Ex. H at 4; Ex. I at 2.

Defendants contend that they are not judicially estopped from making arguments diametrically opposite to those made by HTC Corp. in the first case because the Court did not "clearly accept[]" HTC Corp.'s previous arguments.  *See* Motion at 23.  This argument is without merit and misstates the law.  In *New Hampshire v. Maine*, the case cited by Defendants, the Supreme Court explained that "several factors typically inform the decision whether to apply the doctrine in a particular case."  532 U.S. at 750-51.  These factors include that "a party's later position must be 'clearly inconsistent' with its earlier position" and that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'"  *Id.* (citation omitted).  Further, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id.*

All of these factors are satisfied here.  As discussed, *supra*, the positions taken by Defendants in this case are clearly inconsistent with the positions taken in the first case.  Second, in granting HTC Corp. the relief it sought—i.e., severing AT&T from the case—the Court implicitly accepted HTC Corp.'s argument that the facts were so distinct that a separate case was warranted.  Additionally, that the Court allowed Salazar to maintain a separate case—as opposed to dismissing his infringement claims against AT&T—demonstrates that Salazar's case against the U.S. carriers involves a different nucleus of operative facts, as it would be wholly inefficient and a gross waste of judicial resources to split a claim involving the same nucleus of operative facts

into two separate cases.  And, third, as discussed in Section V.C, *infra*, Salazar would be clearly and unfairly prejudiced if Defendants' inconsistent positions prevented him from suing AT&T and the U.S. carriers now, as AT&T would effectively shield itself from litigation in both the HTC Corp. case and the instant case.

Defendants do not dispute that HTC Corp. argued throughout the prior case that its connection to the U.S. carriers was remote at best or that HTC Corp. distinguished itself from the U.S. carriers whenever possible.  And irrespective of whether Defendants are judicially estopped, the statements and arguments made by HTC Corp. and AT&T are binding judicial admissions. *See City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) ("We can appropriately treat statements in briefs as binding judicial admissions of fact." (citing *Young & Vann Supply Co. v. Gulf, F. & A.R. Co.*, 5 F.2d 421, 423 (5th Cir. 1925)); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 643-44 (E.D. Tex. 2011) (holding that party's admission in its response brief was a binding judicial admission).  Ultimately, Defendants' argument that "they are in privity for the purposes of claim preclusion" without any explanation or legal support for this self-serving about-face is indefensible.

## C.    The application of claim preclusion would clearly prejudice Salazar.

The application of claim preclusion in this case would clearly prejudice Salazar, and Defendants' arguments to the contrary misrepresent the facts and ignore HTC Corp.'s concealment of material facts in the first case.  Claim preclusion is an equitable doctrine with limits and exceptions.  *HRD Corp. v. Dow Chem. Co.*, No. CV H-13-3596, 2019 WL 162094, at *5 (S.D. Tex. Jan. 9, 2019) (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp.  2d 598 (S.D. Tex. 2010)).  "[I]f a claim could not have been brought because of wrongful concealment of material facts, preclusion cannot apply."  The Restatement (Second) of Judgments § 26(f) provides that claim

preclusion does not apply if "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason."  Fraud, concealment, or misrepresentation by a party could provide a basis to depart from claim preclusion.  *Id.* cmt. j.

Here, as discussed, *supra*, Salazar would clearly be prejudiced if he were both prevented from adding AT&T to the previous HTC Corp. litigation and precluded from suing AT&T now. Salazar was not "[p]lainly aware of the relationship among HTC Corp., HTC America, and Defendants" and was prejudiced as a result.  Indeed, similar to *Rimkus*, HTC Corp. attempted to conceal and misrepresent these relationships and, as discussed, *supra*, did everything it could not to produce the carrier agreements.[16]  Further, HTC Corp. and AT&T successfully moved to sever and stay the case based in part on representations about the parties' relationship—namely that the parties' business transactions were unrelated[17]—that Salazar could not effectively challenge because of HTC Corp.'s concealment of its agreements with the carriers.

Defendants' argument that claim preclusion would not unfairly prejudice Salazar because he knew of the relationships between the parties at the time of trial is without merit.  The relevant time period with respect to prejudice here is that when Salazar *could have added* the U.S. carriers to his case against HTC Corp.  That HTC Corp. ultimately produced the documents *months after* the deadline to join additional parties had passed (only after Salazar moved the Court to compel HTC

---

[16] As discussed in Section V.A.2.b., *supra*, in July 2017, when Salazar attempted to join AT&T to the HTC Corp. litigation, and HTC Corp. and AT&T moved to sever, HTC Corp. had not produced the carrier purchase agreements, despite Salazar's request for this information.  Only after repeated requests from Salazar did HTC Corp. produce some of the relevant agreements six months late (in December 2017).  *See* Dkt. #40, Ex. O at 3.  And only after Salazar filed a motion to compel later that month, and the Court ordered HTC Corp. to produce, did HTC Corp. produce the purchase agreement with AT&T.  *See* Dkt. #40, Ex. O at 2-4.

[17] AT&T also benefited from HTC Corp.'s concealment of evidence, as it was able to successfully distance itself from HTC Corp., insisting that it was merely "peripheral" to the HTC Corp. litigation.  Dkt. #40, Ex. I at 2.

Corp.) does not change the fact that, at the relevant time, HTC Corp. withheld the contracts with the U.S. carriers from Salazar, thus enabling HTC Corp. to successfully prevent AT&T's joinder.

Defendants' incorrect framing of this issue as Salazar "collaterally attacking a judgment on the grounds of fraud or concealment" misses the point. Salazar is not challenging the noninfringement judgment in the HTC Corp. case. Claim preclusion is an equitable doctrine with limits and exceptions and, as in *Rimkus*, prejudice can indeed be considered at present. *See HRD Corp.*, 2019 WL 162094, at *5. Salazar would clearly be prejudiced if the U.S. carriers could shield themselves from liability in both the HTC Corp. case and the instant case.

Accordingly, even if claim preclusion were appropriate in this case—which it is not—it should not be applied because "the policies underlying preclusion law would not be served by barring the plaintiff's claims against the defendants." *Rimkus*, 699 F. Supp. 2d at 664.

### D.    The *Kessler* doctrine does not apply to this case.

#### 1.    *Kessler* is a limited doctrine that does not subsume claim preclusion.

Defendants' attempt to circumvent the requirements of claim preclusion by applying the *Kessler* doctrine to bar conduct occurring prior to the HTC Corp. judgment contravenes precedent and should be rejected. *See Kessler v. Eldred*, 206 U.S. 285 (1907). The *Kessler* doctrine was created for the limited purpose of filling the gap between claim and issue preclusion and post judgment conduct. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014); *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-CV-419, 2015 WL 6750306, at *5 (E.D. Tex. July 7, 2015). The Federal Circuit has not applied the *Kessler* doctrine to bar a broader *set of rights* than would be barred by claim preclusion. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018). Accordingly, the *Kessler* doctrine only bars a party from asserting claims of infringement for conduct occurring after a judgment of noninfringement. *SimpleAir, Inc.*, 884 F.3d at 1170. *Simple Air* is illustrative. There,

defendant Google raised the *Kessler* doctrine as an alternative to its claim preclusion defense, arguing that the *Kessler* doctrine should apply to its alleged activity predating the earlier judgment. *Id*. at 1169-70.  The Federal Circuit rejected Google's attempt to "subsume claim preclusion within a more expansive, *sui generis Kessler* doctrine," explaining that "the *Kessler* doctrine just fills a particular temporal gap between preclusion doctrines."  *Id.* at 1170.

Here, Salazar does not allege any infringing conduct occurring after the final judgment in the HTC Corp. case—nor could he.  His patent expired on September 28, 2015, over a year before the HTC Corp. case was filed and two and a half years before final judgment on May 18, 2018. *See* Dkt. #40, Ex. N.  Thus, Salazar could not allege any infringing post-final judgment conduct by Defendants, as Salazar's patent was expired at the time of final judgment in the HTC Corp. case.  Accordingly, Defendants' attempt to expand the reach of the *Kessler* doctrine to their conduct predating the HTC Corp. final judgment should be rejected.

Even under Defendants' arguments in connection with the dicta[18] cited from *Speedtrack*, the *Kessler* doctrine remains a "gap filler" and fails to support Defendants' attempt to apply the *Kessler* doctrine to the instant case.  Even if the *Kessler* doctrine could also fill a "privity gap," in claim preclusion it cannot subsume claim preclusion's requirement that "the same claim or cause of action was involved in both actions" (*supra*, at Section V.A.1.) or *Kessler*'s requirement of an adjudged non-infringing device (*infra*, at Section V.D.2.).  *SimpleAir*, 884 F.3d at 1170; *Mirror Worlds,* 2015 WL 6750306, \*5.  Defendants' boundless interpretation of the *Kessler* doctrine

---

[18] The *SpeedTrack* case relied on by Defendants expressly acknowledges that the *Kessler* doctrine is directed at preventing a party from suing a manufacturer's customers for "*acts of infringement that post-dated the judgment in the first action.*" *SpeedTrack Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1325-27 (Fed. Cir. 2015); Motion at 15 (emphasis in original).

would render claim preclusion superfluous and allow for absurd results.[19]  For example, under Defendants' interpretation, a foreign manufacturer could strategically seek a declaratory judgment (and as HTC Corp. did here, oppose joinder of customers) of non-infringement on the basis it does not make, use, sell, offer to sell, or import an infringing product **in the U.S**. and later when its customers (who indisputably did sell and/or offer to sell in the U.S.) are sued, they could assert the *Kessler* doctrine so that a patent owner has no remedy.   Defendants cite no authority supporting such an outcome, which contravenes the Federal Circuit's unequivocal stance that the *Kessler* doctrine is limited in nature.

### 2. The *Kessler* doctrine does not apply because the HTC One phones did not attain noninfringing status in the HTC case.

Even if the *Kessler* doctrine applied to prefinal judgment conduct, there is no legal support for its application when there is no decision that an *accused product practices the claim elements of the patent at issue*, as is the case here.  As the Federal Circuit has explained, the *Kessler* doctrine fills a gap between the claim preclusion and issue preclusion doctrines by granting a limited trade right to continue producing, using, and selling an adjudged non-infringing devices.  *Brain Life*, 746 F.3d at 1056 (explaining that *Kessler* gives an accused infringer "rights with respect to **specific products that had been held to be noninfringing**") (emphasis added); *SimpleAir, Inc.,* 884 F.3d at 1169-1170.

Defendants acknowledge that *Kessler* only applies to accused products that have attained the

---

[19] Even Defendants' characterization of *SimpleAir* acknowledges the role of claim preclusion and the limitations of the *Kessler* doctrine.  As Defendants concede, the Federal Circuit expressly held that if the district court found related patents to be substantially similar to those in the prior law suit, claim preclusion would bar pre- judgment activity, and the *Kessler* doctrine would bar post-judgment activity.  *SimpleAir,* 884 F.3d at 1169-70; Motion at 12.  However, the court did not, as Defendants' wrongly assert, reason that *Kessler* would not apply to all conduct because it was unnecessary.  To the contrary, the Federal Circuit explicitly stated that *Kessler* "does not displace" claim preclusion or issue preclusion.  *Id.* at 1170.

status of noninfringing devices.  *See* Motion at 8 ("[a]nd so the three HTC Smartphones[20] from *Salazar I* … attained the status of noninfringing devices").  Defendants' argument that *Kessler* can apply here, however, rests on the false premise that because HTC Corp. *prevailed* in the HTC Corp. case, that outcome resolved whether the HTC One phones themselves are noninfringing devices, i.e., do not practice the claim elements of the asserted claims of the '467 patent.  As previously explained, the HTC Corp. case resolved only that HTC Corp.—the foreign manufacturer—did not commit acts giving rise to infringement in the U.S—not that the HTC One phones did not practice the claim elements of the asserted claims of the '467 patent.  *See supra*, Section V.A.2.c.

In *Mirror Worlds*, defendant Apple attempted to assert the *Kessler* doctrine.  *Mirror Worlds*, 2015 WL 6750306, at *1, 3-4.  In the previous case, this Court found that "Mirror Worlds did not present substantial evidence that Apple (or its customers) *used* the [accused] Spotlight feature but expressly declined to consider whether the Spotlight feature contained all the claim limitations."  *Id.* at *4.  Thus, Apple was not liable for infringement not because the patented feature did not practice the claim elements of the asserted claims, but rather because plaintiff Mirror Worlds failed to prove the feature at issue was used.  *Id.*  In a later suit brought by Mirror Worlds where it was undisputed the feature at issue was used, Apple argued that the accused software acquired the status of being a non-infringing product (and thus Mirror Worlds' suit was precluded under *Kessler*) based on the first suit's limited holding.  *Id*. at *3.  This Court disagreed and "decline[d] to extend the *Kessler* Doctrine to the facts of this case … [where Apple] has not shown that the *Kessler* Doctrine's noninfringement requirement can and should be triggered by a

---

[20] Defendants' argument that this case involves "the same three HTC Smartphones *that were adjudged as non-infringing*" misrepresents the record.  The HTC Corp. litigation did not make any finding regarding whether the HTC Smartphones practiced Salazar's asserted patent claims.  *See supra*, Section III ¶¶ 16-17; Section V.A.2.c.

finding that a method was not used, as opposed to a finding that a method does not perform every step or limitation of the asserted claim." *Id.* at *6.  The Court further explained that extending the *Kessler* doctrine as Apple proposed did not serve the policy behind the doctrine and that "the *Kessler* Doctrine 'fills the gap between' claim and issue preclusion" and the "*Kessler* Doctrine thus stops a patent owner from repeatedly harassing a manufacturer after a court found the manufacturer '*lawfully produces*' **a 'particular thing**.'" *Id.* at *5 (quoting *Brain Life,* 746 F.3d at 1055–56) (emphasis added).

Similarly, here, the jury in the HTC Corp. case never found that the HTC One phones performed every limitation of the asserted claims and HTC Corp. consistently argued that it was not liable because it did not use, offer to sell, or sell the phones in the U.S.  *See supra*, Section III ¶¶ 16-17; Section V.A.2.c.  Accordingly, as in *Mirror Worlds*, there was no finding that the manufacturer, HTC Corp., "lawfully produces" a "particular thing."  *Mirror Worlds*, 2015 WL 6750306, *5.  The authorities that Defendants cite apply the *Kessler* doctrine only after a finding of noninfringement based on the accused device not meeting a claim limitation.  *Eldred v. Kessler,* 106 F. 509, 518 (7th Cir. 1900); *Brain Life,* 746 F.3d at 1052 (finding the accused products did not incorporate the claimed "analog-to-digital conversion"); *MGA, Inc. v. LaSalle Mach. Tool, Inc.,* 148 Mich. App. 350, 363 (1986) (finding the accused product did not contain the claimed "abutment means" and "like back and forth movement"); *SpeedTrack, Inc. v. Office Depot, Inc.,* No. C 07–3602 PJH, 2014 WL 1813292, at *1 (N.D. Cal. May 6, 2014) (finding the accused product did not include the claimed "category description")*Mirror Worlds,* 2015 WL 6750306, at *4.  By contrast, the HTC Corp. case did not resolve whether the products themselves practiced the claim elements of the asserted claims

of the '467 patent and therefore the *Kessler* doctrine is inapplicable.[21]

### 3. Salazar's present claims are not new infringement theories that should have been brought in the HTC Corp. case.

Defendants' assertion that Salazar's claims against the carrier defendants are "infringement theories" that should have been brought in the previous case are false and irrelevant to *Kessler*. Intervenor HTC Corp.—*not* Salazar—strategically limited the scope of the *Salazar v. HTC Corp.* judgment.  Rather than protect the interest of its customers and end users by joining them in the case, HTC Corp. opposed Salazar's efforts to add carrier AT&T to the case[22] by arguing *it was not the same transaction* under § 299 and that AT&T was a "peripheral defendant.[23]  *See supra*, Section III ¶¶ 5-7.  HTC Corp. took the position that it had no business relationship with Defendants in this case and that its manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the U.S. of the accused devices retailed by the U.S. carriers.  *See supra*, Section V.A.2.a; Section III ¶¶ 12-15.  Moreover, after successfully severing AT&T from the HTC Corp. case, HTC Corp. consistently and continuously asserted that it was not liable for infringement because it did not use, sell, or offer to sell the accused devices in the U.S.  Thus, HTC Corp. decided to defend itself against Salazar's infringement claims on a narrow ground available only to it as a foreign entity and not its customers and must live with the result.

## VI. CONCLUSION

For the foregoing reasons, Salazar requests that the Court deny Defendants' Motion in full.

---

[21] Additionally, none of the cases cited by Defendants and involved territorial distinctions between the defendants in the first and second cases.  *Mirror Worlds*, 2015 WL 6750306, at *4-5.
[22] Defendants' claim that Salazar chose not to sue defendants is false.  *See supra*, Section III ¶¶ 5-7.
[23] Defendants' argument that Salazar could have sued the other carriers "Sprint and T-Mobile and Verizon" in the prior case is without merit.  All of the carriers sit in the same position, and HTC Corp. and Defendants would have made the same strategic decision to oppose their joinder, as they did with AT&T.  Defendants' suggestion that Salazar chose not to sue and proceed to trial against the carriers in the prior case—when he was, in fact, denied that very option—is false.

Respectfully submitted,

*/s/ Geoffrey Culbertson*
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone:  903-792-7080
Telecopier:  903-792-8233

Dariush Keyhani
District of Columbia Bar No. 1031500
Frances H. Stephenson
New York registration No. 5206495
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5 on April 8, 2021.

*/s/ Geoffrey Culbertson*
Geoffrey Culbertson