# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC,<br>SPRINT/UNITED MANAGEMENT<br>COMPANY, T-MOBILE USA, INC.,<br>AND CELLCO PARTNERSHIP D/B/A<br>VERIZON WIRELESS,<br><br>    Defendants<br><br>and<br><br>HTC CORP., and HTC AMERICA, INC.,<br><br>    Intervenors. | Civil Action No. 2:20-cv-00004-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF JOE ANDREW SALAZAR'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' AND INTERVENORS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT UNDER THE *KESSLER* DOCTRINE AND RES JUDICATA**

Despite their multitude of briefing on these issues, Defendants still cannot meet their burden of establishing that the requirements of claim preclusion are satisfied, *see Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 764 (5th Cir. 2017), or that the *Kessler* doctrine has any application in this case. As Defendants concede in their Reply (Dkt. #205), their Motion for Summary Judgment ("Motion") presents no factual issues for a jury to decide, and the only matters for resolution are purely legal questions. Further, the universe of facts has not changed since Defendants filed their original Motion to Dismiss based on claim preclusion and the *Kessler* doctrine (Dkt. #27). For this threshold reason, the Motion should either be stricken as duplicative of Defendants' pending Motion to Dismiss or, alternatively, denied as moot. *See* Salazar's Response (Dkt. #203 at 1); Salazar's Motion to Strike (Dkt. #152). However, even if considered on the merits, Defendants' Motion fails as a matter of law and should be denied in full.

## I. DEFENDANTS' CLAIM PRECLUSION POSITION IS NOT SUPPORTED BY LAW

Defendants misrepresent the law by mischaracterizing Federal Circuit cases while ignoring both the factual context of those cases and the overarching claim preclusion principles set forth by the Fifth Circuit. As this Court has explained, in the patent context, "courts look to the law of the regional circuit for guidance regarding the principles of claim preclusion." *Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00211-JRG, 2021 WL 1530935, at *2 (E.D. Tex. Apr. 16, 2021). However, courts apply Federal Circuit law because "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases." *Id.* (quoting *Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 746 F.3d 1344, 1348 (Fed Cir. 2014)). According to the Federal Circuit, "the claim preclusion analysis requires comparing the patents' claims **along with other relevant transactional facts**." *Id.* (quoting

1

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018)) (emphasis added). Defendants disregard this guidance and controlling precedent and instead attempt to create superficial comparisons with cases with distinct facts. Proper application of the law establishes, however, that (A) the cases do not involve the same claim and (B) the parties are not in privity.[1]

### A. The two cases do not involve the same claim or cause of action.

To determine whether both suits involve the same cause of action, the Fifth Circuit applies the transactional test, which focuses on whether the two cases "are based on the same nucleus of operative facts." *Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016). According to the Fifth Circuit,

> What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting Restatement (Second) of Judgments § 24(2)). "[T]he claim preclusion analysis requires comparing the patents' claims **along with other relevant transactional facts**." *Oyster Optics*, 2021 WL 1530935, at *2 (quoting *Simple Air*, 884 F.3d at 1168) (emphasis added). Contrary to Defendants' assertion, there is no bright-line rule as to what establishes the same claim or cause of action in the patent context. Rather, the opposite is true: "The application of claim preclusion, as well as the *Kessler* Doctrine, **requires a 'careful inquiry.'**" *Id.* at *3 (quoting *SimpleAir*, 884 F.3d at 1169) (emphasis added).

---

[1] Defendants falsely argue on several occasions that Salazar "conceded" their interpretations of certain cases because he did not specifically address them in his Response. Like any reasonable litigant, Salazar elected not to respond to every case cited by Defendants given page limitations and a desire not to address arguments that are distractions and/or have no bearing on the outcome of the dispute. These decisions do not equate to "concessions."

2

Here, as Salazar previously argued in his Response (Dkt. #203 at 7-15) and Motion to Dismiss briefing (Dkt. #40 at 3-9; Dkt. #63 at 2-4), the HTC Corp. litigation and the present case unequivocally *do not* involve the same transaction or nucleus of operative facts.  As HTC Corp. argued steadfastly throughout the first case, any transactions made by HTC Corp. (i.e., sales and offers for sale) took place strictly in Taiwan and **were not covered by U.S. law**.  This was the position taken by HTC Corp. in its pre-trial briefing, throughout discovery, in counsels' statements at trial, and in its witness testimony.  *See* Response at 7-30.  This was the position taken by Defendants when AT&T successfully severed itself from the HTC Corp. case.  *Id.*  Moreover, the jury's finding of noninfringement in that case may well have been based on HTC Corp.'s lack of activities giving rise to infringement in the United States—and *not* because the accused devices failed to meet the claim elements of the asserted claims.

By contrast, in this case, it is undisputed that the defendant U.S. carriers made sales of the accused devices in the United States and that these transactions **are covered by U.S. law**.  *See id.*  It is undisputed that this case *does not* involve the facts of HTC Corp.'s overseas activities, whether HTC Corp. committed any acts of infringement in the United States, or HTC Corp.'s transactions with its subsidiary, HTC America.  It is undisputed that the jury in this case cannot make a finding of noninfringement based on the U.S. carriers' lack of activities giving rise to infringement in the United States.  Defendants' assertion that claim preclusion is proper because both cases "(1) assert the same patent and (2) claim infringement based on the sale (or offer to sell)" wholly ignores the fact that the "offers for sale" and "sales"-at-issue are entirely different transactions governed by the law of different countries.  *See* Reply at 7.  The transactional test is simply not satisfied here.  *See Simple Air*, 884 F.3d at 1168-69; *Hous. Prof'l Towing*, 812 F.3d at 447; *Petro–Hunt*, 365 F.3d at 396.

Defendants have not provided any legal support for their position that the facts of this case meet the same claim or cause of action requirement. In the cases cited by Defendants where claim preclusion was granted, not only were the defendants the same or closely related or in privity, but the second litigation clearly involved the same transaction or nucleus of operative facts as the prior litigation. *See, e.g., Gravelle v. Kaba Ilco Corp.*, 757 F. App'x 944, 946 (Fed. Cir. 2018); *Senju*, 746 F.3d 1344. Salazar does not dispute that in some instances, having "essentially the same" accused products and the same patents in both cases may be sufficient to constitute the same claim or cause of action. But in the present case, a "pragmatic" and "careful inquiry"—as directed by the Fifth Circuit, the Federal Circuit, and this Court—establishes that this requirement simply is not satisfied. *See Petro–Hunt*, 365 F.3d at 396; *Oyster Optics*, 2021 WL 1530935, at *3 (quoting *Simple Air*, 884 F.3d at 1169).

### B. The parties are not in privity.

Similarly, Defendants fail to establish that the parties are in privity. A non-party is considered to be in privity for preclusion purposes "where the party to the first suit is so closely aligned with the nonparty's interests as to be his '**virtual representative**.'" *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1297 (5th Cir. 1992) (citations omitted). The relationship between a party and non-party is sufficiently close to justify preclusion if the non-party's interests "were **represented adequately** by a party in the original suit."[2] *Texas v. Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019).

---

[2] "[A] party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned ... and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the nonparty's interests." *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (citations omitted).

As Salazar has previously argued, the overwhelming evidence supports that the parties are not in privity. *See* Response at 17-21; Dkt. #40 at 10-17; Dkt. #63 at 4-8. For example, HTC Corp. attempted to conceal from Salazar the carrier purchase agreements—identifying which U.S. carriers had a relationship with HTC Corp., along with the nature of these relationships—and only reluctantly produced the carrier agreements after being pressed by Salazar and the Court to do so. HTC Corp. made multiple strategic decisions to further its own interests at the expense of Defendants': it asserted the defense that its actions did not occur in the United States (a defense unavailable to Defendants); it argued throughout the first case that the U.S. carriers—and *not* HTC Corp.—were making sales of the accused devices in the United States; it left the jury without the ability to clarify *why* they found HTC Corp. did not infringe; and it elected to withdraw its invalidity counterclaim at trial, which left Salazar's patent valid and the U.S. carriers open to liability for infringement in a subsequent lawsuit. Additionally, HTC Corp. and AT&T successfully severed Defendant AT&T from the case in part based on representations by HTC Corp. that the U.S. carriers' actions constituted an entirely separate transaction and representations by AT&T such that it was a "peripheral defendant." These undisputed facts establish that HTC Corp. did not act as the U.S. carriers' "virtual representative," nor did they adequately represent them. To the contrary, HTC Corp. consistently acted against the best interest of the U.S. carriers for its own benefit.

Defendants' assertion that they are in privity with HTC Corp. based on "evidence—used by Salazar at the trial—proving the design, marketing, sale, and distribution relationships between Defendants and HTC on the HTC Smartphones" is disingenuous and without merit. Reply at 8. As Salazar discussed in his previous briefing, HTC Corp. ultimately produced these documents only after Salazar filed a motion to compel and the Court ordered HTC Corp. to

produce them.[3]  HTC Corp. did not produce these documents as required by the Court's Local Rules governing initial disclosures, because HTC Corp. contended they had no relevance to the case and that Salazar was not entitled to this information.  Further, after producing the agreements only upon court order, HTC Corp. continued to refute them and to deny any relationship between HTC Corp. and the U.S. carriers, and adopted this position throughout trial.  The totality of HTC Corp.'s conduct indicates that it was not, in fact, acting as Defendants' "virtual representative" nor did it adequately represent Defendants in the prior case.  *See Texas*, 929 F.3d at 211; *Royal Ins.*, 960 F.2d at 1297.  The parties therefore are not in privity for the purposes of claim preclusion.

### C. Judicial estoppel applies in this case.

Defendants provide no legal support for their assertion that the position they took in the first case had to have been "clearly accepted by the Court in *Salazar I*" for judicial estoppel to apply.  *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  Defendants also misrepresent the Court's order regarding HTC Corp. and AT&T's motion to sever.  Reply at 9.  It is incorrect that "the Court made clear that it severed AT&T, Inc. for one reason only: it is 'a holding company that does not sell the accused products ... [and] there are no transactions that connect HTC with AT&T as required by 35 U.S.C. § 299.'"  *Id.*  Rather, in its order, the Court took into account and analyzed several considerations, including Defendants' argument that Salazar's claims against AT&T were peripheral or secondary.  For example, at the start of its discussion, the Court cited AT&T's argument that "Salazar's claims against it are merely secondary or

---

[3] Furthermore, as Salazar previously explained, **at the relevant times**, HTC Corp. withheld the contracts with the U.S. carriers from Salazar.  *See* Response at 18-19.  Defendants once again mischaracterize the facts when they state that "Salazar knew that the Defendants were all well-known resellers of HTC Corp.'s accused smartphones, each with a separate contractual arrangement with HTC Corp."  Reply at 8.

peripheral to those against HTC, because AT&T (or AT&T Mobility) is just a retailer." *Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, Dkt. #80 at 3-4. The Court then concluded that "Defendants' contention that Salazar's claims against AT&T (or AT&T Mobility) are merely peripheral to his claims against HTC" was "support[ed]." *Id.* at 5. Not only did the Court consider this point in its decision, the Court took Defendants at their word. Thus, it is apparent that Defendants' argument that Salazar's claims against the carriers were secondary and peripheral was accepted by the Court in the prior case, and judicial estoppel applies here.[4]

## II. DEFENDANTS' *KESSLER* DOCTRINE ARGUMENTS ARE WITHOUT MERIT

As set out in Plaintiff's Response, the *Kessler* doctrine has limited application and does not subsume claim preclusion. *SimpleAir*, 884 F.3d at 1170; *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-CV-419, 2015 WL 6750306, at *5 (E.D. Tex. July 7, 2015). Consistent with *Simple Air* and *Mirror Worlds*, this Court recently confirmed the narrow scope of the *Kessler* doctrine. *Oyster Optics*, 2021 WL 1530935, at *6 (explaining that because the defendant "failed to prove that res judicata [claim preclusion] applies … in this case [defendant] has likely failed to prove that the *Kessler* doctrine applies").

Defendants' Reply makes clear they have no legal authority to support applying the *Kessler* doctrine to pre-final judgment conduct when there is no finding the product at issue practiced an asserted patent. To get around this reality, Defendants instead reinvent the facts, claiming that "the jury in *Salazar I* specifically found that none of the three accused HTC

---

[4] Defendants further state that "even after the Court ordered that AT&T Mobility, LLC (the correct AT&T entity) should be added into the severed case—Salazar dismissed the whole severed case, rather than pursue the avenue offered by the Court." Reply at 9. Defendants fail to note that Salazar dismissed the severed case **without prejudice**—as was his right—and, as this Court has explained, "It is well established that a dismissal without prejudice should not preclude re-litigation of the dismissed claims in the same court." *Oyster Optics*, 2021 WL 1530935, at *5.

Smartphones infringed any of the asserted claims" and that "extraterritoriality was a subsidiary issue." Both of these claims are false, and Defendants' revisionist history should be rejected.

Contrary to Defendants' insistence, the jury in the HTC Corp. case did not make any finding regarding whether the accused devices practiced the asserted claims of the '467 Patent. As previously discussed in both Salazar's responses to Defendants' Motion to Dismiss and their instant Motion, the jury verdict form in the HTC Corp. case left entirely unclear whether HTC Corp. was not liable because: (1) it did not commit any infringing acts **in the United States** or (2) the accused devices did not satisfy the claim elements of the asserted claims of Salazar's patent. *See* Dkt. #40, Ex. A at 2. Moreover, extraterritoriality was a **dispositive issue** in the HTC Corp. case—not a "subsidiary issue," as Defendants now assert. Indeed, in the HTC Corp. case, HTC Corp.'s counsel argued in their opening statement:

> ● "**HTC Corp does not actually make, use, offer, or sell their phones in the United States, nor do they import their phones into the United States** …. [T]here is a separate HTC company called HTC America, Inc. that … does the United States – State's operations."
>
> ● "**Those facts are important** because under United States patent law, **only actions that take place in the United States can infringe** a United States patent."

Dkt. #40, Ex. J at 63:20-64:17 (emphasis added). Later in trial, counsel for HTC Corp. argued:

> "There's one other reason, though, why you can find that HTC Corporation doesn't infringe, and that's because … **only infringing acts in the United States count for infringement. Only if you import, make, use, sell, offer for sale in the United States can you be an infringer**."

Dkt. #40, Ex. K at 67:17-68:2 (emphasis added).

Defendants' argument that HTC Corp.'s strategic decisions in the HTC case are "entirely irrelevant" to the *Kessler* analysis is also without merit. HTC Corp.'s strategic decision to preserve the extraterritoriality defense (which was not available to its domestic customers), let its

8

customers fend for themselves (by not joining them in the case), and thwart Salazar's efforts to add U.S. carrier AT&T are precisely *the reason* the HTC case did not resolve whether the accused devices actually practice Salazar's accused patent claims, thus making the *Kessler* doctrine inapplicable. As addressed in Plaintiff's Response (and ignored by Defendants in their Reply), Defendants' boundless *Kessler* interpretation would incentivize a foreign manufacturer to strategically seek a declaratory judgment of non-infringement on the basis it does not make, use, sell, offer to sell, or import an infringing product **in the U.S.** and later assert the *Kessler* doctrine when its customers (who indisputably did sell and/or offer to sell in the United States) are sued, leaving the patent owner with no remedy.

Defendants' argument that Salazar somehow "concedes … the applicability of cases" by not addressing them is untenable. The law speaks for itself and does not bend to Defendants' favor if their duplicative, inapposite cases are not specifically discussed by Plaintiff. Nevertheless, in the case of *MGA, Inc. v. General Motors Corp.*, this case was extensively addressed in Plaintiff's opposition to Defendants' motion to dismiss briefing.[5] *See* Dkt. # 63 at 9. *PersonalWeb*, is similarly duplicative and inapposite.[6] There, the first case ended in a voluntary dismissal with prejudice against all claims plaintiff PersonalWeb asserted against

---

[5] *MGA* involved a prior judgment from a Michigan state court where that court had determined that the accused product *did not practice the plaintiff's patent claims*. *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 731 (Fed. Cir. 1987). In light of that state court decision, the Federal Circuit, applying "existing Michigan preclusion principles to determine what preclusive effect the prior judgment against [plaintiff] *would* be given in a Michigan state court," held that "since the accused machines here are admittedly the same in both suits, it is [Defendant's] right that the accused machines be freely traded without interference." *Id.* at 733-35. *MGA* did not address whether the *Kessler* doctrine can apply to pre-judgement infringement, and it certainly does not support Defendants' position that the *Kessler* doctrine bars the instant lawsuit.

[6] *PersonalWeb* confirms that "[t]he *Kessler* doctrine … 'fills the gap' left by claim and issue preclusion, by 'allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result.'" *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020) (emphasis in original).

9

defendant. *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020) (emphasis in original).[7] PersonalWeb later attempted to sue Amazon's customers and Amazon argued it was precluded under claim preclusion and the *Kessler* doctrine. *Id*. The court found that PersonalWeb's voluntary dismissal with prejudice "operated as an adjudication of non-liability for infringement for purposes of invoking the *Kessler* doctrine." *Id*. at 1379. Here, unlike PersonalWeb, Salazar did not choose to dismiss his entire case with prejudice—which would have resolved all issues of infringement in defendants' favor. *Cf. CFL Techs. LLC v. Osram Sylvania, Inc.,* No. 1:18-CV-01445-RGA, 2019 WL 2995815, at *4 (D. Del. July 9, 2019) (explaining that plaintiff's decision to drop certain claims did not defeat defendant's status as an adjudged noninfringer). Rather, the case ended in a narrow verdict that left the issue of whether the Accused Devices practices the '467 patent claims entirely unresolved and forecloses the application of the *Kessler* doctrine.

## II. CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in full.

Respectfully submitted,

*/s/Geoff Culbertson*
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
T. 903-792-7080
T. 903-792-8233

---

[7] Plaintiff PersonalWeb has filed a petition for certiorari to the U.S. Supreme Court.

          Dariush Keyhani
          District of Columbia Bar No. 1031500
          Frances H. Stephenson
          New York registration No. 5206495
          Keyhani LLC
          1050 30th Street NW
          Washington, DC 20007
          T. 202.748.8950
          F. 202.318.8958
          dkeyhani@keyhanillc.com
          fstephenson@keyhanillc.com

          **Attorneys for Plaintiff, Joe Andrew Salazar**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5 on April 23, 2021.

          */s/Geoffrey Culbertson*
          Geoffrey Culbertson