IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AT&T MOBILITY LLC, SPRINT UNITED § <br> MANAGEMENT COMPANY, T-MOBILE § <br> USA INC, CELLCO PARTNERSHIP, INC. § <br> D/B/A VERIZON WIRELESS, INC., § <br> § <br> *Defendants*. § | CIVIL ACTION NO. 2:20-CV-00004-JRG |

## ORDER

Before the Court is Defendants' and Intervenors' *Daubert* Motion to Exclude Certain Testimony of Mr. Dennis M. Giuffré (the "Motion") filed by Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless and Intervenors HTC Corp., and HTC America, Inc. (collectively, "Defendants"). (Dkt. No. 147). Having considered the Motion, the Court finds that it should be and hereby is **DENIED**.

### I.  LEGAL STANDARD

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509

U.S. 579, 594, 597 (1993). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. ANALYSIS

### a. Dr. Giuffré's Alleged Use of the Entire Market Value Rule

Defendants argue that Mr. Giuffré applied the determined royalty rate to the entire value of the accused devices, rather than apportioning the royalty base to include only the patented features. (Dkt. No. 147 at 5–7). Defendants identify several deposition citations where Mr. Giuffré allegedly confirmed this improper approach. (*Id.*). Defendants argue that the asserted claims are limited to two-way infra-red (IR) frequency communications and should not include the entire sales price of the accused devices. (*Id.*).

Plaintiff Joe Andrew Salazar ("Salazar") argues that Mr. Giuffré apportioned through the royalty rate rather than through the royalty base. (Dkt. No. 164 at 7–10). According to Salazar, Mr. Giuffré used two distinct methods to apportion the royalty rate and arrive at an appropriate range: 1) drawing from related technology in the *Mformation*[1] verdict and dividing the determined royalty rate in *Mformation* by the nominal average price of the accused products ($500); and 2) taking the price of a two-way IR universal remote app add-on and dividing it by the nominal average price of the accused products. (*Id.*). As a result, Mr. Giuffré arrived at a royalty rate of 1.4% – 1.6%. (*Id.*). Salazar further argues that to the extent Defendants object to the amount of

---

[1] *Mformation Techs. v. Research in Motion Ltd.*, No. C 08-04990, Dkt. 2016 (N.D. Cal. July 13, 2012).

apportioning performed, that objection implicates a technical dispute as to the scope of the patented invention. (*Id*.).

The Court finds that Mr. Guiffré's analysis is not excludable under *Daubert*. Federal Circuit precedent expressly allows for apportionment to be performed through the royalty rate or the royalty base. *See, e.g., Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) ("We have held that apportionment can be addressed in a variety of ways, including "by careful selection of the royalty base to reflect the value added by the patented feature [or] … by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof."). Further, there is conflicting expert testimony as to claim scope and the proper level of apportionment. It is the jury's responsibility to resolve such factual disputes.

### b. Convoyed Sales

Defendants argue that Mr. Giuffré's use of convoyed sales to reach Defendants' cellular services as the primary royalty base is improper because the case law requires that the demand driving the sales be motivated by the actual invention, which is limited to the two-way infrared (IR) functionality. (Dkt. No. 147 at 8–11). Defendants point to technical evidence which they argue demonstrates a lack of nexus between Defendants' cellular services and the claimed functionality. (*Id*.). Relatedly, Defendants argue that Mr. Giuffré should be excluded from testifying about whether Defendants made or lost money on the sale of the accused HTC Smartphones or on the provision and operation of their cellular networks. (*Id*. at 14).

Salazar responds that Mr. Giuffré offers alternative royalty bases: one based on revenues from the sale of wireless convoyed to Defendants' device sales, and an alternative based on the value of the accused devices sold by each Defendant. (Dkt. No. 164 at 10–13). With respect to his "convoyed" rate, Mr. Giuffré explained that Defendants realize profit not only from sale of the

3

accused products to customers, but rather from the bundling of those products with wireless communication services. (*Id*.). Salazar claims this approach has been approved by the Federal Circuit. (*Id*.).

The Court finds that Mr. Guiffré's analysis is not excludable under *Daubert*. The Federal Circuit has allowed convoyed sales to be included in the royalty base, in some circumstances. *See, e.g.*, *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1373 (Fed. Cir. 2010). Defendants are free to cross examine Mr. Giuffré regarding his royalty analysis. Vigorous cross-examination, in this situation, is preferable to outright exclusion.

### c. Mr. Giuffré's reliance on the *Mformation* royalty rate

Defendants object to Mr. Giuffré's reliance on a working paper from which he learned about the jury in the *Mformation* case finding a per unit royalty of $8 for two patents, or $4 per patent. (Dkt. No. 147 at 9–11). Defendants argue that Mr. Giuffré's reliance on the *Mformation* damages award is improper because the patents haven't been shown to be comparable and judgment as a matter of law of noninfringement was later granted in that case. (*Id*.).

Salazar responds that Mr. Giuffré properly relied on the Dr. Gottesman in forming his opinion regarding technical comparability to the *Mformation* patents. (Dkt. No. 164 at 13–15). According to Dr. Gottesman, the *Mformation* patents share common technical functionality with the claims of the asserted patent in this case, i.e., RF communications with remote wireless devices. (*Id*.). Salazar contends that technical comparability is ultimately a fact issue for the jury to decide. (*Id*.). Salazar further argues that the judgment as a matter of law of noninfringement in *Mformation* has nothing to do with the reliability of the jury's damages determination. (*Id*.).

The Court finds that Mr. Giuffré's reliance on the *Mformation* verdict should not be excluded under *Daubert*. This dispute involves a battle of the experts regarding claim scope, which

4

must be decided by the jury. Defendants are free to cross examine Mr. Giuffré on this point. Once again, cross examination under these facts is preferable to exclusion.

### d. Mr. Giuffré's Alleged Technical Analysis

Defendants object to Mr. Giuffré's opinion that the patented technology is "integral" to the accused HTC smartphones, arguing that opinion is based on an improper technical analysis. (Dkt. No. 147 at 11–13). Similarly, Defendants contend that Mr. Giuffré provides improper technical testimony with respect to non-infringing alternatives. (*Id*. at 13–14). Defendants also argue that Mr. Giuffré did not properly disclose his opinions regarding non-infringing alternatives, nor did he rely on an expert who did. (*Id*.).

Salazar responds that Mr. Giuffré reviewed the '467 Patent and determined that separate handheld instruments are not "integral" to smartphones—i.e. they are not contained within the phone. (Dkt. No. 164 at 15–16). Salazar argues that this is not a complex technical opinion outside of Mr. Giuffré's realm of expertise. (*Id*.). As to non-infringing alternatives, Salazar explains that Mr. Giuffré testified that he understands from the experts in *Salazar I* that there are no acceptable non-infringing substitutes integrating two-way IR capability into a smartphone as claimed in the asserted patent. (*Id*. at 16–17). Mr. Giuffré further testified that the IR universal remote add-on app is the next best thing—a data point he used in his royalty analysis. (*Id*.). Salazar contends that these opinions were properly collected from technical experts and sources, including the reports used in *Salazar I*. (*Id*.).

The Court is persuaded that Mr. Giuffré's testimony does not improperly enter the realm of technical expert testimony and should not be excluded under *Daubert*. The sufficiency of the basis for Mr. Giuffré's opinions regarding non-infringing alternatives could have (but was not) addressed through a motion to strike.

5

## III. CONCLUSION

For the reasons stated above, Defendants' and Intervenors' *Daubert* Motion to Exclude Certain Testimony of Mr. Dennis M. Giuffré (Dkt. No. 147) is **DENIED**.

**So ORDERED and SIGNED this 28th day of July, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE