IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO.  2:20-CV-00004-JRG |
| AT&T MOBILITY LLC,  SPRINT UNITED MANAGEMENT COMPANY,  T-MOBILE USA INC,  CELLCO PARTNERSHIP, INC. D/B/A VERIZON WIRELESS, INC., | § § § § § § | |
| *Defendants*. | § | |

**ORDER**

Before the Court is Defendants' and Intervenors' *Daubert* Motion to Exclude Portions of the Expert Report and Proffered Testimony of Plaintiff's Expert Witness, Dr. Oded Gottesman filed by Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless and Intervenors HTC Corp., and HTC America, Inc. (collectively, "Defendants"). (Dkt. No. 145). Having considered the Motion, the Court finds that it should be and hereby is **DENIED**.

I.   **LEGAL STANDARD**

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a

reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. ANALYSIS

### a. Dr. Gottesman's Testimony Regarding "Communications System"

Plaintiff Joe Andrew Salazar's ("Salazar") infringement expert, Dr. Oded Gottesman, offered rebuttal validity opinions in *Salazar v. HTC Corp.*, 2:16-cv-01096-JRG ("*Salazar I*"). Defendants explain that Dr. Gottesman's testimony in *Salazar I* was excluded with respect to whether a "communications system" referred to a "telephonic device." (Dkt. No. 145 at 6–7). Defendants argue that in this case, Dr. Gottesman again improperly attempts to construe the term "communications system" to require a "complete functional telephone device." (*Id.*). Defendants assert that this is an improper importation of an embodiment from the specification into the claims. (*Id.*).

Salazar responds that Dr. Gottesman's testimony regarding the claimed "communications system"—which Dr. Gottesman interpreted in *Salazar I* to require a "telephonic device"—was excluded "based on his review of the specification, and not on its plain meaning within the art." (Dkt. No. 157 at 7–8). Here, Salazar argues, Dr. Gottesman applied the plain meaning of the term as understood in the art, without relying on the specification. (*Id.*).

The Court is not persuaded that Dr. Gottesman's opinion with respect to the term "communications system" falls below the *Daubert* standard and should be excluded. The term

"communications system" has not been construed by the Court, and Dr. Gottesman is free to opine as to the plain and ordinary meaning of the term as known within the art to a person of ordinary skill. Defendants are also free to vigorously cross examine Dr. Gottesman regarding his opinion.

### b. Dr. Gottesman's Use of the Expert's Report in *Salazar I*

Defendants argue that Dr. Gottesman extensively copied from Mr. Roy Griffin, Salazar's previous infringement expert in *Salazar I*, particularly with respect to the limitations which recite "said microprocessor creating a plurality of reprogrammable communication protocols, for transmission to said external devices" and "wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices." (Dkt. No. 145 at 8–12). Additionally, Defendants contend that Mr. Griffin's previous report contained analysis equating the claim term "create" with the word "implement," and thus Dr. Gottesman now improperly equates the two terms. (*Id*. at 12–13).

Salazar responds that Dr. Gottesman was sufficiently involved in drafting the substance of his report, and any similarities between his report and that of Mr. Griffin's in *Salazar I* go to immaterial issues. (Dkt. No. 157 at 8–12). Salazar argues that any similarities between the two reports can be explained by their reliance on the same source code expert. (*Id*.). Salazar further states that Dr. Gottesman does not use the word "implementing" in place of "creating," but rather to explain how the accused devices function and satisfy the claim elements. (*Id*. at 12–14).

The Court is not persuaded that Salazar's use of the expert report from *Salazar I* rises to a level mandating exclusion under the *Daubert* standard. Defendants are free to cross examine Dr. Gottesman regarding the same. Skilled cross examination, in this context, is preferable to exclusion.

### c. Dr. Gottesman's Use of Representative Products

Defendants argue that Dr. Gottesman improperly claims that the accused HTC One M8 product is representative of the accused HTC One M8 for Windows product, even though the products run completely different operating systems. (Dkt. No. 145 at 13–15). Defendants further challenge Dr. Gottesman's opinion on the basis that he never reviewed the source code for the HTC One M8 for Windows. (*Id*.).

Salazar responds that Dr. Gottesman studied and tested the functionality of the accused devices, including the HTC One M8 Windows device. (Dkt. No. 157 at 14). Salazar argues that Dr. Gottesman was not required to examine source code, and in any event, he relied on the testimony of Mr. Byler, who reviewed the source code for the HTC One M8 Windows device. (*Id*.).

The Court is not persuaded that Dr. Gottesman's analysis of representative products should be excluded under *Daubert*. Defendants are free to actively and aggressively cross examine Dr. Gottesman regarding the same.

### d. Dr. Gottesman's Alleged Undisclosed Theories

Claim 1 of the asserted patent requires "a memory device . . . such that the memory space required to store said parameters is smaller than the memory space required to store said code sets." (Dkt. No. 145 at 15–17). Defendants contend that in the infringement contentions, Salazar relied on the Nyquist sampling rate to satisfy this limitation, but for the first time in his expert report, Dr. Gottesman points to Snapdragon processor hardware which is not mentioned in Salazar's infringement contentions. (*Id*.).

Salazar argues that the Court's claim construction necessitated the inclusion in Dr. Gottesman's expert report of allegations related to the Snapdragon microprocessor. (Dkt. No. 157 at 14–18). Salazar explains that the Claim Construction Order was issued on September 18, 2020,

4

and rather than supplement the infringement contentions within 30 days, he included the new allegations in Dr. Gottesman's expert report. (*Id.*). Salazar contends that the allegations based on Snapdragon should not be excluded because Defendants were not prejudiced or prevented from conducting discovery on this issue. (*Id.*).

The Court concludes that Salazar's infringement contentions with respect to this limitation should not be excluded under *Daubert*. The Court finds that Salazar's decision to include the allegations in his expert report, rather than supplement the infringement contentions, is reasonable given the relevant timing.

### e. Doctrine of Equivalents Allegations

Defendants argue that Salazar's final infringement contentions contain boilerplate doctrine of equivalents allegations that should be excluded. (Dkt. No. 145 at 17–19). Defendants further assert that in his report, Dr. Gottesman did not provide "particularized testimony and linking argument on a limitation-by-limitation" basis. (*Id.*).

Salazar responds that Dr. Gottesman provided sufficient detail in his expert report regarding DOE assertions, linking particular claim limitations to opinions. (Dkt. No. 157 at 18–19). Salazar argues that if Defendants viewed the infringement contentions as insufficient with respect to DOE, they should have filed a motion to strike. (*Id.*).

The Court finds that Salazar has provided sufficient detail to satisfy the standard under the doctrine of equivalents. The Court also notes that Defendants' motion attempts to re-hash the motion for summary judgment of noninfringement with respect to the doctrine of equivalents (Dkt. No. 143), which the Court previously denied (Dkt. No. 220 at 4). Such a re-hash does not move the Court.

### III. CONCLUSION

For the reasons stated above, Defendants' and Intervenors' *Daubert* Motion to Exclude Portions of the Expert Report and Proffered Testimony of Plaintiff's Expert Witness, Dr. Oded Gottesman (Dkt. No. 145) is **DENIED**.

**So ORDERED and SIGNED this 28th day of July, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE